**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW BULL, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>22ND CENTURY GROUP, INC., HENRY SICIGNANO III, and JOHN T. BRODFUEHRER,<br><br>          Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Matthew Bull ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding 22nd Century Group ("22nd Century" or the "Company"), and information readily obtainable on the Internet. Plaintiff

1

believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded 22nd Century securities between February 18, 2016 and October 25, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      22nd Century is a company that purportedly has the technology and plant breeding expertise to regulate the level of nicotine (and other nicotinic alkaloids) in tobacco plants. The Company has touted how it is able to grow tobacco with "up to 97% less nicotine than conventional tobacco."

3.      By 2013, 22nd Century announced a partnership with British American Tobacco ("BAT"), granting BAT access to 22nd Century's "patented technology which alters levels of nicotinic alkaloids in tobacco plants."

4.      But on September 26, 2017, the *Winston-Salem Journal* reported that BAT was ending its partnership with 22nd Century to develop low-nicotine cigarettes in order to pursue "more beneficial options available to us going forward." A law professor in the article stated, "it looks like a company (BAT) that understands the tobacco market perhaps better than any other entity on the planet sees little likelihood of, or viability in, measures to force nicotine levels in cigarettes to a non-psychoactive [and non-addictive] level."

5.      According to a February 2, 2018 *Seeking Alpha* article by Fuzzy Panda Research, 22nd Century's stock price had been inflated through various paid stock promotion articles from

2014 through 2017, some of which had disclosed the paying party and amount, and others which did not.

6.     On this news, shares of 22nd Century fell $0.35 per share or over 11% to close at $2.73 per share on February 2, 2018.

7.     Then, on October 25, 2018, Fuzzy Panda Research disclosed in another *Seeking Alpha* article that its Freedom of Information Act ("FOIA") requests from the SEC for "all documents in the possession of SEC that pertain to investigations regarding 22nd Century Group (XXII) for the time period January 1, 2016 through July 16, 2018" had been denied. According to the article, the SEC would not release the documents because doing so could "reasonably be expected to interfere with on-going enforcement proceedings." The article built on a March 7, 2018 *Seeking Alpha* article by Sharesleuth which explained how a "stealth promotion network" posted positive articles about the Company at suspicious times in 2017, including (i) after investors took part in placements and/or warrant exercises, enabling them to profit as 22nd Century's share price surged; and (ii) immediately before and after 22nd Century had announced it was selling new shares at discount prices in October 2017.

8.     On this news, shares of 22nd Century fell $0.11 per share or over 4% to close at $2.45 per share on October 25, 2018. As a result of Defendants' wrongdoing, 22nd Century investors have been damaged.

9.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) 22nd Century's stock was prone to manipulation through paid stock promotions; (2) such conduct would subject 22nd Century to heightened

regulatory scrutiny by the SEC; and (3) consequently, 22nd Century's public statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

13.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased 22nd Century securities during the Class Period and was economically damaged thereby.

15.     Defendant 22nd Century provides technology that increases or decreases the nicotine levels and other nicotinic alkaloids in tobacco plants, and cannabinoids in hemp/cannabis plants through genetic engineering and plant breeding. 22nd Century is incorporated in Nevada. Its principal place of business is in Williamsville, New York. 22nd

Century's shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "XXII."

16.    Defendant Henry Sicignano III ("Sicignano") has served as the Company's Chief Executive Officer ("CEO") since March 3, 2015. He also served as the Company's Chief Operating Officer ("COO") from October 25, 2014 to March 3, 2015.

17.    Defendant John T. Brodfuehrer ("Brodfuehrer") has served as the Company's Chief Financial Officer ("CFO") since March 2013 and serves as the Company's Treasurer.

18.    Defendants Sicignano and Brodfuehrer are collectively referred to herein as the "Individual Defendants."

19.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

20. 22nd Century is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

21. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to 22nd Century under *respondeat superior* and agency principles.

