**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

MATTHEW BULL, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiff,

   vs.

22ND CENTURY GROUP, INC., HENRY
SICIGNANO, III, and JOHN T.
BRODFUEHRER,

        Defendants,

Case No. 1:19-cv-01285-JLS

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**AMENDED CLASS ACTION COMPLAINT**

FOLEY & LARDNER LLP
Jonathan H. Friedman
90 Park Avenue
New York, NY 10016
Telephone: (212) 338-3416
Email: jfriedman@foley.com

John A. Tucker (*pro hac vice pending*)
1 Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-2000
Email: jtucker@foley.com

*and*

DUKE, HOLZMAN, PHOTIADIS &
GRESENS LLP
Charles C. Ritter, Jr.
701 Seneca Street, Suite 750
Buffalo, NY 14210
Telephone: (716) 855-1111
Email: critter@dhpglaw.com

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................1

FACTUAL BACKGROUND...........................................................................................3

    I.       PROMOTIONAL INTERNET ARTICLES.............................................3

    II.      THE ALLEGED SEC INVESTIGATION ..........................................4

ARGUMENT..................................................................................................................5

    I.       PLAINTIFFS' COMPLAINT DOES NOT SATISFY THE STRICT
              SECURITIES FRAUD PLEADING REQUIREMENTS. ....................5

    II.      COUNT I FAILS TO PLEAD AN ACTIONABLE FALSE OR
              MISLEADING STATEMENT OR OMISSION. ...................................6

          A.      Plaintiffs Do Not Allege Defendants Were Themselves Aware of
                    the Allegedly Omitted Information...............................................7

          B.      Even if Defendants had the Allegedly Omitted Information,
                    Plaintiffs Fail to Allege the Requisite Duty to Disclose It..........8

                1.      Plaintiffs Fail to Allege Defendants had a Statutory Duty to
                        Disclose the Purported Payments........................................9

                  2.      The Complaint Fails to Allege any Affirmative Statement
                        Rendered Misleading by the Alleged Omissions.................10

                  3.      The Allegedly Omitted Information Is Not Material....................14

    III.    COUNT II (MARKET MANIPULATION) FAILS TO ALLEGE THE
              REQUISITE MANIPULATIVE ACT.................................................16

    IV.    COUNTS I AND II FAIL TO PLEAD SCIENTER.............................18

          A.      Plaintiffs Have Not Pled Motive and Opportunity to Defraud. .................19

          B.      Plaintiffs Have Not Pled Strong Circumstantial Evidence of
                      Conscious Misbehavior..............................................................20

    V.      COUNTS I AND II FAIL TO ADEQUATELY PLEAD LOSS
               CAUSATION. ....................................................................................22

    VI.    COUNT III FAILS TO STATE A CLAIM FOR CONTROL PERSON
              LIABILITY........................................................................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of the State of Utah v. United States*,
  406 U.S. 128 (1972)................................................................................................15

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..........................................................................................6, 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)................................................................................ *passim*

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)............................................................................................8, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................6, 22

*Brady v. Top Ships Inc.*,
  No. 17-CV4987 (BMC), 2019 WL 3553999 (E.D.N.Y. Aug. 5, 2019) ..................13

*In re C.D.T.S. v. UBS AG*,
  No. 12 CIV 4924, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013)...........................22

*Campo v. Sears Holdings Corp.*,
  371 Fed. App'x 212 (2d Cir. 2010)..........................................................................3

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................................17

*In re Carter-Wallace, Inc., Sec. Litig.*,
  220 F.3d 36 (2d Cir. 2000)................................................................................13, 15

*Castellano v. Young & Rubicam, Inc.*,
  257 F.3d 171 (2d Cir. 2001)....................................................................................14

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)......................................................................................3

*Cortina v. Anavex Life Scis. Corp.*,
  No. 15-CV-10162, 2016 WL 7480415 (S.D.N.Y. Dec. 12, 2016) ................. *passim*

ii

*Dura Pharm., Inc. v. Broundo*,
    544 U.S. 336 (2005)..................................................................................................6, 22, 24

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F. 3d 187 (2d Cir. 2009)...................................................................................18, 20, 22

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)......................................................................................................16, 18

*Foley v. Transocean Ltd.*,
    861 F. Supp. 2d 197 (S.D.N.Y. 2012)..........................................................................19, 21

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
    157 F. Supp. 3d 1230 (N.D. Ga. 2015) ...............................................................................10

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
    843 F.3d 1257 (11th Cir. 2016) .........................................................................7, 10, 14, 17

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)....................................................................................................6

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000).................................................................................................14

*Garvey v. Arkoosh*,
    354 F. Supp. 2d 73 (D. Mass. 2005) ...................................................................................10

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015)............................................................................22, 24

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..............................................................................................................13

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)......................................................................................18, 19, 20

*Kavowras v. New York Times Co.*,
    328 F.3d 50 (2d Cir. 2003).......................................................................................................3

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)............................................................................................16, 22

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) .......................................................................10, 12, 15

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...........................................................................................23

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)..................................................................................6

*Mishkin v. Ageloff*,
  No. 97 Civ. 2690, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)............................24

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..........................................................................19, 20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015).......................................................................................12

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
  595 F.3d 86 (2d Cir. 2010)..................................................................................14

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.*
  *Holdings Ltd.*,
  886 F. Supp. 2d 328 (S.D.N.Y. 2012)....................................................................23

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago ex rel Policemen's*
  *Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
  767 Fed. App'x 139 (2d Cir. 2019).......................................................................18

*Resnik v Swartz*,
  303 F.3d 147 (2d Cir. 2002)................................................................................14

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)................................................................................24

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977)......................................................................................16, 17

*Schnell v. Conseco, Inc.*
  43 F. Supp. 2d 438 (S.D.N.Y. 1999).....................................................................16

*Set Capital LLC v. Credit Suisse Grp. AG*,
  No. 18-CV-2268 (AT)(SN), 2019 WL 3940641 (S.D.N.Y. Aug. 16, 2019)............16

*Sharette v. Credit Suisse Int'l*,
  127 F. Supp. 3d 60 (S.D.N.Y. 2015)........................................................................3

*Shemian v. Research In Motion Ltd.*,
  570 F. App'x 32 (2d Cir. 2014)............................................................................14

*Shetty v. Trivago N.V.*,
  No. 19-0766, -- Fed. App'x --, 2019 WL 6834250 (2d Cir. Dec. 16, 2019)............24

iv

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..................................................................................19

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
  222 F. Supp. 2d 289 (E.D.N.Y. 2002) .................................................................22

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)..............................................................................................6

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015).....................................................................................9

