**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MATTHEW BULL, Individually, and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>22ND CENTURY GROUP, INC., HENRY SICIGNANO, III AND JOHN T. BRODFUEHRER,<br><br>               Defendants. | Civil Action No. 19-cv-01285-JLS |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**
**FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................. 3

    A.  Background of the Company .................................................................................. 3

    B.  The SEC Investigation .......................................................................................... 4

    C.  The October 2016 Offerings .................................................................................. 5

    D.  Defendants' Illegal Paid Promotional Article Scheme .......................................... 5

    E.  The October 2017 Offering .................................................................................... 8

    F.  The Truth Begins to Emerge .................................................................................. 9

III.  ARGUMENT ................................................................................................................... 10

    A.  The Complaint Alleges False and Misleading Statements ................................... 11

        1.  Defendants' Statements Concerning the Volatility of the Company's Stock Price Were Materially Misleading ........................................................... 11

        2.  The Articles Published to Inflate the Company's Stock Price Are Actionable ............................................................................................ 13

        3.  The October and April Releases Were False and Misleading .................. 14

        4.  Defendants' Disclosures of Accounting Weaknesses Were Misleading .. 16

        5.  Certifications Appended to SEC Filings Were False and Misleading ...... 17

    B.  The Complaint Adequately Alleges Scheme Liability ......................................... 17

    C.  The Complaint Pleads a Strong Inference of Scienter ....................................... 199

        1.  The Complaint Adequately Pleads Motive and Opportunity .................... 19

        2.  The Complaint Adequately Pleads Conscious Misbehavior and Recklessness ....................................................................................... 20

            a)  Sicignano and Brodfuehrer Knew of the Scheme and Investigation ................................................................................... 20

            b)  The Individual Defendants' Roles Strongly Support Their Scienter .............................................................................................. 21

            c)  Additional Allegations Contribute to A Strong Inference of Scienter ........................................................................................... 222

        3.  A Holistic View Supports a Strong Inference of Scienter ....................... 23

    D.  The Complaint Adequately Pleads Loss Causation ............................................. 23

    E.  The AC Alleges a Claim Under Section 20(a) Against Individual Defendants ... 25

    F.  Plaintiffs Respectfully Request the Opportunity to Amend ................................ 25

IV.  CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ansell v. Laikin*, No. CV 10-9292 PA,
2011 U.S. Dist. LEXIS 85695 (C.D. Cal. Aug. 1, 2011)..........................................................11

*ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................11

*Brady v. Top Ships Inc.*, No. 17-cv-4987 (BMC),
2019 U.S. Dist. LEXIS 130592 (E.D.N.Y. Aug. 3, 2019)..................................................15, 16

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)......................................................................................................10

*Christine Asia Co. v. Ma*,
718 F. App'x 20 (2d Cir. 2017) .................................................................................................21

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
423 F. Supp. 2d 348 (S.D.N.Y. 2006).......................................................................................21

*Condra v. PXRE Grp. Ltd.,*
357 F. App'x 393 (2d Cir. 2009) ...............................................................................................13

*Cortina v. Anavex Life Sciences Corp.*, No. 15-CV-10162 (JMF),
2016 U.S. Dist. LEXIS 179905 (S.D.N.Y. Dec. 29, 2016) ..........................................12, 13, 18

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................................................23

*Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*,
794 F.3d 297 (2d Cir. 2015).......................................................................................................18

*Gabelli v. SEC*,
568 U.S. 442 (2013).............................................................................................................14, 15

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000).......................................................................................................20

*Garvey v. Arkoosh*,
354 F. Supp. 2d 73 (D. Mass. 2005) ..........................................................................................12

ii

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209 (KBF),
   2013 U.S. Dist. LEXIS 43774 (S.D.N.Y. Mar. 27, 2013) ........................................................23

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................................17

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000).......................................................................................19

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002)....................................................................................................22

*In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK,
   2015 U.S. Dist. LEXIS 91447 (C.D. Cal. July 13, 2015).............................................11, 12, 18

*In re Eletrobras Sec. Litig.*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017).....................................................................................18

*In re Galectin Therapeutics, Inc. Securities Litigation*,
   843 F.3d 1257 (11th Cir. 2016) .......................................................................................12, 13, 18

*In re Galena Biopharma, Inc. Sec. Litig.*,
   117 F. Supp. 3d 1145 (D. Or. 2015) ................................................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM),
   2013 U.S. Dist. LEXIS 171110 (S.D.N.Y. Dec. 2, 2013) ........................................................21

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
   251 F. Supp. 3d 596 (S.D.N.Y. 2017).....................................................................................25

*In re J.P. Jeanneret Assocs., Inc.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011).......................................................................................4

*In re Openwave Sys. Sec. Litig.*,
   528 F. Supp. 2d 236 (S.D.N.Y. 2007).....................................................................................23

*In re PXRE Grp., Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y.)..............................................................................................13

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007).....................................................................................22

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001)......................................................................................................11

*In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728 (CM),
   2018 U.S. Dist. LEXIS 199809 (S.D.N.Y. Nov. 26, 2018).....................................................21

*In re Time Warner, Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993)........................................................................................19

*In re Twinlab Corp. Sec. Litig.*,
  103 F. Supp. 2d 193 (E.D.N.Y. 2000) ....................................................................19

*In re VEON Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC),
  2017 U.S. Dist. LEXIS 152240 (S.D.N.Y. Sept. 19, 2017)......................................20

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)....................................................................................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003).....................................................................19

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011),
  *aff'd,* 838 F. 3d 223 (2d Cir. 2016) .......................................................................24

*In re Worldcom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................24

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)....................................................................................... *passim*

*Kasper v. AAC Holdings, Inc.*, No. 3-15-0923,
  2016 U.S. Dist. LEXIS 87492 (M.D. Tenn. July 1, 2016) ................................15, 16

*Kopchik v. Town of E. Fishkill, N.Y.*,
  759 F. App'x 31 (2d Cir. 2018) ..............................................................................25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)....................................................................................20

*McIntire v. China Mediaexpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013)......................................................................13

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016)................................................................16, 25

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..............................................................................24

*Meyer v JinkoSolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).......................................................................... *passim*

*Muller-Paisner v. TIAA*,
  289 F. App'x 461 (2d Cir. 2008) ............................................................................11

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)........................................................................................18, 19

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV 15-8574 PSG,
   2017 U.S. Dist. LEXIS 122725 (C.D. Cal. Jan. 17, 2017) ......................................................21

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012).......................................................................................24

*Rabkin v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI,
   2018 U.S. Dist. LEXIS 25326 (N.D. Cal. Feb. 15, 2018) .............................................. *passim*

*SEC v. Abellan*,
   674 F. Supp. 2d 1213 ..............................................................................................................11

*SEC v. Gabelli*,
   653 F.3d 49 (2d Cir. 2011)........................................................................................................14

*Szulik v. Tagliaferri*,
   966 F. Supp. 2d 339 (S.D.N.Y. 2013).......................................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................................19, 23

## Statutes

18 U.S.C. § 1350...............................................................................................................................17

Sarbanes-Oxley Act ..........................................................................................................................17

Securities Act of 1933 Section 17...........................................................................................8, 12, 13

## Rules

Rule 10b-5.........................................................................................................................................10

Rules 10b-5(a)&(c) ...........................................................................................................................17

22nd Century Investor Group ("Plaintiffs") respectfully submits this Memorandum of Law in opposition to Defendants 22nd Century Group, Inc. ("22nd Century" or the "Company"), Henry Sicignano ("Sicignano") and John Brodfuehrer's ("Brodfuehrer," and, with Sicignano, "Individual Defendants," and, with Sicignano and the Company, "Defendants") Motion to Dismiss the Amended Class Action Complaint (the "AC," ECF No. 31 and "Mot.").

