# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

MATTHEW BULL, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

  vs.

22ND CENTURY GROUP, INC., HENRY SICIGNANO, III, and JOHN T. BRODFUEHRER,

        Defendants,

Case No. 1:19-cv-01285-JLS

**<u>ORAL ARGUMENT REQUESTED</u>**

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## <u>AMENDED CLASS ACTION COMPLAINT</u>

FOLEY & LARDNER LLP
Jonathan H. Friedman
90 Park Avenue
New York, NY 10016
Telephone: (212) 338-3416
Email: jfriedman@foley.com

John A. Tucker (admitted *pro hac vice*)
1 Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-2000
Email: jtucker@foley.com

*and*

DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP
Charles C. Ritter, Jr.
701 Seneca Street, Suite 750
Buffalo, NY 14210
Telephone: (716) 855-1111
Email: critter@dhpglaw.com

*Counsel for Defendants*

## TABLE OF CONTENTS

ARGUMENT ..........................................................................................................................1

    I.    PLAINTIFFS DO NOT ALLEGE A FALSE OR MISLEADING STATEMENT. ...........................................................................................................1

        A.    The Company's SEC Filings Made No Actionable Omission or Misstatement. ................................................................................................1

        B.    Defendants Are Not the Makers of the Statements in the Articles. .............4

        C.    22nd Century's Press Releases Contain No Misstatements or Omissions. .................................................................................................5

    II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR MARKET MANIPULATION. .................................................................................................6

    III.    THE COMPLAINT DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER. .........................................................................................................7

    IV.    THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION. ............................9

    V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY. ......................................................................................................10

CONCLUSION ..................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansell v. Laikin*,
No. CV 10-9292, 2011 WL 3274019 (C.D. Cal. Aug. 1, 2011)...................................................3

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................................................7

*Castellano v. Young & Rubicam, Inc.*,
257 F.3d 171 (2d Cir. 2001)....................................................................................................4

*Cortina v. Anavex Life Scis. Corp.*,
No. 15-CV-10162, 2016 WL 7480415 (S.D.N.Y Dec. 12, 2016) ................................... *passim*

*In re CytRx Corp. Sec. Litig.*,
No. CV 14-1956, 2015 WL 5031232 (C.D. Cal. July 13, 2015) ......................................2, 5, 7

*In re Emex Corp. Sec. Litig.*,
No. 01 CIV. 4886, 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002)..........................................8

*Fezzani v. Bear, Stearns & Co. Inc.*,
716 F.3d 18 (2d Cir. 2013).......................................................................................................5

*Frederick v. Mechel OAO*,
475 Fed. App'x 353 (2d Cir. 2012)...........................................................................................9

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
843 F.3d 1257 (11th Cir. 2016) ..........................................................................................5, 6

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ...............................................................................2, 3, 7

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
639 F. App'x 664 (2d Cir. 2016) .............................................................................................5

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ 1510, 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005)............................................8

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)................................................................................................................5

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001).....................................................................................................8

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................................................9

*In re Lions Gate Entm't Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ......................................................................................4

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d Cir. 2014)..................................................................................................4

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..................................................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015)..........................................................................................................6

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010)................................................................................................10

*In re Openwave Sys. Sec. Litig.*,
  528 F. Supp. 2d 236 (S.D.N.Y. 2007)...................................................................................9

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009)...................................................................................8

*Rabkin v. Lion Biotech., Inc.*,
  No. 17-CV-02086, 2018 WL 905862 (N.D. Cal. Feb. 15, 2018) .......................................3, 7

*San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.*,
  75 F.3d 801 (2d Cir. 1996)....................................................................................................8

*SEC v. Abellan*,
  674 F. Supp. 2d 1213 (W.D. Wash. 2009)............................................................................3

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993)...................................................................................................4, 8

*In re Twinlab Corp. Sec. Litig.*,
  103 F. Supp. 2d 193 (E.D.N.Y. 2000) ..................................................................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)...................................................................................8

*In re WorldCom, Inc. Sec. Litig.*
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................................10

**Statutes**

15 U.S.C.
  § 77q(b)..................................................................................................................................2

§ 78u-4 ............................................................................................................1, 3, 8, 9

17 CFR
  § 240.10b-5 ...........................................................................................................5, 7

Fed. R. Civ. P. 9(b) ....................................................................................................1

iv

Retaining an investor relations firm that places promotional articles is not a "scheme." Plaintiffs' opposition brief repeatedly conflates such appropriate promotion with directing third-party authors of promotional articles not to disclose that they were paid. As cases like *Cortina* make clear, responsibility for disclosing such payments lies *solely* with the article authors, not with 22nd Century Group, Inc. ("22nd Century" or the "Company"). The Amended Complaint ("Complaint") does not, and cannot, allege Defendants knew the authors omitted required payment disclosures, much less that Defendants directed such omissions.

