**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH NOTO, GARDEN STATE TIRE CORP., and STEPHENS JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>      vs.<br><br>22ND CENTURY GROUP, INC., HENRY SICIGNANO, III, and JOHN T. BRODFUEHRER,<br><br>           Defendants, | Case No. 1:19-cv-01285-JLS<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>**

FOLEY & LARDNER LLP
John A. Tucker (admitted *pro hac vice*)
1 Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-2000
Email: jtucker@foley.com

Jonathan H. Friedman
90 Park Avenue
New York, NY 10016
Telephone: (212) 338-3416
Email: jfriedman@foley.com

*and*

DUKE, HOLZMAN, PHOTIADIS &
GRESENS LLP
Charles C. Ritter, Jr.
701 Seneca Street, Suite 750
Buffalo, NY 14210
Telephone: (716) 855-1111
Email: critter@dhpglaw.com

*Counsel for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND...................................................................................3

ARGUMENT.......................................................................................................6

I.    PLAINTIFFS' AMENDED COMPLAINT DOES NOT SATISFY
      THE STRICT SECURITIES FRAUD PLEADING
      REQUIREMENTS............................................................................6

II.   COUNT I FAILS TO PLEAD SCIENTER. ...........................................8

      A.    Plaintiffs Have Not Pled Motive and Opportunity To Defraud. ..................8

      B.    Plaintiffs Have Not Pled Strong Circumstantial Evidence of
            Conscious Misbehavior...............................................................10

III.  COUNT I FAILS TO ADEQUATELY PLEAD LOSS CAUSATION. ..........15

IV.   COUNT III FAILS TO STATE A CLAIM FOR CONTROL
      PERSON LIABILITY. ....................................................................20

CONCLUSION ...................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)............................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..............................................................................7, 8, 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................7, 15

*In re C.D.T.S. v. UBS AG*,
No. 12 CIV 4924, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013)............................................15

*Campo v. Sears Holdings Corp.*,
371 Fed. App'x 212 (2d Cir. 2010)....................................................................................12

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) ...................................................................................17

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)......................................................................................3, 17

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)....................................................................................8

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
928 F. Supp. 2d 705 (S.D.N.Y. 2013)............................................................................18, 20

*Collier v. Aksys Ltd.*,
No. 3:04CV1232(MRK), 2005 WL 1949868 (D. Conn. Aug. 15, 2005), *aff'd,* 179 F. App'x
770 (2d Cir. 2006)......................................................................................................16

*Cortina v. Anavex Life Scis. Corp.*,
No. 15-CV-10162, 2016 WL 7480415 (S.D.N.Y. Dec. 12, 2016) .................................. *passim*

*Dura Pharm., Inc. v. Broundo*,
544 U.S. 336 (2005)..........................................................................................7, 16, 20

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
553 F. 3d 187 (2d Cir. 2009)..................................................................................8, 11, 15

*In re Emex Corp. Sec. Litig.*,
No. 01 CIV. 4886, 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002)......................................10

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)......................................................................................................8

*Foley v. Transocean Ltd.*,
  861 F. Supp. 2d 197 (S.D.N.Y. 2012).................................................................10, 14

*Frederick v. Mechel OAO*,
  475 Fed. App'x 353 (2d Cir. 2012)..............................................................................15

*Ganino v. Citizens Util. Co.*,
  228 F.3d 154 (2d Cir. 2000)....................................................................................3, 17

*In re Gilat Satellite Networks, Ltd.*,
  No. 02 Civ. 1510, 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005)............................10

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)...................15, 20

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)..........................................................................10

*Hunt v. Enzo Biochem, Inc.*,
  471 F. Supp. 2d 390 (S.D.N.Y. 2006).........................................................................17

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  251 F. Supp. 3d 596 (S.D.N.Y. 2017)............................................................11, 14, 15

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)....................................................................................8, 10

*Kavowras v. New York Times Co.*,
  328 F.3d 50 (2d Cir. 2003)......................................................................................3, 17

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161, 172 (2d Cir. 2005) ............................................................................15, 16

*Leykin v. AT & T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006), *aff'd,* 216 F. App'x 14 (2d Cir. 2007).......................16

*In re Lions Gate*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ............................................................................11

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..................................................................................19

*Mishkin v. Ageloff*,
  No. 97 Civ. 2690, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)............................21

iii

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)..................................................................................9, 10, 11, 13

*In re Omnicon Grp., Inc Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)..............................................................................................18

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Intern. N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015)..................................................................................14

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
886 F. Supp. 2d 328 (S.D.N.Y. 2012)................................................................................19

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. ex rel Policemen's Annuity & Benefit Fund of Chi. v. FXCM Inc.*,
767 Fed. App'x 139 (2d Cir. 2019).......................................................................................8

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009)................................................................................10

*San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.*,
75 F.3d 801 (2d Cir. 1996)................................................................................................10

*Sharette v. Credit Suisse Int'l*,
127 F. Supp. 3d 60 (S.D.N.Y. 2015)...............................................................................3, 17

*Shetty v. Trivago N.V.*,
796 Fed. App'x 31 (2d Cir. 2019).....................................................................................21

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994).................................................................................................9

*Stein v. Tangoe, Inc.*,
No. 3:13-CV-00286 (VLB), 2014 WL 12767210 (D. Conn. Sept. 30, 2014) .......................17

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
222 F. Supp. 2d 289 (E.D.N.Y. 2002) ...............................................................................15

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008).............................................................................................................7

*Tellabs v. Makor Issues & Rights*,
551 U.S. 308 (2007).............................................................................................................8

*Ulbricht v. Ternium S.A.*,
No. 18CV6801PKCRLM, 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)............................11

