**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOSEPH NOTO, GARDEN STATE TIRE CORP., and STEPHENS JOHNSON, Individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>22ND CENTURY GROUP, INC., HENRY SICIGNANO, III AND JOHN T. BRODFUEHRER,<br><br>       Defendants. | Civil Action No. 19-cv-01285-JLS<br><br><br>**ORAL ARGUMENT REQUESTED** |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' SECOND MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CLASS ACTION COMPLAINT**

> **POMERANTZ LLP**
> Brian Calandra
> 600 Third Avenue, 20th Floor
> New York, New York 10016
> Telephone: (212) 661-1100
> Facsimile: (212) 661-8665
> bcalandra@pomlaw.com
>
> *Counsel for Lead Plaintiffs Joseph Noto,*
> *Garden State Tire Corp., and Stephens*
> *Johnson*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 5

    A.    Background of the Company ................................................................... 5

    B.    The SEC Investigation ........................................................................... 5

    C.    Defendants' False and Misleading SEC Filings ..................................... 6

    D.    The 2016 Offerings ................................................................................ 7

    E.    The Truth Begins to Emerge ................................................................... 7

    F.    Procedural History ................................................................................. 8

III.  ARGUMENT ..................................................................................................... 9

    A.    Legal Standard ....................................................................................... 9

    B.    The Panel Held that All Statements in the AC Alleged to be Misleading that Concern the SEC Investigation are Actionable ..................................... 10

    C.    The AC Pleads a Strong Inference of Scienter ..................................... 11

        1.    Defendants' Actual Knowledge and Denials of the SEC Investigation Support a Strong Inference of Scienter ..................................... 11

        2.    Additional Allegations Bolstering a Strong Inference of Defendants' Conscious Misbehavior or Recklessness ................................ 15

        3.    The AC Alleges Defendants' Motive to Commit Fraud ........................... 16

        4.    The AC Alleges 22nd Century's Corporate Scienter ............................. 18

        5.    Defendants' Scienter Can Be Inferred from Defendants' Positions and the Importance of the Investigation to 22nd Century .................................. 18

        6.    A Holistic View Supports a Strong Inference of Scienter ....................... 19

    D.    The AC Adequately Pleads Loss Causation ......................................... 20

    E.    The AC Alleges Section 20(a) Claims Against Sicignano and Brodfuehrer ........ 24

    F.    Plaintiffs Respectfully Request the Opportunity to Amend ................. 25

IV.  CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012)................................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).................................................................................................9

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................9

*Bond v. Clover Health Invs., Corp.*,
  2022 WL 602432 (M.D. Tenn. Feb. 28, 2022) ............................................................13, 14, 23

*Bongiorno v. Baquet*,
  2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021)........................................................................21

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  556 F. Supp. 3d 100 (D. Conn. 2021)...................................................................................17

*Calderon v. Astrue*,
  683 F. Supp. 2d 273 (E.D.N.Y. 2010) ..................................................................................14

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014)...............................................................................................10

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)...............................................................................................21

*Christine Asia Co. v. Ma*,
  718 F. App'x 20 (2d Cir. 2017) .....................................................................................13, 19

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012)..................................................................................11

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
  2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ......................................................................23

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020)..................................................................................24

*Cortina v. Anavex Life Scis. Corp.*
  2016 WL 7480415 ...............................................................................................14, 17

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................................................20

*Employees' Ret. Sys. of Gov't of Virgin Islands v. Blanford*,
  794 F.3d 297 (2d Cir. 2015)...........................................................................................12

*Foley v. Transocean Ltd.*,
  861 F. Supp. 2d 197 (S.D.N.Y. 2012)............................................................................17

*Ganino v. Citizens Util. Co.*,
  228 F.3d 154 (2d Cir. 2000)............................................................................................21

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
  2013 U.S. Dist. LEXIS 43774 (S.D.N.Y. Mar. 27, 2013) .............................................20

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  93 F. Supp. 2d 424 (S.D.N.Y. 2000)...............................................................................17

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010).............................................................................20

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  2003 WL 23101782 (W.D.N.Y. Mar. 28, 2003)..............................................................21

*In re Bristol Myers Squibb Co. Sec. Litig.*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008).............................................................................21

*In re Cabletron Sys., Inc.*,
  311 F.3d 11 (1st Cir. 2002).............................................................................................16

*In re Cachu*,
  321 B.R. 716 (Bankr. E.D. Cal. 2005).............................................................................21

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018).............................................................................24

*In re Emex Corp. Sec. Litig.*,
  2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002)...............................................................17

*In re Gentiva Sec. Litig.*,
  971 F. Supp. 2d 305 (E.D.N.Y. 2013) ............................................................................18

*In re Hain Celestial Grp., Inc. Sec. Litig.*,
  20 F.4th 131 (2d Cir. 2021) ............................................................................................19

iv

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ...........................................................18

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  251 F. Supp. 3d 596 (S.D.N.Y. 2017)..............................................................13, 24

*In re Lions Gate*,
  165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016)..................................................................13

*In re Openwave Sys. Secs. Litig.*,
  528 F. Supp. 2d 236 (S.D.N.Y. 2007)....................................................................21

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009)....................................................................17

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)......................................................................................9

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ........................................................12

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................................................................22

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993).................................................................................16, 17

*In re Tronox, Inc. Sec. Litig.*,
  2010 WL 2835545 (S.D.N.Y. June 28, 2010) .......................................................24

*In re Twinlab*,
  103 F. Supp. 2d at 206-07......................................................................................17

*In re VEON Ltd. Sec. Litig.*,
  2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017).......................................................18

*In re Worldcom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................23

*In re XP Inc. Sec. Litig.*,
  524 F. Supp. 3d 23 (E.D.N.Y. 2021) .....................................................................13

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)...................................................................................12

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)...................................................................................17

v

*Kavowras v. New York Times Co.*,
 328 F.3d 50 (2d Cir. 2003)..............................................................................................21

*Kopchik, III v. Town of E. Fishkill, N.Y.*,
 759 F. App'x 31 (2d Cir. 2018) ......................................................................................25

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
 10 F. Supp. 3d 504 (S.D.N.Y. 2014)..............................................................................20

*Lea v. TAL Educ. Grp.*,
 837 F. App'x 20 (2d Cir. 2020) ......................................................................................11

*Lentell v. Merrill Lynch & Co.*,
 396 F.3d 161 (2d Cir. 2005)............................................................................................20

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015)......................................................................................18, 25

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011)..........................................................................................................14

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
 164 F. Supp. 3d 568, 587 (S.D.N.Y. 2016) ...................................................................25