22. Defendants 22nd Century and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**
**Materially False and Misleading**
**Statements Issued During the Class Period**

23. On February 18, 2016, the Company filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2015 (the "2015 10-K"). The 2015 10-K was signed by Defendants Sicignano and Brodfuehrer. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Sicignano and Brodfuehrer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24. The Company's 2015 10-K stated that its stock price was subject to volatility but failed to disclose its stock could experience volatility due to manipulation:

> ***Our stock price may be highly volatile and could decline in value.***
>
> Our common stock is currently traded on the NYSE MKT and the market prices for our common stock have been volatile. Further, the market prices for securities in general have been highly volatile and may continue to be highly volatile in the future. The following factors . . . may have a significant impact on the market price of our common stock:
> - results from and any delays in any clinical trials programs;

6

- failure or delays in entering potential products into clinical trials;
- failure or discontinuation of any of our research programs;
- delays in establishing new strategic relationships;
- delays in the development of our potential products and commercialization of our potential products;
- market conditions in our sector and issuance of new or changed securities analysts' reports or recommendations;
- general economic conditions, including recent adverse changes in the global financial markets;
- actual and anticipated fluctuations in our quarterly financial and operating results;
- developments or disputes concerning our intellectual property or other proprietary rights;
- introduction of technological innovations or new commercial products by us or our competitors;
- issues in manufacturing or distributing our products or potential products;
- market acceptance of our products or potential products;
- third-party healthcare reimbursement policies;
- FDA or other United States or foreign regulatory actions affecting us or our industry;
- litigation or public concern about the safety of our products or potential products;
- additions or departures of key personnel;
- third-party sales of large blocks of our common stock;
- sales of our common stock by our executive officers, directors, or significant stockholders; and
- equity sales by us of our common stock or securities convertible into common stock to fund our operations.

25.    On March 8, 2017, the Company filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by Defendants Sicignano and Brodfuehrer. The 2016 10-K contained signed SOX certifications by Defendants Sicignano and Brodfuehrer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The Company's 2016 10-K stated that "management concluded that our internal control over financial reporting was effective as of December 31, 2016."

26.    The Company's 2016 10-K stated that its stock price was subject to volatility but failed to disclose its stock could experience volatility due to manipulation:

*Our stock price may be highly volatile and could decline in value.*

Our common stock is currently traded on the NYSE MKT and the market prices for our common stock have been volatile. Further, the market prices for securities in general have been highly volatile and may continue to be highly volatile in the future. The following factors, in addition to other risk factors described in this section, may have a significant impact on the market price of our common stock:

- results from and any delays in any clinical programs
- failure or delays in entering potential products into clinical trials;
- failure or discontinuation of any of our research programs;
- delays in establishing new strategic relationships;
- delays in the development of our potential products and commercialization of our potential products;
- market conditions in our sector and issuance of new or changed securities analysts' reports or recommendations;
- general economic conditions, including recent adverse changes in the global financial markets;
- actual and anticipated fluctuations in our quarterly financial and operating results;
- developments or disputes concerning our intellectual property or other proprietary rights;
- introduction of technological innovations or new commercial products by us or our competitors;
- issues in manufacturing or distributing our products or potential products;
- market acceptance of our products or potential products;
- third-party healthcare reimbursement policies;
- FDA or other United States or foreign regulatory actions affecting us or our industry;
- litigation or public concern about the safety of our products or potential products;
- additions or departures of key personnel;
- third-party sales of large blocks of our common stock;
- sales of our common stock by our executive officers, directors, or significant stockholders; and
- equity sales by us of our common stock or securities convertible into common stock to fund our operations.

27. On March 7, 2018, the Company filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K was signed by Defendants Sicignano and Brodfuehrer. The 2017 10-K contained signed SOX certifications by Defendants Sicignano and Brodfuehrer attesting to

8

the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The Company's 2017 10-K stated that "management concluded that our internal control over financial reporting was effective as of December 31, 2017."