*Tellabs v. Makor Issues & Rights*,
  551 U.S. 308 (2007)..............................................................................................18

*Thesling v. Bioenvision, Inc.*,
  374 F. App'x 141 (2d Cir. 2010) .............................................................................9

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993)........................................................................................9

*In re UBS AG Sec. Litig.*,
  No. 07-cv-11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .................12

**Federal Statutes**

15 U.S.C.
  § 77q(b).............................................................................................................9, 10
  § 78u-4 ............................................................................................................. *passim*
  § 78t-1 ...............................................................................................1, 3, 4, 24

17 CFR
  § 240.10b-5 ....................................................................................................... *passim*
  § 240.9(b)........................................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiffs' Amended Class Action Complaint ("Complaint," ECF No. 31) alleges that 22nd Century Group, Inc. ("22nd Century" or the "Company") retained an investor relations firm, IRTH Communications ("IRTH"), which in turn paid third-party authors to create and post internet articles promoting 22nd Century. Plaintiffs do not, and could not, contend that such paid promotional articles are improper. Instead, Plaintiffs allege that some of the third-party authors did not disclose the payments they received. Plaintiffs allege that *22nd Century* should have disclosed these purported payments—and that the nondisclosure of payments was a scheme to inflate the value of the Company's stock. Plaintiffs assert this claim despite unambiguous authority in this Circuit and elsewhere that the burden to disclose such payments lies squarely and exclusively with the authors who allegedly received payments—and that promoted companies have no such duty to disclose. Plaintiffs also do allege that Defendants knew any articles omitted required payment disclosures by the authors, or that the articles contained false or misleading statements.

The Complaint also proffers a second theory of liability: that because 22nd Century publicly and contemporaneously disclosed a material weakness regarding financial controls in 2015-16—and also disclosed that it remediated this issue in 2016—Defendants supposedly committed securities fraud by not disclosing that the SEC had allegedly investigated this material weakness. Plaintiffs do not allege the purported SEC investigation resulted in any penalties.

The Complaint asserts three claims: Count I, against 22nd Century and individual defendants Henry Sicignano and John Brodfuehrer (the "Individual Defendants"), primarily alleges misrepresentations or omissions under Rule 10b-5(b) of the Securities Exchange Act of 1934 (the "Exchange Act"); Count II, against the Individual Defendants, alleges market manipulation under Rule 10b-5(a) and (c); and Count III, against the Individual Defendants, alleges control person liability under Section 20(a) of the Exchange Act. The Complaint's

1

farfetched, conclusory allegations fall far short of the stringent pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) for stating a cognizable securities fraud claim under the Exchange Act. Plaintiffs' claims fail for numerous reasons:

First, the Company cannot disclose information it does not have. Plaintiffs fail to allege that Defendants were even aware that authors allegedly paid by IRTH failed to disclose payments.

Second, the Complaint fails to allege that Defendants had a duty to disclose this information or the alleged SEC investigation. Plaintiffs point to no statutory duty to disclose, or any affirmative statement rendered misleading by the alleged omissions. Moreover, omissions are not actionable if the omitted information is not material. Even if the Company had been aware that some authors had omitted their disclosures, this information was not material because it would not have significantly altered information available to investors. The existence of an alleged SEC investigation, especially where the underlying information is disclosed, is also not material.

Third, Plaintiffs try to reframe their deficient omissions claim as a market manipulation claim in Count II, but fail to allege the requisite manipulative act or market activity.

Fourth, Plaintiffs fail to plead the requisite scienter. The Complaint does not allege that: (1) Defendants attempted to profit personally in any way from the alleged scheme; (2) Defendants were even aware that the articles' authors failed to disclose payments, much less sought to prevent such disclosures; or (3) the nondisclosure of an alleged SEC investigation reflected conscious misbehavior, especially where Plaintiffs also allege the Company made accurate, detailed disclosures of the subject of the alleged investigation.

Fifth, the Complaint fails to allege, as required, that Plaintiffs' alleged losses were caused by the nondisclosure of payments or an alleged SEC investigation.

The absence of any one of these elements requires dismissal of Counts I and II. Count III,

under Section 20(a), should likewise be dismissed because Plaintiffs fail to plead: (a) an underlying violation and (b) culpable participation by either Individual Defendant. Because the defects identified herein are incurable, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

22nd Century is a small company headquartered in Williamsville, New York focused on plant biotechnology that regulates the amount of nicotine in tobacco and cannabinoids in hemp. ¶¶ 2, 51.[1] From March 2015 to July 2019, Henry Sicignano, III served as 22nd Century's Chief Executive Officer. ¶¶ 25, 35. From April 2013 to December 2019, John Brodfuehrer served as 22nd Century's Chief Financial Officer and Treasurer. ¶ 36. Plaintiffs seek to bring this lawsuit as a class action on behalf of investors who purchased 22nd Century's stock during the "class period" of February 18, 2016 through July 31, 2019. ¶ 1.

## I.       PROMOTIONAL INTERNET ARTICLES

Plaintiffs rely on a confidential witness to allege that, from February 2017—a year after the class period began—to October 2017, Mr. Sicignano retained IRTH, an investor relations firm, to arrange the publication of articles about the Company. ¶¶ 22, 67.[2] Plaintiffs allege that some of these articles did not disclose that the authors had been paid by IRTH or third parties hired by IRTH, and further allege that the absence of these disclosures artificially inflated the Company's stock price. *Id.* Plaintiffs allege that 22nd Century carried out this purported scheme to raise stock

---

[1] References to "¶ _" are to the Complaint. References to "Ex. _" are to exhibits attached to the concurrently filed Declaration of Jonathan H. Friedman of which the Court may take judicial notice on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court may consider 22nd Century's historic stock prices and SEC filings as well as the alleged promotional articles cited in the Complaint. *See id.*; *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003); *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015).

[2] The Complaint contains conjecture from two anonymous confidential witnesses. Such accounts should be closely examined and are often inadequate to satisfy pleading requirements. *See Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 217 (2d Cir. 2010).

prices so that the Company could issue a stock offering, generating cash needed to keep the Company afloat. ¶ 64. According to Plaintiffs, some of the paid promotional articles inflated the Company's stock prices.[3] ¶ 3. Plaintiffs contend that, on February 2, 2018, when an anonymous short seller, "Fuzzy Panda," published a story revealing the supposed scheme, 22nd Century's stock price fell $0.35 per share. ¶¶ 130-31.[4]

Plaintiffs contend that 22nd Century was required to disclose that some authors were paid to write articles about the Company both in its SEC filings and in its October 26, 2018 and April 18, 2019 press releases (the "Press Releases"). ¶¶ 186-91. While the third-party articles generally reiterated 22nd Century's own press releases (¶ 4), Plaintiffs do not allege that Defendants wrote, published, or reviewed the articles, or that the authors were 22nd Century's agents. *See generally* ¶¶ 162-84. Nor do Plaintiffs allege that Defendants knew the articles were missing payment disclosures by their authors. *See generally id.* Indeed, Plaintiffs' allegations are consistent with 22nd Century expecting that IRTH would fulfill its obligation to comply with all applicable laws.