## I.    INTRODUCTION

Plaintiffs bring this securities fraud class action on behalf of all persons or entities who purchased or otherwise acquired 22nd Century securities between February 18, 2016 and July 31, 2019, both dates inclusive (the "Class Period"), to recover losses they incurred when they were victimized by a series of misrepresentations and a scheme to use illegal promotional articles to enrich the Company and Individual Defendants at the expense of investors.

22nd Century is a "microcap" company[1] that, among other things, is developing "very low" nicotine cigarettes that they claim help reduce smoking.  When the Class Period began, the Company was nearly insolvent and only had enough funds to keep operating for a few months. In 2016, the first year of the Class Period, Defendants concealed that the SEC was investigating a material weakness in the Company's accounting controls to avoid spooking investors as the Company desperately launched three successive secondary offerings to raise capital.  The SEC's investigation was so serious that Brodfuehrer said that he feared he could be imprisoned.

Defendants reaped barely enough capital in the three 2016 offerings to fund the Company for a year.  Knowing that they could not keep funding the Company via seriatim offerings, Defendants hatched a scheme to pump up the Company's share price through promotional articles that were falsely presented as independent investment analysis and written by fictitious "authors."

---

[1] A microcap company is a company with a market capitalization of $50 million to $100 million.

1

Although federal law requires that the articles disclose that they were paid promotions, Defendants' articles contained no such disclosure. Sicignano, then the Company's CEO, described this illegal promotional scheme to his assistant directly as he was carrying out the scheme.

Defendants' plan worked to perfection. In a matter of months, 22nd Century's stock price was "pumped" up over 172%. Then, in October 2017, the Company "dumped" a mammoth amount of its shares on the market in another secondary stock offering that netted over $50 million from unsuspecting investors. Sicignano profited directly from the scheme when the Company's Board of Directors (the "Board") used a portion of the proceeds from the October 2017 offering to award him over $150,000 in additional compensation, effectively increasing his salary by 63%. Sicignano bragged about this windfall to his executive assistant, saying that the amount of cash he received was so large that the Board had to split it into two pieces to try to mask its size.

Defendants' illegal promotional article scheme and the SEC investigation were revealed when the Company's former CEO, Joe Pandolfino, published a series of articles on the investor website Seeking Alpha in 2018 and 2019. Defendants knew that Pandolfino was writing the articles, but never disclosed that fact to investors. Instead, Defendants issued press releases falsely denying the scheme and the investigation and claiming that the author of the articles was an "anonymous short seller" who was trying to dupe investors, when it was Defendants who were lying. The Company's stock plummeted. The other shoe fell in May 2019, when Sicignano's former assistant wrote to the Board, disclosing Sicignano's role in the scheme to use illegal promotional articles to inflate the Company's share price. The Board quickly stripped Sicignano of his responsibilities and forced him to resign. When news of Sicignano's departure reached the market, 22nd Century's stock price collapsed, further harming investors. Plaintiffs then filed the AC, seeking to recover the losses caused by Defendants' scheme and misstatements.

2

Defendants argue that the AC must be dismissed because (i) Plaintiffs do not allege that Defendants were aware of the illegal promotional article scheme, (ii) Defendants had no duty to disclose the scheme or the SEC investigation, (iii) the scheme and investigation are not material, and (iv) the AC fails to allege scienter.  None of these contentions have merit.

*First*, the AC alleges that Defendants knew of the scheme because Sicignano orchestrated the scheme, even going as far to tell his assistant about it.  *Second*, the AC identifies specific statements by Defendants that were materially misleading by failing to disclose the illegal promotional article scheme and/or the SEC investigation.  Accordingly, it is irrelevant whether Defendants had an independent duty to disclose the scheme or the investigation.  *Third*, the AC alleges that the scheme was material because reasonable investors would want to know both the cause of the fluctuations in the Company's stock price and that articles on the Company were paid promotions, not independent analysis.  The AC also alleges that the SEC investigation was material to investors because the Company was desperately trying to raise capital. *Fourth*, the AC alleges that Defendants both knew of the scheme and investigation and received concrete benefits from the scheme, and thus acted with scienter.  Accordingly, Defendants' Motion should be denied.

## II.    STATEMENT OF FACTS

### A.    Background of the Company

Defendant 22nd Century is small, 82-employee company that purports to develop technology that increases or decreases the nicotine levels and other nicotinic alkaloids in tobacco plants and cannabinoids in hemp/cannabis plants, through genetic engineering and plant breeding. ¶¶2, 51.[2]  22nd Century's chief product is a cigarette with a purportedly low level of nicotine, or a "very low nicotine cigarette" ("VLNC"), that the Company claims can reduce smoking. *See* ¶10.

---

[2] ¶_ references are to paragraphs of the Amended Complaint, ECF No. 31, in this action.

Sicignano became the Company's CEO on March 3, 2015. ¶52. One of his first acts was to retain IRTH Communications ("IRTH") to handle the Company's investor relations. ¶53. IRTH has been associated with schemes to use illegal stock promotional articles to inflate stock prices. *See* ¶54. Brodfuehrer was the Company's CFO from March 2013 to December 2019. *See* ¶36.

## B.    The SEC Investigation

A confidential witness, 22nd Century's former accounting manager ("CW2"), was hired in early 2016 by the Company after Defendants identified a material accounting weakness. ¶¶45–46. The weakness was in "controls associated with segregation of duties whereby individuals have incompatable [SIC] duties within the financial reporting area. ¶46. All the Company's SEC filings thus were tainted by the Company's flawed processes.  CW2 was hired to remediate the weakness. ¶¶45, 47. CW2 quickly learned that the weakness was so severe that the SEC was investigating.[3] *See* ¶49. Indeed, in 2016 Brodfuehrer personally traveled to meet with the SEC and told CW2 that he could or go to jail. ¶49. To CW2's knowledge, the investigation was never closed. ¶48.

On February 18, 2016, Defendants filed the Company's 10-K for 2015 and disclosed the material weakness. ¶46. Defendants took pains to downplay the weakness, assuring investors that "Notwithstanding this material weakness, management believes that the financial statements included in this Annual Report on Form 10-K fairly present, in all material respects, our financial condition."[4]  Calandra Decl. Ex. 1 at 44.[5] Defendants never disclosed the SEC investigation. ¶48.