Plaintiffs also contend that the Company should have disclosed a purported SEC investigation relating to the Company's segregation of financial reporting duties in 2016. But Plaintiffs admit that the Company *fully disclosed and remediated* this accounting concern *in 2016*. Plaintiffs do not, and cannot, allege that this accounting concern involved misconduct or required any adjustment to the Company's financial statements. Further, Plaintiffs cannot rebut—and simply ignore—the authority cited in the Motion, such as *In re Lions Gate*, that holds confidential SEC investigations need not be disclosed.

**ARGUMENT**[1]

**I.    PLAINTIFFS DO NOT ALLEGE A FALSE OR MISLEADING STATEMENT.**

**A.  The Company's SEC Filings Made No Actionable Omission or Misstatement.**[2]

Paying for stock promotion is neither illegal nor misleading, and any obligation to disclose such payments falls solely on the authors of paid promotions. Mot. 7-15; *see Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162, 2016 WL 7480415, at *5 (S.D.N.Y Dec. 12, 2016). Despite

---

[1] Plaintiffs incorrectly assert the Complaint must merely plead a claim that is "plausible on its face" (Opp. 10)—and ignore the heightened standard that FRCP 9(b) and the PSLRA require for securities fraud. Mot. 5-6. Plaintiffs do not argue they have met this heightened pleading standard.

[2] Because the SEC filings made no actionable omission or misstatement, claims that Sicignano and Brodfuehrer's 10-K certifications were false and misleading also fail. ¶¶ 199-201; Opp. 17.

1

failing to allege Defendants even *knew* the authors omitted required disclosures, Plaintiffs contend 22nd Century should have disclosed these alleged omissions. But 22nd Century could not disclose what it did not know. Further, even if Plaintiffs had alleged Defendants knew certain articles omitted required disclosures, *22nd Century* had no duty to disclose payments received by the *authors*. *See* 15 U.S.C. § 77q(b). *Cortina* and like cases hold that, whereas promotional authors are required to disclose payments they receive, an issuer that hires the author is not. Mot. 9-10.

Plaintiffs respond to this dispositive authority in two brief footnotes,[3] and ask this Court to ignore *Cortina* and instead follow inapposite cases from district courts in the Ninth Circuit where plaintiffs alleged specific facts showing defendants *knew* and *required* promotional articles to omit the requisite disclosures. Opp. 11-12. In *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956, 2015 WL 5031232 (C.D. Cal. July 13, 2015), the plaintiffs pled specific facts, including statements from an author of the promotional articles, showing defendants *expressly instructed* authors not to disclose their payments.[4] In *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145 (D. Or. 2015), the plaintiffs included statements from an "author," who was actually an investigator, and attached emails showing the defendants reviewed the articles before and after publication. *Id.* at 1165-68. Notably, *Galena* dismissed claims against one defendant, Dunlap, even though he—unlike

---

[3] Plaintiffs argue the cases cited in the Motion did not involve whistleblower testimony (Opp. 11 n.9), but absence of whistleblowers is irrelevant to the holdings, which broadly found issuers lack any duty to disclose such payments. Moreover, relying on the assertions of anonymous witnesses is a strike *against* the Complaint, (Mot. 3 n.2), particularly as Plaintiffs' witnesses do not allege Defendants knew the authors published articles without the required disclosures. Plaintiffs also argue the defendants in *Cortina* and similar cases provided more generic volatility warnings than 22nd Century. Opp. 13 n.11. However, the disclosures identified in the Complaint were akin to the disclosures in *Cortina* and were not rendered misleading by the absence of a further disclosure that article authors had not disclosed their alleged payments.

[4] *CytRx* did not hold that defendants' disclosure of certain risk factors required it to disclose all potential risk factors, but that defendants should have disclosed the articles in its explanation "regarding how and why the Company's stock price was so dramatically increasing." *Id.* at *10.