*In re WorldCom, Inc. Sec. Litig.*,
No. 02 CIV.3288 DLC, 2005 WL 375314 (S.D.N.Y. Feb. 17, 2005)...................................16

*In re XP Inc. Sec. Litig.*,
   524 F. Supp. 3d 23 (E.D.N.Y. 2021) ..............................................................................11, 15

**Federal Statutes**

15 U.S.C.
   § 78u-4(b)(2) ...................................................................................................................8
   § 78u-4(b)(2)(A) .............................................................................................................7

Private Securities Litigation Reform Act (PSLRA) ............................................................ *passim*

Rule 9(b) of the Securities Exchange Act of 1934 ............................................................. *passim*

Rule 10b-5 of the Securities Exchange Act of 1934 .....................................................................15

Rule 10b-5(b) of the Securities Exchange Act of 1934 ..............................................................6, 8

Securities Exchange Act of 1934 .........................................................................................13, 18

Section 20(a) of the Exchange Act ....................................................................................1, 3, 6, 21

**PRELIMINARY STATEMENT**

The Second Circuit largely affirmed this Court's dismissal with prejudice of the Amended Class Action Complaint ("Amended Complaint," ECF No. 31), and remanded for further proceedings only "the § 10(b) material misrepresentation claim based on the non-disclosure of the SEC investigation" and the § 20(a) claim "solely as it pertains to that particular non-disclosure." ECF No. 58, 19-20. In doing so, the Second Circuit recognized in footnote 51 that these remaining claims may still be subject to dismissal based upon other arguments Defendants made in their motion to dismiss that this Court did not need to reach, as noted in footnote 1 of the order of dismissal. Accordingly, Defendants now properly seek dismissal on these grounds of what remains of the Amended Complaint.

The only surviving claim is Plaintiffs' contention that, because 22nd Century Group, Inc. ("22nd Century" or the "Company") accurately and contemporaneously disclosed a material weakness regarding financial controls in 2015-16—and also accurately and contemporaneously disclosed that it remediated this issue in 2016—Defendants supposedly committed securities fraud by not disclosing that the SEC had allegedly investigated this material weakness. The material weakness was essentially that, because of the Company's small size, it did not have sufficient employees to segregate certain accounting duties for oversight purposes, such as having the Company's bank statement reviewed by someone other than the person writing the checks. Plaintiffs do not allege that the purported SEC investigation resulted in any finding of wrongdoing, penalties, fines, or other sanctions.

The Amended Complaint's farfetched, conclusory allegations fall far short of the stringent pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) for at least two reasons:

*First*, Plaintiffs fail to plead the requisite scienter. The Amended Complaint does not even

hypothesize, much less plead, any improper motivation that Defendants may have had to refrain from disclosing an alleged preliminary SEC investigation—especially where Plaintiffs acknowledge that 22nd Century made detailed, contemporaneous disclosures of the underlying material weakness whose accuracy Plaintiffs do not dispute. Nor does the Amended Complaint plead any facts demonstrating that this non-disclosure was a result of conscious misbehavior by Defendants. A far more likely inference from the alleged facts is that 22nd Century did not disclose the alleged SEC investigation because it—like this Court in its decision dismissing the Amended Complaint, consistent with prevailing law—reasonably believed that it had no duty to disclose a preliminary SEC investigation. This understanding of the Company's disclosure obligations certainly did not constitute "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care," as required to plead scienter.

*Second*, the Amended Complaint fails to plead, as required, that Plaintiffs' alleged losses were caused by nondisclosure of the alleged SEC investigation. Plaintiffs' theory appears to be that the non-disclosure of the alleged SEC investigation in 22nd Century's 10-K filings for 2015 and 2016 and the quarterly filings in between inflated the stock price, and the stock drop following an October 24, 2018 internet article suggesting an SEC investigation was a corrective disclosure that allegedly both demonstrates and quantifies the preceding inflation. Plaintiffs rely on trading data for this theory, but the intraday trading data shows that the stock price actually *increased* in the hours following the article's release, and the stock drop about which Plaintiffs complain occurred *before* the alleged corrective disclosure. Moreover, the Amended Complaint cannot plead that any increase in the stock price during the Class Period was due to non-disclosure of the SEC investigation because Plaintiffs themselves alleged that the "increase in the Company's stock price was plainly attributable to the paid promotions" that formed the basis of Plaintiffs' dismissed

claims. Finally, Plaintiffs cannot plead that any decrease in the stock price was due to the Company's October 26, 2018 and April 18, 2019 press releases (the "Press Releases") because the Second Circuit's decision leaves standing only Plaintiffs' omissions claims that the Company should have disclosed the alleged SEC investigation in its 2015 and 2016 SEC filings, which occurred years before the Press Releases. *See* ECF No. 58, 19-20. Even if such claims had survived, the Amended Complaint fails to allege that the Press Releases were followed by any corrective disclosure as required to plead loss causation. Thus, Plaintiffs cannot plead loss causation resulting from non-disclosure of the alleged SEC investigation.

The failure to plead these required elements requires dismissal of Count I. Count III, under Section 20(a), should likewise be dismissed because Plaintiffs fail to plead: (a) an underlying violation and (b) culpable participation by either Individual Defendant. Because the defects identified herein are incurable, the Amended Complaint should be dismissed with prejudice.

## **FACTUAL BACKGROUND**

22nd Century is a small company headquartered in Buffalo, New York focused on plant biotechnology that regulates the amount of nicotine in tobacco and cannabinoids in hemp. ¶¶ 2, 51.[1] From March 2015 to July 2019, Henry Sicignano, III served as 22nd Century's Chief Executive Officer. ¶¶ 25, 35. From April 2013 to December 2019, John Brodfuehrer served as 22nd Century's Chief Financial Officer and Treasurer. ¶ 36. Plaintiffs seek to bring this lawsuit as a class action on behalf of investors who purchased 22nd Century's stock during the purported

---

[1] References to "¶ _" are to the Amended Complaint. References to "Ex. _" are to exhibits attached to the concurrently filed Declaration of Jonathan H. Friedman of which the Court may take judicial notice on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court may take judicial notice of 22nd Century's historic stock prices and SEC filings. *See id.*; *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003); *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015); *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000).