*Meyer v. Concordia Int'l Corp.*,
 2017 WL 4083603 (S.D.N.Y. July 28, 2017) ................................................................24

*Meyer v. Greene*,
 710 F.3d 1189 (11th Cir. 2013) .....................................................................................23

*Moshell v. Sasol Ltd.*,
 481 F. Supp. 3d 280 (S.D.N.Y. 2020),
 *reconsideration denied*, No. 20 CIV. 1008 (JPC),
 2021 WL 3174414 (S.D.N.Y. July 24, 2021) ................................................................15

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
 455 F. App'x 10 (2d Cir. 2011) .....................................................................................19

*Next Millenium Realty, LLC v. Adchem Corp.*,
 690 F. App'x 710 (2d Cir. 2017)....................................................................................13

*Noto v. 22nd Century Grp., Inc.*,
 35 F.4th 95 (2d Cir. 2022) ..................................................................................... *passim*

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000)......................................................................................11, 13

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
886 F. Supp. 2d 328 (S.D.N.Y. 2012)......................................................................23

*Richman v. Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012)......................................................................15

*Rizzo v. MacManus Grp., Inc.*,
158 F. Supp. 2d 297 (S.D.N.Y. 2001)......................................................................15

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)......................................................................................17

*S.E.C. v. Infinity Grp. Co.*,
212 F.3d 180 (3d Cir. 2000)....................................................................................20

*San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.*,
75 F.3d 801 (2d Cir. 1996)......................................................................................17

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
545 F. Supp. 3d 120 (S.D.N.Y. 2021)......................................................................22

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
547 F.3d 406 (2d Cir.2008).....................................................................................22

*Steginsky v. Xcelera Inc.*,
741 F.3d 365 (2d Cir. 2014)......................................................................................9

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
531 F.3d 190 (2d Cir. 2008)....................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................11

*Van Dongen v. CNinsure Inc.*,
951 F. Supp. 2d 457 (S.D.N.Y. 2013)......................................................................15

*Ward v. Am. Airlines, Inc.*,
2020 WL 8300505 (N.D. Tex. Oct. 16, 2020) ........................................................21

## Statutes

15 U.S.C. 78u-4 ........................................................................................................9

Securities Exchange Act of 1934 Section 20(a) ...................................................24, 25

Freedom of Information Act .........................................................................................7

PSLRA ....................................................................................................................9, 19

vii

Securities Exchange Act of 1934 Section 10(b) ......................................................1, 11

## **Rules**

Fed. R. Civ. P. 8.................................................................................................................20

Fed. R. Civ. P. 9(b) .............................................................................................................9

17 CFR § 240.10b-5................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).......................................................................................................9

Fed. R. Civ. P. 15(a)(2).....................................................................................................25

Joseph Noto, Garden State Tire Corp., and Stephens Johnson ("Plaintiffs") respectfully submit this Memorandum of Law in opposition to Defendants 22nd Century Group, Inc. ("22nd Century" or the "Company"), Henry Sicignano, III ("Sicignano"), and John T. Brodfuehrer's ("Brodfuehrer," and, together with Sicignano, "Individual Defendants," and, together with Sicignano and the Company, "Defendants") second Motion to Dismiss the Amended Class Action Complaint (the "AC," ECF No. 31 and "Motion," ECF No. 64).

## I.    INTRODUCTION

In reversing in part this Court's dismissal of the AC, the Second Circuit panel (the "Panel") held that Plaintiffs sufficiently alleged that Defendants made multiple statements in public filings and press releases that were false and misleading because they failed to disclose or falsely denied the existence of an SEC investigation into an accounting weakness at 22nd Century.[1] *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 106 (2d Cir. 2022). Although the Panel affirmed dismissal of Plaintiffs' claims arising out of Defendants' misstatements concerning an alleged scheme to use illegal promotional articles to inflate the Company's stock price, it unequivocally held that "the complaint adequately allege[s] that defendants violated Rule 10b-5(b) ***both by first omitting mention of the SEC investigation and then by affirmatively denying its existence***." *Id.*

The Panel remanded the action for this Court to consider whether the AC sufficiently alleges scienter and loss causation for these misleading statements under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder. As set forth below, the AC's allegations exceed the applicable pleading standards and the Motion should be denied.

---

[1] For ease of reading, in all citations internal quotations and citations are omitted and all emphasis is added unless otherwise indicated.

With regard to the statements the Panel found alleged to be false and misleading, the AC alleges that in February 2016 22nd Century was nearly insolvent. As Defendants were preparing to embark on a series of secondary public offerings in a desperate bid to raise capital, the SEC opened an investigation into a material weakness in the Company's accounting controls concerning the segregation of duties. The investigation was so serious that Brodfuehrer, then 22nd Century's CFO, feared he could lose his accounting ("CPA") license or go to jail. To make matters worse, 22nd Century was (and is) effectively a microcap tobacco start-up company, and Defendants knew that investors would be skeptical of a start-up that was running out of money *and* under SEC investigation for accounting irregularities. To keep the offerings from utterly failing and limit the dilution of current shareholders—including the Individual Defendants—Defendants disclosed the accounting weakness in the Company's public filings, *but not the investigation*, misled investors as to the seriousness of the weakness and the risks of investing.

Using these misrepresentations, 22nd Century issued *three* secondary offerings in rapid succession that yielded increasingly diminishing returns but ultimately reaped $20.4 million, which was enough for the Company to keep operating. Defendants would have gotten away with their scheme, but 22nd Century's former CEO, Joe Pandolfino ("Pandolfino") revealed the SEC investigation in articles published in October 2018 (the "October 2018 Article") and April 2019 (the "April 2019 Article") under the pseudonym "Fuzzy Panda." The Company's share price fell upon the disclosures of the investigation in the Articles, harming investors.

Although Defendants knew of the investigation and that Pandolfino had written the articles, they issued two press releases responding to the articles (the "October 2018 Response" and the "April 2019 Response," respectively). The Responses *stridently* denied the existence of an investigation and accused Pandolfino of being an anonymous short seller who had "launched a

2

smear campaign in an effort to dupe [the Company's] shareholders" through "self-serving hit piece[s]." The Company's share price continued to fall, and Plaintiffs initiated this action.

After this Court dismissed Plaintiffs' claims arising out of the concealment of the SEC investigation (along with claims concerning a promotional article scheme), Plaintiffs appealed to the Second Circuit, which reversed in part. The Panel held that "by not mentioning the investigation, [Defendants'] disclosures of the accounting deficiencies were misleading" because "Defendants had a duty to disclose the SEC investigation in light of the specific statements they made about the Company's accounting weaknesses." *Noto*, 35 F.4th at 105. The Panel further held that Defendants' denials of the investigation in the October 2018 and April 2019 responses "were affirmatively misleading in their own right." *Id.* at 106.