28.     The Company's 2017 10-K stated that its stock price was subject to volatility but failed to disclose its stock could experience volatility due to manipulation:

> ***Our stock price may be highly volatile and could decline in value.***
>
> Our common stock is currently traded on the NYSE American and the market prices for our common stock have been volatile. Further, the market prices for securities in general have been highly volatile and may continue to be highly volatile in the future. The following factors, in addition to other risk factors described in this section, may have a significant impact on the market price of our common stock:
> - failure or discontinuation of any of our research programs;
> - delays in establishing new strategic relationships;
> - delays in the development of our potential products and commercialization of our potential products;
> - market conditions in our sector and issuance of new or changed securities analysts' reports or recommendations;
> - general economic conditions, including recent adverse changes in the global financial markets;
> - actual and anticipated fluctuations in our quarterly financial and operating results;
> - Developments or disputes concerning our intellectual property or other proprietary rights;
> - introduction of technological innovations or new commercial products by us or our competitors;
> - issues in manufacturing or distributing our products or potential products;
> - market acceptance of our products or potential products;
> - third-party healthcare reimbursement policies;
> - FDA or other United States or foreign regulatory actions affecting us or our industry;
> - litigation or public concern about the safety of our products or potential products;
> - additions or departures of key personnel;
> - third-party sales of large blocks of our common stock;
> - sales of our common stock by our executive officers, directors, or significant stockholders; and
> - equity sales by us of our common stock or securities convertible into common stock to fund our operations.

29. The statements contained in ¶¶23-28 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) 22nd Century's stock was prone to manipulation through paid stock promotions; (2) such conduct would subject 22nd Century to heightened regulatory scrutiny by the SEC; and (3) consequently, 22nd Century's public statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### THE TRUTH SLOWLY EMERGES

30. On February 2, 2018, *Seeking Alpha* contributor Fuzzy Panda Research stated that 22nd Century utilized a years' long "[r]ampant paid stock promotion" scheme to inflate 22nd Century's share price. According to the article, the sponsors of some of the articles from 2014 through 2017 were undisclosed. The article states, in relevant part:

### 22nd Century - Cutting Through The Smoke And Hype - 75% Downside Summary

- Reverse merger into mining shell; headquarters is located at a dentist office.
- Negative gross margins - so revenue growth equals increased losses.
- Rampant paid stock promotion (including free stock for buying cartons of cigarettes).
- "Technology" viewed as worthless by Major Tobacco + all companies, but XXII has a low nicotine product. Low nicotine tobacco has been around since the 1930s!
- Sea of red flags + consistent exaggeration about technology.

\* \* \*

The company has spun the narrative that "22nd Century is the only company in the world capable of growing tobacco with non-addictive levels of nicotine" - (Source). We will show you this is far from the truth and prove to you that this is likely nothing more than another paid stock promotion that will crumble under shareholder dilution.

Our analysis of 22nd Century will focus on three realities that you won't find in its press releases.