## II.     THE ALLEGED SEC INVESTIGATION

Relying on a second confidential witness, Plaintiffs allege that 22nd Century was investigated by the SEC in 2016 because of material weaknesses relating to segregation of duties in its financial reporting. ¶¶ 46-48. Plaintiffs acknowledge that the Company fully and contemporaneously disclosed this material weakness and its 2016 remediation—but contend that the Company also should have disclosed the alleged investigation. ¶¶ 192-98. The Company

---

[3] Plaintiffs point to 23 internet articles purportedly published in conjunction with 22nd Century's scheme to inflate its stock price, but allege increases in stock prices following only twelve of these articles. ¶¶ 162-84.

[4] Plaintiffs also point to three subsequent articles that merely restated the allegations in the February 2, 2018 story, but only two of these articles supposedly caused 22nd Century's stock price to drop. ¶¶ 14, 135, 137-39, 143. Further, Plaintiffs contend that Mr. Sicignano's July 26, 2019 resignation for "personal reasons" somehow revealed the truth about the alleged promotional scheme. ¶¶ 151-52.

4

further disclosed in its 2016 quarterly Form 10-Q filings that the Company was "subject to various claims and legal proceedings arising in the ordinary course of business. As of the date hereof, we are unable to currently assess whether the final resolution of any of such claims or legal proceedings may have a material adverse effect on us." *See* Ex. 1 at 27, Ex. 2 at 29, Ex. 3 at 31. Plaintiffs do not allege that the alleged SEC investigation led to any penalties or other sanctions.

The Complaint alleges that the purported SEC investigation was revealed on October 25, 2018 when Fuzzy Panda published a short seller report explaining that the SEC denied a FOIA request for documents relating to the Company because production could interfere with ongoing enforcement proceedings. ¶¶ 136-37. Plaintiffs allege that 22nd Century's stock price decreased following the revelation of the alleged SEC investigation and perfunctorily assert that the *2018* and *2019* Press Releases, which stated that "22nd Century has not received any notice of, and the Company has no knowledge of, any enforcement proceeding against 22nd Century by the SEC or any other regulator" created a duty to disclose the alleged *2016* SEC investigation. ¶ 141.[5] As explained below, Plaintiffs' claims fail.

**ARGUMENT**

I.      **PLAINTIFFS' COMPLAINT DOES NOT SATISFY THE STRICT SECURITIES FRAUD PLEADING REQUIREMENTS.**

To state a claim under Rule 10b-5(b), a plaintiff must allege: (1) a material misrepresentation or omission; (2) made by the defendants with scienter; (3) in connection with the purchase or sale of a security; (4) on which the plaintiff justifiably relied; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the plaintiff's loss.

---

[5]Further, Plaintiffs appear to allege that 22nd Century had a duty to, but did not, disclose that 22nd Century's former CEO, Joseph Pandolfino, was Fuzzy Panda (¶¶ 13, 17, 21, 140) and that Mr. Sicignano's disgruntled former assistant sent a letter to 22nd Century's Board of Directors regarding Mr. Sicignano's efforts to raise the Company's stock prices. ¶¶ 22-23, 146-48.

*Dura Pharm., Inc. v. Broundo*, 544 U.S. 336, 341-42 (2005); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc*., 552 U.S. 148, 157 (2008). Similarly, to plead a claim for market manipulation under Rule 10b-5(a) or (c), the plaintiff must allege: (1) a manipulative act; (2) committed by the defendant with scienter; (3) in connection with the purchase or sale of a security; and (4) economic loss; (5) caused by the plaintiff's justifiable reliance on an efficient market free of manipulation. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 101 (2d Cir. 2007).

These elements must be alleged with sufficient specificity to satisfy the heightened pleading standards imposed by the PSLRA and Rule 9(b). *See id.* at 99. Conclusory allegations are insufficient; "Rule 9(b) and the PSLRA require a securities fraud complaint to '. . . explain why the statements were fraudulent.'" *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Thus, the complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). Further, to plead loss causation, the complaint must identify a corrective disclosure and plead "something beyond the mere possibility of loss causation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The Complaint fails to satisfy these stringent pleading requirements.

## II.     COUNT I FAILS TO PLEAD AN ACTIONABLE FALSE OR MISLEADING STATEMENT OR OMISSION.

The Complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiffs' claims arise from two categories of alleged omissions: (1) 22nd Century not disclosing that authors allegedly had received payments from IRTH, and (2) 22nd Century not disclosing an alleged SEC

6

investigation. ¶¶ 156, 158, 160, 161, 187-91, 193-98. For the reasons discussed below, these alleged omissions are legally insufficient to support Plaintiffs' claims.

**A.      Plaintiffs Do Not Allege Defendants Were Themselves Aware of the Allegedly Omitted Information.**

It is not illegal or otherwise misleading for a company to pay for articles touting its stock. *See Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162, 2016 WL 7480415, at \*5 (S.D.N.Y. Dec. 12, 2016) (dismissing Rule 10b-5(a), (b), and (c) claims alleging scheme to pay for promotional articles and failure to disclose the same); *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272-73 (11th Cir. 2016) ("nothing in the securities laws prohibits [defendant] as a company (issuing a regulated security) from hiring analysts to promote [it], circulating positive articles about its drug development, or recommending the purchase of [its] stock."). The Complaint does not allege any Defendant knew any promotional article excluded a requisite payment disclosure by its author.[6] Instead, Plaintiffs dance around this central issue with ambiguous language, such as "CW1 said that it was clear from the way Sicignano spoke to CW1 that he knew that paying third parties to write articles promoting 22nd Century's stock without disclosing that it had paid for the articles was not appropriate." ¶ 67. This convoluted sentence alleges at best an inference that Mr. Sicignano knew it *would be* improper for paid authors not to disclose payment; it does not allege that Mr. Sicignano knew the authors of such articles *did not* disclose payments.