---

[3] All CWs are referred to in the masculine to protect their identities.

[4] During the Class Period, the Company filed, and Sicignano and Brodfuehrer signed, forms 10-K for: 2015 on February 18, 2016 ("2015 10-K"); 2016 on March 8, 2017 ("2016 10-K"); 2017 on March 7, 2018 ("2017 10-K"); and 2018 on March 6, 2019 ("2018 10-K"). The Company also filed, and Sicignano and Brodfuehrer signed, forms 10-Q for: first quarter 2016, on May 10, 2016 ("Q1 2016 10-Q"); second quarter 2016, on August 9, 2016 ("Q2 2016 10-Q"); and third quarter 2016, on November 8, 2016 ("Q3 2016 10-Q").

[5] References to "Calandra Decl." are to the Declaration of Brian Calandra dated March 30, 2020, submitted with this opposition brief. Exhibits to the Calandra Decl. were quoted in the AC, and can be considered. *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 354 (S.D.N.Y. 2011).

C.      **The October 2016 Offerings**

22nd Century was in precarious financial condition at the start of the Class Period. For example, its 2015 10-K disclosed to investors that the Company had $3,760,297 in cash, which would only keep it operating for nine months. ¶56. Without disclosing the SEC investigation, Sicignano obtained funds to keep operating through three secondary public offerings in February, July and October 2016, respectively, netting the Company approximately $20.4 million. ¶57.

Even with the additional cash generated by the offerings in February, July and October 2016, the Company disclosed in February 2017 that it only had enough cash to stay afloat for another year. *See* ¶58. To make matters worse, the Company had been counting on a $7 million payment from a business partner to keep operating, and by early 2017, Defendants knew that the partner would not make the payment. ¶¶55–56, 59–60. Defendants knew that the Company could not keep going back to the market for small infusions of capital and expect to survive. *See* ¶58.

D.      **Defendants' Illegal Paid Promotional Article Scheme**

A second confidential witness ("CW1") joined 22nd Century as Sicignano's assistant in January 2016 and worked directly for Sicignano until February 2018. ¶44. CW1 sat outside of Sicignano's office in the executive suite and was responsible for attending meetings with Sicignano and taking minutes of management and Board meetings. *Id.* CW1 interacted with Sicignano throughout the day and interacted frequently with Brodfuehrer as well. *Id.*

In February and March 2017, Sicignano told CW1 on multiple occasions during their daily interactions that he was "working behind the scenes" to prop up 22nd Century's stock price because the Company could not continue operating unless it obtained $45 to $50 million in cash. ¶64. CW1 pressed Sicignano repeatedly in 2017 about how he could increase the Company's share price when the Company had no new products ready to market and had had a very negative meeting with the SEC. ¶¶64–67. CW1 learned that Sicignano and the Company, in collaboration with

IRTH, were creating fake articles disguised as legitimate articles analyzing 22nd Century as a potential investment opportunity. ¶¶67–68. CW1, who knew Sicignano very well from working so closely, said it was clear that Sicignano knew that not having the articles disclose that they were stock promotions was improper. *Id.* CW1 also said that he knew that Sicignano and Brodfuehrer worked so closely together that it was not possible for Brodfuehrer to not know about the scheme to use fake promotional articles. ¶69. Brodfuehrer also signaled to CW1 that Brodfuehrer knew about the scheme because in 2017—while the scheme was in full swing—Brodfuehrer told CW1 that he was not comfortable signing the Company's SEC filings because of concerns about Sicignano. *Id.* CW1 was so alarmed by Brodfuehrer's statements that he told the Company's general counsel, who responded, "people need to save [Sicignano] from himself." *Id.*

CW1 also said he knew that Sicignano's efforts "behind the scenes" included reviewing, editing and/or approving the paid stock promotion articles because Sicignano was intensely focused on everything that was said publicly about the Company. ¶68. CW1 also saw Sicignano take steps to prevent SEC regulators from discovering his scheme by not having his work computer connected to the Company's network so that he could keep his files from being searched. ¶207.

Defendants' scheme used at least 24 illegal promotional articles. *See* ¶70. Defendants, including Sicignano, furnished information and language for, prepared, reviewed, approved, and/or ratified the articles that promoted 22nd Century's stock as part of their scheme. ¶¶71–72. The articles were attributed to "authors" whose identities were disguised by pseudonyms and/or were linked to pump-and-dump schemes. *See* ¶¶73–83. For example, "John Persinos" had bylines for six articles promoting 22nd Century's stock written during the Class Period and is one of a group of writers who have produced nearly 100 stories from 2016 to 2018 touting IRTH clients. ¶74. At least another six articles promoting 22nd Century are attributed to "Samuel Rae," who

posted approximately 180 articles between 2013 and 2018 touting various stocks backed by financier Barry C. Honig, who had been linked to improper stock touting schemes. ¶75. At least two more articles promoting 22nd Century's stock during the Class Period were written by "James Peters," a pseudonym for a writer (or group of writers) that post articles a website created by Lawrence Isen, who has been repeatedly charged with and/or found to have manipulated stocks, most recently on September 23, 2019. ¶76, 76 n.4. Some pseudonyms were accompanied by photographs of unrelated people pilfered from other websites. *See, e.g.*, ¶¶80, 82.

Defendants placed the articles on financial websites that purported to have high editorials standards, which also lent an imprimatur of truth to those articles. *See* ¶¶84–99. For example, Defendants placed articles on the website Seeking Alpha, which does not permit paid promotional articles and mandates that all articles affirm that they are not paid promotions. ¶209. Defendants also placed articles on TheStreet, which does not allow its columnists to be paid promoters. *Id.*

Defendants' articles were presented as independent investment analysis and released in coordination with the Company's press releases so that it would appear to investors that independent analysts endorsed the positive outlook communicated in the Company's releases. For example, a December 5, 2016 article attributed to the pseudonymous "James Peters" parroted a Company press release and asserted—with no evidence—that "22nd Century Group appears uniquely positioned with enough biotechnology know-how in exploring revenue streams in the cannabis industry." ¶5. The Company's stock price then rose 19.6%. *Id.* Similarly, a June 8, 2017 article attributed to the pseudonymous "Mark Collins" repurposed a 22nd Century press release boasting of the Company's VLNC varieties. rephrased a quote from the press release and presented it as investment analysis. ¶173. 22nd Century's share price rose 2.7%. *Id.* Further, on October 10, 2017, an article by "Samuel Rae" titled "22nd Century Group Is Down But Could Quickly

7

Recover." was posted on Seeking Alpha the same day that the Company filed its October 2017 Offering prospectus and purported to offer investment analysis, including that although the Company's stock had fallen 13% in the wake of the announcement of the October 2017 Offering, investors should "pick up some discounted shares." ¶184. The article was designed to stave off further declines and worked, as 22nd Century's stock price stopped declining and rose 1.7%. *Id.*

To protect investors from being misled by such materials and to ensure full and accurate disclosures, federal securities laws, including Section 17 of the Securities Act of 1933 ("Securities Act") require that promotional articles disclose that they are paid promotions. ¶¶62–63. However, *none* of the articles in Defendants' scheme contained *any* such disclosure. ¶¶163–85.[6]