2

Defendants here—was "included on emails . . . attaching published articles," because the complaint contained "no particularized allegations that Dunlap knew [the investor relations firm] was causing promotional publications to be published in a misleading fashion or without the required disclosures." *Id.* at 1169. Finally, in *Rabkin v. Lion Biotech., Inc.*, No. 17-CV-02086, 2018 WL 905862, at *1 (N.D. Cal. Feb. 15, 2018), the individual defendants were executives of the issuer *and* founders of the stock promotion company the issuer paid to promote its stock. The *Rabkin* plaintiffs also pled facts showing defendants expressly instructed authors not to disclose their payments and "had final say" on the articles' content and publication. *Id.* at *2, 7.[5]

In stark contrast to the foregoing cases, Plaintiffs *assume* Sicignano must have "review[ed], edit[ed], *and/or* approv[ed]" the articles "*because* Sicignano was intensely focused on everything that was said publicly about the Company." Opp. 6 (emphasis added). Confidential Witness 1 assumes Sicignano saw the articles before publication because he cared about the Company's public image. Plaintiffs allege no facts establishing Defendants even saw the articles, much less knew they omitted required disclosures. Plaintiffs' speculative conjecture without particularized facts does not plead securities fraud under the PSLRA.[6]

Plaintiffs further argue that, although 22nd Century disclosed an accounting weakness regarding segregation of duties, its non-disclosure of a purported SEC investigation regarding that

---

[5] Plaintiffs' other cases are likewise inapposite. *SEC v. Abellan*, 674 F. Supp. 2d 1213 (W.D. Wash. 2009) (granting unopposed motion for summary judgment against stock promotor that sold millions of shares following its fraudulent promotional releases and failed to file registration statement); *Ansell v. Laikin*, No. CV 10-9292, 2011 WL 3274019 (C.D. Cal. Aug. 1, 2011) (defendant pled guilty to securities fraud for paying stock promoters to *purchase* stock).

[6] Contrary to Plaintiffs' contention (Opp. 13, citing ¶¶ 64-69), the Complaint contains no factual allegations indicating that Sicignano knew the promotional articles omitted disclosures, much less that he directed such omissions. The Complaint's allegation that Brodfuehrer must have known the articles omitted disclosures because he worked closely with Sicignano (¶ 69) is even more speculative. This bare inference does not satisfy the PSLRA or Rule 9(b)'s pleading standard.

3

weakness was misleading.[7] Opp. 14-17. Courts in this Circuit have held that such investigations need not be disclosed. Mot. 12; *see, e.g., In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016). *Lions Gate* is dispositive authority that Plaintiffs do not even address.

Moreover, the alleged omissions were not material. Mot. 14-15. Plaintiffs ignore the applicable standard and perfunctorily assert the SEC investigation was material because "a reasonable investor would want to know" about it. Opp. 16. Of course, "there is no duty to disclose a fact . . . 'merely because a reasonable investor would very much like to know that fact.'" *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)). Plaintiffs fail to explain how the alleged existence of a years-old SEC investigation regarding a disclosed, remediated accounting weakness would have significantly altered the "total mix of information" available to investors. *See In re Lions Gate*, 165 F. Supp. 3d at 14 (finding plaintiffs failed to allege nondisclosures of SEC investigation and Wells Notices were material; "possibility of materiality" is insufficient). As to the promotional articles, Plaintiffs offer only the conclusory assertion that the Company's non-disclosure of payments was material "because the articles purported to offer investment analysis." Opp. 14. However, Plaintiffs cannot explain how 22nd Century purportedly paying for these anonymous articles "affect[ed] . . . the desire of investors to buy, sell, or hold [22nd Century's] securities," particularly where the articles "largely parroted" (¶ 71) information previously publicized by the Company's own press releases. *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001) (citations and internal quotations omitted). The lack of materiality requires dismissal.