"class period" of February 18, 2016 through July 31, 2019.[2] ¶ 1. Most of the Amended Complaint relates to the now-dismissed claim that Defendants allegedly failed to disclose payments for certain stock promotion articles; the instant discussion focuses on the limited allegations that relate to the claim based on 22nd Century's non-disclosure of an alleged SEC investigation.

Plaintiffs allege that 22nd Century's 2015 and 2016 Form 10-K filings[3] and its three 2016 Form 10-Q filings were misleading because the Company did not disclose that, in 2016, the SEC investigated material weaknesses relating to the Company's segregation of duties in its financial reporting controls. ¶¶ 46-48, 193-98. Plaintiffs acknowledge that the Company made detailed, contemporaneous disclosures of this material weakness and its 2016 remediation:

- 2015 10-K filed on February 18, 2016: "[The Company's] internal controls over financial reporting were not effective and that material weaknesses exist in our internal control over financial reporting. The material weakness consists of controls associated with segregation of duties whereby individuals have incompatable duties within the financial reporting area. To address the material weakness [22nd Century] performed additional analyses and other post-closing procedures to ensure [its] consolidated financial statements were prepared in accordance with [GAAP]." ¶ 193; *see also* Ex. 1 at 44.

- Q1 2016 10-Q filed on May 10, 2016: "[The Company's] disclosure controls and procedures were not effective and that material weaknesses described in [the Company's] Form 10-K for the year ended December 31, 2015 exist in our internal control over financial reporting." ¶ 194; *see also* Ex. 2 at 26.

- Q2 2016 10-Q filed on August 9, 2016: "During the second quarter of 2016, [the Company] hired an additional accounting employee to assist with remediating [its] material weakness associated with a lack of segregation of duties. In addition, subsequent to the end of the second quarter of 2016, [the Company] engaged a third-party consultant to assist with material weakness remediation and to assist with [its] controls and procedures over [its] financial reporting." ¶ 195; *see also* Ex. 3 at 29.

- Q3 2016 10-Q filed on November 8, 2016: "During the third quarter of 2016,

---

[2] Plaintiffs have not yet specified the class period applicable to the narrow claim that survives, but it would presumably be shorter.

[3] The Amended Complaint does not allege 22nd Century was under SEC investigation in 2015. Thus, Plaintiffs state no claims that 22nd Century's 2015 Form 10-K filing was false or misleading (¶ 193) related to the SEC investigation.

4

an additional accounting employee hired during the second quarter of 2016 was fully deployed and with the assistance of a third-party consultant, [the Company] developed and commenced the implementation of a remediation plan targeted at eliminating [the Company's] previously reported material weakness in [its] internal controls over financial reporting primarily resulting from a lack of segregation of duties." ¶ 196; *see also* Ex. 4 at 31.

- 2016 10-K filed on March 8, 2017: "During the fourth quarter of 2016, [the Company] completed the implementation and testing of a remediation plan that was targeted at eliminating [its] previously reported material weakness in [22nd Century's] internal controls over financial reporting primarily resulting from a lack of segregation of duties." ¶ 197; *see also* Ex. 5 at 47.

The Amended Complaint does not dispute the accuracy of these detailed disclosures. The Company further disclosed in its 2016 quarterly Form 10-Q filings that the Company was "subject to various claims and legal proceedings arising in the ordinary course of business. As of the date hereof, we are unable to currently assess whether the final resolution of any of such claims or legal proceedings may have a material adverse effect on us." *See* Ex. 2 at 27, Ex. 3 at 29, Ex. 4 at 31. Plaintiffs contend that the Company committed securities fraud by not further disclosing an alleged SEC investigation into the disclosed accounting weaknesses. ¶¶ 192-98. Plaintiffs do not allege that the alleged SEC investigation led to any finding of wrongdoing, penalties, fines, or other sanctions.

The Amended Complaint alleges that the purported SEC investigation was revealed on October 25, 2018 when an anonymous author, Fuzzy Panda, published a short seller report on the internet explaining that the SEC denied a FOIA request for documents relating to the Company because production could interfere with ongoing enforcement proceedings, and inferring a possible SEC investigation from this FOIA denial. ¶¶ 136-37. Plaintiffs also point to an April 17, 2019 Fuzzy Panda article that "repeated the allegations" regarding the SEC's denial of the same FOIA request. ¶ 143. Plaintiffs assert that 22nd Century's stock price decreased following the revelation of the alleged SEC investigation.

5

This Court dismissed the Amended Complaint with prejudice for failure to state a claim. Plaintiffs appealed that decision, and the Second Circuit affirmed the dismissal for all claims other than Plaintiffs' "§ 10(b) material misrepresentation claim based on the non-disclosure of the SEC investigation" and the § 20(a) claim "solely as it pertains to that particular non-disclosure." ECF No. 58, 19-20. The Amended Complaint alleges the 22nd Century's SEC filings for 2016, which described the material weakness and its remediation, should have also disclosed an alleged SEC investigation regarding that material weakness. This *omissions* claim is the only surviving claim. To the extent that the Amended Complaint also had contended that the Company's October 26, 2018 and April 18, 2019 Press Releases from years later contained affirmative misstatements, such claims remain dismissed and are not among the "non-disclosure" claims that the Second Circuit remanded for further consideration.