The Panel then remanded the action to this Court to consider the AC's scienter and loss causation allegations, *id.* at 106 n.51, and Defendants filed the Motion asserting that the Panel held that only statements in SEC filings were sufficiently alleged to be misleading and that the AC fails to allege either scienter or loss causation. Defendants are wrong.

*First*, the plain language held that both disclosures of accounting weaknesses in the 2015 10-K and Q1, Q2, and Q3 2016 10-Qs were misleading as well as the false denials in the October 2018 and April 2019 Responses. *Noto*, 35 F.4th at 106 ("the complaint adequately allege[s] that defendants violated Rule 10b-5(b) ***both by first omitting mention of the SEC investigation and then by affirmatively denying its existence***"). Since certifications attached to the filing 2015 10-K falsely averred that the filing did omit material facts, the certification is actionable as well.

*Second*, the AC alleges Defendants' scienter by alleging that Defendants had actual knowledge of the SEC investigation. Brodfuehrer told a former subordinate, CW2,[2] about the

---

[2] Confidential witnesses ("CWs") are referred to in the masculine to protect their anonymity.

investigation, and the Company retained counsel in connection with the investigation and met with the SEC. Defendants' denials of the existence of the investigation also provide *powerful* evidence of scienter, as does Defendants' efforts to conceal Pandolfino's identity to avoid making his articles seem credible. Finally, Defendants had a motive to conceal the investigation because they were desperate to keep 22nd Century operating and limit the dilutive effects of the offerings.

Defendants assert that these allegations are insufficient because, until the *Noto* decision, Second Circuit case law did not require companies to disclose investigations, the denials in the October 2018 and April 2019 Responses were actually literally true, and a general motive to obtain operating capital is not sufficient to allege scienter. These assertions should be rejected. Ruble 10b-5 has required companies like 22nd Century to disclose all facts "necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading" *since 1948*. 17 CFR § 240.10b-5(b). Further Defendants insistence that the denials in the October 2018 and April 2019 Responses were literally true overlooks that the Panel expressly held that these statements were misleading, and a false statement is not evidence of a *lack* of scienter. Finally, courts consistently hold that allegations of an intent to increase returns from specific offerings, like those alleged in the AC, support a strong inference of scienter.

*Second*, the AC expressly alleges that 22nd Century's share price materially declined after each of the October 2018 and April 2019 Articles, which is sufficient to allege loss causation. Although Defendants challenge these bedrock loss causation allegations with citations to unpled facts taken from unreliable sources, their assertions merely create factual disputes not suitable to be resolved on a motion to dismiss.

For these and other reasons set forth below, the Motion should be denied.

4

## II.     STATEMENT OF FACTS[3]

### A.     Background of the Company

Defendant 22nd Century is a microcap company that purports to increase or decrease the nicotine levels and other nicotinic alkaloids in tobacco plants and cannabinoids in hemp/cannabis plants through genetic engineering and plant breeding. ¶¶2, 51.[4] Sicignano was the Company's Chief Executive Officer ("CEO") from March 2015 to July 2019 (¶¶52, 151), and Brodfuehrer was the Company's Chief Financial Officer ("CFO") from March 2013 to December 2019 (*see* ¶36).

### B.     The SEC Investigation

CW2 was 22nd Century's accounting manager from April 2016 to February 2019. ¶45. He worked directly for Brodfuehrer and interacted with him frequently. *Id.* CW2 was hired after the Company identified material weaknesses in its accounting controls, and was told that he was hired specifically to remediate the material weaknesses. ¶¶45–46.

CW2 learned when he was hired that the weaknesses were so severe that the SEC was actively investigating the Company. ¶49. In fact, according to CW2, Defendant Brodfuehrer traveled to Washington, D.C., in 2016 to meet with the SEC in connection with the investigation and told CW2 directly that he feared he could lose his CPA license or even be imprisoned. *Id.* CW2 never saw anything indicating that the investigation was closed. ¶48.

---

[3] Plaintiffs' recitation of facts only addresses facts relevant to Defendants' motion and does not repeat allegations supporting misstatements this Court dismissed and the Panel affirmed.

[4] ¶_ references are to paragraphs of the AC. *See* ECF No. 31.

### C.    Defendants' False and Misleading SEC Filings

On the first day of the Class Period, February 18, 2016, Defendants filed 22nd Century's annual report for the calendar year 2015.[5] ¶45. Although the 2015 10-K disclosed the existence of the material weakness, it downplayed that weakness and assured investors "[n]otwithstanding this material weakness, management believes that the financial statements included in this Annual Report on Form 10-K fairly present, in all material respects, our financial condition, result of operations and cash flows for the periods presented." ECF No. 44-1 at 44. Defendants downplayed the existence of the material weakness again in its Q1 2016 10-Q, disclosed that they had hired CW2 and a consultant to help remediate the weakness in its Q2 and Q3 2016 10-Qs, and disclosed that the weakness had been fully remediated in its 2016 10-K. ¶¶193–97. Defendants appended certifications pursuant to the Sarbanes-Oxley ("SOX") Act to these filings attesting that "[b]ased on my knowledge [the] report does not . . . contain any untrue statement of a material fact *or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading*." *See* ¶199.

Although Defendants disclosed the existence of the material weakness and assured investors that the weakness was not serious and easily remediated, *none* of these filings disclosed the existence of the SEC investigation. ¶¶193-99. Accordingly, as the Panel held, the filings and certification to the 2015 10-K were actionably misleading. *See Noto*, 35 F.4th at 105.

---

[5] During the Class Period, the Company filed an annual report with the SEC on Form 10-K for: 2015 on February 18, 2016 (the "2015 10-K") and quarterly reports with the SEC on Forms 10-Q in on May 10, 2016 ("Q1 2016 10-Q"), August 9, 2016 ("Q2 2016 10-Q"), and November 8, 2016 ("Q3 2016 10-Q"). Sicignano and Brodfuehrer signed each of the 2015 10-K and Q1, Q2 and Q3 2016 10-Qs.