1. **Dismantling the hype of 22nd Century's "Technology"** -
   - In reality XXII is the only tobacco company that can't publicly market and sell a low nicotine tobacco product in the USA right now.
   - Removing nicotine from tobacco is not new or novel; in fact it was first discovered in the 1930s! Multiple major tobacco companies have 2-5 times more patents than XXII in the low-nicotine space (XXII has <1% of the patents).
   - British American Tobacco (NYSEMKT:BTI) (BAT) put a nail in XXII's coffin by deciding that XXII patent portfolio isn't even worth $3 million!
   - The only two product hopes for XXII have already FAILED: Brand A cigarettes FAILED in December 2016 to get their FDA Modified Risk Tobacco Product (MRTP) designation; and X-22 FAILED phase IIb trials back in 2012. Neither product even currently has new applications/research studies pending.
2. **XXII's Horrible Fundamentals** - Great businesses are not usually reverse mergers of OTC mining companies run out of dentist office that give away free stock with every pack of cigarettes sold - it turns out XXII is not an exception to this rule.
   - NEGATIVE GROSS MARGINS - 22nd Century generates $0.93 of revenue for every $1.00 of product costs…a terrible business model.
   - LESS than 2% of the company's revenue comes from low nicotine tobacco (and that revenue is declining!).
   - Where does the revenue come from then? - 98.5% of revenue from selling the highest nicotine cigarettes in the USA (Red Sun) and third-party normal cigars and cigarettes.
   - Company burning over ~$12 million of cash a year.
   - Huge stock dilution - Share count up by >600%
3. **Red Flags Galore - Who is protecting shareholders?**
   - Founder & Former CEO Joseph Pandolfino charged with share price manipulation by SEC and got an FTC consent order for FALSE advertising.
   - Joe, the founder with an SEC and FTC order, accused current management of corporate governance concerns.
   - Paid stock promoters involved and company gave away shares when you bought cigarettes.
   - Headquarters shared with a local dentist!
   - Reverse merger into OTC mining company.
   - Insider sales & institutional investors dumping shares and warrants from six months ago.
   - Bankers (Chardan), investor relations (IRTH), and auditors (Freed Maxick) all have a very checkered past where investors have gotten fleeced.

\* \* \*

Paid stock promotion is commonplace in penny stocks similar to XXII and is a great indicator of good short candidates. Why? **We believe legitimate companies do not pay stock promoters!**

**Partial list of the Paid Stock Promotions:**

| Stock Promoter | Date | Amount | Paying Party | Title |
|---|---|---|---|---|
| **XXII Paid Stock Promotions!** (Partial List) | | | | |
| Small Cap Network | 10/23/2017 | undisclosed | undisclosed | 22nd Century Group Inc (XXII) - Smoke and a Pancake: |
| Small Cap Traders | 9/19/2017 | undisclosed | undisclosed | Daily Trader Update |
| The Stock Expert.com | 8/4/2017 | $32,500 | Sunrise Media | Long Term Play Watch: XXII Hits New 52 Week High Up |
| Road Runner Stocks (Inv | 8/3/2017 | undisclosed | undisclosed | *The corner of High and Main...* |
| The Stock Expert.com | 6/16/2017 | $12,500 | Sunrise Media | XXII Makes Gains Of 12% After Our Alert |
| Small Cap Traders | 6/8/2017 | Unpaid? | undisclosed | "A New Century in Bio-engineering" |
| Road Runner Stocks (Inv | 5/15/2017 | undisclosed | undisclosed | |
| Stock Trade Wire | 6/22/2016 | $2,000 | Infinity Consulting, LLC | Red Hot Mega Pick - $XXII |
| Small Cap IR | 5/26/2016 | $25,000 | Star Media | XXII just in product to be placed in 750 retail stores |
| Small Cap Leader | 5/24/2016 | $20,000 | Third Coast Media | 22nd Century Group, Inc.(XXII) is our new NYSE alert |
| Stocks Impossible | 5/24/2016 | $25,000 | Star Media | Could this one be a takeover target? |
| Ultimate Stock Alerts | 1/28/2016 | $20,000 | Star Media | NYSE Alert |
| Street Picks | 1/24/2016 | $15,000 | Star Media | Update 22nd Century Group and this week |
| Small Cap Leader | 1/20/2016 | $15,000 | Star Media | Extremely quick FDA response NYSE profile inside |
| First Penny Picks | 12/17/2015 | $10,000 | Star Media | XXII medical marijuana collaboration and more |
| Small Cap Leader | 12/16/2015 | $15,000 | Star Media | XXII News Update |
| AwesomeStocks.com | 12/16/2015 | $20,000 | Star Media | Trade Idea: 22nd Century Group, Inc. (NYSE: XXII) |
| Blazing Penny Stocks | 4/23/2015 | undisclosed | undisclosed | Is This Cigarette the Future of Smoking? |
| Pennybuster.com | 9/9/2014 | undisclosed | undisclosed | ***** XXII Huge News ***** |
| pennystockprophecy | 3/6/2014 | undisclosed | undisclosed | ****XXII*** |
| **Total Spent** | | **$212,000** | | |

(Emphasis added.)