Similarly, the Complaint alleges, "Sicignano reviewed and approved statements in the Company's press releases as a matter of common practice, *thus* he reviewed and approved the articles before publication, either by closely reviewing the contents of press releases . . . *and/or* by reviewing and approving the articles themselves." ¶ 72 (emphasis added); *see also* ¶ 68 (alleging

---

[6] Indeed, for 5 of the 23 alleged promotional articles, the Complaint fails to allege that the posts did not disclose any purported payment. ¶¶ 165, 168, 171, 178, 181.

confidential witness was "sure that" Mr. Sicignano "review[ed], edit[ed], and/or approv[ed]" third-party articles because he reviewed Company press releases); ¶ 100 (alleging Mr. Sicignano reviewed "statements furnished by Defendants," such as Company press releases, that were parroted by third-party articles). This statement alleges only that Sicignano reviewed the Company's own press releases and illogically suggests that such review somehow rendered him responsible for disclosing payments received by the authors of third-party internet articles that used information from the press releases.

Likewise, Plaintiffs assert the Press Releases were misleading because the Company stated that it had "not received any notice of, and the Company has no knowledge of, any enforcement proceeding against 22nd Century." ¶ 189. Plaintiffs allege that, in 2016, 22nd Century *had been* subject to an SEC *investigation* that "might still be" ongoing in 2018 or 2019. ¶¶ 47-49, 137, 141. However, Plaintiffs do not allege that the Company was aware of any investigation when it issued the Press Releases in October 2018 and April 2019. Nor does the Complaint allege that Defendants were *ever* aware of any "enforcement proceeding."[7] The foregoing allegations amount to nothing more that "broad and conclusory innuendo," and are insufficient to allege securities fraud in light of Rule 9(b) and the PSLRA's heightened pleading standards. *Cortina*, 2016 WL 7480415, at *4.

### B.   Even if Defendants had the Allegedly Omitted Information, Plaintiffs Fail to Allege the Requisite Duty to Disclose It.

"Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). An omission is actionable only if disclosure of the omitted material fact is "necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1)(B). Thus,

---

[7]An anonymous short seller's unauthenticated assertion in an internet article that 22nd Century was subject to SEC enforcement proceedings (¶ 137), unknown to the Company, is not notice.

corporations are "not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).

A duty to disclose arises "either: (1) expressly pursuant to an independent statute or regulation; or (2) as a result of the ongoing duty to avoid rendering existing statements misleading by failing to disclose material facts." *Thesling v. Bioenvision, Inc.*, 374 F. App'x 141, 143 (2d Cir. 2010); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100–01 (2d Cir. 2015) (duty to disclose arises if "a corporate statement . . . would otherwise be inaccurate, incomplete, or misleading" without the disclosure). Plaintiffs have not pointed to any statements rendered inaccurate, incomplete, or misleading because Defendants did not disclose alleged payments to third-party authors or the alleged SEC investigation.

1.    <u>Plaintiffs Fail to Allege Defendants had a Statutory Duty to Disclose the Purported Payments.</u>

Plaintiffs do not contend that 22nd Century had any statutory duty to disclose the alleged SEC investigation and mistakenly point to Section 17(b) of the Securities Act of 1933 as the source of 22nd Century's purported duty to disclose payments. ¶¶ 62, 185. Section 17(b) provides:

> It shall be unlawful for any person, . . . *to publish, give publicity to, or circulate* any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, . . . describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

15 U.S.C. § 77q(b) (emphasis supplied). As a district court in this Circuit explained in dismissing an almost identical claim filed by the same law firm that filed the Complaint, "Section 17(b) of the Securities Exchange Act imposes a duty to disclose payment on the promoter who receives

payment, but *not* on the issuer who hired and paid the promoter." *Cortina*, 2016 WL 7480415, at *5 (emphasis in original); *see also In re Galectin Therapeutics*, 843 F.3d at 1273 (upholding district court's dismissal of 10b-5(b) claims alleging failure to disclose paid stock promotions because "[t]here is no statutory duty to disclose imposed on the issuer—here [the defendant] which paid for the promotional articles or activities"); *Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 83 (D. Mass. 2005) (dismissing plaintiff's claim for securities fraud alleging defendant's failure to disclose that it paid for promotional articles because defendant had no duty to disclose payments). *Cortina* further explained, "'For the Court to impose a duty to disclose' on stock issuers in circumstances like those here 'would encroach on the drafter's decision to create a duty to disclose on analysts, such as stock promoters, rather than the issuer of a regulated security.'" 2016 WL 7480415, at *5 (quoting *In re Galectin Therapeutics, Inc. Sec. Litig.*, 157 F. Supp. 3d 1230, 1237-38 (N.D. Ga. 2015)).  Thus, 22nd Century had no statutory duty to disclose the alleged omissions.

2.  The Complaint Fails to Allege any Affirmative Statement Rendered Misleading by the Alleged Omissions.

Absent a statutory duty, a duty to disclose arises only if the allegedly omitted facts are necessary to make an affirmative statement not misleading. *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (dismissing plaintiffs' claims because defendant had no duty to disclose allegedly omitted information). To plead an actionable omission, plaintiffs must not only allege such affirmative statements with particularity but also "explain why the [challenged] statements were fraudulent." *ATSI*, 493 F.3d at 99. The Complaint fails to meet this burden and, thus, has not pled an actionable omission.

Here, Plaintiffs allege that 22nd Century's 2015, 2016, and 2017 Annual Reports filed on Form 10-K were rendered misleading because they failed to disclose that the Company's "stock was being manipulated through paid stock promotions" and "such conduct would subject 22nd

10

Century to heightened regulatory scrutiny"[8] ¶¶ 151-61. Likewise, Plaintiffs contend that 22nd Century's 2015 and 2016 Form 10-Ks filings and its three 2016 Form 10-Q filings were false and misleading because the Company did not disclose that it "was under investigation by the SEC."[9] ¶¶ 193-98. Finally, Plaintiffs contend the Press Releases were false and misleading because they did not disclose payments for certain internet articles or the alleged SEC investigation. ¶¶ 186-91. Plaintiffs fail, however, to plead facts explaining how or why 22nd Century's nondisclosure of the payments or the alleged SEC investigation rendered any affirmative statement misleading. *See ATSI*, 493 F.3d at 99.

First, the Complaint does not explain why 22nd Century supposedly had a duty to disclose that certain authors allegedly were paid for certain internet articles about 22nd Century. The Complaint quotes the risk disclosures in 22nd Century's 10-Ks, evidently alleging that disclosing *some* risks created a duty to disclose *all* potential risks, including the supposed risk that not disclosing that certain authors allegedly had received payments could expose 22nd Century to heightened regulatory scrutiny. ¶¶ 156, 158, 160. However, disclosing general descriptors of factors influencing stock volatility does not give rise to a duty to disclose all possible factors influencing a stock's price. *See Cortina*, 2016 WL 7480415 at *5. 22nd Century never implied that the enumerated risks were an exhaustive list of all factors that could influence its stock price.[10]

---

[8] 22nd Century's 2015 Form 10-K filing on February 18, 2016 predated the first alleged internet article by ten months, and thus cannot form the basis for Plaintiffs' claims. ¶¶ 155-56.