E.    The October 2017 Offering

Defendants' scheme worked perfectly. When promotional articles began to appear in earnest in February 2017, the Company's stock price was only $1.08 per share. ¶125. Articles touting 22nd Century, but concealing that they were paid stock promotions, appeared regularly over the next ten months. *Id.* During that time, 22nd Century's stock price *more than tripled*. ¶8. On October 11, 2017, Defendants reaped net proceeds of $50.7 million from an offering of over 20 million new shares (more than the February, July and October 2016 offerings *combined*). ¶126. The offering was priced at $2.94 per share, up 172% from February 2017, and gave the Company funds to operate indefinitely. ¶¶125–26. The Board passed offering proceeds to Sicignano in the form of a performance bonus of over $150,000 (consisting of a $94,800 payment and a 23.4% raise), or an increase of 62% over his 2017 annual salary of $242,690. ¶128. Sicignano bragged to CW1 that the Company's Board split his bonus "in two sections" to conceal its size. *See* ¶127.

---

[6] Defendants incorrectly suggest that some of the articles in the AC are not alleged to have omitted the paid promotion disclosures. Mot. at 7 n.6. Each article is alleged to have failed to disclose that it was a paid promotion. *See* ¶185.

8

**F.      The Truth Begins to Emerge**

On February 2, 2018, a user named "Fuzzy Panda" posted an article on Seeking Alpha identified illegal promotional articles touting 22nd Century ("February 2 Article"). ¶130; Calandra Decl. Ex. 2 at 16.  Defendants knew, but never disclosed, that "Fuzzy Panda" was the Company's former CEO, Joseph Pandolfino ("Pandolfino"). ¶¶132–34. On this news, the Company's stock price fell 11.4%. ¶131. On October 25, 2018, Pandolfino published a second article on Seeking Alpha disclosing that the SEC had essentially acknowledged that 22nd Century was under SEC investigation. ¶137; Calandra Decl. Ex. 3 at 2. Citing another Seeking Alpha article by the user "ShareSleuth," Pandolfino's October 25 article summarized nearly two-dozen articles used in Defendants' scheme. ¶138. On this news, the Company's stock price fell over 4%. ¶139. The next day, Defendants issued a deceptive press release concealing Pandolfino's identity and *denying* the paid promotional scheme and SEC investigation ("October Release"). ¶140.

On April 17, 2019, Pandolfino published a third article on Seeking Alpha.  ¶143. The article, among other things, reminded investors that the Company was under investigation and that Defendants had used illegal promotional articles to artificially inflate the Company's stock price in advance of the October 2017 Offering. *See id.* On that news, the Company's stock price fell over 2.0%. *See id.* The next day, Defendants issued another press release (the "April Release"). ¶144. Like the October Release, the April Release concealed Pandolfino's identity and denied the illegal promotional article scheme and that the Company was under SEC investigation. ¶144–45.

At the end of May 2019, CW1 sent the 22nd Century's Board a letter disclosing Defendants' illegal promotional article scheme. ¶146. Neither the Board nor Defendants have publicly disclosed that letter. ¶148. Instead, within days the Board issued a press release stating that it had promoted the Company's Vice President of Business Development to Chief Operating Officer ("COO") and assigned the COO Sicignano's responsibilities. ¶¶149–50.

9

On Friday, July 26, 2019, after trading closed, the Company announced Sicignano's "resignation." ¶151. Sicignano's resignation was a materialization of the risk that he would have to step down if his involvement in the illegal promotional article scheme was disclosed. Within days, the Company's stock price had declined 26.9%. ¶152

Plaintiffs filed the AC on November 19, 2019.  The AC likely alerted the Board to Brodfuehrer's role in the scheme because, only two weeks later, Brodfuehrer abruptly "retired."[7] A week later, Clifford Fleet, who had replaced Sicignano as CEO, suddenly resigned as well.[8]

## III.    ARGUMENT

The elements of a Section 10(b) and Rule 10b-5 claim are: (1) material misrepresentation or omission; (2) in connection with a purchase or sale of a security; (3) made with scienter; (4) reliance; (5) economic loss; and (6) loss causation. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014). Defendants move to dismiss the AC on the grounds that Plaintiffs have failed to sufficiently allege elements (1), (3) and (6).

On a motion to dismiss, the court accepts all factual allegations as true and draws all "reasonable inferences" in Plaintiffs' favor. *Meyer v JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014). To avoid dismissal, the AC must allege "enough facts to state a claim" that is "plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), but need not plead "detailed evidentiary matter." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).

---

[7] *22nd Century promotes Andrea Jentsch to CFO*, TheFly.com, Dec. 3, 2019, https://thefly.com/landingPageNews.php?id=3001749&headline=XXII-nd-Century--promotes--Andrea-Jentsch-to-CFO.

[8] Press Release, *22nd Century Group (XXII) Announces Cliff Fleet Has Decided to Step Away from Role of CEO*, StreetInsider.com, Dec. 13, 2019, https://www.streetinsider.com/Corporate+News/22nd+Century+Group+%28XXII%29+announces+Cliff+Fleet+has+decided+to+step+away+from+role+of+CEO/16243165.html.

### A.      The Complaint Alleges False and Misleading Statements

To support a claim for securities fraud, a plaintiff may allege "an actual *statement*, one that is either 'untrue' outright or 'misleading' by virtue of what it omits to state." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (emphasis in original). As set forth below, the Motion must be denied because the AC specifies statements that are misleading "and explain[s] why [they] were fraudulent." *Muller-Paisner v. TIAA*, 289 F. App'x 461, 463 (2d Cir. 2008).

### 1.      Defendants' Statements Concerning the Volatility of the Company's Stock Price Were Materially Misleading

Courts consistently hold that where, as here, defendants engaged in a scheme to inflate a company's share price with promotional articles, if they choose to disclose "a lengthy list of reasons why [a company's] stock price might fluctuate," that list of reasons is misleading if it does not disclose the scheme. *See*, *e.g.*, *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1181 (D. Or. 2015) (defendants warned of price volatility, but omitted scheme to use articles to inflate price); *Rabkin v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI, 2018 U.S. Dist. LEXIS 25326, at *28 (N.D. Cal. Feb. 15, 2018) (same); *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 U.S. Dist. LEXIS 91447, at *55 (C.D. Cal. July 13, 2015) (same); *see also Ansell v. Laikin*, No. CV 10-9292 PA (AGRx), 2011 U.S. Dist. LEXIS 85695, at *9 (C.D. Cal. Aug. 1, 2011); *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1216.