**B. Defendants Are Not the Makers of the Statements in the Articles.**

Defendants are not liable for omissions from the articles because only the "maker" of a

---

[7] Plaintiffs do not allege an SEC investigation in 2015, or that any relevant articles were published in 2015. Mot. 11. Thus, claims based on the Company's 2015 10-K must be dismissed.

statement is liable under Rule 10b-5(b). Opp. 13-14; Mot. 13 n.12. A prerequisite for liability is "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).[8] Despite their conclusory assertion that Defendants had "ultimate authority" over these third-party articles (Opp. 14), Plaintiffs allege no supporting facts. In cases involving promotional articles, the promoted issuer is not the maker of statements in the articles. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) (Rule 10b-5(b) claim could not be based "on the content of, or the omissions in, the articles by stock promoters" because defendant lacked "ultimate authority" over articles, despite allegation that defendant "worked in conjunction with stock promoters to promote [defendant]'s stock"); *Cortina*, 2016 WL 7480415 at \*4; *see also Fezzani v. Bear, Stearns & Co. Inc.*, 716 F.3d 18, 24-25 (2d Cir. 2013) ("only the person who communicates the misrepresentation is liable in private actions under Section 10(b)"); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669 (2d Cir. 2016) (defendant not "maker" of statement despite input and approval).[9]

### C.  22nd Century's Press Releases Contain No Misstatements or Omissions.

Nothing in 22nd Century's October 2018 or April 2019 press releases (the "Press Releases") was misleading.[10] Mot. 12-13. Plaintiffs now assert the Press Releases contained false, actionable misstatements because, by calling the short seller articles "highly deceptive . . . smear

---

[8] The "ultimate authority" rule is "exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it." *Id*. at 143.

[9] Even Plaintiffs' cases confirm Defendants are not the "makers" of statements in the articles under *Janus*. *See, e.g.*, *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at \*6-7 (defendants not "makers" of statements contained in paid articles because plaintiffs "merely allege[d] that these articles were drafted by [paid authors] and then reviewed, edited, and approved" by defendants).

[10] The Complaint does not allege that the Press Releases contained false statements, but only that they created a duty to disclose the article payments and purported SEC investigation. ¶¶ 186-91.

campaigns" that attempted to link 22nd Century to unrelated stock promoters, the Press Releases "*effectively* den[ied]" the Company's use of promotional articles. Opp. 15 (emphasis added). However, this statement is *not* a denial that the Company used promotional articles.[11] Further, nothing in the Press Releases created a duty to disclose that the alleged promotional articles omitted the requisite disclosures—information Defendants are not even alleged to have known.

Likewise, the Press Releases, which stated 22nd Century was unaware of any SEC enforcement proceeding, made no false or misleading statements. ¶¶ 189-90. Despite failing to allege any SEC enforcement proceeding, Plaintiffs contend this assertion is false because "the SEC's 2016 investigation had never been closed." Opp. 15 (citing ¶ 48). Paragraph 48, however, does *not* allege the purported 2016 SEC investigation was never closed, much less that Defendants knew it had continued beyond 2016; it alleges only that Confidential Witness 2 "stated that he never saw any statement from the SEC formally closing the investigation." ¶ 48. The Complaint fails to plead any facts showing the SEC's purported 2016 investigation into the Company's segregation of financial duties—remediated years ago—was ongoing when the Press Releases were issued in 2018 and 2019. Thus, Plaintiffs' claims that the Press Releases were false or misleading must be dismissed.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR MARKET MANIPULATION.

Count II fails to state a claim for market manipulation because: (1) the Complaint does not allege any market activity, as required by the Second Circuit, and (2) as *Cortina* and *Galectin* specifically held in indistinguishable circumstances, allegations that a defendant orchestrated improper paid promotions are inadequate to plead a manipulative act. Mot. 16-18. First, Plaintiffs do not even address the Second Circuit's "market activity" requirement, much less explain how

---

[11] This statement is also an inactionable opinion. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1325 (2015).

the alleged statements and omissions can satisfy this requirement.[12] This dispositive point should be deemed conceded. Second, Plaintiffs rely on inapposite cases from district courts in the Ninth Circuit. Opp. 18. These cases, in addition to being from another jurisdiction, involved very different conduct beyond mere statements or omissions.[13] *Rabkin*, 2018 WL 905862 at *16-17 (complaint alleged "lucrative agreement" between corporate defendant and promotional company and "specific instances" of defendants concealing compensation to authors); *In re CytRx*, 2015 WL 5031232 at *12 (defendants' actively covered up article payments); *In re Galena*, 117 F. Supp. 3d at 1193-94 (defendants paid promoters in stock options, in violation of company policy, and hid payments). Here, "[b]ecause Plaintiffs have not pled facts demonstrating misconduct beyond misstatements and omissions, under *ATSI Communications* they have not pled a market manipulation claim." *In re* Cannavest, 307 F. Supp. 3d at 251.