Two of the Amended Complaint's claims remain pending: Count I, against 22nd Century and individual defendants Henry Sicignano and John Brodfuehrer (the "Individual Defendants"), to the extent it alleges omissions under Rule 10b-5(b) of the Securities Exchange Act of 1934 (the "Exchange Act") regarding the alleged SEC investigation, and Count III, against the Individual Defendants, to the extent it alleges control person liability under Section 20(a) of the Exchange Act relating to omissions regarding the alleged SEC investigation. As explained below, Plaintiffs' claims fail.

### ARGUMENT

### I.    PLAINTIFFS' AMENDED COMPLAINT DOES NOT SATISFY THE STRICT SECURITIES FRAUD PLEADING REQUIREMENTS.

To state a claim under Rule 10b-5(b), a plaintiff must allege: (1) a material misrepresentation or omission; (2) made by the defendants with scienter; (3) in connection with the purchase or sale of a security; (4) on which the plaintiff justifiably relied; (5) economic loss;

and (6) a causal connection between the misrepresentation or omission and the plaintiff's loss. *Dura Pharm., Inc. v. Broundo*, 544 U.S. 336, 341-42 (2005); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

These elements must be alleged with sufficient specificity to satisfy the heightened pleading standards imposed by the PSLRA and Rule 9(b). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). To plead scienter, plaintiffs must "state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). Further, to plead loss causation, the complaint must identify a corrective disclosure and plead "something beyond the mere possibility of loss causation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The Amended Complaint fails to satisfy these stringent pleading requirements in that it does not allege facts giving rise to a strong inference of scienter or plead anything beyond the "mere possibility" of loss causation.[4]

Because the only remaining claim is an omissions claim for the non-disclosure of an alleged SEC investigation, the Amended Complaint must be dismissed absent factual allegations sufficient to plead that: (1) the Defendants acted with scienter *by not disclosing the alleged SEC investigation* and (2) the nondisclosure *of the alleged SEC investigation* caused Defendants to suffer losses.[5] Because the Amended Complaint fails to meet these burdens, it must be dismissed.

---

[4] For clarity, Defendants note they reserve all rights to contest all other requirements related to Plaintiffs' claims, including the failure to establish a duty to disclose or that the alleged omissions were material, at the procedurally proper time.

[5] The Amended Complaint also alleged that Messrs. Sicignano and Brodfuehrer's 10-K certifications were false and misleading as a result of the alleged omissions. ¶¶ 199-201. The Second Circuit's decision affirmed the dismissal of all but specified "non-disclosure" claims, which remaining claims did not include the false certification claims. Even if these false certification claims had survived, Plaintiffs' failure to plead an actionable omission for the reasons discussed above is fatal to these claims.

## II.    COUNT I FAILS TO PLEAD SCIENTER.

To state a claim under Rule 10b-5(b), Plaintiffs must plead scienter—i.e. an "intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). Rule 9(b) and the PSLRA require plaintiffs to plead facts giving rise to a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007); *accord ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,* 553 F. 3d 187, 198 (2d Cir. 2009); 15 U.S.C. § 78u-4(b)(2). "Both Rule 9(b) and the PSLRA require that '[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter *for each defendant*; guilt by association is impermissible.'" *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020) (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)) (emphasis added). Because the Amended Complaint lacks factual allegations sufficient to plead that Defendants acted with scienter in not disclosing the alleged SEC investigation, it must be dismissed. *See Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. ex rel Policemen's Annuity & Benefit Fund of Chi. v. FXCM Inc.*, 767 Fed. App'x 139 (2d Cir. 2019) (summary order) (upholding dismissal because plaintiffs failed to allege scienter).

To establish scienter, a plaintiff must plead with particularity specific facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Here, by either measure, Plaintiffs have failed to plead that Defendants possessed the requisite scienter.

### A.    Plaintiffs Have Not Pled Motive and Opportunity To Defraud.

Pleading motive and opportunity requires pleading "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would

entail the means and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). This standard requires pleading more than "motives possessed by virtually all corporate insiders," like the desire to maintain "a high corporate credit rating" or "a high stock price in order to increase executive compensation." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Rather, it requires allegations of fact showing that the defendant benefitted in a "concrete and personal way," (*id*. at 307-08) from the alleged fraud, such as by participating in insider sales. *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162, 2016 WL 7480415, *6 (S.D.N.Y. Dec. 12, 2016).

Here, nothing in the Amended Complaint even attempts to state a motive for the nondisclosure of the alleged SEC investigation or the statements in the Press Releases. Thus, Plaintiffs apparently do not attempt to plead scienter by alleging motive and opportunity to defraud. To be sure, the Amended Complaint contains no allegations that Messrs. Brodfuehrer or Sicignano received *any* concrete or personal benefit from the alleged failure to disclose the SEC investigation in the Company's SEC filings, or the statements contained in the Press Releases. *See id.* Notably, virtually all of the allegations aimed at pleading scienter relate to the dismissed stock promotion claim, and are irrelevant to the surviving claim. For example, the Amended Complaint contends Mr. Sicignano received, in late 2017, a bonus and raise in "for his work in 2017," and that he "had not received a bonus in 2015 or 2016." ¶ 128. The Amended Complaint specifically attributes Mr. Sicignano's increased compensation to the purported stock promotion scheme. ¶¶ 127-28. Nowhere does the Amended Complaint attempt to link these pay increases to the alleged nondisclosure of the SEC investigation. Nor could the complaint attempt to link the *2017* pay increases to the *2018* and *2019* Press Releases. Regardless, such allegations would be insufficient as a matter of law because the case law is clear that the motive to increase one's compensation is

9

"possessed by virtually all corporate insiders" and therefore insufficient to plead scienter. *See, e.g., Novak*, 216 F.3d at 307; *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 313 (S.D.N.Y. 2021) ("[A]s the Second Circuit has held, incentive-based compensation is typically insufficient to support an inference of scienter."). Further, as to Mr. Brodfuehrer, there are *no* allegations suggesting that he had a motive to avoid disclosing the alleged SEC investigation.