### D.      The 2016 Offerings

Defendants used the misleading 2015 10-K and Q1, Q2, and Q3 2016 10-Qs to generate capital from public offerings that the Company desperately needed to survive. At the start of the Class Period, 22nd Century was in dire financial straits. The 2015 10-K disclosed that the Company only had $3,760,297 in cash on hand, enough for it to operate for only nine months. ¶56. Desperate to replenish the Company's cash reserves, Defendants caused 22nd Century to issue secondary offerings in each of February, July and October 2016 (the "2016 Offerings"). *See* ¶57. By not disclosing the investigation, 22nd Century reaped proceeds from these offerings of approximately $20.4 million, which enabled the Company to continue scraping by, as well as limit the dilution of shareholders' stakes in 22nd Century, which would have been much more severe had Defendants disclosed the SEC investigation. *See id.*

### E.      The Truth Begins to Emerge

In spite of Defendants' best efforts, the truth about the SEC investigation leaked out. On October 25, 2018, former 22nd Century CEO Pandolfino, using the pseudonym "Fuzzy Panda" posted the October 2018 Article on the financial news and analysis website Seeking Alpha which disclosed that a Freedom of Information Act ("FOIA") request for "all documents in the possession of SEC that pertain to investigations regarding 22nd Century Group (XXII) for the time period January 1, 2016 through July 16, 2018" had been denied because it could "reasonably be expected to interfere with on-going enforcement proceedings." ¶137. On this news, shares of 22nd Century fell $0.11 per share, or 4.3%, to close at $2.45 per share on October 25, 2018. ¶139.

Defendants knew that "Fuzzy Panda" was Pandolfino. ¶140. CW1, Sicignano's former assistant, recalled 22nd Century's general counsel showing her Pandolfino's Fuzzy Panda page on the investing site "StockTwits," along with a photograph of Pandolfino in a panda costume in front of 22nd Century's prior corporate headquarters. ¶133. Defendants never disclosed this, however.

7

Instead, the next day, Defendants issued a press release (the "October 2018 Response") characterizing the October 2018 Article as a "highly deceptive article published . . . by a self-professed short seller of the Company's stock who launched his smear campaign in an effort to dupe shareholders into selling their shares of 22nd Century Group stock." ¶140. The response also effectively denied the existence of the SEC investigation, stating that "22nd Century has not received any notice of, and the Company has no knowledge of, any enforcement proceeding against 22nd Century by the SEC or any other regulator" and promised investors "[w]e will not respond to any further short seller reports." ¶¶141-42.

Six months later, on April 17, 2019, Fuzzy Panda (*i.e.*, Pandolfino) posted to Seeking Alpha that in spite of the Company's denial, the Company *was* under SEC investigation (the "April 2019 Article"). ¶143. 22nd Century's share price declined by over 2.0% over the ensuing trading sessions. ¶143. Despite their earlier assurance that they would no longer respond to short-seller reports, Defendants issued a second press release (the "April 2019 Response") which again falsely denied the existence of the SEC investigation, stating that the article "falsely alleges that 22nd Century is supposedly under SEC investigation" and withheld Pandolfino's identity. ¶¶144-45.

The Panel held that the denials of the investigation in the October 2018 and April 2019 Responses were both "*affirmatively misleading in their own right*" for falsely denying the existence of the SEC investigation. *Noto*, 35 F.4th at 106.

F.    **Procedural History**

On January 21, 2019, Matthew Bull filed this action in the United States District Court for the Eastern District of New York. ECF No. 1. On August 1, 2019, Judge Garaufis of the United States District Court for the Eastern District of New York appointed Plaintiffs' lead plaintiff motion. ECF No. 22. On September 6, 2019, Judge Garaufis transferred the case to this Court, and on January 14, 2021, this Court dismissed Plaintiffs' claims with prejudice. Plaintiffs appealed,

8

and on May 24, 2022, the Second Circuit reversed the dismissal in part and remanded the action for evaluation of the AC's scienter and loss causation allegations. *See* ECF No. 58. Defendants filed the Motion on August 8, 2022. ECF No. 64.

## III.   ARGUMENT

### A.   Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must also "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in . . . plaintiff's favor." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014).

In addition to meeting the demands of Rule 12(b)(6), a securities fraud plaintiff must satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," *id.*, and the PSLRA requires that a plaintiff specify each misleading statement, the reasons why the statement is misleading, and, if an allegation "is made on information and belief . . . state with particularity all facts on which the belief is formed." 15 U.S.C. 78u-4(b)(1). Even with the heightened pleading standards of Rule 9(b) and the PSLRA, however, complaints do not need to plead "detailed evidentiary matter." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).

The elements of a securities fraud claim are: (1) a material misrepresentation or omission; (2) in connection with a purchase or sale of a security; (3) made with scienter; (4) reliance; (5)

9

economic loss; and (6) loss causation. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014). Defendants' Motion seeks to limit the number of statements that the Second Circuit panel held were sufficiently alleged to be misleading as a matter of law. The Motion further asserts that the AC fails to allege scienter or loss causation. As set forth below, these contentions are meritless and the Motion should be denied in full.

B.       **The Panel Held that All Statements in the AC Alleged to be Misleading that Concern the SEC Investigation are Actionable**

The AC alleged that Defendants made two sets of statements that were misleading for failing to disclose the SEC investigation: (i) disclosures of the material accounting weakness in the Company's 2015 10-K and 2016 10-Qs (¶¶192-98), which were misleading because omitting the investigation misled investors as to the seriousness of the accounting weakness, and (ii) the certification appended to the 2015 10-K which falsely averred, among other things, that the filing did not "omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading." ¶199. The AC further alleged statements in the October 2018 and April 2019 Responses were also misleading because they falsely denied the existence of the investigation. ¶¶186-91. Since the Panel expressly held that the AC "adequately alleged that defendants violated Rule 10b-5(b) *both by first omitting mention of the SEC investigation and then by affirmatively denying its existence*," *Noto*, 35 F.4th at 106, *all* the above misrepresentations are actionable.

Although the Panel could not have been clearer, Defendants nevertheless assert that *only* held that disclosures in the 2015 10-K and 2016 10-Qs were misleading. Mot. 7-8 & n.5. But the Opinion expressly states that the denials in the October 2018 and April 2019 Responses "*were affirmatively misleading in their own right*," and "[D]efendants violated Rule 10b-5(b)" because the statements were "affirmatively denying [the investigation's] existence." *Noto*, 35 F.4th at 106.

Further, contrary to the Motion, nothing in the Opinion limited dismissal of claims concerning misrepresentations of the investigation *solely* to statements in SEC filings. *Compare* Mot. at 7 n.5 *with Noto*, 35 F.4th at 105-06. In fact, the Opinion states that the Panel is "remand[ing] the § 10(b) material misrepresentation claim *based on* the non-disclosure of the SEC investigation." *Noto*, 35 F.4th at 107. Accordingly, the certification attached to the 2015 10-K is actionable as well.