31.    On this news, shares of 22nd Century fell $0.35 per share or over 11% to close at $2.73 per share on February 2, 2018.

32.    On October 25, 2018, *Seeking Alpha* contributor Fuzzy Panda Research suggested the SEC is actively investigating 22nd Century Group for its involvement in a potential pump and dump scheme.

33.    According to the article, the SEC refused to provide documents pursuant to a FOIA request that concerned investigations of 22nd Century from January 1, 2016 through July 16, 2018 because doing so "could reasonably be expected to interfere with on-going enforcement proceedings."[1] The article stated, in relevant part:

### 22nd Century Group - FOIAs Reveal Suspected Undisclosed SEC Investigation Summary

- Our FOIA requests on 22nd Century Group received a 7(a) exemption response including the line "releasing the withheld information could reasonably be

---

[1] The SEC cited FOIA exemption 5 U.S.C. § 552(b)(7)(A), 17 C.F.R. § 200.80(b)(7)(i).

expected to interfere with on-going enforcement proceedings". As a result, we suspect there is an ongoing SEC investigation regarding the company.

- Sharesleuth exposed articles from network of connected authors promoting XXII – those authors also wrote about many other "IRTH Communications" & "Honig, Brauser, and Frost" companies.
- Still no MRTP (Modified Risk Tobacco Product) application!

* * *



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

Stop 9612                                                                 September 21, 2018

Re:     Appeal, Freedom of Information Act Request No. 18-02520-FOIA, designated on appeal as No. 18-00609-APPS

Dear

This responds to your Freedom of Information Act (FOIA) appeal of the FOIA Officer's denial of your July 16, 2018 FOIA request for "all documents in the possession of SEC that pertain to investigations regarding 22nd Century Group (XXII) for the time period January 1, 2016 through July 16, 2018." By letter dated August 13, 2018, the FOIA Officer denied your request pursuant to FOIA Exemption (b)(7)(A). On September 14, 2018, you filed this appeal challenging the FOIA Officer's invocation of Exemption 7(A). I have considered your appeal and it is denied.

I have determined that the FOIA Officer correctly asserted Exemption 7(A).[1] There is a two-step test to determine whether information is protected under Exemption 7(A), whether: (1) a law enforcement proceeding is pending or prospective, and (2) release of information about it could reasonably be expected to cause some articulable harm.[2] We have confirmed with staff that releasing the withheld information could reasonably be expected to interfere with on-going enforcement proceedings.[3]

_____

[1] Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information * * * could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A), 17 C.F.R. § 200.80(b)(7)(i).

*Sources – Letter from the SEC Office of the General Counsel (we redacted the Name & Address it was mailed to & the highlights are our additions); Initial SEC FOIA denial; More information on 7 (A) exemptions.*

* * *

**Alleged Undisclosed Stock Promotion for XXII – An IRTH Communications client:**

Since we wrote our earlier article on XXII, Chris Carey at Sharesleuth wrote a damning exposé of a large network of often undisclosed stock promotions that included the creation of fictitious authors. 22nd Century (XXII) was a constant focus of these authors' bullish articles: see Sharesleuth's Pretenders & Ghosts:

Stealth Promotion Network article. This should be required reading for anyone considering investing in XXII, either long or short.