[9] Tellingly, Plaintiffs do not contend that 22nd Century's 2017 Form 10-K filing should have disclosed the alleged SEC investigation, presumably because Plaintiffs agree 22nd Century was not under SEC investigation in 2017, contradicting their claim that 22nd Century's Press Releases should have disclosed the alleged SEC investigation. Further, the Complaint does not allege 22nd Century was under SEC investigation in 2015, nor does it allege any paid articles were published in 2015. Thus, Plaintiffs' claims that 22nd Century's 2015 Form 10-K filing was false or misleading because it did not disclose the SEC investigation or payments for articles must fail.

[10] Moreover, the allegedly omitted statement that paying for promotional articles "would subject 22nd Century to heightened regulatory scrutiny" is an inactionable statement of opinion. ¶ 161;

11

Second, as to the alleged SEC investigation, "a government investigation, without more, does not trigger a generalized duty to disclose." *In re Lions Gate*, 165 F.Supp.3d at 12 (citing *In re UBS AG Sec. Litig.*, No. 07-cv-11225 (RJS), 2012 WL 4471265, at \*31 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014)). Plaintiffs point to 22nd Century's detailed and contemporaneous disclosure of a material weakness regarding segregation of accounting duties, and its remediation, and assert that 22nd Century was required to disclose the purported SEC investigation regarding the same issue. ¶¶ 193-98. This assertion fails, because "[i]t is well established that 'companies do not have a duty to disclose uncharged, unadjudicated wrongdoing.'" *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017) (quoting *City of Pontiac*, 752 F.3d at 184).

Third, Plaintiffs contend that 22nd Century's Press Releases created a duty to disclose the paid promotional articles and the alleged SEC investigation. ¶¶ 186-91. However, nothing in these statements was rendered misleading by the Company's nondisclosure of the paid promotional articles or the alleged SEC investigation. The Company's statement that third parties published independent, positive articles about the Company is not rendered misleading simply because some third parties allegedly received payment for internet articles about the Company; these statements are not mutually exclusive. *Cf. Brady v. Top Ships Inc.,* No. 17-CV4987 (BMC), 2019 WL 3553999, at \*31 (E.D.N.Y. Aug. 5, 2019) *appeal docketed*, No. 19-2693 (2d Cir. Aug. 27, 2019).

---

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1325 (2015) ("A fact is a thing done or existing . . . [an] opinion is a belief, a view, or a sentiment which the mind forms of persons or things."). There exists a duty to disclose only material facts, not opinions. 17 CFR § 240.10b-5. Thus, Plaintiffs' contention that 22nd Century was obligated to disclose that paid promotional articles may subject the Company to heightened regulatory scrutiny must fail. Indeed, Plaintiffs do not allege that 22nd Century actually faced heightened regulatory scrutiny because of the alleged paid promotional articles and do not otherwise point to any facts indicating this allegedly omitted opinion was even accurate.

12

Likewise, the statements in the Press Releases—issued in October 2018 and April 2019—that the Company "has not received any notice of, and the Company has no knowledge of, any enforcement proceeding against 22nd Century" and that Fuzzy Panda "falsely alleges that 22nd Century is supposedly under SEC investigation" did not create a duty to disclose the alleged SEC investigation from 2016. ¶¶ 189-90. That 22nd Century was not aware of any *enforcement proceeding* in *2018* is consistent with, and thus did not create a duty to disclose, an alleged SEC *investigation years earlier*. *See Brady*, 2019 WL 3553999, at *17. Moreover, Plaintiffs do not even attempt to explain how these statements were rendered misleading by the alleged omissions.[11]

Instead of particularized facts, the Complaint contains "mere conclusory statements" that the foregoing allegations created a duty to disclose. *Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see, e.g.*, ¶ 191. These "'conclusory allegations' do not satisfy the pleading requirements of Rule 9(b)" or the PSLRA. *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 40 (2d Cir. 2000). Thus, Plaintiffs have not plead any actionable omission.[12]

---

[11] The Complaint contains confidential witness allegations that the purported SEC investigation was underway when the confidential witness was hired in April 2016 and "continued throughout 2016." ¶¶ 45, 48. However, the confidential witness does not assert the alleged SEC investigation was still ongoing in 2017, much less in October 2018, the date of the first Press Release. ¶¶ 48, 50.

[12] Notably, Plaintiffs do not—and could not—claim that 22nd Century is liable for payment disclosures omitted from the articles. Even though the absence of such disclosures is the real alleged omission at issue, Plaintiffs could not state a claim against Defendants for such alleged omissions because, among other reasons, Defendants did not prepare or publish the articles. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (holding that only party with "ultimate authority" over statement is liable for its misstatements or omissions); *Cortina*, 2016 WL 7480415, at *4 ("Plaintiffs do not appear to base their claim on the promotional articles or statements themselves. That is wise, as the vast majority of statements referenced in the Amended Complaint were made by third parties, and the law is clear that a defendant may be held liable under Rule 10b-5(b) only if it "made" the statement itself."); *Galectin*, 843 F.3d at 1272 (holding issuer who paid for promotional articles lacked "ultimate authority" for articles). This is presumably why the Complaint awkwardly frames its claims regarding the alleged omitted disclosures in third-party articles as claims for alleged omissions in 22nd Century's SEC filings.

3.      The Allegedly Omitted Information Is Not Material.

"'For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information,' *and there must be 'a substantial likelihood that a reasonable person would consider [the information] important' when making investment decisions*." *Shemian v. Research In Motion Ltd.*, 570 F. App'x 32, 36 (2d Cir. 2014) (quoting *Resnik v Swartz*, 303 F.3d 147, 154 (2d Cir. 2002) and *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92–93 (2d Cir. 2010)) (emphasis added). "It is not sufficient to allege that the investor might have considered the misrepresentation or omission important," an omission is actionable only if the allegedly information was material. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000). Pleading materiality requires a plaintiff to show a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic Inc.*, 485 U.S. at 231–32 (citations and quotations omitted).

Plaintiffs allege Defendants failed to disclose: (1) the SEC's purported investigation into 22nd Century; and (2) that 22nd Century allegedly paid for promotional internet articles.[13] However, Plaintiffs fail to include any allegations why such information was material to investors. Nor do Plaintiffs explain how this information "affect[ed] the probable future of the company [or] the desire of investors to buy, sell, or hold the company's securities." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001) (citation and internal quotations omitted).