The AC's allegations are entirely consistent with the allegations in *Galena*, *Rabkin* and *CytRx*.[9] For example, the AC alleges that Defendants provided content for, prepared, reviewed

---

[9] These allegations also distinguish the AC from the cases cited by Defendants. For example, the AC uses a whistleblower to support its allegations of Defendants' scheme, which used articles containing misleading information published under aliases. ¶¶64–69, 100–23. The two cases most frequently cited by Defendants, *In re Galectin Therapeutics, Inc. Securities Litigation* and *Cortina v. Anavex Life Sciences Corp.*, did not make these allegations and/or did not cite whistleblower testimony. *See Galectin*, 843 F.3d 1257, 1274 n.7 (11th Cir. 2016); *Cortina*, No. 15-CV-10162 (JMF), 2016 U.S. Dist. LEXIS 179905, at *12 (S.D.N.Y. Dec. 29, 2016).

11

and approved the articles used to manipulate the Company's stock price (¶¶64, 67–72, 100, 185), like the complaints in *Rabkin* and *Galena*. *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*4; *Galena*, 117 F. Supp. 3d at 1186. Moreover, the AC alleges, as in *Rabkin*, *Galena* and *CytRx*, that none of those articles disclosed that they were paid promotions (¶¶64–69, 162–185), in violation of Section 17 of the Securities Act. *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*6; *Galena*, 117 F. Supp. 3d at 1158; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at \*8.

Further, the AC's allegations are supported by a whistleblower (*i.e.*, CW1) (¶¶64–68), like the complaints in *Galena* and *CytRx*. *Galena*, 117 F. Supp. 3d at 1161; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at \*10. Similarly, like *Rabkin*, *Galena* and *CytRx*, the AC alleges that Defendants published articles using aliases (¶¶73–83, 101–23, 162–85) and facilitated their scheme using an agent who had been implicated in other illegal promotional schemes (¶¶22, 54, 67, 70). *Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*5–6; *Galena*, 117 F. Supp. 3d at 1158; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at \*8. The AC also alleges that Defendants concealed, publicly denied (¶¶187–88, 207), and profited directly from their scheme (¶¶127–28), as the *Rabkin*, *Galena* and *CytRx* plaintiffs did. *Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*5, \*32; *Galena*, 117 F. Supp. 3d at 1160–61, 1174; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at \*31–32, \*39, \*41.

Finally, while Defendants executed their scheme, their SEC filings listed ***19 reasons*** why 22nd Century's stock price was volatile but did not disclose the scheme. ¶¶155–61. This is the same actionable misrepresentation as *Rabkin*, *Galena* and *CytRx*. *Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*11; *Galena*, 117 F. Supp. 3d at 1180; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at \*34.

---

Defendants also cite *Garvey v. Arkoosh*, but the articles in that case disclosed that they were paid promotions. *See* 354 F. Supp. 2d 73, 76–79 (D. Mass. 2005).

Despite these robust allegations and analogous case law, Defendants argue that the AC fails to allege that Defendants knew of the scheme or had a duty to disclose it. Defendants are wrong. *First*, the AC alleges that Defendants knew of the scheme because Sicignano told CW1 about the scheme. ¶¶64–69. Since CW1 was Sicignano's assistant, worked in immediate proximity to him, interacted extensively with him (¶44) and discussed the scheme repeatedly over a period of months (¶¶64–69), his allegations must be accepted as true. *See In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 526 (S.D.N.Y.), *aff'd sub nom. Condra v. PXRE Grp. Ltd.,* 357 F. App'x 393 (2d Cir. 2009). At bottom, Defendants argue CW1's allegations should be disregarded because CW1 never *saw* Sicignano approve an illegal article.[10] *See* Mot. 7–8. This conflates *pleading* with the standards for *proof* and is not grounds for dismissal. *See McIntire v. China Mediaexpress Holdings, Inc.*, 927 F. Supp. 2d 105, 125 (S.D.N.Y. 2013).

*Second*, Defendants misread the AC and argue that they are not alleged to have a duty to disclose their scheme to investors. *See* Mot. at 9–10. Specific, detailed warnings of stock price volatility like those in Defendants' SEC filings (¶¶155–161) are misleading if the warnings do not disclose schemes to use paid promotions articles to inflate stock prices. *See*, *e.g.*, *Galena*, 117 F. Supp. 3d at 1181.[11] That is precisely what the AC alleges, thus the Motion should be denied.

2.    The Articles Published to Inflate the Company's Stock Price Are Actionable

The AC alleges that Defendants' illegal paid promotional articles were false and misleading because they failed to disclose that they were paid promotions as required by Section

---

[10] To the extent that Defendants suggest that a more plausible inference is that Defendants paid IRTH to produce *legal* promotional articles, but IRTH, without Defendants' knowledge, published illegal articles, that argument should be rejected. *See* Mot. at 4. That argument asks the Court to draw inferences in Defendants' favor and defies common sense.

[11] Defendants' case law *supports* denying the Motion because, unlike here, those defendants provided only generic volatility warnings, not lengthy, specific warnings like Defendants. *See, e.g.*, *Cortina*, 2016 U.S. Dist. LEXIS 179905, at *16 (disclosure did not list specific factors).

13

17 of the Securities Act. Courts hold that promotional articles that are presented as independent investment analysis, do not disclose that they are paid promotions, and are attributed to pseudonymous authors, are actionably false and misleading. *See, e.g.*, *Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*19–25; *Galena*, 117 F. Supp. 3d at 1189. This is what the AC alleges. *See, e.g.*, ¶¶11, 100–123, 185. The AC also alleges, citing CW1, that Defendants were "makers" of the articles, and thus are liable for their failure to disclose that they are paid promotions, because they had ultimate authority over the articles (*see* ¶¶64–71); *see Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Finally, failing to disclose that the articles were paid promotions was material because the articles purported to offer investment analysis. *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*24.

Defendants appear to misread the AC and assert that it *does not* allege that the articles in the scheme are actionable. *See* Mot. at 12 n.13. This is incorrect; Plaintiffs list individual articles (¶¶162–85) and allege that the articles were "materially false and/or misleading because they failed to disclose that they were promotions . . . . and that Defendants furnished information and language for, prepared, reviewed, approved and/or ratified the articles" (¶185). The AC alleges that Defendants had ultimate authority over the articles and failed to disclose that they were paid promotions; accordingly, the Motion should be denied.

### 3.    The October and April Releases Were False and Misleading

Under the federal securities laws, when a defendant chooses to speak it must ensure that its statements are "accurate and complete." *See Meyer*, 761 F.3d at 250. "[L]iterally true statements that create a materially misleading impression—will support claims for securities fraud." *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd other grounds*, *Gabelli v. SEC*, 568 U.S. 442 (2013).

The AC alleges that Defendants' statements in the October and April Releases were false and misleading because a reasonable investor would have read those statements to *deny* the

14

existence of their illegal article scheme and SEC investigation. ¶¶186–91. For example, the AC alleges that the October Release described former CEO Pandolfino's October 25 Seeking Alpha article as a "highly deceptive . . . smear campaign . . . to dupe shareholders" (¶140) and claimed that the article "attempt[ed] to link 22nd Century to stock promoters who have absolutely nothing to do with the Company" (¶187). These statements effectively deny the existence Defendants' illegal promotional article campaign because they disclaim any connection between the articles and 22nd Century. Since this denial is false, it is actionable.[12] *BioScrip,* 95 F. Supp. 3d at 727 (effective denial of existence of current SEC investigation is false and misleading).