## III.    THE COMPLAINT DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER.

The Complaint fails to plead a strong inference of scienter, as they have not pled particularized facts showing: (a) motive and opportunity to commit fraud; or (b) strong circumstantial evidence of conscious misbehavior or recklessness. Mot. 18-22. The salient issue is not Defendants' intent in promoting the Company's stock—a legal and appropriate activity—but rather whether the Complaint pleads the requisite scienter with respect to the alleged misconduct: Defendants' alleged non-disclosure of (a) authors' failure to disclose alleged payments; and (b) a purported SEC investigation. The Complaint fails to plead the requisite scienter as to either.

---

[12] If an impact on stock price were enough to assert a claim under Rule 10b-5(a) and (c), "virtually all misstatement or omissions claims could be pled as market manipulation claims. The courts' insistence on proof of market activity prevents these two theories of liability from becoming duplicative." *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 251 (S.D.N.Y. 2018).

[13] Plaintiffs incorrectly assert the Complaint identifies 24 articles Defendants "reviewed, approved, and had published." Opp. 18. Instead, those paragraphs describe 23 articles Defendants allegedly "published, *or caused to be published*" and do not allege Defendants reviewed or approved these articles. ¶¶162-84 (emphasis added).

Plaintiffs claim they pled motive and opportunity by alleging 22nd Century benefitted from an October 2017 stock offering and Sicignano[14] received a bonus for 2017.[15] Opp. 19-20. But "a desire to raise much needed capital is an insufficient generalized motive to support an inference of scienter." *In re Emex Corp. Sec. Litig.*, No. 01 CIV. 4886, 2002 WL 31093612, at *6 (S.D.N.Y. Sept. 18, 2002) (plaintiffs failed to plead scienter where they "only allege[d] defendants committed fraud in order to increase the share price . . . in advance of a rights offering and proposed sale of common stock.").[16] Likewise, "an allegation that individual corporate officers simply sought to increase their own compensation" is "not sufficiently concrete to meet the requirements of the PSLRA." *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 206 (E.D.N.Y. 2000) (dismissing securities fraud claims against individual defendants for failure to plead scienter).[17]

The Complaint likewise fails to plead strong circumstantial evidence of conscious misbehavior or recklessness. Not disclosing that anonymous authors had allegedly omitted payment disclosures is not "highly unreasonable" conduct amounting to "an extreme departure from the standards of ordinary care"—especially given that the Company had no duty to do so,

---

[14] Plaintiffs do not even argue Brodfuehrer had a motive to commit fraud.

[15] Plaintiffs' farfetched theory is that Defendants fraudulently caused the omission of payment disclosures from internet articles starting in December 2016 (¶162) to inflate the stock price for an offering almost a year later in October 2017.

[16] In rejecting such allegations, "[c]ourts have . . . described 'a desire to raise much needed capital' as amongst the broadest, most generalized, and most commonplace motives of corporate motivation for any action." *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2005 WL 2277476, at *19 (E.D.N.Y. Sept. 19, 2005); *see San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.,* 75 F.3d 801, 814 (2d Cir. 1996); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 531 (S.D.N.Y. 2009).

[17] Plaintiffs' cases are consistent with the well-settled rule that pleading motive requires a particularized benefit. *See In re Time Warner.*, 9 F.3d 259 (2d Cir. 1993) (distinguished in *Kalnit v. Eichler*, 264 F.3d 131, 141-42 (2d Cir. 2001)), which noted that pleading motive requires "specific benefit that would inure to the defendants that would not be either generalized to all corporate directors or beneficial to all shareholders"); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003) (defendant received $3 million for hitting EBITDA benchmark).

8

and the Complaint does not allege that Defendants even *knew* the authors had omitted payment disclosures. Nor do Plaintiffs meet this standard by alleging the nondisclosure of a purported SEC investigation that imposed no penalties, especially where Plaintiffs admit the Company made accurate, detailed disclosures of the underlying accounting issue, and the case law consistently holds that disclosure of confidential investigations is not required.