To the extent that Plaintiffs attempt to allege Defendants had a motive to defraud in order to prop up the Company's stock prices, such generalized, legitimate business motives common to all corporations are not concrete, personal benefits and are thus inadequate to plead motive under Rule 9(b) or the PSLRA. *See, e.g., Cortina*, 2016 WL 7480415 at *6; *Kalnit,* 264 F.3d at 139-42; *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 209 (S.D.N.Y. 2012) (holding motives common to all corporations and corporate officers "do not constitute motive for the purposes of" pleading scienter); *In re Emex Corp. Sec. Litig.*, No. 01 CIV. 4886, 2002 WL 31093612, at *6 (S.D.N.Y. Sept. 18, 2002) (finding plaintiffs failed to plead scienter where they "only allege[d] defendants committed fraud in order to increase the share price . . . in advance of a rights offering and proposed sale of common stock" because "a desire to raise much needed capital is an insufficient generalized motive to support an inference of scienter.").[6] The Amended Complaint thus fails to plead scienter via motive and opportunity.

### B.    Plaintiffs Have Not Pled Strong Circumstantial Evidence of Conscious Misbehavior.

As discussed above, because Plaintiffs do not allege any facts indicating that Defendants

---

[6] In rejecting such allegations, "[c]ourts have . . . described 'a desire to raise much needed capital' as amongst the broadest, most generalized, and most commonplace motives of corporate motivation for any action." *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2005 WL 2277476, at *19 (E.D.N.Y. Sept. 19, 2005); *see San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.,* 75 F.3d 801, 814 (2d Cir. 1996); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 531 (S.D.N.Y. 2009).

had any motive to commit fraud, "the strength of the circumstantial allegations must be correspondingly greater." *ECA, Local 134 IBEW*, 553 F.3d at 199 (citing *Kalnit*, 264 F.3d at 142). To establish strong circumstantial evidence of conscious misbehavior or recklessness, a plaintiff must plead facts demonstrating that the defendant engaged in "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care." *Novak*, 216 F.3d at 308 (citations and quotations omitted). Plaintiffs fail to meet this high standard.

The nondisclosure of an alleged SEC investigation that found no wrongdoing and imposed no penalties does not come close to the requisite "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care," especially where Plaintiffs admit the Company made accurate, detailed disclosures of the underlying accounting issue, and the case law at the time consistently held that disclosure of confidential investigations was not required. *See Novak*, 216 F.3d at 308; *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 607, 616 (S.D.N.Y. 2017) (no duty to disclose SEC investigation resulting in $20 million fine despite general statements regarding investigations); *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 27 (E.D.N.Y. 2021) (rejecting plaintiffs' contention that defendants should have disclosed an SEC and other investigations because no duty to disclose); *In re Lions Gate*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("a government investigation, without more, does not trigger a generalized duty to disclose") (citing *In re UBS AG Sec. Litig.*, No. 07-cv-11225 (RJS), 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014)); *see also Ulbricht v. Ternium S.A.*, No. 18CV6801PKCRLM, 2020 WL 5517313, at *1 (E.D.N.Y. Sept. 14, 2020) (no duty to disclose bribery scheme that led to a favorable transaction despite disclosure of other details regarding the transaction). Nor is it sufficient to rely on the mere existence of a government investigation to

11

plead scienter: "government investigations cannot bolster allegations of scienter that do not exist, and, as currently plead, the government investigations are just that, investigations." *Cortina*, 2016 WL 7480415 at *8. A "[d]efendants' fraudulent intent cannot be inferred from the mere existence of two inconclusive investigations separated by over two years, especially in the absence of allegations of motive."[7] *Id.*

Further, to the extent that Plaintiffs assert the October 2018 and April 2019 Press Releases establish scienter, they cannot establish that the Company acted with the requisite scienter *years earlier* when it did not disclose the alleged SEC investigation in 2016 public filings. Further, the October 2018 Press Release stated that the Company had "not received any notice of, and the Company has no knowledge of, any *enforcement* proceeding against 22nd Century" (¶ 206) (emphasis added).[8] *Id.* The Amended Complaint does not allege that Defendants were *ever* the subject of any enforcement proceeding. Notably, enforcement proceedings occur only *after* an investigation and only if, based on the investigation and subsequent deliberation, the SEC has decided to charge violations of the securities laws.[9]

---

[7] This conclusion is not changed by the allegation that Mr. Brodfuehrer told an anonymous confidential witness that he feared losing his CPA license or going to jail. ¶ 49. First, confidential witness's statements should be closely examined and are often inadequate to satisfy pleading requirements. *See Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 217 (2d Cir. 2010) (summary order). Second, even if this allegation is credited, it plausibly suggests only that Mr. Brodfuehrer was concerned about the alleged SEC investigation, and does not plausibly suggest that Mr. Brodfuehrer knew he was acting improperly by not disclosing the alleged SEC investigation.

[8] Indeed, the Amended Complaint further asserts "Defendants knew that their statements were *at the very least materially misleading*," implicitly recognizing that Plaintiffs cannot allege that the statements were false, much less that Defendants knew the statements were false. ¶ 206 (emphasis supplied). Moreover, an anonymous short seller's unauthenticated speculation in an internet article that 22nd Century may be subject to SEC investigation (¶ 137) is not notice.