### C.    The AC Pleads a Strong Inference of Scienter

Scienter may be pled either by alleging facts (a) showing "defendants had both motive and opportunity to commit fraud" or (b) "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). The test is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) (emphasis in original). Scienter allegations need not be "irrefutable" or "of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* at 324. Rather, a complaint alleges scienter "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 23 (2d Cir. 2020). In other words, "a tie on scienter goes to the plaintiff." *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012). Although allegations of a motive are not required to plead a strong inference of scienter, *id.* at 371, the AC pleads a strong inference of Defendants' scienter through allegations of both recklessness and motive.

#### 1.    Defendants' Actual Knowledge and Denials of the SEC Investigation Support a Strong Inference of Scienter

A complaint alleges a strong inference of scienter based on a defendant's recklessness by alleging that the defendant "knew facts or had access to information suggesting that their public

11

statements were not accurate." *Employees' Ret. Sys. of Gov't of Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). Further, a defendant's false and misleading assurances to investors when faced with inquiries about improper conduct can be "the most powerful evidence of scienter." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009); *see In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *16 (S.D.N.Y. Nov. 26, 2018) (misleading statements to "placate the market" support inference of scienter).

Here, the AC alleges that Brodfuehrer knew of the SEC investigation because he "traveled to Washington, D.C., in 2016 to meet with the SEC" and told CW2 that he "feared he could lose his [accountant's] license or even be imprisoned." ¶49. The AC alleges Sicignano's knowledge of the investigation because he worked closely with Brodfuehrer (¶69), the Company retained counsel in connection with the investigation (¶49), the Company was making multiple stock offerings at the time (¶57), and thus it strains credulity that Sicignano would not have known of the investigation. Further, the Panel held that Defendants' denials in their October 2018 and April 2019 Responses, which were made to placate investors, were misleading and thus amplify the AC's already-strong scienter inference. *Noto*, 35 F.4th at 106 (Defendants' "denials *were affirmatively misleading in their own right*"); *see Avaya*, 564 F.3d at 269.

The Motion does not seriously dispute Defendants' actual knowledge of the SEC investigation. Mot. 10-15. Instead, Defendants assert that the Panel changed securities law (*id.* at 11-12) and seek to relitigate the misstatements' falsity (*id.* at 11, 14). The contentions are meritless.

*First*, Rule 10b-5, which **the SEC promulgated in 1948**, expressly states that Defendants may not "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5(b). The Panel held that Defendants disclosures of the accounting weakness in 22nd Century's SEC filings

12

and specific denials of the SEC investigation were misleading because they failed to disclose the SEC investigation, as required by Rule 10b-5. *Noto*, 35 F.4th at 105. Accordingly, there was nothing about the Panel's decision that was inconsistent with securities fraud jurisprudence.

In fact, the Panel could not overrule any prior Second Circuit decision, *see Next Millenium Realty, LLC v. Adchem Corp.*, 690 F. App'x 710, 714 (2d Cir. 2017) (Second Circuit panels "are bound by the decisions of prior panels until . . . they are overruled either by an *en banc* panel of our Court or by the Supreme Court."), and, far from creating new law, the Panel cited *three* Second Circuit cases in its ruling. *Id.* at 105 n.46-47, 49 (citing cases). Indeed, courts repeatedly hold scienter sufficiently alleged where defendants know, but fail to disclose, regulatory activity that has not resulted in a finding of wrongdoing or punishment. *See Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) (failure to disclose regulatory meeting); *Bond v. Clover Health Invs., Corp.*, 2022 WL 602432, at *25 (M.D. Tenn. Feb. 28, 2022) (failure to disclose investigation).

Although Defendants cite numerous cases for what they (incorrectly) believed the law "was," those cases are distinguishable. *See* Mot. 11-12. *Novak v. Kasaks*, for example, did not concern an undisclosed investigation. *See* 216 F.3d 300, 308 (2d Cir. 2000). *In re Lions Gate* was a "pure omissions" case; *i.e.*, unlike here, the *Lions* plaintiffs failed to allege that any statements were misleading for omitting an investigation. 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016). In *In re XP Inc. Sec. Litig.*, the defendants *disclosed* the investigation. *See* 524 F. Supp. 3d 23, 39 (E.D.N.Y. 2021). Finally, *In re Inv. Tech. Grp., Inc. Sec. Litig.* concerned substantively different disclosures that what is alleged in the AC, *e.g.*, that a statement that a company was "regularly" or "periodically" under investigation. *See* 251 F. Supp. 3d 596, 607, 616 (S.D.N.Y. 2017).

If anything, Defendants' assertions imply that they *knew* of the SEC investigation but feared disclosing it would affect the Company's share price. *See* Mot. 11-12. This *strengthens* the

13

AC's scienter allegations. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) (defendants "elected not to disclose" negative information because they "understood the[] likely effect on the market" supports scienter).

*Second*, the Panel expressly held that Defendants' disclosures of the accounting weakness and denials of the SEC investigation in the October 2018 and April 2019 Responses were materially misleading. *Noto*, 35 F.4th at 106. This holding is the law of the case, and the Court is bound by it. *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276 (E.D.N.Y. 2010). Defendants' assertion that these statements undercut an inference of their scienter because they are not misleading or literally true (Mot. 13-14) effectively attempts relitigate the Panel's express findings, and must be rejected. *See id.* In fact, Defendants' misleading disclosures omitting material facts suggest an intent to *conceal*, not be transparent, *i.e.*, scienter.

*Third*, the Motion further asserts a grab bag of half-hearted arguments challenging the AC's scienter allegations that are easily rejected. For example, while Defendants assert that "the mere existence of a government investigation" is insufficient to allege scienter, the AC alleges that Defendants knew of and concealed an investigation. ¶¶45-50, 186-91. Accordingly, Defendants citation of *Cortina v. Anavex Life Scis. Corp.* 2016 WL 7480415, at *6 (S.D.N.Y. Dec. 29, 2016), is misplaced. *See* Mot. 11-12. The *Cortina* defendants were alleged to have concealed a *promotion scheme*, while the AC alleges that Defendants concealed an *investigation*. In other words, the *existence* of an investigation supports an inference of scienter where, as here, Defendants misrepresented the existence of that investigation. *Bond*, 2022 WL 602432, at *25

Defendants also assert that Brodfuehrer's statement to CW2 that he feared the investigation could cost him his CPA license or end in imprisonment does not support his scienter because it does not show an intent to defraud. *See* Mot. 12 n.7. But allegations of Brodfuehrer's knowledge

14

of facts making Defendants' public statements misleading *alone* is sufficient to allege scienter. *E.g.*, *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 473 (S.D.N.Y. 2013). Defendants also misstate the standard for CW allegations. *See* Mot. 12 n.7. Where, as here, the basis for CW2's statements are alleged with particularity, the allegations must be *accepted as true*. *See e.g., Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 290 (S.D.N.Y. 2020), *reconsideration denied*, No. 20 CIV. 1008 (JPC), 2021 WL 3174414 (S.D.N.Y. July 24, 2021) (statement from defendant to confidential witness adequate basis for knowledge and must be accepted as true).