The article suggests how the same authors (sometimes fictitious people) wrote a multitude of bullish investment articles for both IRTH Communication clients & companies backed by Barry Honig, Michael Brauser, and Philip Frost. Since Sharesleuth's article was published, the SEC filed charges (link) against Barry Honig, Michael Brauser, Philip Frost, John H. Ford, et al. for allegedly running pump & dumps and manipulating the stock price of 3 specific companies (assumed to be MBVX, COCP, and MGTI). MBVX was also written on extensively by Samuel Rae, an author of many of the past bullish XXII pieces in 2017 (here & here). John H. Ford, who was charged by the SEC and has already settled the charges (link), was also an author of a positive article on XXII (it has since been removed from SeekingAlpha.com).

Highlights of the Sharesleuth article involving 22nd Century Group include:

- Fake authors like George Ronan writing positive XXII stories. This fake author is shown to have 3 different profile pictures & bios for different investment sites, but despite his multiple fictitious personalities, he is bullish on XXII.
- Lack of disclosure - authors like Samuel Rae did not disclose if they were compensated for or had positions in the stocks. If they were indeed compensated then this lack of disclosure would violate the law.
- Exposed a network of connected authors for XXII (they produced more than 20 positive stories in 2017 alone). Sharesleuth's list of XXII promotional articles is here. Authors were shown to write positive articles about IRTH Communications or Honig-related companies and often right before events like stock offerings.

The exposé of this network of promotional authors is especially important given that last year, the SEC brought enforcement actions against 27 different firms & individuals for stock promotion schemes that led investors to believe they were reading independent, unbiased analyses. (SEC charges)

22nd Century's management has still not explained who authorized or funded the positive articles regarding XXII. Nor has it provided any reasoning for who else could be responsible for these tactics of having fake authors write positive articles.

Furthermore, XXII continues to pay & use IRTH Communications as their investor relations firm. IRTH Communications is still listed as 22nd Century's IR contact on their website & in press releases (link, and link) - even as it sits at the epicenter of these articles.

Despite having extraordinarily long quarterly calls in which management talks about hypothetical future licensing deals, 22nd Century has not bothered to offer an explanation for why XXII has consistently been the subject of positive articles from this network of authors or other paid stock promotions.

34.    On this news, shares of 22nd Century fell $0.11 per share or over 4% to close at $2.45 per share on October 25, 2018.

35.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired 22nd Century securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of 22nd Century, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, 22nd Century securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business 22nd Century;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused 22nd Century to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of 22nd Century' securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- 22nd Century shares met the requirements for listing, and were listed and actively traded on NYSE, a highly efficient and automated market;

- As a public issuer, 22nd Century filed periodic public reports with the SEC and NYSE;

- 22nd Century regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- 22nd Century was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

43.    Based on the foregoing, the market for 22nd Century securities promptly digested current information regarding 22nd Century from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of 22nd Century securities during the Class Period.

49.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of 22nd Century were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of 22nd Century, their control over, and/or receipt and/or modification of 22nd Century's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning 22nd Century, participated in the fraudulent scheme alleged herein.

50.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other 22nd Century personnel to members of the investing public, including Plaintiff and the Class.

51.     As a result of the foregoing, the market price of 22nd Century securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of 22nd Century securities during the Class Period in purchasing 22nd Century securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

52.     Had Plaintiff and the other members of the Class been aware that the market price of 22nd Century securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased 22nd Century securities at the artificially inflated prices that they did, or at all.

53.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

54.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of 22nd Century securities during the Class Period.

### COUNT II
#### Violations of Section 20(a) of the Exchange Act
#### Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, the Individual Defendants participated in the operation and management of 22nd Century, and conducted and participated, directly and indirectly, in the conduct of 22nd Century's business affairs. Because of their senior positions, they knew the

adverse non-public information about 22nd Century's misstatement of revenue and profit and false financial statements.

57.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to 22nd Century's financial condition and results of operations, and to correct promptly any public statements issued by 22nd Century which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which 22nd Century disseminated in the marketplace during the Class Period concerning 22nd Century's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause 22nd Century to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of 22nd Century within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of 22nd Century securities.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by 22nd Century.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)      awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2019                               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim_____
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*