Confidential investigations by regulators are not inherently material and often need not be

---

[13] To the extent Plaintiffs also allege 22nd Century had a duty to disclose that Pandolfino, was Fuzzy Panda (¶¶ 13, 17, 21, 140) and that Mr. Sicignano's disgruntled former assistant sent a letter to 22nd Century's Board of Directors regarding Mr. Sicignano's efforts to raise the Company's stock prices (¶¶ 22-23, 146-48), these claims fail because Plaintiffs do not even attempt to cite facts creating a duty to disclose this information.

14

disclosed. *See In re Lions Gate*, 165 F. Supp. 3d at 12, 13 (dismissing securities fraud claims where plaintiffs failed to allege materiality of undisclosed SEC investigation that resulted in $7.5 million civil penalty). Because Plaintiffs do not plead how an alleged SEC investigation in 2016 "would have significantly altered an investor's total mix of information," the alleged failure to disclose is not actionable. *See id.* at 14. Further, 22nd Century's SEC filings *did disclose* material weaknesses in its accounting practices, which were the focus of the alleged SEC investigation. ¶¶ 193-97. Thus, because 22nd Century repeatedly disclosed the risks that were the focus of the alleged SEC investigation, it cannot be said that the investigation itself was material such that it would have significantly altered the total mix of information available to investors. Simply put, 22nd Century disclosed the pertinent information. As in *Lions Gate*, Plaintiffs "have not pleaded how the knowledge of a preliminary SEC . . . investigation . . . would have significantly altered an investor's total mix of information." 165 F. Supp. 3d at 15.

Likewise, Plaintiffs have not pled facts showing how knowledge that the authors who posted certain internet articles about 22nd Century were allegedly paid would have significantly altered the total mix of information available to investors—especially where Plaintiffs allege that the articles largely parroted and cut and pasted from 22nd Century's previously-issued press releases. The Complaint's only attempt to plead materiality is a conclusory assertion, without any explanation, that supposed omissions "would tend to induce a reasonable investor to misjudge the value of" the Company's stock. ¶ 216. The absence of any allegations supporting materiality requires dismissal. *In re Carter-Wallace,* 220 F.3d at 40.[14]

---

[14] Moreover, because Plaintiffs failed to show that the alleged omissions are material, Plaintiffs' are not entitled to rely upon *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972). ¶¶ 216-19. Their failure to plead reliance is an independent ground for dismissal.

### III.   COUNT II (MARKET MANIPULATION) FAILS TO ALLEGE THE REQUISITE MANIPULATIVE ACT.

To assert a claim for market manipulation, the plaintiff must allege, *inter alia*, that the defendant committed a manipulative act. *Set Capital LLC v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT)(SN), 2019 WL 3940641, at *9 (S.D.N.Y. Aug. 16, 2019) (citing *Schnell v. Conseco, Inc*. 43 F. Supp. 2d 438, 448 (S.D.N.Y. 1999)). "'Manipulation' is 'virtually a term of art when used in connection with securities markets.'" *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)). Manipulation "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity," (*id*.) and "'connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.'" *ATSI*, 493 F.3d at 100 (quoting *Ernst*, 425 U.S. at 199).[15] Here, the Complaint does not allege any manipulative act for two reasons.[16]

First, a market manipulation claim requires "market activity" by the defendants and "cannot be based solely upon misrepresentations or omissions." *Id.* at 100-01. As the Second Circuit has clearly stated, "where the sole basis for [market manipulation] claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b–5(a) and (c)." *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 177 (2d Cir. 2005); *see also*

---

[15] In deciding whether conduct is manipulative, courts also consider whether "a transaction sends a false pricing signal to the market" and whether the alleged manipulation inserted "inaccurate information into the marketplace or creat[ed] a false impression of supply and demand for the security" with the purpose of impacting the security's price. *ATSI*, 493 F.3d at 101 (alteration in original, citations and quotations omitted).

[16] Count II asserts a claim under Rule 10b-5(a) and (c) only against the Individual Defendants. Count I, asserted against all Defendants, does not specify whether it asserts a claim under Rule 10b-5(a) and (c), as well as Rule 10b-5(b). If Count I is construed to include a claim under Rule 10b-5(a) and (c), the arguments in this Section apply with equal force to the Company.

*In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 249 n.9 (S.D.N.Y. 2018) (highlighting that only "market activity" can give rise to market manipulation claim). Here, Plaintiffs do not identify any market activity by Messrs. Brodfuehrer or Sicignano, but instead improperly attempt to recast alleged omissions and misrepresentations as market activity. Because Plaintiffs' market manipulation claim is "based solely upon [a] misrepresentation[] or omission[]," it must be dismissed. *See ATSI*, 493 F.3d at 100-01.

Second, the courts have specifically held that allegations that a defendant "orchestrated [a paid-promotional] scheme" are inadequate to plead a manipulative act. *Cortina*, 2016 WL 7480415 at *3-5 ("A manipulative act is . . . any act—as opposed to a statement—that has such an 'artificial' effect on the price of a security."). In *Galectin*, the plaintiffs alleged that the defendant paid for promotional articles touting its stock, thus rendering false its statement that it had not engaged in market manipulation. 843 F.3d at 1266. The Court rejected the plaintiff's claim because "paying for promotional articles does not constitute price manipulation" and "was clearly permissible under Rules 10b-5(a) and (c)." *Id.* at 1268. The Court further noted that the plaintiff did not allege the defendant "engaged in any kind of simulated market activity or transactions designed to 'create an unnatural and unwarranted appearance of market activity,' which is required to constitute market manipulation." *Id.* at 1273 (quoting *Santa Fe*, 430 U.S. at 476-77). Thus, not disclosing payments for promotional articles does not constitute or support a claim for market manipulation as contemplated by Rule 10b-5(a) or (c).

Moreover, the Complaint contains only conclusory and tentative assertions regarding the Individual Defendants' actions related the alleged paid promotional articles:

> Sicignano reviewed and approved statements in the Company's press releases . . ., thus he reviewed and approved the articles before publication, *either* by closely reviewing the contents of press releases that he knew would be effectively cut and pasted into the

17

> articles . . ., *and/or* by reviewing and approving the articles themselves. Brodfuehrer either knew from his interactions with Sicignano or recklessly turned a blind eye to Sicignano's activities in using the promotional network to prop up the Company's stock.