The AC also alleges that the releases falsely denied the SEC investigation. For example, the April Release stated that Pandolfino's April 17 Seeking Alpha article "falsely alleges that 22nd Century is supposedly under SEC investigation." ¶189. The April Release then repeated language from the October Response that the Company had not received any notice of "any enforcement proceeding." *Id.* These statements falsely deny an SEC investigation into the Company, when in truth the SEC's 2016 investigation had never been closed (*see* ¶48) and the SEC effectively acknowledged the existence of a pending investigation (¶137); Calandra Decl. Ex. 3 at 2. Defendants respond that the AC does not allege that Defendants were aware of an "enforcement proceeding." Mot. at 13. This is irrelevant because AC alleges that Defendants were aware of and denied an SEC *investigation*.[13]

---

[12] Defendants cite *Brady v. Top Ships Inc.*, No. 17-cv-4987 (BMC), 2019 U.S. Dist. LEXIS 130592, at *31 (E.D.N.Y. Aug. 3, 2019), but that case is inapposite because those plaintiffs alleged that defendants' statements that they "may" take certain actions were misleading because Defendants had already decided to take those actions. *Id.* Here, Defendants never warned investors that they "may" use illegal stock promotions to boost the Company's share price.

[13] Defendants again cite to *Brady*, but *in* that case, the court held that receipt of an SEC subpoena was not related to generic statements about cash flow, uses of funds, and business strategy, and thus those statements were not misleading. *Brady*, 2019 U.S. Dist. LEXIS 130592, at *48. Here, the AC alleges a direct relationship between the SEC investigation and Defendants' statements.

15

Defendants also appear to argue that the SEC investigation was too far in the past to affect the October and April Releases. *See* Mot. at 15. Yet the question is one of materiality. It is obvious that a reasonable investor would want to know that a year-old SEC investigation into the Company that made Brodfuehrer afraid to go to jail was still open and pending. This argument further raises an issue of fact that cannot be resolved on a motion to dismiss. *See Kasper v. AAC Holdings, Inc.*, No. 3-15-0923, 2016 U.S. Dist. LEXIS 87492, at *9 (M.D. Tenn. July 1, 2016) (whether reasonable for Defendants to assume that too much time had passed is an issue of fact).

4.   Defendants' Disclosures of Accounting Weaknesses Were Misleading

When Defendants disclosed an accounting weakness in the Company's 2015 10-K, 2016 10-Qs and 2016 10-K, they were required to make an "accurate and complete" disclosure. *Meyer*, 761 F.3d at 250 (citation omitted). Accordingly, the issue is not whether Defendants had a duty to disclose an investigation; but rather "whether, in light of that Investigation, the statements [Defendants] chose to make were materially misleading." *See Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 584 (S.D.N.Y. 2016).

The AC alleges that in 2016, 22nd Century nearly insolvent. ¶56. Out of desperation, Defendants embarked on three secondary stock offerings within nine months (the February, July and October 2016 Offerings). ¶57. Shortly before the first offering, Defendants learned of a material accounting weakness at the Company, which the SEC began investigating. ¶46. The investigation was so serious that Brodfuehrer, the CFO, believed he could lose his accountant's license and go to jail. ¶49. Defendants disclosed the weakness in the 2015 10-K, 2016 10-Qs and 2016 10-K, but *never* disclosed the SEC investigation. ¶¶192–98. Defendants also downplayed the weakness, assuring investors that "[n]otwithstanding this material weakness, management believes that the financial statements included in this Annual Report on Form 10-K fairly present, in all material respects, our financial condition." Calandra Decl. Ex. 1 at 44; *see* ¶193. The investigation

16

was thus material because reasonable investors would want to know of an SEC investigation into a barely-solvent company's accounting protocols when that company is desperately trying to raise funds and management is downplaying the weakness.[14]  *See* ¶¶46–57; 193–97.

5.    Certifications Appended to SEC Filings Were False and Misleading

Individual Defendants' Certifications attached to the Company's 2016, 2017 and 2018 10-Ks pursuant to the Sarbanes-Oxley Act ("SOX") and 18 U.S.C. § 1350 were false and misleading because they did not disclose the SEC investigation or Defendants' scheme.  *See* ¶¶199–201. Since "reasonable investor[s] would likely have found [material] the fact that the articles touting [a company], easily accessible and apparent on the internet, were not in fact unbiased recommendations but rather paid promotions," and Defendants failed to disclose these facts, Defendants' certifications are actionable. *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at *30.

**B.     The Complaint Adequately Alleges Scheme Liability**

The AC states a claim for scheme liability under Rules 10b-5(a)&(c) because it alleges that Defendants "committed a deceptive or manipulative act" by using illegal promotional articles to inflate the Company's share price. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005). Rules 10b-5(a)&(c) claims "hinge[] on the performance of an inherently deceptive act that is distinct from an alleged misstatement."[15]  *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 470 (S.D.N.Y. 2017). A manipulative act involves defendants deceiving the market

---

[14] Defendants' claim that they had no independent duty to disclose the investigation (*see* Mot. at 12) is irrelevant because the AC identifies specific statements that were misleading because Defendants failed to disclose the investigation. *See Meyer*, 761 F.3d at 250. The Court should also disregard Defendants' suggestion that Plaintiffs "agree that 22nd Century was not under SEC investigation in 2017" (Mot. at 11 n.9) because the AC alleges that 22nd Century was under SEC investigation (*see* ¶¶49, 198), and the Court cannot draw inferences in Defendants' favor.

[15] Since a manipulation "can involve facts solely within the defendant's knowledge[,] . . . plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim." *See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007).

17

into believing that the prices to buy and sell securities are the product of "the natural interplay of supply and demand, not rigged by manipulators." *ATSI*, 493 F.3d at 100.

The AC sufficiently alleges a scheme to manipulate the price of 22nd Century's securities by alleging that Defendants "edited, approved, and controlled the content of articles before payment and publication" using articles "written under different aliases without disclosing that the companies controlled the content and paid for the articles." *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at *50–51 (citing cases, including *Galena*, 117 F. Supp. 3d at 1194; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at *43). For example, the AC identifies two-dozen articles which Defendants reviewed, approved and had published without disclosing that the articles were paid promotions. ¶¶162–85. One of these articles was released expressly to try to counteract a downturn in the Company's share price in advance of the October 2017 Offering. ¶184. Defendants' ploy worked, as the Company's share price rebounded 1.7% after the article was published. *See id.* Since these allegations identify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue," they sufficiently allege a manipulative act. *ATSI*, 493 F.3d at 102. To the extent that Defendants argue that editing and approving articles that did not disclose that they were paid promotions are not manipulative acts for the purposes of scheme liability as a matter of law, multiple courts have rejected this argument.[16] *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at *51; *Galena*, 117 F. Supp. 3d at 1183; *CytRx*, 2015 U.S. Dist. LEXIS 91447, at *43. Since the AC alleges manipulative acts in connection with the Defendants' scheme, the Motion should be denied.