In response, Plaintiffs argue that Defendants knew the articles omitted payment disclosures. Opp. 20-21 (citing ¶¶64-69). These paragraphs, however, do not contain particularized facts alleging such knowledge, much less conscious misbehavior.[18] Plaintiffs' failure to plead facts giving rise to a strong inference of scienter for any Defendant requires dismissal.[19]

## IV.    THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION.

Plaintiffs' failure to plead facts establishing a causal link between Defendants' alleged misconduct and Plaintiffs' purported harm requires dismissal. Mot. 22-24. In contending they have pled loss causation by alleging that a short-seller article caused the Company's stock price to fall $0.11 (Opp. 23), Plaintiffs disregard clear precedent requiring "that the loss be caused by the materialization of the concealed risk." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).[20] A short-seller's assertion that an SEC investigation exists is not a materialization of the

---

[18] Plaintiffs further contend Sicignano and Brodfuehrer's knowledge of a purported 2016 SEC investigation establishes their conscious misbehavior in stating, in 2018 and 2019, that the Company was unaware of any SEC enforcement proceeding. Opp. 21. However, knowledge of a purported 2016 SEC investigation would not establish knowledge that an investigation was continuing *years later*, much less show that Defendants' were "highly unreasonable" in stating they were unaware of SEC enforcement proceedings at this later date. *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

[19] Plaintiffs now point to the core operations doctrine to support scienter, but the Second Circuit has noted that it is not clear whether this doctrine survived the enactment of the PSLRA. *Frederick v. Mechel OAO*, 475 Fed. App'x 353, 356 (2d Cir. 2012). Even if that doctrine remains viable, Plaintiffs do not plead facts showing the alleged omissions of disclosures from the articles or the continued existence of an SEC investigation were core to 22nd Century's business.

[20] Plaintiffs' cases do not rebut this requirement. Opp. 23-24. *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 252-53 (S.D.N.Y. 2007) (defendant restated its financials when its stock

risk associated with an SEC investigation. Moreover, 22nd Century's stock price already reflected the issue underlying the purported investigation, as the Company had contemporaneously disclosed its accounting weakness. Similarly, Plaintiffs do not explain how the alleged omission of payment disclosures from the Company's SEC filings caused any losses.[21]

Plaintiffs also allege no loss caused by the Press Releases, which were issued *after* the short-seller reports. Plaintiffs likewise cannot plead that Sicignano's resignation announcement, which revealed no undisclosed conduct, was somehow a materialization of a risk concealed by the Press Releases. Opp. 24-25. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 514 (2d Cir. 2010). (resignation announcement that "did not add to the public knowledge any new material fact" about undisclosed conduct inadequate materialization of risk for purposes of pleading loss causation).

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

Plaintiffs have not pled a primary violation, or culpable participation, by Sicignano or Brodfuehrer;[22] thus, Plaintiffs cannot state a claim under Section 20(a). Mot. 24-25.

### CONCLUSION

An amendment could not cure the fatal defects discussed herein. *See Cortina*, 2016 WL 7480415, at *9 (dismissing with prejudice where "Plaintiffs have not given any indication that [they are] in possession of facts that would cure the problems identified in this opinion.") (citations omitted). Thus, the Court should dismiss the Complaint in its entirety with prejudice.

---

options backdating scheme was revealed); *In re WorldCom, Inc. Sec. Litig.* 388 F. Supp. 2d 319, 347 (S.D.N.Y. 2005) (rejecting objection to class action settlement where objector was "highly unlikely" to be able to show his losses were due to materialization of risk).

[21] Plaintiffs' argument that the authors made false assertions (Opp. 24) is neither supported by the Complaint, which contains no such allegations, nor relevant to causation—i.e., whether the absence of payment disclosures caused Plaintiffs' losses.

[22] Plaintiffs assert only that Brodfuehrer "was at least aware" of the purported scheme. Opp. 25.

Dated: April 29, 2020

Respectfully submitted,

FOLEY & LARDNER LLP

*/s/ Jonathan H. Friedman*
Jonathan H. Friedman
90 Park Avenue
New York, NY 10016
Telephone: 212-338-3416
Email: jfriedman@foley.com

John A. Tucker (admitted *pro hac vice*)
1 Independent Drive
Jacksonville, FL 32202
Telephone: 904-633-8924
Email: jtucker@foley.com

and

Charles C. Ritter, Jr.
DUKE, HOLZMAN, PHOTIADIS
& GRESENS LLP
701 Seneca Street, Suite 750
Buffalo, NY 14210
Telephone: (716) 855-1111
Email: critter@dhpglaw.com

*Counsel for Defendants*

11