[9] Enforcement proceedings and investigations are distinct proceedings. The April 17, 2019 article recognized this distinction, noting, "In October we published SEC FOIA's in an article . . . that showed that the company was likely under active investigation. . . . management has focused on telling investors that they currently don't have an 'SEC Enforcement action.' . . . *An enforcement*

Similarly, the 2019 Press Release stated that the April 17, 2019 article "falsely alleges that 22nd Century *is* supposedly under SEC investigation" (¶ 190)—this is not a denial that the Company had *ever* been investigated, but a present-tense denial in 2019 consistent with an alleged investigation having occurred years earlier in 2016. Indeed, Plaintiffs do not allege that the Company was under investigation when the Press Releases were issued in 2018 and 2019; the Amended Complaint asserts only that 22nd Century "had been, and *might still be*" under investigation. *Id.* (emphasis supplied). Notably, the October 25, 2018 article itself admitted that the author was "unsure if 22nd Century Group is aware of an active investigation since . . . the Commission conducts its investigations on a non-public basis." Ex. 6 at 2. That the Company "might" still be under investigation is insufficient to establish that the Press Releases contained knowing, false statements representing an "extreme departure from the standards of ordinary care." *See Novak*, 216 F.3d at 308. Put differently, knowledge of a purported 2016 SEC investigation would not establish knowledge that an investigation was continuing *years later*, much less show that Defendants were "highly unreasonable" in stating they were unaware of such regulatory action two years later. *See id*. Both Press Releases are consistent with the allegation that the Company "had been" investigated by the SEC in 2016, even with the Amended Complaint's speculative musing that the Company "might still be" under investigation.

---

*action only comes at the conclusion of an investigation*." Ex. 8 (emphasis supplied). The SEC has also explained the difference between enforcement proceedings and investigations, noting that investigations may be closed without recommending an enforcement action. *See, e.g.,* "Investor Bulletin: SEC Investigations" (October 22, 2014) available here: https://www.sec.gov/oiea/investor-alerts-bulletins/ib_investigations; *see also* Procedures Relating to the Commencement of Enforcement Proceedings and Termination of Staff Investigations, Securities Act Release No. 5310; Exchange Act Release No. 9796; Investment Company Act Release No. 7390; Investment Advisors Act Release No. 366 (Sept. 27, 1972) (prior to *enforcement proceeding*, subject of *investigation* must receive notice of charges and proposed enforcement recommendation).

Plaintiffs also include boilerplate, conclusory allegations that Defendants acted with intent to defraud investors because Messrs. Sicignano and Brodfuehrer, by virtue of their positions with the Company and signing of the SEC filings, must have been aware of the supposed fraudulent omissions. ¶ 228. This argument misses the mark: generic allegations regarding awareness of fraud are insufficient to plead conscious misbehavior or recklessness. *See Foley*, 861 F. Supp. 2d at 212 (holding that "[s]cienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information."). Plaintiffs "cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements." *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Intern. N.V.*, 89 F. Supp. 3d 602, 615 (S.D.N.Y. 2015) (collecting cases). Moreover, the Company's detailed and accurate disclosures regarding its accounting weaknesses undermine any plausible assertion that Defendants intentionally omitted mention of the SEC investigation to defraud investors, especially where the law at the time generally did not require such disclosure. *See In re Inv. Tech. Grp.*, 251 F. Supp. 3d at 616. Plaintiffs' conclusory and ambiguous contention that Defendants "lied to conceal the existence of the SEC investigation" (¶ 204) is conjecture lacking any factual support.

Plaintiffs plead no facts that would support a strong inference that Defendants avoided disclosure of the alleged SEC investigation for the purpose of deceiving or defrauding, and certainly not with the particularity required under the PSLRA and Rule 9(b) to establish a cogent and compelling inference of scienter. A far more likely inference from the factual allegations is that the Defendants believed their detailed disclosures of the material weakness were sufficient, considered any alleged preliminary SEC investigation immaterial, and reasonably understood that

14

preliminary, confidential investigations need not be disclosed pursuant to prevailing law. *See, e.g., In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d at 607, 616; *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d at 27. The Amended Complaint contains no factual allegations that would support Plaintiffs' claims that Defendants possessed an intent to defraud. Plaintiffs' vague, conclusory, and tenuous attempts to allege scienter are insufficient and require dismissal. *See ECA, Local 134 IBEW*, 553 F. 3d at 198.[10]

### III.   COUNT I FAILS TO ADEQUATELY PLEAD LOSS CAUSATION.

The failure to allege "something beyond the mere possibility of loss causation"—i.e., a causal link between Defendants' misconduct and Plaintiffs' harm—requires dismissal. *Twombly*, 550 U.S. at 557 (2007); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). Loss causation requires plaintiffs to identify: (1) a corrective disclosure that revealed improperly hidden information "that, when disclosed, negatively affected the value of the security"; or (2) materialization of a concealed risk, either of which foreseeably caused the stock price to drop. *Lentell*, 396 F.3d at 173-74. "Alleging that the market reacted negatively to new information about a publicly-traded company, without more, is insufficient to plead loss causation . . . ." *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (summary order) (citing *Dura Pharm.*, 544 U.S. at 345); *see also In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 308 (E.D.N.Y. 2002) (dismissing Rule 10b-5 claim for failure to plead loss causation and holding loss complained of must be foreseeable

---

[10] Further, Plaintiffs may not rely upon group pleading to plead scienter: "Scienter must be separately pled and individually supportable as to each defendant." *In re C.D.T.S. v. UBS AG*, No. 12 CIV 4924, 2013 WL 6576031, *6 (S.D.N.Y. Dec. 13, 2013). The Amended Complaint fails to do so. Nor may Plaintiffs point to the core operations doctrine to support scienter, as the Second Circuit has noted that it is not clear whether this doctrine survived the enactment of the PSLRA. *Frederick v. Mechel OAO*, 475 Fed. App'x 353, 356 (2d Cir. 2012). Even if that doctrine remains viable, Plaintiffs do not plead facts showing the alleged SEC investigation resulting in no finding of wrongdoing, fines, or penalties was core to 22nd Century's business.

consequence of misrepresentation).