Finally, contrary to the Motion (Mot. 13), the AC alleges that the SEC investigation was not closed (¶48). Indeed, at oral argument before the Panel, Defendants' counsel conspicuously did not dispute that Defendants had no evidence that the investigation was closed. *See* Calandra Decl. Ex. 6 at 27:11–28:01.

2.      Additional Allegations Bolstering a Strong Inference of Defendants' Conscious Misbehavior or Recklessness

Additional allegations in the AC bolster the strong inference of Defendants' scienter. *First*, although Defendants knew that Pandolfino wrote the October 2018 and the April 2019 Articles, their October 2018 and April 2019 Responses concealed this fact and instead characterized "Fuzzy Panda" as an anonymous short seller who was perpetuating a "smear campaign," trying to "deceive 22nd Century's shareholders," and writing a "hit piece", *See* ¶¶49, 132–33, 137, 140–45, 203. Fuzzy Panda's identity as a former Company insider was material to investors because it made his articles more credible, and thus Defendants' concealment of his identity demonstrates their scienter. *See Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 281 (S.D.N.Y. 2012) (concealment of individual's involvement in creation of a security supports strong inference of scienter); *Rizzo v. MacManus Grp., Inc.*, 158 F. Supp. 2d 297, 306 (S.D.N.Y. 2001) ("conceal[ment] of material information . . . is sufficient to allege scienter").

15

*Second*, the Individual Defendants signed 22nd Century's annual and quarterly reports and the certifications attached to these filings. ¶¶193–201. These false attestations as to the correctness of the annual and quarterly reports also bolster an inference of Defendants' scienter. *See, e.g., In re Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) (signatures on Form 10-K "accept[ing] responsibility for its contents" was indicative of scienter). Defendants contend that Plaintiffs are solely relying on signed certifications and filings to allege scienter (*see* Mot. 14), but overlook that Defendants' alleged knowledge of the investigation, false denials of its existence, concealment of "Fuzzy Panda's" identity, and motive. *See* Sections III.C.1-2 *supra* and III.C.3 *infra*.

### 3.    The AC Alleges Defendants' Motive to Commit Fraud

The Second Circuit has expressly held that a motive to commit fraud can be demonstrated by alleging that defendants sought to inflate the price of a company's stock to maximize the funds from specific secondary offerings while limiting the offerings' dilutive effect. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 269 (2d Cir. 1993) (allegations of motive to "enabl[e] the company to *set the rights offering price somewhat higher* than would have been possible without the misleading statements and to *lessen the dilutive effect* of the offering" plead scienter).

This is precisely what the AC alleges. At the start of the Class Period, in February 2016, 22nd Century only had capital to operate for nine months, and it was unclear whether its business partner would make a payment that the Company needed to survive. ¶¶35, 55-56. Desperate for capital, Defendants launched the 2016 Offerings and concealed the SEC investigation from investors so that the Company could maximize its returns on the offerings while limiting as best they could the offerings' dilution of existing investors' holdings. ¶¶55–61. Indeed, Sicignano and Brodfuehrer were among the Company's largest shareholders, and their holdings were diluted by the offerings, which progressively increased in size as Defendants desperately sought more capital. ¶57. 22nd Century's proxy statements show both the size and dilution of the Individual

16

Defendants' holdings (Calandra Decl. Ex. 1 at 4; Ex. 2 at 4), and are judicially noticeable because they were filed with the SEC. *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 111 (D. Conn. 2021). In sum, the AC's allegations are consistent with *Time Warner*, where, after a company had failed to solicit funds from potential business partners the defendants allegedly made misrepresentations in advance of a secondary offering that diluted existing shareholders. *See* 9 F.3d at 269. They are consistent with other cases finding motive sufficiently alleged on these grounds as well. *See, e.g., In re Twinlab*, 103 F. Supp. 2d at 206-07 (maximize revenue from secondary offering); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 444-45 (S.D.N.Y. 2000) (inflate IPO price to alleviate financial crisis).

Defendants assert that these allegations are insufficient by citing a litany of cases that hold that a *general* desire to raise capital or appear profitable are not sufficient to allege motive. *See* Mot. 10. The cases are irrelevant, however, because the AC alleges three *specific* offerings Defendants inflated and a desire to avoid share dilution. ¶¶55-61. For example, in *Cortina*, the defendants did not influence a specific offering. *See* 2016 WL 7480415, at *6. Defendants' other cases are inapposite for similar reasons. *E.g., Kalnit v. Eichler*, 264 F.3d 131, 141-42 (2d Cir. 2001) (no specific offering); *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 209 (S.D.N.Y. 2012) (same); Similarly, the *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 531 (S.D.N.Y. 2009) (no dilution allegations); *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476, at *19 (E.D.N.Y. Sept. 19, 2005) (no specific offering); *In re Emex Corp. Sec. Litig.*, 2002 WL 31093612, at *6 (S.D.N.Y. Sept. 18, 2002) (no connection to offering). The Second Circuit has cited *Time Warner* favorably in limiting *San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.*, 75 F.3d 801, 814 (2d Cir. 1996), to debt securities, which are not at issue here. *See Rothman v. Gregor*, 220 F.3d 81, 93 (2d Cir. 2000).

4.       The AC Alleges 22nd Century's Corporate Scienter

A corporation's scienter is adequately alleged where "high-level employees" knew of facts making statements misleading. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177–78 (2d Cir. 2015). As set forth above, the AC alleges each Individual Defendant's scienter, and thus 22nd Century's scienter. *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *10 n.3 (S.D.N.Y. Sept. 19, 2017). ("the most straightforward way to raise [a scienter] inference for a corporate defendant will be to plead it for an individual defendant").