¶ 72 (emphasis added). Nor does the Complaint even allege that Defendants were aware that some of the articles' authors did not disclose payments. These allegations fall far short of alleging the requisite manipulative act.[17]

## IV.   COUNTS I AND II FAIL TO PLEAD SCIENTER.

To state a claim under Rule 10b-5 for either omissions/misrepresentations or market manipulation, Plaintiffs must plead scienter—i.e. an "intent to deceive, manipulate or defraud." *Ernst*, 425 U.S. at 193 n.12; *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). Rule 9(b) and the PSLRA require plaintiffs to plead facts giving rise to "strong inference" of scienter, meaning that it is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007); *accord ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F. 3d 187, 198 (2d Cir. 2009); 15 U.S.C. § 78u-4(b)(2). Because the Complaint is devoid of any factual allegations that Defendants acted with scienter, it must be dismissed. *See Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago ex rel Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*, 767 Fed. App'x 139 (2d Cir. 2019) (upholding dismissal because plaintiffs failed to allege scienter).

To establish scienter, a plaintiff must plead with particularity specific facts "(1) showing

---

[17] In fact, as to Mr. Brodfuehrer, only one paragraph in the Complaint contains any allegation purportedly establishing his liability for market manipulation: "Brodfuehrer and Sicignano worked so closely together that it is thus not plausible that Brodfuehrer did not know about Sicignano's work with undisclosed stock promotions. Brodfuehrer suggested as much to CW1." ¶ 69. Plaintiffs fail even to allege that Mr. Brodfuehrer engaged in any act, let alone a manipulative act constituting securities fraud. Implying that Mr. Brodfuehrer was aware of Mr. Sicignano's "work with undisclosed stock promotions" is woefully inadequate to plead that Mr. Brodfuehrer intentionally and willfully participated in conduct designed to defraud investors. *See ATSI*, 493 F.3d at 100.

that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Here, by either measure, Plaintiffs have failed to plead that Defendants possessed the requisite scienter.

### A.      Plaintiffs Have Not Pled Motive and Opportunity to Defraud.

Pleading motive and opportunity requires pleading "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). This standard requires pleading more than "motives possessed by virtually all corporate insiders," like the desire to maintain "a high corporate credit rating" or "a high stock price in order to increase executive compensation." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Rather, it requires allegations of fact showing that the defendant benefitted in a "concrete and personal way," (*id*. at 307-08) from the alleged fraud, such as by participating in insider sales. *Cortina*, 2016 WL 7480415 at *6.

Here, Plaintiffs do not assert that Messrs. Brodfuehrer or Sicignano received the requisite concrete or personal benefit from the alleged scheme. Indeed, as in *Cortina*, "Plaintiffs make no allegation that any Defendant sold shares during the Class Period." *Id.* Instead, Plaintiffs assert the purported fraud was supposedly motivated by a desire to increase the Company's share price, which would help the Company's stock be listed on the Russell Index and increase returns from a stock offering long after the alleged scheme began. ¶ 64. Such generalized, legitimate business motives common to all corporations are not concrete, personal benefits and are thus inadequate to plead motive under Rule 9(b) or the PSLRA. *See Cortina*, 2016 WL 7480415 at *6; *Kalnit,* 264 F.3d at 139-42; *Foley v. Transocean Ltd*., 861 F. Supp. 2d 197, 209 (S.D.N.Y. 2012) (holding motives common to all corporations and corporate officers "do not constitute motive for the purposes of" pleading scienter). The Complaint thus fails to plead motive and opportunity.

19

### B. Plaintiffs Have Not Pled Strong Circumstantial Evidence of Conscious Misbehavior.

Because Plaintiffs do not allege motive to commit fraud, "the strength of the circumstantial allegations must be correspondingly greater." *ECA, Local 134 IBEW*, 553 F.3d at 199 (citing *Kalnit*, 264 F.3d at 142). Plaintiffs fail to meet this high standard.

To establish strong circumstantial evidence of conscious misbehavior or recklessness, a plaintiff must plead facts demonstrating that the defendant engaged in "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care." *Novak*, 216 F.3d at 308 (citations and quotations omitted). This standard is met only when the plaintiffs "have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." *Id*. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Id*. at 309 (citations omitted).

Here, Plaintiffs do not allege that Defendants were even aware that the internet articles' authors did not include the requisite payment disclosures, much less that the Defendants participated in a scheme to omit such disclosures for the purpose of artificially inflating 22nd Century's stock price. *See Cortina*, 2016 WL 7480415 at *7. Likewise, the nondisclosure of an alleged SEC investigation that was years earlier and imposed no penalties, especially where Plaintiffs admit the Company made accurate, detailed disclosures of the underlying issue, does not come close to the requisite "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care." *See Novak*, 216 F.3d at 308. These defects preclude scienter.

Plaintiffs attempt to show that Defendants acted with intent to defraud investors primarily by alleging that Messrs. Sicignano and Brodfuehrer must have been aware of, or recklessly

20

disregarded, the alleged fraud because of their positions at the Company. ¶ 228. This argument fails because the Complaint does not allege the Individual Defendants knew of the alleged fraud, and even alleging awareness of fraud generally at the Company would be insufficient. *See Foley*, 861 F. Supp. 2d at 212 (holding that "[s]cienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information.").

Likewise insufficient is the Complaint's allegation that certain public statements contradicted the Company's knowledge that it had paid for some positive coverage and that it had been investigated by the SEC. ¶¶ 204-06. The statement that independent, positive articles were published is perfectly consistent with *also* having sought promotional coverage. And the statement that 22nd Century was not aware of any *enforcement proceeding in 2018* was perfectly consistent with an SEC *investigation or inquiry years earlier*.

The Complaint's other attempts to plead scienter are equally deficient. The allegation that Defendants allegedly knew Fuzzy Panda was former CEO Joseph Pandolfino (¶ 203) is unrelated to scienter, and Plaintiffs do not even allege it was material information that the Company had a duty to disclose. The allegation that Mr. Sicignano did not want his computer connected to the Company's network (¶ 207) does not yield a reasonable inference, despite Plaintiffs' unsupported speculation, that he wanted to "conceal his work, including the stock promotion scheme, from regulators." The allegation that Defendants placed promotional articles on Seeking Alpha and TheStreet, which prohibit articles by paid promoters, (¶ 209) is likewise deficient, especially where the Complaint does not allege that Defendants knew articles about 22nd Century were being posted on those websites, much less that the articles omitted the authors' payment disclosures. Finally, the vague allegation that Mr. Brodfuehrer supposedly was uncomfortable signing the Company's

SEC filings "because of Defendant Sicignano" (¶ 208) falls far short of alleging a consciousness of the purported scheme alleged in the Complaint. These vague, conclusory, and tenuous attempts to allege scienter demonstrate the futility of Plaintiffs' claims, and require dismissal. *See ECA, Local 134 IBEW Joint Pension Trust of Chicago*, 553 F. 3d at 198.[18]

## V.   COUNTS I AND II FAIL TO ADEQUATELY PLEAD LOSS CAUSATION.

The failure to allege "something beyond the mere possibility of loss causation"—i.e., a causal link between Defendants' misconduct and Plaintiffs' harm—requires dismissal. *Twombly*, 550 U.S. at 557 (2007); *Lentell*, 396 F.3d at 172. Loss causation requires plaintiffs to identify: (1) a corrective disclosure that revealed improperly hidden information; or (2) materialization of a concealed risk, either of which foreseeably caused the stock price to drop. *Lentell*, 396 F.3d at 173-74. "Alleging that the market reacted negatively to new information about a publicly-traded company, without more, is insufficient to plead loss causation . . . ." *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (citing *Dura Pharm.*, 544 U.S. at 345); *see also In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 308 (E.D.N.Y. 2002) (dismissing market manipulation claim for failure to plead loss causation). The Complaint fails to establish the requisite loss causation for several reasons.