---

[16] In fact, neither case cited by Defendants held that a scheme to use illegal promotional articles could not be a manipulative act as a matter of law. *See Galectin*, 843 F.3d at 1273; *Cortina*, 2016 U.S. Dist. LEXIS 179905, at *9.

18

C.        **The Complaint Pleads a Strong Inference of Scienter**

Scienter may be pled either by alleging facts (a) showing defendants' "motive and opportunity to commit fraud" or (b) constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Recklessness exists if defendants "knew facts or had access to information suggesting that their public statements were not accurate." *Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). The test is "whether *all* of the facts alleged, taken collectively" support a strong inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007). These facts must be only "cogent and at least as compelling as any opposing inference." *Id.*

1.        The Complaint Adequately Pleads Motive and Opportunity

The AC's allegations concerning the Company's financial condition, various secondary offerings, and Sicignano's bonus sufficiently allege motive and opportunity.   Motive can be demonstrated by showing "concrete benefits" in the economic self-interest of the defendant, including, but not limited to, attempting to inflate the price of a company stock to increase the funds in can gain in a secondary public offering. *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 206 (E.D.N.Y. 2000) (*quoting Novak,* 216 F.3d at 307). The AC alleges that Defendants' motive for their fraud was that the Company needed over $50 million specifically from the October 2017 stock offering. ¶¶9, 64–69, 126. The AC's allegations that the illegal promotion scheme was to artificially inflate the Company's stock price for the October 2017 offering to try to "rais[e] more capital by issuing the same number of shares" thus plead scienter and are not too "generalized" (*see* Mot. at 19). *See, e.g., In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 269-70 (2d Cir. 1993); *Twinlab*, 103 F. Supp. 2d at 206-07; *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 444-45 (S.D.N.Y. 2000).

In addition, the AC alleges Sicignano derived a specific and concrete personal benefit from his fraud because the October 2017 Offering enabled him to receive a performance bonus of over

19

$150,000 (consisting of a $94,800 payment and at 23.4% raise), or an increase of 62% over his 2017 annual salary of $242,690 (¶¶127–28), and thus sufficiently allege scienter. *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (outsized bonus constitutes motive). In other words, the AC alleges that Sicignano had the same motive and opportunity as a defendant in a classic "pump-and-dump" scheme, only instead of profiting by selling his shares after the stock was "pumped," he arranged to receive a payout as a bonus from the proceeds the Company reaped when the stock was "pumped." These strong motive allegations alone adequately allege Defendants' scienter. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000).

          2.       The Complaint Adequately Pleads Conscious Misbehavior and Recklessness

A corporation's scienter is adequately alleged where "high-level employees" knew of the facts making statements misleading. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177–78 (2d Cir. 2015). In addition, "the scienter of 'management level' employees can be attributed to the corporation." *In re VEON Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC) 2017 U.S. Dist. LEXIS 152240, at *31 n.3 (S.D.N.Y. Sept. 19, 2017). Defendants do not dispute that Sicignano and Brodfuehrer's scienter is *attributable* to corporate defendant 22nd Century by virtue of their roles as its top executives. *See* Mot. at 20–22. However, even if the Court finds that the AC fail to allege scienter for the Individual Defendants, it can still find recklessness sufficiently alleged as to the Company. *See Silvercorp*, 26 F. Supp. 3d at 276–77.

In any event, the AC contains a panoply of allegations that sufficiently allege Defendants' scienter through conscious misbehavior or recklessness.

          *a)*       *Sicignano and Brodfuehrer Knew of the Scheme and Investigation*

The Complaint also pleads scienter by alleging that Sicignano orchestrated the illegal promotional article scheme to artificially inflate the Company's share price. *See* ¶¶64–69. In addition, the AC alleges that Brodfuehrer had actual knowledge of the scheme, or was reckless in

20

not knowing, because he worked closely with Sicignano at the Company, which had only a few dozen employees (¶69). *See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at \*36. Indeed, Brodfuehrer essentially admitted he knew Sicignano was acting improperly when he told CW1 in 2017, when the scheme was at its height, that he did not want to sign the Company's financial statements because of Sicignano. ¶69. At a minimum, these allegations show Brodfuehrer's recklessness. *See City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 361 (S.D.N.Y. 2006) ("egregious refusal to see the obvious" supports scienter).

The AC further alleges that Brodfuehrer had actual knowledge of the SEC investigation because he told CW2 that he was going to meet with the SEC and feared he could lose his accountant's license and be imprisoned. ¶49. The AC alleges that Sicignano had actual knowledge of the investigation by working closely with Brodfuehrer, and because the Company was making multiple stock offerings at the time. *See Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV 15-8574 PSG, 2017 U.S. Dist. LEXIS 122725, at \*48 (C.D. Cal. Jan. 17, 2017).

b)     <u>*The Individual Defendants' Roles Strongly Support Their Scienter*</u>

A plaintiff also may base scienter allegations "on the 'core operations doctrine.' *See, e.g.*, *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM), 2013 U.S. Dist. LEXIS 171110, at \*72 (S.D.N.Y. Dec. 2, 2013). As CEO and CFO, Sicignano and Brodfuehrer were *the* senior executives in charge of 22nd Century—effectively a microcap start-up company with a limited number of employees—and the February 2016, July 2016, October 2016 and October 2017 offerings were essential to keeping the Company operating, especially since the Company was not going to receive a $7 million dollar payment from a partner that it was counting on to survive. *See* ¶¶55–61, 64–71. It is thus not plausible that Individual Defendants would be unaware of the illegal promotional article scheme and SEC investigation. *See Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017).

21

c)        *Additional Allegations Contribute to A Strong Inference of Scienter*

The AC also contains additional specific, detailed allegations that contribute to a strong inference of Defendants' scienter.  *First*, the AC alleges that Defendants took steps to conceal their illegal promotional article scheme from investors.  For example, Defendants issued press releases denying the existence of the scheme (¶¶186–91).  *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728 (CM), 2018 U.S. Dist. LEXIS 199809, at *48 (S.D.N.Y. Nov. 26, 2018) (placating concerns supports inference of scienter).  The AC also alleges that Sicignano insisted that his computer not be connected to the Company's network to conceal the scheme from regulators. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 648, 658-59 (S.D.N.Y. 2007) ("suspicious" circumstances support scienter).  Finally, the AC alleges that the Defendants concealed that former CEO Pandolfino wrote the October 2017 and April 2018 articles that disclosed the scheme and SEC investigation for fear that his allegations would appear legitimate.  *See* ¶¶137–45, 203.

*Second*, the AC alleges that Defendants' scheme attributed articles to pseudonymous authors (¶¶73–83, 100–23, 162–85) and placed articles on investment websites like Seeking Alpha and TheStreet, which prohibit paid stock promotions (¶209). These allegations support a strong inference of scienter because the use of pseudonyms and violating the sites' standards shows Defendants' intent to have the articles deceive investors by appearing to be independent analysis, when they were actually paid promotions.  *See Galena*, 117 F. Supp. 3d at 1174.