Of course, "[a] concealed fact cannot cause a decrease in the value of a stock before the concealment is made public." *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV.3288 DLC, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005). Therefore, courts routinely dismiss complaints where the stock price dropped prior to the alleged corrective disclosure. *Dura Pharms.*, 544 U.S. at 346 (holding dismissal proper where there was no corrective disclosure before the alleged economic loss occurred); *Lentell*, 396 F.3d 175 n.4 (affirming dismissal for failure to plead loss causation because "[defendant's] concealed opinions . . . could not have caused a decrease in the value of those companies before the concealment was made public."); *Collier v. Aksys Ltd.*, No. 3:04CV1232(MRK), 2005 WL 1949868, at *13 (D. Conn. Aug. 15, 2005), *aff'd,* 179 F. App'x 770 (2d Cir. 2006) (granting motion to dismiss for failure to plead loss causation because, under *Lentell*, losses associated with purchases made prior to corrective disclosure "could not be causally linked to the misstatements and omissions, because *the truth . . . had not yet been revealed to the market*." (emphasis supplied)); *accord Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 243 (S.D.N.Y. 2006), *aff'd,* 216 F. App'x 14 (2d Cir. 2007) (dismissing claim for failure to plead loss causation because losses occurred before alleged fraud revealed to market). In sum, courts consistently dismiss cases where losses are suffered before a corrective disclosure. *See Dura*, 544 U.S. at 346. The Amended Complaint fails to plead loss causation for several reasons.

First, Plaintiffs allege that the October 25, 2018 article was a corrective disclosure causing the Company's stock price to drop 11 cents (¶¶ 139, 221), but this small decrease in fact occurred *before* the article's publication. Plaintiffs rely on trading data from October 25, 2018 to assert that the stock price dropped in response to the article's publication, but they allege only that stock price closed on October 24 at $2.56 per share and closed on October 25 at $2.45 per share. *Id*. The

16

October 25 article was published at 12:00 p.m. eastern time. Ex. 6 at 1. Intraday trading data reveals that, by the end of the 11:00 a.m. hour—immediately *before* the alleged corrective disclosure— the stock price had already dropped to $2.46 per share. Ex. 7 at E6.[11] Accordingly, the price drop about which Plaintiffs complain occurred *before* the purported corrective disclosure was published, meaning the revelation of the supposed SEC investigation "could not possibly have caused the economic loss." *See Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (affirming dismissal for failure to plead loss causation where alleged corrective disclosure disclosed stock price decline "*before* the article was published." (emphasis in original)); *accord Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 409 (S.D.N.Y. 2006) (dismissing complaint for failure to plead loss causation).

Indeed, the Company's stock price actually *increased* in the hours after the article was published, rising by half a cent to $2.465 (0.20%) in the hour following the article's noon release (Ex. 7 at F5, G5) and continuing to increase to $2.49 by the last trade of the 2:00 p.m. hour (i.e., immediately before 3:00 p.m.) (Ex. 7 at E3). Plaintiffs allege the Company's shares traded with moderate to heavy volume in an efficient market (¶ 216 (c)-(d)), meaning "the market is presumed to analyze and digest immediately all public information." *Stein v. Tangoe, Inc.*, No. 3:13-CV-00286 (VLB), 2014 WL 12767210, at *22 (D. Conn. Sept. 30, 2014). Thus, the price *decrease* in the hours preceding the article's publication, and the price *increase* in the hours following the article's publication are fatal to Plaintiff's theory of loss causation, which is premised on a non-existent price decrease in response to the article. The movement of the stock price on October 25, 2018—the data on which Plaintiffs rely as the sole foundation for their loss causation argument—

---

[11] The Court may take judicial notice of this trading data. *Chambers*, 282 F.3d at 153; *Kavowras*, 328 F.3d at 57; *Sharette*, 127 F. Supp. 3d at 75; *Ganino*, 228 F.3d at 167 n.8.

confirms that the stock did not lose any value in the wake of the article.

Second, to the extent that Plaintiffs attempt to assert the April 17, 2019 article was a corrective disclosure, this claim fails because this article merely "*repeated* the allegations" contained in the October 25, 2018 article, and thus cannot constitute a corrective disclosure. AC ¶ 143 (emphasis added). In short, because this second article did not contain any new information regarding the SEC investigation, it cannot be a corrective disclosure. *See In re Omnicon Grp., Inc Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). In addition, the stock price also decreased by only three cents, or 1.6%, on April 17, 2019 (¶ 143), an immaterial change, insufficient to plead a corrective disclosure. *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 714-15 (S.D.N.Y. 2013) (dismissing Exchange Act claims where stock price's "minimal decline in value" of 1.5% in one day following alleged corrective disclosure was insufficient to plead loss causation). Moreover, this article, which was entitled "22nd Century: Key Patents Behind MRTP and PMTA Applications Have Expired!", was focused primarily on perceived weaknesses unrelated to the alleged SEC investigation. Plaintiffs allege no reason to believe that the three-cent decrease in the stock price on April 17 was attributable to the article's repetition of prior allegations about an SEC investigation relating to an issue that had been disclosed and promptly resolved years earlier.

Third, Plaintiffs also do not allege that a failure to disclose a purported SEC investigation regarding financial reporting controls caused any foreseeable losses. Instead, Plaintiffs acknowledge that the Company contemporaneously disclosed both the underlying material weakness and its remediation. ¶¶ 192-97. Plaintiffs do not claim that the alleged SEC investigation resulted in any finding of wrongdoing, charges, fines, or penalties. Plaintiffs do not, and cannot, explain how the retrospective disclosure of an alleged SEC investigation could have caused losses,

18

especially where the alleged corrective disclosure did not even reveal the focus of the alleged

investigation. Rather, the article expressly disclaimed any such information, noting:

> we cannot deduce exactly what the SEC is investigating . . . , nor should the existence of an investigation mean that a person, entity or security has violated the law. We would only discover these things if/when the SEC brought forth any charges. We are unsure if 22nd Century Group is aware of an active investigation since they have not replied to our request for comment and since the Commission conducts its investigations on a non-public basis.