Even if the Court finds that scienter for either Individual Defendant is not pleaded—which it should *not*—Plaintiffs still allege 22nd Century's scienter by alleging facts "creat[ing] a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). The AC alleges that counsel represented the Company in connection with the SEC investigation and that Brodfuehrer met with regulators. ¶49. Accordingly, the Company's General Counsel, Thomas James, and likely many other management-level employees knew of the SEC investigation and failed to disclose it. ¶¶49, 69. Further, 22nd Century's failure to disclose the SEC Investigation, was "so important and dramatic that it would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false" given the impact the disclosure would have had on the 2016 offerings. *See In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 329 (E.D.N.Y. 2013), *on reconsideration in part* (Dec. 10, 2013).

5.       Defendants' Scienter Can Be Inferred from Defendants' Positions and the Importance of the Investigation to 22nd Century

This Court can also infer Defendants' scienter from the fact that the SEC Investigation was "critical to the long-term viability" of the company. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013) (core operations inference appropriate where

18

misrepresentation implicates viability of company). Accordingly, the AC's allegations that the Individual Defendants were *the* senior executives overseeing 22nd Century—effectively a microcap start-up with limited employees—and that the Company's future depended on generating sufficient capital in the 2016 Offerings, support a strong inference of Defendants' scienter. *See* ¶¶55–61; *Christine Asia*, 718 F. App'x at 23 (scienter alleged where undisclosed regulatory meeting presented "huge potential impact" on "imminent IPO").

Defendants incorrectly assert that these core operations allegations fail because the PSLRA abrogated the doctrine and the SEC has not punished the Company. Mot. 15 n.10. Courts in the Second Circuit routinely use core operations allegations to sustain securities fraud actions, *see New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) (citing cases), including where a regulator does not punish a defendant, *see, e.g.*, *Christine*, 718 F. App'x at 23.

### 6.    A Holistic View Supports a Strong Inference of Scienter

The AC's scienter allegations must be considered holistically, not individually. *See, e.g.*, *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 138 (2d Cir. 2021) (reversing dismissal and instructing the lower court to conduct a proper holistic review by weighing allegations of both motive and recklessness as a whole). Properly considered, the AC pleads a strong inference of scienter by alleging that Defendants (a) had actual knowledge of the investigation; (b) repeatedly issued misleading denials of the investigation's existence to placate investors; (c) concealed the identity of "Fuzzy Panda"; (d) signed misleading SEC filings and false SOX certifications; and (e) were motivated to inflate the returns of and minimize dilution from the 2016 Offerings.

By contrast, Defendants' proffered innocent inference of a good-faith belief that their misleading disclosures were sufficient (*see* Mot. 14-15) is implausible given their knowledge of the investigation, Brodfuehrer's fear of imprisonment, and the Company's desperate use of seriatim public offerings to address a liquidity crisis. Even if Defendants' claim of good faith was

19

plausible—which it is not—"[a] good faith belief is not a 'get out of jail free card.' It will not insulate the defendants from liability if it is the result of reckless conduct." *S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 193 (3d Cir. 2000).

### D. The AC Adequately Pleads Loss Causation

Fed. R. Civ. P. 8(a)(2) applies to pleading loss causation; a plaintiff need only furnish the defendant with "some indication" of the causal connection between the misrepresentation and the loss to satisfy this standard. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "Pleading loss causation is . . . not meant to impose a great burden on plaintiffs." *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 U.S. Dist. LEXIS 43774, at \*36 (S.D.N.Y. Mar. 27, 2013). A plaintiff simply must allege that "the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). Loss causation is also "a fact-based inquiry" that "[g]enerally . . . is a matter of proof at trial and not to be decided on a . . . motion to dismiss." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 519 (S.D.N.Y. 2014).

The AC alleges that two corrective disclosures caused the price of 22nd Century's common stock to decline 4.3% and 2.6%. *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 534 (S.D.N.Y. 2010) ("the sharp drops of [the company's] stock price in response to certain corrective disclosures . . . are sufficient" to allege loss causation at the pleading stage). *First*, on October 25, 2018, former CEO Pandolfino published an article disclosing the SEC investigation, and the Company's share price fell 4.3%. ¶¶137–139, 221. *Second*, after Defendants had stemmed further declines by issuing the October 2018 Response, on April 17, 2019, Pandolfino posted a second article on Seeking Alpha reaffirming the existence of the SEC investigation, and the Company's share price declined 2.6% over the next two trading sessions. ¶¶143–45, 222. These are textbook loss causation allegations that routinely defeat motions to dismiss. *See, e.g., In re*

20

*Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 165 (S.D.N.Y. 2008) (loss causation alleged by 2.0% stock price decline); *In re Openwave Sys. Secs. Litig.*, 528 F. Supp. 2d 236, 252–53 (S.D.N.Y. 2007) (loss causation alleged by 4.5% stock price decline after disclosure of SEC investigation). By contrast, none of the Motion's arguments favor dismissal.

*First*, relying on unpled proprietary intraday trading data from "Barchart.com," Defendants argue that Pandolfino's October 2018 Article could not have been a corrective disclosure because 22nd Century's stock price dropped before the article was published and increased thereafter. Mot. at 16-18. As an initial matter, while courts take judicial notice of "well-publicized" stock prices, the intraday data Defendants cite is available for pay only, and thus not "well-publicized." *E.g., In re Cachu*, 321 B.R. 716, 721 (Bankr. E.D. Cal. 2005) (declining to take judicial notice of a prime rate published by *The New York Times* and *The Wall Street Journal* because "that information is not readily available without a subscription"). Further, Barchart.com expressly disclaims the accuracy of its data, (*see* Calandra Decl. Ex. 5 at 5, 14-15, 19), thus it is not a source whose accuracy cannot reasonably be disputed. *See Ward v. Am. Airlines, Inc.*, 2020 WL 8300505, at *1 (N.D. Tex. Oct. 16, 2020) (refusing to notice information from website that disclaims accuracy); *In re Bausch & Lomb, Inc. Sec. Litig.*, 2003 WL 23101782, at *16 (W.D.N.Y. Mar. 28, 2003) (refusing to notice information whose accuracy can be disputed); *see also Bongiorno v. Baquet*, 2021 WL 4311169, at *11 (S.D.N.Y. Sept. 20, 2021) ("a court may not consider it on a motion to dismiss if a dispute exists regarding the authenticity or accuracy of the document"). None of the authorities Defendants cite in support of judicial notice hold differently, as *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) did not concern trading data, and the Court in *Ganino v. Citizens Util. Co.*

21

referred to official NYSE trading data, not data repurposed behind a paywall on a website that would not vouch for its accuracy. *See* 228 F.3d 154, 167 n.8 (2d Cir. 2000).