First, Plaintiffs do not allege that a failure to disclose an purported SEC investigation regarding financial reporting controls caused any losses. Instead, Plaintiffs acknowledge that the Company contemporaneously disclosed the underlying issue as a material weakness and disclosed its remediation on March 8, 2017. ¶¶ 192-97. Plaintiffs do not claim that the alleged SEC investigation resulted in any charges or penalties. Plaintiffs do not, and cannot, explain how the

---

[18] Further, Plaintiffs may not rely upon group pleading to plead scienter: "Scienter must be separately pled and individually supportable as to each defendant." *In re C.D.T.S. v. UBS AG*, No. 12 CIV 4924, 2013 WL 6576031, *6 (S.D.N.Y. Dec. 13, 2013). The Complaint fails to do so.

retrospective disclosure of an alleged SEC investigation could have caused losses. Moreover, revelation of the existence of a regulatory investigation is not a corrective disclosure, especially when, as here, "there is no logical connection between" the alleged investigation and the defendants' alleged fraud. *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012); *see also Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013). An investigation into potential wrongdoing does not establish that such wrongdoing actually occurred. *See Meyer*, 710 F.3d at 1201. Here, the alleged SEC investigation pertained to 22nd Century's lack of segregation of duties in the financial reporting area (¶ 198), but Plaintiffs have not alleged that these supposed accounting failures, or any alleged SEC investigation, caused its stock price to fall. *See Cortina*, 2016 WL 7480415 at *8.

Second, Plaintiffs do not explain why or how a failure to disclose that the authors of certain internet articles received payments could have increased the Company's stock price or otherwise caused any losses—especially where Plaintiffs also allege that the articles "largely parroted" or cut and pasted information from previous public statements by the Company. ¶ 71.[19]

Third, to the extent that Plaintiffs base their claims on Defendants' Press Releases (¶¶ 187-91), the Complaint does not plead a corrective disclosure, or any associated loss, following those

---

[19] Additionally, Plaintiffs' theory—that internet articles not disclosing payment inflated the value of the stock—is debunked by Plaintiffs' own allegations. For 11 of the 23 articles, Plaintiffs do not even allege any increase in 22nd Century's stock price post-publication. ¶¶ 162-64, 168-70, 172, 177, 179-80, 183. Further, for many of the internet articles purportedly associated with an increase in the Company's stock price, Plaintiffs cherry-pick stock prices to manufacture an increase. For example, after the April 12, 2017 article was published at 1:24 p.m. (¶ 167; Ex. 4), 22nd Century's stock price closed down for the day, so the article did not cause the stock to rise. *See* Ex. 5. Plaintiffs illogically attempt to manufacture a rise by noting that the price increased from the April 12 close ($1.31/share) to the April 13 close ($1.33/share). *See id.*; see also ¶¶ 174-75, 178, 181-82, 184 (cherry-picking stock prices to manufacture increase in stock's price).

statements.[20] Nor does the Complaint allege the Press Releases concealed a risk that later materialized. The failure to plead a corrective disclosure and loss causation arising from these statements precludes claims based on these statements. *See Dura Pharm.*, 544 U.S. at 345; *Harris*, 135 F. Supp. 3d at 173 n.30 (citing cases). The Complaint's failure to plead loss causation requires dismissal of all claims.

### VI. COUNT III FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. The Complaint fails to establish a prima facie case of control person liability because, as explained above, it fails to allege any primary securities violation sufficiently. *Shetty v. Trivago N.V.*, No. 19-0766, -- Fed. App'x --, 2019 WL 6834250 *4 (2d Cir. Dec. 16, 2019) (affirming dismissal of Section 20(a) claims because such claims are "'necessarily predicated on a primary violation of securities law,'" and plaintiff failed to show a primary violation) (quoting *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004)).

In addition, the Complaint fails to plead with particularity any facts demonstrating the required conscious misbehavior or culpable participation by Messrs. Sicignano and Brodfuehrer in the alleged fraud. Instead, the Complaint contains only conclusory allegations that Messrs Sicignano and Brodfuehrer purportedly exercised control over the alleged scheme and material omissions, which are insufficient to support control person liability. *See Mishkin v. Ageloff*, No.

---

[20] Mr. Sicignano's July 26, 2019 resignation also cannot constitute a corrective disclosure, or materialization of the alleged risks, of the purported promotional scheme. Plaintiffs allege that he resigned for "personal reasons." ¶ 151. Plaintiffs' speculation, disconnected with any alleged facts, that Mr. Sicignano's resignation was related to the alleged scheme, cannot satisfy the loss causation requirement.

97 Civ. 2690, 1998 WL 651065, at *23-24 (S.D.N.Y. Sept. 23, 1998) ("the PSLRA requires a plaintiff, at the pleading stage, to allege particular facts that give rise to a 'strong inference' of the requisite state of mind."). For the reasons discussed above, Plaintiffs have failed to plead culpable participation. *See* Section IV, *supra*. These defects require dismissal of Count III.

### CONCLUSION

For the foregoing reasons, and because an amendment could not cure the fatal defects discussed herein, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: January 29, 2020

Respectfully submitted,

FOLEY & LARDNER LLP

____/s/ Jonathan H. Friedman____
Jonathan H. Friedman
90 Park Avenue
New York, NY 10016
Telephone: 212-338-3416
Email: jfriedman@foley.com

John A. Tucker (*pro hac vice* pending)
1 Independent Drive
Jacksonville, FL 32202
Telephone: 904-633-8924
Email: jtucker@foley.com

and

Charles C. Ritter, Jr.
DUKE, HOLZMAN, PHOTIADIS
& GRESENS LLP
701 Seneca Street, Suite 750
Buffalo, NY 14210
Telephone: (716) 855-1111
Email: critter@dhpglaw.com

*Counsel for Defendants*

25