*Third*, the AC alleges that the Individual Defendants signed annual reports on Forms 10-K, quarterly reports on Forms 10-Q and certifications attached to these filings.  ¶¶155–61; ¶¶193–201. *See, e.g., In re Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) (defendants' signatures on Form 10-K "accept[ing] responsibility for its contents" was indicative of scienter).

*Fourth*, the AC alleges that Sicignano was stripped of his responsibilities as CEO within days after CW1 sent a letter to the Board notifying it of the scheme to use illegal promotional

22

articles to boost the Company's stock price. In addition, two weeks after the AC was filed, which disclosed Brodfuehrer's involvement in the scheme, Brodfuehrer abruptly "retired" as well. These abrupt resignations were in connection with the scheme to defraud investors and thus contribute to an inference of scienter. *See Van Dongen*, 951 F. Supp. 2d at 474.

### 3. A Holistic View Supports a Strong Inference of Scienter

Scienter allegations must be considered holistically, not individually. *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 365 (S.D.N.Y. 2013) (citing *Tellabs*, 551 U.S. at 326). The AC alleges scienter by alleging that (a) Sicignano told CW1 about the scheme to manipulate the October 2017 Offering; (b) Brodfuehrer was so concerned with Sicignano that he told CW1 (and the Company's general counsel confirmed) that he did not want to sign the Company's SEC filings; (c) Sicignano reaped an enormous bonus from the scheme; (d) Defendants concealed the scheme; and (e) Sicignano and Brodfuehrer were ousted after the Board learned of their involvement. Defendants offer no innocent inference stronger than this inference of scienter. *See Tellabs*, 551 U.S. at 324. Accordingly, the AC pleads scienter and the Motion should be denied.

### D.    The Complaint Adequately Pleads Loss Causation

To plead loss causation, a plaintiff need only furnish the defendant with "some indication" of the causal connection between the misrepresentation and the loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). This is because "[p]leading loss causation is . . . not meant to impose a great burden on plaintiffs." *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209 (KBF), 2013 U.S. Dist. LEXIS 43774, at *36 (S.D.N.Y. Mar. 27, 2013). Contrary to the Motion, the AC pleads loss causation. *See* Mot. at 22–24. *First*, Plaintiffs allege Defendants concealed an SEC investigation and that the Company's stock price fell when the investigation was revealed. *See, e.g.*, ¶¶137–39. These are textbook loss causation allegations. *See, e.g., In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 252–53 (S.D.N.Y. 2007). Defendants argue that the AC fails to

23

connect the accounting weaknesses underlying the SEC investigation with a stock price decline, but this misreads the AC. *See* Mot. at 23. The AC alleges that Defendants' accounting weakness disclosures were misleading because Defendants failed to disclose an SEC investigation, and that when investors learned of *the investigation*, the Company's stock price fell. ¶¶137–39. This alleges loss causation.[17] *See In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 347 (S.D.N.Y. 2005).

*Second*, the AC details how Defendants' scheme to use illegal promotional articles inflated 22nd Century's stock price and harmed investors when that price fell after the scheme was disclosed. For example, the AC alleges that Defendants inflated the Company's stock price by publishing promotional articles that were presented as investment analysis and illegally failed to disclose that they were paid promotions. *See, e.g.,* ¶¶5–7, 64–70, 100–23. The articles pretended to be investment analysis by, for example, falsely asserting that the Company was "well financed" (¶103) and predicting that the Company could make "more than 10 times multiple" (¶105). Indeed, Sicignano told CW1 that his objective was to inflate the Company's stock price. ¶¶64–70. The AC alleges the scheme succeeded when 22nd Century's stock price shot up 172%.[18] ¶125. Finally, the AC alleges that when the scheme was exposed, the Company's stock price plummeted. ¶¶137–39.

*Third*, Defendants are wrong that the AC does not plead a corrective disclosure in connection with Defendants' misleading October 26 and April 19 Releases. *See* Mot. at 24. For example, the AC alleges that by denying Defendants' scheme, the releases concealed the risk that

---

[17] Cases cited by Defendants are irrelevant because they concern wrongdoing disclosed when an investigation was announced, not that an *investigation* was concealed. *See, e.g., Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013); *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012).

[18] Defendants' argument that the AC fails to allege loss causation by not associating an immediate increase in 22nd Century's stock price with each article is meritless. *See* Mot. at 23 n.19. The AC need not allege an increase for every article because "a misstatement may cause inflation simply by *maintaining* existing market expectations, even if it does not actually cause the inflation in the stock price to increase on the day [of] statement." *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 561 (S.D.N.Y. 2011), *aff'd,* 838 F. 3d 223 (2d Cir. 2016).

24

Sicignano would have to step down when the Board learned about his involvement in that scheme. ¶223. This risk materialized when CW1 disclosed Sicignano's involvement and the Board ousted Sicignano, causing a significant stock price decline.[19] *Id. See Rabkin*, 2018 U.S. Dist. LEXIS 25326, at *46 (resignation allegation alleges loss causation). The AC thus alleges loss causation.

### E.       The AC Alleges a Claim Under Section 20(a) Against Individual Defendants

Defendants incorrectly claim that the AC's Section 20(a) claims fail because they fail to allege a primary securities violation or "culpable participation" by Individual Defendants. *First*, as set forth in Section III above, the AC alleges a primary violation by 22nd Century. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 624 (S.D.N.Y. 2017). *Second*, the AC alleges Individual Defendants' "culpable participation" because Sicignano directed the illegal scheme and falsely denied that scheme in the October and April Releases, and that Brodfuehrer was at least aware of the scheme. *See* ¶¶64–72. The AC further alleges that Individual Defendants signed and were responsible for the content of relevant SEC filings. ¶¶46 n.3, 155–60, 193–200. This is sufficient to sustain Section § 20(a) claims. *See Menaldi*, 164 F. Supp. 3d at 587.

### F.       Plaintiffs Respectfully Request the Opportunity to Amend

Since, this is the Court's first opportunity to formally assess any complaint in this action, if the Court grants any part of the Motion, Plaintiffs respectfully request the opportunity to amend. *See Kopchik v. Town of E. Fishkill, N.Y.,* 759 F. App'x 31, 38 (2d Cir. 2018) (opportunity to amend "appropriately presented *after* the district court rules on" motion to dismiss (emphasis in original).

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion should be denied in its entirety.

---

[19] Defendants' denial that Sicignano was ousted because of the promotional scheme, even though his ouster began only days after the Board received the CW1's letter, *see* Mot. at 24 n.20, improperly asks the Court to draw an inference in Defendants' favor and resolve an issue of material fact on a motion to dismiss. *See Meyer*, 761 F.3d at 249. It also defies common sense.

Dated: March 30, 2020

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brian Calandra*
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: bcalandra@pomlaw.com

*Counsel for Lead Plaintiffs 22nd
Century Investor Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2020, a copy of the foregoing was served via email to all parties whose counsel has appeared in this action.

/s/ Brian Calandra
Brian Calandra

1