Ex. 6 at 2.

Thus, the alleged corrective disclosure did not even reveal the allegedly omitted

information. Instead, it revealed only the possibility of an SEC enforcement proceeding or

investigation. Mere revelation of the *possible* existence of a regulatory investigation is not a

corrective disclosure, especially when, as here, "there is no logical connection between" the

alleged investigation and the defendants' alleged fraud. *Plumbers, Pipefitters & MES Local Union

No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012);

*see also Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013). The alleged SEC investigation

pertained to 22nd Century's lack of segregation of duties in the financial reporting area (¶ 198),

but Plaintiffs have not alleged that these supposed accounting failures, or any alleged SEC

investigation, caused its stock price to fall. *See Cortina*, 2016 WL 7480415 at *8. A short-seller's

assertion that an SEC investigation exists is not a materialization of the risk associated with an

SEC investigation—and, here, Plaintiffs do not and cannot allege any finding of wrongdoing,

charges, or penalties from the alleged SEC investigation. Thus, Plaintiffs have not pled loss

causation, and this failure requires dismissal of all claims.

Fourth, Plaintiffs plainly attribute their alleged losses in the Amended Complaint to the

purported stock promotion activity, and not the SEC investigation. For example, Plaintiffs allege

"[t]he stratospheric increase in the Company's stock price was plainly attributable to the paid

19

promotions"—i.e., *not* attributable to the nondisclosure of the SEC investigation. ¶ 10; *see also* ¶ 125 ("The articles also massively boosted the Company's share price."). Moreover, the alleged corrective disclosure included information regarding the purported stock promotion activity and reported that the Company still had no Modified Risk Tobacco Product application pending. ¶ 138; Ex. 6 at 3-5. There is no plausible basis to assume, as Plaintiffs ask the Court to do, that any drop in the Company's stock price was caused by the revelation of a past SEC investigation that resulted in no fines, penalties, or sanctions rather than other factors, such as this other information. *See City of Westland Police & Fire Ret. Sys.*, 928 F. Supp. 2d at 714-15 (finding plaintiff is "obliged to disaggregate" losses likely caused by factors other than alleged corrective disclosure).

Finally, to the extent that Plaintiffs attempt to base their claims on Defendants' Press Releases (¶¶ 187-91) as containing actionable misstatements, the Second Circuit foreclosed this possibility by limiting the surviving claims to "non-disclosure" of the alleged SEC investigation. *See* ECF No. 58, 19-20. Nevertheless, the Amended Complaint does not plead a corrective disclosure, or any associated loss, following the Press Releases. Indeed, the Press Releases came *after* the October 25, 2018 internet article that Plaintiffs assert revealed the "truth" of the alleged investigation. Nor does the Amended Complaint allege the Press Releases concealed a risk that later materialized. In short, the failure to plead a corrective disclosure and loss causation arising from these statements precludes claims based on these statements. *See Dura Pharm.*, 544 U.S. at 345; *Harris*, 135 F. Supp. 3d at 173 n.30 (citing cases).

The Amended Complaint's failure to plead loss causation based on non-disclosure of the alleged SEC investigation requires dismissal of all remaining claims.

## IV.   COUNT III FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

"To establish a prima facie case of control person liability, a plaintiff must show (1) a

primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. The Amended Complaint fails to establish a prima facie case of control person liability because, as explained above, it fails to allege any primary securities violation sufficiently. *Shetty v. Trivago N.V.*, 796 Fed. App'x 31 (2d Cir. 2019) (summary order) (affirming dismissal of Section 20(a) claims because such claims are "'necessarily predicated on a primary violation of securities law,'" and plaintiff failed to show a primary violation) (quoting *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004)).

In addition, for the reasons stated above, the Amended Complaint fails to plead with particularity any facts demonstrating the required conscious misbehavior or culpable participation by Messrs. Sicignano and Brodfuehrer in the alleged fraud. Instead, the Amended Complaint contains only conclusory allegations that Messrs. Sicignano and Brodfuehrer purportedly exercised control over the alleged material omissions, which are insufficient to support control person liability. *See Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065, at *23-24 (S.D.N.Y. Sept. 23, 1998) ("the PSLRA requires a plaintiff, at the pleading stage, to allege particular facts that give rise to a 'strong inference' of the requisite state of mind."). For the reasons discussed above, Plaintiffs have failed to plead culpable participation. *See* Section II, *supra*. These defects require dismissal of Count III.

## CONCLUSION

For the foregoing reasons, and because an amendment could not cure Plaintiffs' failure to plead scienter and loss causation, as discussed herein, the Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: August 8, 2022

Respectfully submitted,

FOLEY & LARDNER LLP

*/s/ Jonathan H. Friedman*_____
John A. Tucker (admitted *pro hac vice*)
1 Independent Drive
Jacksonville, FL 32202
Telephone: 904-633-8924
Email: jtucker@foley.com

Jonathan H. Friedman
90 Park Avenue
New York, NY 10016
Telephone: 212-338-3416
Email: jfriedman@foley.com


and

Charles C. Ritter, Jr.
DUKE, HOLZMAN, PHOTIADIS
& GRESENS LLP
701 Seneca Street, Suite 750
Buffalo, NY 14210
Telephone: (716) 855-1111
Email: critter@dhpglaw.com

*Counsel for Defendants*

22