Even if this Court were to take notice of Defendants' Barchart.com data—which it should *not*—the data appears to identify a market reaction to the October 2018 Article. After the corrective disclosure was published at 12:00 p.m., 22nd Century's stock dropped by at least $0.11 over the course of the next hour, *i.e.*, exactly the amount alleged in the AC. *See* Friedman Decl. Ex. 7 at Row 5. And while Defendants claim that the market ignored the disclosure of the investigation, media outlets attributed the price decline to the investigation to the point that trading was suspended in 22nd Century's stock (Calandra Decl. Exs. 3-4), and the fact that these articles contained these disclosures is noticeable. *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir.2008) (judicial notice of "the fact that press coverage. . . contained certain information, without regard to the truth of their contents"). Finally, while Defendants make much of price fluctuation on October 25, 2018, "price recovery does not defeat an inference of economic loss." *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 36 (2d Cir. 2012).

*Second*, Defendants argue that the April 2019 Article was not a corrective disclosure because it did not contain any new information. *See* Mot. 18. Not so. Defendants' October 2018 Response flatly stated that the Company "[would] not respond to any further short seller articles." ¶142. The Company's April 2019 Response contradicted this promise, however, which tipped the market that the article's assertions may be true. ¶144. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 290 (S.D.N.Y. 2008) (inferring that that subsequent disclosure "conveyed information to the investing public concerning the extent and likelihood" of improper activity"). Further, the misleading statements in Defendants' October 2018 Response preserved artificial inflation that leaked out after the April 2019 Article. *See Sjunde AP-Fonden v. Goldman Sachs*

22

*Grp., Inc.*, 545 F. Supp. 3d 120, 149 (S.D.N.Y. 2021) ("the effect of any such disclosures were at least partially diminished by Goldman's repeated statements during the Class Period downplaying its knowledge of" improper conduct).

*Third*, while Defendants argue that the AC fails to connect 22nd Century's *accounting weaknesses* to a decline in the Company's share price (*see* Mot. 19), the AC alleges that Defendants failed to disclose an *SEC investigation*, and that when investors learned of the *investigation*, the Company's stock price fell. ¶¶137–39. This sufficiently alleges loss causation.; *see In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 347 (S.D.N.Y. 2005); *Bond*, 2022 WL 602432, at *27 (disclosure of existence of investigation constitutes corrective disclosure). Cases cited by Defendants are irrelevant because they concern *wrongdoing* disclosed when an investigation was announced, not that an investigation was *concealed*. *See, e.g., Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013); *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012).

*Fourth*, Defendants are simply incorrect that the AC attributes all of Plaintiffs' losses to the SEC investigation. *See* Mot. 19-20. The AC plainly alleges that the revelation of the investigation caused Plaintiffs' losses. ¶¶221-22. To the extent that Defendants' promotional article scheme also caused losses, Plaintiffs are not required to prove that the disclosure of the investigation was the sole cause of their losses at this stage. *See Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, at *6 (S.D.N.Y. Mar. 20, 2018)

*Fifth*, as described in Section III.B above, the Panel did *not* foreclose Plaintiffs from alleging that Defendants' October and April Responses contained actionable misstatements. *Noto*, 35 F.4th at 106.

**E.      The AC Alleges Section 20(a) Claims Against Sicignano and Brodfuehrer**

To plead a "control person" claim under Section 20(a) of the Exchange Act, Plaintiffs must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 550–51 (S.D.N.Y. 2020). These provisions are "broadly construed as they were meant to *expand* the scope of liability under the securities laws." *Meyer v. Concordia Int'l Corp.*, 2017 WL 4083603, at *9 (S.D.N.Y. July 28, 2017). Defendants do not dispute that Sicignano and Brodfuehrer controlled 22nd Century, but rather assert that the AC fails to allege a primary violation or culpable participation. *See* Mot. 20-21. These contentions are meritless.

*First*, as set forth in Sections III.A-III-C *supra*, the AC sufficiently alleges underlying securities fraud violations and thus states a control person claim against Sicignano and Brodfuehrer. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d at 624.

*Second*, assuming *arguendo* allegations of culpable participation are necessary at this stage, *see, e.g.*, *In re Tronox, Inc. Sec. Litig.*, 2010 WL 2835545, at *15 (S.D.N.Y. June 28, 2010) (culpable participation is not an independent element of control person liability at the motion to dismiss stage), the AC alleges Sicignano and Brodfuehrer's scienter, and thus their culpable participation. *See* Section III.B *supra*; *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254 (S.D.N.Y. 2018) ("Plaintiffs have pled facts sufficient to support an inference of scienter as to these Defendants[;] they have necessarily pled facts sufficient to support culpable participation"). Although the AC's scienter allegations are sufficient alone to allege culpable participation, Plaintiffs further demonstrate Sicignano and Brodfuehrer's culpable participation by alleging that they signed SEC filings containing false or misleading statements (*see* ¶¶46 n.3, 193-201); knew of the SEC investigation since they hired counsel to defend the Company and/or met with the SEC

24

in connection with the investigation (*see* ¶¶46-49), and falsely denied the existence of that investigation (*see* ¶¶140-45). *See Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 587 (S.D.N.Y. 2016) (signing misleading SEC filings and knowledge of investigation allege culpable participation). Plaintiffs' Section 20(a) claims thus should be sustained.

### F.      Plaintiffs Respectfully Request the Opportunity to Amend

If the Court grants any portion of the Motion, Plaintiffs respectfully request an opportunity to move for leave to amend pursuant to Rule 15(a)(2). This is the first time that this Court has evaluated the sufficiency of the AC's scienter and loss causation allegations, and the Second Circuit has held that plaintiffs should be given at least one opportunity to amend absent bad faith or futility. *See Kopchik, III v. Town of E. Fishkill, N.Y.*, 759 F. App'x 31, 38 (2d Cir. 2018) ("[t]he opportunity to amend the complaint is appropriately presented after the district court rules on a motion to dismiss"); *Loreley*, 797 F.3d at 190 ("[w]ithout the benefit of a ruling, many a plaintiff will not . . . be in a position to weigh the practicality and possible means of curing specific deficiencies"). Since Defendants have not pointed to any bad faith or contumacious conduct—nor could they—Plaintiffs should be given one opportunity to amend the AC should the Court grant the Motion.

### IV.      CONCLUSION

For the reasons stated above, Defendants' Motion should be denied in its entirety.

Dated: September 22, 2022

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brian Calandra*
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

E-mail: bcalandra@pomlaw.com

*Counsel for Lead Plaintiffs Joseph Noto, Garden State Tire Corp., and Stephens Johnson*

26

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2022, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Brian Calandra*
Brian Calandra

1