# Exhibit 6

Page 1

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

Joseph Noto, Garden State Tire Corp.,
Stephens Johnson, Individually and on
Behalf of All Others Similarly Situated,

Plaintiffs-Appellants,

V.

22nd Century Group, Inc.,
Henry Sicignano, III, John T. Brodfuehrer,

Defendants-Appellees.
------------------------------------------X

No. 21-0347-cv

TRANSCRIPT OF THE RECORDING OF THE
SEPTEMBER 2, 2021 ORAL ARGUMENT

HUDSON COURT REPORTING & VIDEO   (212) 273-9911

Page 2

THE COURT: So we'll start with Noto Garden State Tire Corp v 22nd Century Route Inc.; before we do that, I just want to note that the remaining matters Borly v United States 24293, United States v Cummings 23156, and Zang Smith versus Nassau Healthcare Corporation 23544 are all submitted, and as to those we will reserve decision.

So why don't we proceed with Noto v 22nd Century Group 21347.  Thank you.

THE COURT:  Thank you.

THE COURT:  Thank you.

Mr. Lieberman

MR. LIEBERMAN:  Yes.

Good morning, Your Honors, Jerry Lieberman, Pomerantz, LLP on behalf of appellants.

We respectfully submit, Your Honors, that the District Court made a reversible error by dismissing wilful claims under Sections 10 B of the Securities Exchange Act and Sections 10 A and C.

Starting with the claim under 10 A and C, the case here and the allegations amid the complaint clearly allege a marketing relations scheme.  The Supreme Court in Lorenzo and the Second Circuit in the City of Providence versus Bats makes clear that a marketing manipulation scheme covers a

Page 3

wide variety of conduct.  It is not just watch sales, it is not just (inaudible), it is any conduct the deceives the market into thinking that the share price reflects anything other than the supply and demand for that security.

Here we alleged precisely that.  We alleged that the CEO from 22nd Century concocted a scheme whereby they paid a stock promotion firm to publish more than 24 side promotion articles.

THE COURT:  Is the payment by an issuer or a officer of the issuer to a stock promotion firm per se illegal?

MR. LIEBERMAN:  Absolutely not.  It is not illegal.

THE COURT:  Then why is there any problem with that unless you allege and the District Court found you didn't, that you controlled, reviewed, supervised the people who were doing that?

MR. LIEBERMAN:  Well that was the issue under Janice which we to address.  If you just pay a promoter and you know that that promoter is violating Section 17 then you purposely are paying this promoter in order to raise the share price.  In order to hear -- in this case, to get a share price over two dollars to perform an offering whereby --

Page 4

THE COURT:  That's an end run around the maker requirement.

You can't do that can you?

MR. LIEBERMAN:  Well, what about -- Lorenzo allows you to do that.

Lorenzo specifically says that even a situation where there is different types of conduct that are not --

THE COURT:  If you know that the publisher of the pieces or the maker of the pieces is a -- is not disclosing that that is a problem.

MR. LIEBERMAN:  Of course.  You are paying them.  You don't just know.  You are paying them to violate Section 10 B.  You are purposely --

THE COURT:  Well, you are paying -- you are paying -- and he violates Section 10 B, but you don't have any allegations in here that he counseled them not to disclose.

MR. LIEBERMAN:  No, but --

THE COURT:  Okay, but --

MR. LIEBERMAN:  But the reality was that he was.

THE COURT:  Right, right.  But do you have enough -- you're saying, I think -- I thought you were trying to say that there was a enough that

Pages 1 to 4

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 5

somehow that he can be called a maker. That his activities were such that it was -- he was complicit.

MR. LIEBERMAN: As to Section 10 B. I am talking about Section 10 A, C.

THE COURT: Oh, I see.

MR. LIEBERMAN: You do not need to be a maker under Section 10 A, C. You need to be that he is --

THE COURT: Then how can you have -- isn't there an inconsistency between what you claiming is a conspiracy here in effect, under one section, when it is allowed under the other sectio, you have control and so on?

MR. LIEBERMAN: Well, no, so -- because if you are paying someone to promote a stock to make false assertions. These are fictitious identities.

Clearly, there is something that the CEO was talking to his -- the confidential informant, who was advised that he was wrong. He was clearly reviewing these articles.

THE COURT: Then what do we do? Are we saying that the cases that don't go forward because there wasn't sufficient control were simply

Page 6

cases of bad pleading. But they brought it up under one section, when they should have under the other.

MR. LIEBERMAN: That's exactly what Lorenzo says. Lorenzo says specifically that you can't -- when you have the type of conduct that deceives the market, and you can't for some reason have that conduct under 10 B, that is exactly the prophylactic necessity for Sections 10 A and C. That's why we have 10 C, to provide (inaudible) conduct. We don't want (undiscernable) participants and issuers pumping up the stock, making false assertions to the market under your dime.

THE COURT: I would like to push you in a slightly different direction, because that's one of the things that I'm going to be asking the other side.

MR. LIEBERMAN: Sure.

THE COURT: And that's a question of amendment. Because unlike the District Court, I believe, the cases do say if you -- if defendants controlled, reviewed and in effect were the makers of these -- let us assume false or puffing or whatever statements, then there may be liability.

So I want to find out about the question of amendment. Because you didn't ask for

Page 7

the amendment, originally, when you asked for the amendment. It was kind of in a distortory fashion. On the other hand it wouldn't be that difficult to amend and claim what would be enough.

So I want you to argue about why you should be allowed to amend, when you had a chance, in a way, earlier and didn't really say what you would say in the amendment.

MR. LIEBERMAN: Well, Lorelei (phonetic spelling) makes clear, this court has made clear, particularly that deals with -- that when you're -- we pled -- we pled our amended compliant. We believe we had sufficient allegations. If the District Court had any concerns and felt we didn't plug the gap, then certainly Lorelei makes clear that we should have the opportunity. It's not -- it shouldn't be a game of catcha.

THE COURT: It wasn't in your favor -- wasn't it even before that. Didn't you say that you wanted to amend after you read the first round on the motion to dismiss.

MR. LIEBERMAN: Put in the briefing --

THE COURT: Put in the briefing so you didn't wait for the District Court's decision to

Page 8

ask for the amendment.

MR. LIEBERMAN: In the court found any deficiencies in the pleadings and it wanted it --

THE COURT: Yeah.

MR. LIEBERMAN: -- it we felt we should be able to amend.

So we do clearly believe there is a marketing relations scheme. This is exactly what 10 A, C are made to protect. When you have perfect scenario and pump up the stock price. The market is being deceived, clearly deceived, that the CEO is coming -- he knew the market was being deceived. Clearly he is reviewing the 24 articles that don't say anything about it being a paid promotion they use fictitious identities.

THE COURT: Just tell me on the facts here a little more; did the CEO -- presumably the authors were looking at the press releases right? And did the CEO -- was the CEO in communication with these authors at all and talking to them about what was going on?

MR. LIEBERMAN: Yeah, I'm not specifically -- we have the inference that the CEO was on top of every single press release --

**New York**
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

**New Jersey**
732-906-2078

Page 9

THE COURT:  Yeah.

MR. LIEBERMAN:  -- that was issued by the company.

We have the allegation that everything -- that the promotional articles always followed very closely press releases and parroted --

THE COURT:  Is there an allegation, just to follow up on that, that the promotional materials that mimicked the press releases followed the press releases?  In other words, is there an allegation about the timing during which they appeared?

MR. LIEBERMAN:  They nearly followed the press releases.  That's what we allege to make more mone --

THE COURT:  Okay.  So you -- so it could be.  I am just asking that the promotional materials read the or review the press releases, and then put those in you know the promoters put that in the material.

MR. LIEBERMAN:  Yeah, it is certainly possible, Your Honor.  What's the inference, the inference is that the CEO.

THE COURT:  But you don't actually say that in your complaint.  You might say it, but

Page 10

you don't actually say it in the complaint as it is.

MR. LIEBERMAN:  We don't say it in the complaint that the CEO provided the press release content to the promoter.

We do say the CEO concocted the entire scheme whereby the promoted used fictitious identities, complete fraud on the market.

THE COURT:  Could you point out where in the compliant Mr. Lieberman that you state that the issuer was under a duty, and had a duty under the securities act, either the issuer or the CEO back then had a duty to disclose any competition to the promoters?

MR. LIEBERMAN:  Well, the duty to disclose the compensation is Section 17 says it --

THE COURT:  So the duty to disclose that a arises from Section 17 is a duty to disclose that is placed on the promoter, not the issuer.

MR. LIEBERMAN:  That is placed on the promoter, but here.

THE COURT:  So where is the allegation that the issuer or officers of the issuer had the requisite duty to disclose the compensation.

MR. LIEBERMAN:  In paragraph 160 of the complaint, where he the issuer, 22nd Century

Page 11

gives 19 reasons why the stock might be volatile --

THE COURT:  Well, but that's a different question, of whether if you gave 19 reasons, you also have to give something about the 20th, when you don't have a duty about the 20th.

That's different point than the one that the presider was asking.  Where do you say that's specifically?

MR. LIEBERMAN:  We don't say specifically that Section 17 requires the issuer to disclose --

THE COURT:  Because I --

THE COURT:  AND we could never write that in an opinion right.

MR. LIEBERMAN:  Well, if the court were to hold under Janice that the issuer was a maker, and we do allege that, and we do (undiscernable) given the control of the company and the concoction of the scheme, they would be a maker of the statement, then under the Janice, if you are the publisher, then you have a duty.

THE COURT:  But I thought you were requesting to amend in order to beef up that part of your complaint?

MR. LIEBERMAN:  Absolutely,

Page 12

absolutely we provide more allegations to show the requisite control.  So certainly we --

THE COURT:  What about the --

Well -- finish up on this.  And I want to ask you about the SEC non disclosure.

MR. LIEBERMAN:  Sure.  Absolutely.

So the (inaudible) even without showing that to show that under Janice the maker of the statement, you have a marketing relations scheme.  You don't see any -- in that instance you don't see any deficiency in that complaint, that someone concocted a scheme, purposely to raise the share price.  And it was done by using fictitious names of authors and done by (inaudible) by violating Section 17.  Oh, and paid somebody else to violate Section 17 --

THE COURT:  But the and I don't want to interrupt the questions about the SEC investigation, but so that I completely understand the theory is not one that rests on any false statement.

The theory as I understand it, but correct me if I'm wrong at any point, is that the it's a failure to disclose the compensation to the promoters.  Because I have not seen an allegation of

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 13

an actual false statement.

MR. LIEBERMAN: If the court holds that the issuer was a maker of the statement, the statement the promotional articles themselves are false statements, they are fictitious names. They are written by false people, false analysts. The press release itself is false.

THE COURT: But the question of whether those statements are essentially puffery or are false in a material sense, is not altogether clear from the complaint, I don't think.

MR. LIEBERMAN: We do think that we have alleged clearly that they are falsely misleading, because they failed to disclose these articles that they were paid for.

THE COURT: Yeah --

MR. LIEBERMAN: I --

THE COURT: -- your principle argument is that there was a failure to disclose who paid for these statements.

MR. LIEBERMAN: Well, also the fact they are fictitious identities. That is important. These are people -- the market thinks these are real analysts. And these are people with fake names and fake photos who aren't really analysts. They are

Page 14

adjust paid (undiscernable_ --

THE COURT: And you do allege that the officers of the issuer here knew that these were fictitious promoters.

MR. LIEBERMAN: We allege they concocted the scheme, they understood what they were doing was wrong, by not disclosing they were paid promoters --

THE COURT: No. But that is not the answer to Judge Loya's question.

Did they know, do you allege they knew that these were fictitious.

MR. LIEBERMAN: Every reasonable inference --

THE COURT: No, no --

MR. LIEBERMAN: Oh.

THE COURT: -- answer the question.

You keep saying, "every reasonable inference."

But the questions are, what did you allege?

MR. LIEBERMAN: We didn't allege specifically that they reviewed the individual promotional article. You said, the inference is is that they did review the articles, did and he

Page 15

reviewed every single press release, that he concocted the scheme, and they were desperate to succeed.

How could someone pay money to a promoter and they are desperate to make a $54 million offering, and he not know exactly what the fruits of the stock promotion scheme are. It's simply --

THE COURT: No, I understand that but. We were talking about false the false identification of the authors. And I am trying to focus in on exactly what the allegations were with respect to your client's knowledge of that -- I mean, the CEO's knowledge of that.

MR. LIEBERMAN: Right. So we can use -- so specifically that they knew they were fictitious identities. That clearly is something we can use the opportunity to amend that.

THE COURT: I see.

MR. LIEBERMAN: And also, I think this is very important, is that the denials of the stock promotion scheme. Those are outright false statements.

THE COURT: Now, did you to the District Court propose to amend to do what you are

Page 16

now telling us you would do in an amendment?

MR. LIEBERMAN: We said to the District Court we would like the opportunity to amend for any deficiencies in the court --

THE COURT: You didn't spell it out what the amendment would be?

MR. LIEBERMAN: We did not spell out what the amendment. No.

THE COURT: And this would be an amendment under Rule 15, would it be?

MR. LIEBERMAN: It would be. Absent the opportunity to understand what the District Court felt that the failures of the claim were, we would be shooting in the dark (inaudible).

THE COURT: That is your Lorelei argument.

MR. LIEBERMAN: That's our?

THE COURT: Lorelei argument.

MR. LIEBERMAN: Yes, exactly.

THE COURT: Can we go to the, briefly, at least to the SEC disclosure.

MR. LIEBERMAN: Absolutely.

THE COURT: So just tell me, I take it that there was a series -- there were a series of releases, SEC filings, et cetera, that indicated

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 17

that there were accounting difficulties. And then later on that they had been fixed. But during that whole period there was an SEC investigation, correct? And I think one of the officers, I forget which one, I think he is one with the longest name, said that you know this was, that he could be exposed criminally based upon what was happening with regard to these financial difficulties they were having. And that he was concerned about it, presumably, represented by a lawyer before the SEC and so forth. And you're saying that that even though that there was nothing came of that, as far as we know, of that investigation, and the district judge found that they had remedied the problem, that nonetheless, it had to be disclosed?

MR. LIEBERMAN: When -- at the time that they were making statements regarding material witnesses and material controls and their remediation efforts, they are trying to deceive the market, but we are a viable company and that we are a viable company, and that we are getting through this, and this is an issue that we can handle. At the same time they omitting a critical fact; that the SEC is investigating this matter.

So looking at the time in 2016, where

Page 18

the company is talking about the material witnesses and talking about the remediation efforts to not say that there is an investigation to those very issues is something clearly a reasonable investor --

THE COURT: So you're saying they disclosed some risks as far as financial was concerned, but they were playing them down. And that the disclosure of the SEC investigation would have altered the calculus of those risks.

MR. LIEBERMAN: Absolutely. Particularly there were three offerings in 2016, which yielded the company $24 million, they had every reason to wipe that SEC investigation off --

THE COURT: I must say, and I will be asking this of the other side, I am maybe less concerned with the duty to disclose the SEC investigation, once the matters were corrected in itself. But what bothers me is the statement that there was no SEC investigation.

I mean, that statement seems an outright falsehood.

MR. LIEBERMAN: Absolutely.

THE COURT: And if that was made, that, as I say, that is really a question for the other side. Even if there wasn't a duty to disclose

Page 19

the SEC, why wasn't there a duty not to lie about it?

MR. LIEBERMAN: On April 18 of 2019 22nd Century said, that the source article falsely alleges that 22nd Century is supposedly under SEC investigation. That is on outright 100% lie. There is no other way to --

THE COURT: Wait. Repeat that.

MR. LIEBERMAN: The short sale article falsely alleges that the 22nd Century is supposedly under SEC investigation. Falsely alleges and we are supposedly under SEC investigation. There is nothing other than to say that that is an --

THE COURT: What's the misstatement there?

MR. LIEBERMAN: What is the?

THE COURT: What is the misstatement?

MR. LIEBERMAN: They were under -- they were under SEC investigation.

THE COURT: Oh.

MR. LIEBERMAN: They are denying the existence of the SEC investigation.

THE COURT: Is there not a SEC filing by the issuer here, that there was an SEC

Page 20

enforcement proceeding?

MR. LIEBERMAN: I'm not aware of any SEC filing.

And the company also says in the October 2018 and April 2017 denials, they also say, that they falsely allege that the favorable articles were the result of a stock promotion scheme. They say those allegations are frivolous. Once again straight up denials of the stock --

THE COURT: Okay.

MR. LIEBERMAN: -- of the stock promotion scheme.

THE COURT: Okay. We have kept you well past your time Mr. Lieberman.

You have reserved three minutes of rebuttal.

MR. LIEBERMAN: Thank you.

THE COURT: We will hear from Mr. Tucker.

MR. TUCKER: Thank you, Your Honor.

THE COURT: Mr. Tucker.

MR. TUCKER: Good morning, I am John Tucker. I represent the appellees.

Let me address some of the questions that the board has. First of all, with regard to

Pages 17 to 20

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Page 21

these paid promotional articles there is absolutely nothing under the law that makes it in any way improper, illegal or in any way wrong for a company to pay for stock promotions.

The only issue in this case that they allege is that if, and the case is clear under Section 17, which says that is the author's responsibility, and by saying it's the author's responsibility it also says that it is proper to have these promotions.

THE COURT:  But there is also a rule but it's not cited by the plaintiffs here.  Rule 205 that can make it the issuer's responsibility to disclose compensation.  But that is not here.

MR. TUCKER:  It is not here.  And also that brings us to another question that was asked.  There is absolutely no allegation that there had been any communication, contact, any involvement between the CEO --

THE COURT:  Okay.  But now, not before the District Court, but now they say we could amend to say what is enough under those cases.  If the company actually reviewed, controlled, in effect were the authors of the people who set these things up, and that then you would have to disclose.  Now

Page 22

they are saying that they would like to amend to do that.  Do they have a right to do that?

MR. TUCKER:  I think they thought, they are past that time, Your Honor.  Because in their one sentence at the end of their -- in response to the lower court, in the argument in front of the lower court, they didn't say this what they can do to fix --

THE COURT:  No.  They said if you rule against us, we would like to opportunity to amend.  And then they appealed.  They didn't --

MR. TUCKER:  And in their company brief here, and even in they final reply brief, Judge, they never said this is the facts.  And they never said here today --

THE COURT:  But how can we say that it is futile to amend, when at least today they are saying this is what we would say, and what we would say would be sufficient to be a -- to meet the complaint.  And, again, we go back to Lorelei -- and you know I must tell you that Judge Lavalle was the on who pressed me, I wrote Lorelei, very strongly to say that we're only at the end, does it turn out what it was that they should say.  It's not too late to ask for an amendment there.  I was much more

Page 23

doubtful but I was pushed by a senior judge.

MR. TUCKER:  I understand the pushing, Your Honor, as I sit here today.

Here is what I think should have happened, his requirement and his obligation and that is to come to this court and say, well, give me a chance to amend, I could amend, I can probably say these things.  He needs to come here on the pleading standard of PSLRA and Rule 9, and say this is exactly what I would plead, and he has not.  And he still has not.  And he has been challenge d on that in this appeal and as he stands up on his court.

Let me tell you what he has pled, what he has pled, which are the facts, and that's because he slings a lot of stuff in his complaint and in his brief that Mr. Sicignano approved, edited and reviewed these statements.  Well, that is not true, that is a conclusion that is he making not based upon not based upon clear fact.

If you look at paragraph 68.  And I will read it to you.  It's in the complaint.  It says CW1, which is the confidential informant, said quote, He was sure that Sicignano's efforts behind the scenes included, reviewing, editing --

THE COURT:  Okay.  But it would not

Page 24

be futile to actually make an amendment that claims that Mr. Sicignano had that authority.  If that was manifestly false and there was nothing for it, then presumably they could be sanctioned.  If instead, they can make that amendment, as a -- and show something to support it, then how can we say its futile?

MR. TUCKER:  Your Honor, I think before he is given the opportunity, he needs to stand up and say this is what I'm going to say in clear fact --

THE COURT:  Okay.

MR. TUCKER:  -- to say that Mr. Sicignano was involved.

THE COURT:  Let me turn to the last question that Judge Walker was asking which is about the SEC investigation.

MR. TUCKER:  Sure.

THE COURT:  May well be that the District Court is correct in saying that where an investigation is still -- kind of winding down basically, not really doing much, but that matters have been corrected, there is no duty to disclose it.  But isn't there a duty not to lie about it, when you are asked directly --

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 25

MR. TUCKER: Your Honor.

THE COURT: -- and weren't you asked directly is there an SEC investigation and say no?

MR. TUCKER: Your Honor, what you get is kind of a muddying of the timeline here.

The accounting witnesses, and this was just a segregation of duties this is a small company, it needed more people, somebody had checked the bank statements against the records, right. They said, fully disclose, fully remediated and also no illegal wrongdoing, nothing, no financial statements. And so that happened it was totally remediated in 2016.

As counsel said, when these articles come out in 2018, 2019 in April of 2019, more than what would that be three years later, the -- the CEO -- the company issues a press release that says, We are not under any investigation at this time.

THE COURT: But you were --

MR. TUCKER: (Inaudible).

THE COURT: The SEC hadn't closed its investigation.

MR. TUCKER: This is two and a half three years later, Judge --

THE COURT: Well, I understand that

Page 26

it had begun two or three years later, and there wasn't -- but the statement we are not under.

Now are you arguing that in fact that it isn't material?

MR. TUCKER: It is certainly not material.

THE COURT: Because it was something that was trivial that much later. But it as a statement, it is a misstatement, because the investigation wasn't closed yet.

MR. TUCKER: Well, Your Honor, there had been no -- this is all still from an Internet article that says they made a Foley request and the SEC said we are not going to give the records under our exemption, which is potentially ongoing investigation. So to suggest that there was an investigation as a result of that, I think is a leap to begin with. Right. Then we are three years post that.

THE COURT: No, but they didn't disclose the information, because there was an ongoing law enforcement proceeding, isn't that the four year standard?

MR. TUCKER: Well, that is what the four year exemption speaks to, Your Honor.

Page 27

THE COURT: Right. And they didn't dis close it. So if anything that cuts against you, if anything --

MR. TUCKER: Your Honor --

THE COURT: -- the ongoing nature of the investigation.

MR. TUCKER: But there had not been -- he didn't plead there was anything more to it. That anything more had been happening in that three year --

THE COURT: Well, the only thing is there is no definitive statement anywhere that the SEC investigation, which was a real investigation, it did take place, your client, one of the individual clients was very, very worried about it. And that it ever that it ever ended I mean, there is nothing definitively saying that it ended as of X date.

MR. TUCKER: Well, Your Honor, some of the cases if you read them they talk about information that gets stale over time. I may be going to Judge Calabrese's materiality argument, and my understanding is, in most instances the SEC doesn't send you a letter, saying we are done, we are closed, unless it closed pursuant to a

Page 28

resolution.

THE COURT: So what is the rule that you want us to announce in connection with the obligation of an issuer to disclose the existence of an SEC investigation?

MR. TUCKER: Your Honor, I think you need to look no further than the Lionsgate decision from this case -- from this court.

In that case, the defendant who said we are not -- we don't have any litigation or administrative matters, in that case the company had received Wells notices, and it also received a formal SEC order of investigation. And in that case the court said, there is no obligation that causes unadjudicated or uncharged wrongdoing, I think that clearly --

THE COURT: So you think that Lionsgate is a bright line rule --

MR. TUCKER: I think it's a bright line rule.

THE COURT: -- that separates investigations, for example, from actual enforcement proceedings?

MR. TUCKER: I think it covers both.

THE COURT: Oh, if there was an SEC

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Page 29

enforcement proceeding, don't you think most companies would want to disclose that.

MR. TUCKER: Yeah.

THE COURT: I think that's a material matter.

MR. TUCKER: I think to probably be safer rather than sorry. Probably so.

THE COURT: Well --

MR. TUCKER: Even more recently this court -- -

THE COURT: -- I am suggesting not safe and sorry, but an obligation to disclose an SEC proceeding.

MR. TUCKER: I'm sorry. I didn't hear Judge Calabrese.

THE COURT: E was just, I think, chuckling.

MR. TUCKER: Sorry.

I think that that bright line rule, Judge, this court in the recent plumbers and steamfitters case that was issued about a week ago, that involved a (inaudible) a case of money laundering out of Russia. They may that same determination. That --

And you know and I can briefly talk

Page 30

about the Lorenzo case. You had some question about that. The Lorenzo case didn't say that from now on just that you can make a mark manipulation claim based upon a misstatement or omission. But they did say, and we should speak to that, because sometimes unique facts make unique decisions, and I think that is true in Lorenzo. In Lorenzo, the defendant, one of the defendants was an employee, sent out the misstatement, that the affirmative -- mis-emails to the investor. He did that at the direction of his boss.

The question was who was the maker? The court came out and said that said the boss was the maker, because he controlled it. So what do we do with the employee? Is he home free? And they said, no. He is part of a scheme because he made an affirmative act in conjunction with that that impacted him.

Now there is no allegation in this case of Mr. Sicignano or certainly Mr. Crawford -- Mr. Crawford, the CFO, the only allegation they had about him, is that he worked in the same office and was so close, that he must have known.

THE COURT: So let's focus on Mr. Sicignano.

Page 31

MR. TUCKER: All right. Mr. Sicignano, there's no. There is no allegation that he had any contact with any of the author, that he had any knowledge of it there is no -- all that they allege -- or that he knew that they were (inaudible) or with regard to author's non disclosing.

All that they allege, was that he was contentious in what he put out for the company. And from that these promotional authors copied or parroted that. But they didn't fulfill their responsibility under the law to disclose it. And they are saying because of that, because that happened, he somehow was in charge of it, because he had been the perfectly intent ant motive, which was to pick a paid promotion in order to raise the visibility of the company. And that is perfectly appropriate. And I would suggest to the court that if --

THE COURT: Would you agree this is a hypothetical, would you agree that if the complaint that alleged that he knew that these promoters were using fictitious names and nevertheless compensated them for issuing promotional materials, that that would be a form of a, if not a misstatement, a form

Page 32

or a component of a manipulative scheme?

MR. TUCKER: It could be, Your Honor. And what I would suggest what you do is ask you to look at the cases that they have cited. It's ironic that I am up here saying, look at their cases. But I'm saying look at their cases because of the distinction between the facts that are alleged here versus there.

And if you look at the Rathman case and the Galina case (phonetic spelling), both cases out of this circuit by District Court; they have the CEO fundamentally and intricately involved in the activity. He was writing the articles. They were talking about parroting or copying. He was writing them.

THE COURT: So what I should ask on rebuttal is whether opposing counsel is prepared, if we are allowed him -- them ran amendment to allege that Sicignano knew what is being done that it was fictitious and was in control in that sense?

MR. TUCKER: I think you should ask that plus a little bit more Judge Calabrese. I think you should ask what are the facts you're going to allege rah ter than a conclusion. And what are the facts that you would allege that show this

Pages 29 to 32

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 33

activity.

THE COURT: I'm not asking them to write out the amendment. I'm sorry. I am asking whether are with willing to allege that that certain facts are there.

MR. TUCKER: But I think he has to allege the facts. And that's what I go back to, Judges, there if you look at the Rothman case, which is the only circuit court case that really travels in this area. It's on the 11th circuit. It's very, very -- because in fact, they say in that instance the company was, in fact, paying the promoters for it directly, paying the authors for it. But they didn't know that the authors weren't going to disclose it. They said there is no scheme, there is nothing wrong, they had no duty.

If you look at the 14th(inaudible) which is southern district from this circuit, similar case, similar facts, similar holdings.

THE COURT: Can we go to SEC filing in question, one point.

You argue Lionsgate but in Lionsgate, the court said you have no duty to disclose an SEC investigation in the facts of that case without more. But here there are disclosures being made

Page 34

with regard to the financial difficulties, the very object of the SEC investigation's. And presumably that is part of what investors would consider important in any situation, if there are financial difficulties, they go to the earnings, et cetera. And so an investor will asses that risk based on that the risk of investing.

And isn't it important to know and isn't it also a duty disclose that there is an investigation by the SEC that could affect the risk of investing in an company, when it directly pertains to financial information, which is already been the subject of disclosure.

MR. TUCKER: I would say, no, that to that, Your Honor, because I think the disclosure isn't speaking to investigation. It's speaking to the --

THE COURT: No. It's not speaking took investigations, it's speaking to the likelihood official difficulties. And whether or not what the company is doing is making light of its difficulties or minimizing it.

MR. TUCKER: Well, I would the -- the steamfitter case, the recent case that came out, that had discussions about the fact that there were

Page 35

maybe, you know, it was greatly -- the financials were greatly understated because of the magnitude of money laundering scheme in Astonia. And the court said the fact that there was an investigation going on that they later pled, not only was there an investigation, but it was a valid investigation, something came of it. And they said that that still didn't need to be disclosed.

And, certainly, we have a situation where here where they told what this is all about. It is not a big matter to begin with, Judge. This is a matter of segregation of duty that was fully remedied. There was never any suggestion -- they don't even prove there is any wrongdoing.

THE COURT: I think you argument again goes back to materiality. That the segregation of duties issue that was the subject of the SEC's investigation, was not material to the financial condition of the company.

But I think what Judge Walker is pointing out is that once you make statements, and I think this is part of the theory, of the plaintiffs' case, once you start to make statements that -- about financial condition and also the absence of proceedings, then it may -- it may be a half truth.

Page 36

MR. TUCKER: Well, I -- I acknowledge that as you say or you may have duty to say even more. The case law says that.

But we have to remember the timing of this too, 2015, 2016 is when this event happened, when this disclose in the SEC filings the accounting issue and the remediation of that. The issue of about the statement that the company issued in a press release in 2019, three years later --

THE COURT: No that's the false statement. That is a separate question.

What I am look at a duty to disclose before the false statement. Not in 2019. But while the investigation was ongoing, during the same period that statements were being made about the financial condition, about the accounting treatments and problems that were going on in the company. The SEC -- your company knew that the investigation -- the SEC investigation was under way all through the class period.

MR. TUCKER: Your Honor, the only allegation is that Mr. Crawford went to visit the SEC. There is nothing beyond that that happened in 2016.

THE COURT: Here --

Pages 33 to 36

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Page 37

THE COURT: And it continued after -- there is no indiction that it closed it.

MR. TUCKER: That there is no indication that he closed or that it continued. Your Honor, so there has to be some plausible inference that it didn't matter and ultimately didn't mater.

THE COURT: But the question is, is that enough at the pleading stage. It may be that a little bit later on it's clear enough from all the facts that this is sufficiently distant, sufficiently trivial as not to be material that you could get summary judgement of that. It may also be that there is not enough at the pleading stage. What we are asking, I think Judge Walker is asking is whether at the pleading stage they have done enough to get by (undiscernable) --

MR. TUCKER: I would say no, Judge, I would say the fact that they identify an accounting issue that exists, that is not under the Lionsgate nor the steamfitters case that suggest to the extent that the SEC is looking at it -- they don't have to report it as a wrongdoing. That's what those cases suggest. Even if they say that we have an accounting issue that we are dealing with. It

Page 38

certainty is not something, they have to ignore.

Let me close if I can, Judges, by just saying if you look at the (undiscernable) case, if you look at the Cortina case (phonetic spelling) and then compare them to the cases, the District Court cases from California and Oregon, where the CEO were very, very much more -- the allegations are black and white. They are very starkly different.

Here what you made is -- we have Mr. Sicignano, he pays for promotional articles, has a company do that, he is very careful about what he puts in it. Somebody then authors take from them -- cut and paste -- nothing about the articles themselves --

THE COURT: Of course by citing to Galectin (phonetic spelling), you are noting that we don't have a second circuit. We don't have a second circuit precedent on precisely this point. Is that --

MR. TUCKER: You don't have the Galectin equivalent.

THE COURT: Well, we have kept you well past your time as well.

MR. TUCKER: I came a long way. So I appreciate your giving me --

Page 39

THE COURT: Thank for coming. Sorry about the rain in New York.

Mr. Lieberman.

MR. LIEBERMAN: Thank you, Your Honors, and just to -- first of all because of the SEC point that we're homing in on, we do allege that we do set a time that she had left the company, February 2019, the investigation had not yet closed.

That is clearly, that is clearly apparent --

THE COURT: Would you just address the more recent steamfitters case.

MR. LIEBERMAN: The steamfitters case didn't deal with the scenario where you had a investigation, where it was a material weakness being discussed. So the very issue --

THE COURT: So the material weakness here was the segregation of duties.

MR. LIEBERMAN: The material weakness is segregation of duties. Which by the way the segregation of duties, is something, if you had proper segregation of duties, you may not engage in something like hiring something like stock promoters to inflate share price. That's not something if you had a good, strong board or good, strong

Page 40

organization with proper checks and balances --

THE COURT: Is there an allegation - I am very focused, I think we all are focused on the pleadings. Is there allegation, that connects this issue that was the subject of the SEC's investigation, namely the segregation of duties, to the financial condition of the company?

MR. LIEBERMAN: Your Honor, nothing specifically.

THE COURT: Okay.

MR. LIEBERMAN: We can -- segregation of duties is the type of thing, where you don't have that --

THE COURT: Okay. So now we come as to this and to the other to what you might be prepared to allege if we gave you a chance to amend.

Are you prepared to make that statement with respect to the SEC, that the presider just asked, which you said, not yet, but, et cetera. And with respect to Sicignano's control, knowledge, et cetera, over the statements that were done, are you prepared to say that he had that kind of direct control?

MR. LIEBERMAN: Your Honor, what we will do -- I can't -- I'm not going to

Page 41

(undiscernable) the facts we have in the complaint right now. So I will say on the record a moment a any condition facts or less is something that --

THE COURT: So you're saying basically you still want us to make it an inference.

MR. LIEBERMAN: An inference, give us an opportunity to amend. When it comes to --

THE COURT: What would you say in that amendment that makes it more than what you have done now?

MR. LIEBERMAN: We would show that, if you are dealing with an issue of segregation of duties in a corporate structure and with expertise, if you have proper segregation of duties, your CEO wouldn't be hiring a stock promotion scheme. There will be proper oversight, there would be checks and balances into that scenario, where it would be impossible for him to do so. Or you have to disclose --

THE COURT: You are still saying that we should infer it from the position of a CEO. You are not saying that you will bring in facts which show that he reviewed, controlled, offered these things?

MR. LIEBERMAN: We are. I think we

Page 42

can do a better job at that, I'm not prepared at this moment.

THE COURT: What the do you mean.

THE COURT: You mean a matter of style?

MR. LIEBERMAN: No. First of all potentially. First of all, potentially. Second of all to show how segregation of duties does relate to the ultimate stock promotion scheme. That's just a matter of style and how corporations are supposed to be working and operating with the proper segregation of duties. To show how that wouldn't occur, the stock promotion scheme would not occur, if they had proper segregation of duties. And then generally based upon the facts that have been alleged, to either do further investigation or be -- to show that the CW -- otherwise, to show more control by the CEO, how he was well aware of the actual precise contents of the articles as opposed to the inference that we are making today.

But with all that said, certainly we benefit from that, I would say when it comes to scheme line (undiscernable) the intent -- we don't see where there is any lacking in the pleadings. We have alleged specifically that the CEO of the

Page 43

company, secretly started a stock promotion scheme, that he did with express intent of raising the share --

THE COURT: Well, we have that from your previous argument.

MR. LIEBERMAN: Okay. So I would say that we don't see any need for amendment there. And then there is the issue -- clearly no need for an amendment when it comes to the statements regarding the denials. At the end of the class period, actionable statements, the company straight up denied stock promotion scheme, denies a relationship to IRTH. Completely factually false. And when it denies the actual SEC investigation, completely factually false. There is no need for amendment there. This was a false statement made with (undiscernable) and has all the --

THE COURT: Just to follow up on that those disclosures were in 2019. Correct?

MR. LIEBERMAN: Yes.

THE COURT: So what exactly happened in the market at that time that depended upon those statements?

MR. LIEBERMAN: Well, in October of 2018 the company denies both the investigation and

Page 44

the --

THE COURT: October of 2018.

MR. LIEBERMAN: October of 2018. The first denial was clearly keep the -- share of the price stock up.

And the other period was in April of 2019. So clearly there the denials increase the share price. As far as the impact of the denials in April, as we get further (undiscernable) we can certainly.

THE COURT: Well, you're saying with respect to (undiscernable) and Seander (phonetic spelling) that there was enough there so that if we are to decide for you on the other grounds, the district should at least consider that. That it isn't something that we can decide against you without more because we're (undiscernable). That is all you need to say.

MR. LIEBERMAN: Clearly the October statement says that there is no issue with respect to loss causation. They clearly kept the share price inflated until the end of the class period.

THE COURT: That's an issue for the District Court. Right?

MR. LIEBERMAN: It should be. I

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 45

guess it should be. It should be. The District Court did not address at all the 19 reasons this -- for volatilities and why there was stock volatilities and why that was false and misleading because the main issue with our stock (undiscernable) the main issue impacting the share price of the company was this promotion scheme (inaudible).

THE COURT: If the CEO had disclosed compensation to these promoters would that have disabled your ability to bring this at least that aspect of the claim?

MR. LIEBERMAN: That would have done a lot to disable, because you had -- if it was disclosed that it could no longer being somewhat of scheme when you say disclosed.

THE COURT: When you say "a lot" wouldn't that have completely disabled your claim?

MR. LIEBERMAN: Your Honor, I can't assume here. It had to have been disclosed from (undiscernable) stock owners in order to inflate our share price for offerings that we intend to do to yield the $54 million.

THE COURT: I am asking these question so just so that I very precisely understand

Page 46

what you're saying.

So where we really are is was there an alleged -- was there enough in the pleadings to demonstrate that there was a duty to disclose by the CEO the compensation to these promoters.

MR. LIEBERMAN: The answer is, yes, there is enough of it in the pleadings.

THE COURT: Okay.

MR. LIEBERMAN: Clearly, the reasons, the 19 reasons for volatility triggers that duty to disclose. And then irrespective of that duty to disclose, we fully contend 10 A and C, because 10 A and C is not a disclosure of a pleading, it's a disclosure of a scheme and artifice to defraud.

THE COURT: But you just told me that if the compensation had been disclosed that would have disabled your entire case.

MR. LIEBERMAN: Yes.

THE COURT: Okay. So that affects 10 A and 10 C as well as 10 B.

MR. LIEBERMAN: -- not the duty to disclose, because it could no longer be a scheme to manipulate share prices.

THE COURT: I understand.

MR. LIEBERMAN: That would have been

Page 47

disclosed to the shareholders the investors wouldn't have been deceived, because that just a different --

THE COURT: Thank you very much. The case is submitted. We will reserve decision.

(End of argument.)

Page 48

CERTIFICATE

I, GERALDINE ADINOLFI, a Certified Court Reporter of the State of New Jersey, do hereby certify that the foregoing is true and accurate and has been transcribed to the best of my ability from the audio provided.

I FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties in this action and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

_____

Certified Court Reporter
License No. 30XI00228000

Pages 45 to 48

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

**A**

ability
  45:11 48:6
able 8:7
absence
  35:24
Absent 16:11
absolutely
  3:13 11:25
  12:1,6
  16:22
  18:10,22
  21:1,17
accounting
  17:1 25:6
  36:6,16
  37:19,25
accurate
  48:5
acknowledge
  36:1
act 2:19
  10:11
  30:17
action 48:10
  48:13
actionable
  43:11
activities
  5:2
activity
  32:13 33:1
actual 13:1
  28:22
  42:18
  43:14
address 3:20
  20:24
  39:11 45:2
ADINOLFI
  48:3
adjust 14:1
administ...
  28:11
advised 5:21
affect 34:10
affirmative
  30:9,17
ago 29:21

agree 31:20
  31:21
allegation
  9:4,7,11
  10:22
  12:25
  21:17
  30:19,21
  31:2 36:22
  40:2,4
allegations
  2:21 4:17
  7:13 12:1
  15:12 20:8
  38:7
allege 2:22
  3:16 9:14
  11:17 14:2
  14:5,11,21
  14:22 20:6
  21:6 31:5
  31:8 32:18
  32:24,25
  33:4,7
  39:6 40:16
alleged 3:6
  3:7 13:13
  31:22 32:7
  42:15,25
  46:3
alleges 19:5
  19:10,11
allowed 5:13
  7:6 32:18
allows 4:5
altered 18:9
altogether
  13:10
amend 7:4,6
  7:20 8:7
  11:23
  15:18,25
  16:4 21:22
  22:1,11,17
  23:7,7
  40:16 41:7
amended 7:12
amendment
  6:19,25
  7:1,2,8

8:1 16:1,6
  16:8,10
  22:25 24:1
  24:5 32:18
  33:3 41:9
  43:7,9,15
amid 2:21
analysts
  13:6,24,25
announce
  28:3
answer 14:10
  14:17 46:6
ant 31:15
apparent
  39:10
appeal 23:12
appealed
  22:11
APPEALS 1:1
appeared
  9:12
appellants
  2:15
appellees
  20:23
appreciate
  38:25
appropriate
  31:18
approved
  23:16
April 19:3
  20:5 25:15
  44:6,9
area 33:10
argue 7:5
  33:22
arguing 26:3
argument
  1:16 13:19
  16:16,18
  22:6 27:22
  35:15 43:5
  47:5
arises 10:17
article
  14:24 19:4
  19:10
  26:13

articles 3:9
  5:22 8:14
  9:5 13:4
  13:15
  14:25 20:6
  21:1 25:14
  32:13
  38:10,13
  42:19
artifice
  46:14
asked 7:1
  21:17
  24:25 25:2
  40:19
asking 6:15
  9:17 11:7
  18:15
  24:16 33:2
  33:3 37:15
  37:15
  45:24
aspect 45:12
assertions
  5:17 6:12
asses 34:6
assume 6:22
  45:20
Astonia 35:3
attorney
  48:9,11
audio 48:7
author 31:3
author's
  21:7,8
  31:6
authority
  24:2
authors 8:19
  8:21 12:14
  15:11
  21:24
  31:10
  33:13,14
  38:12
aware 20:2
  42:18

**B**

B 2:18 4:14

4:16 5:4
  6:7 46:20
back 10:12
  22:20 33:7
  35:16
bad 6:1
balances
  40:1 41:17
bank 25:9
based 17:7
  23:19,19
  30:4 34:6
  42:15
basically
  24:22 41:5
Bats 2:24
beef 11:23
begun 26:1
behalf 1:4
  2:15
believe 6:20
  7:13 8:8
benefit
  42:22
best 48:6
better 42:1
beyond 36:23
big 35:11
bit 32:22
  37:10
black 38:8
board 20:25
  39:25
Borly 2:4
boss 30:11
  30:13
bothers
  18:18
brief 22:13
  22:13
  23:16
briefing
  7:22,24
briefly
  16:21
  29:25
bright 28:18
  28:19
  29:19
bring 41:22

45:11
brings 21:16
Brodfuehrer
 1:9
brought 6:1

---
 **C**
---
C 2:19,21
 5:5,8 6:8
 6:9 8:10
 46:12,13
 46:20
Calabrese
 29:15
 32:22
Calabrese's
 27:22
calculus
 18:9
California
 38:6
called 5:1
careful
 38:11
case 2:21
 3:24 21:5
 21:6 28:8
 28:9,11,13
 29:21,22
 30:1,2,20
 32:9,10
 33:8,9,19
 33:24
 34:24,24
 35:23 36:3
 37:21 38:3
 38:4 39:12
 39:13
 46:17 47:4
cases 5:24
 6:1,20
 21:22
 27:20 32:4
 32:5,6,10
 37:23 38:5
 38:6
catcha 7:17
causation
 44:21
causes 28:14

Century 1:8
 2:2,9 3:7
 10:25 19:4
 19:5,10
CEO 3:7 5:20
 8:12,18,20
 8:20,24
 9:23 10:3
 10:5,11
 21:19
 25:16
 32:12 38:7
 41:14,21
 42:18,25
 45:9 46:5
CEO's 15:14
certain 33:4
certainly
 7:15 9:21
 12:2 26:5
 30:20 35:9
 42:21
 44:10
certainty
 38:1
CERTIFICATE
 48:1
Certified
 48:3,16
certify 48:5
 48:8
cetera 16:25
 34:5 40:19
 40:21
CFO 30:21
challenge
 23:11
chance 7:6
 23:7 40:16
charge 31:14
checked 25:8
checks 40:1
 41:16
chuckling
 29:17
circuit 1:1
 2:24 32:11
 33:9,10,18
 38:17,18
cited 21:12

32:4
citing 38:15
City 2:24
claim 2:20
 7:4 16:13
 30:3 45:12
 45:18
claiming
 5:12
claims 2:18
 24:1
class 36:20
 43:10
 44:22
clear 2:25
 7:10,11,15
 13:11 21:6
 23:19
 24:11
 37:10
clearly 2:22
 5:19,22
 8:8,12,14
 13:13
 15:17 18:4
 28:16 39:9
 39:9 43:8
 44:4,7,19
 44:21 46:9
client 27:14
client's
 15:13
clients
 27:15
close 27:2
 30:23 38:2
closed 25:21
 26:10
 27:25,25
 37:2,4
 39:8
closely 9:6
come 23:6,8
 25:15
 40:14
comes 41:7
 42:22 43:9
coming 8:13
 39:1
communic...

8:20 21:18
companies
 29:2
company 9:3
 11:18
 17:20,21
 18:1,12
 20:4 21:3
 21:23
 22:12 25:8
 25:17
 28:11 31:9
 31:17
 33:12
 34:11,21
 35:19 36:8
 36:17,18
 38:11 39:7
 40:7 43:1
 43:11,25
 45:7
compare 38:5
compensated
 31:23
compensa...
 10:15,23
 12:24
 21:14
 45:10 46:5
 46:16
competition
 10:12
complaint
 2:22 9:25
 10:1,3,25
 11:24
 12:11
 13:11
 22:20
 23:15,21
 31:21 41:1
complete
 10:7
completely
 12:19
 43:13,14
 45:18
compliant
 7:12 10:9
complicit

5:3
component
 32:1
concerned
 17:9 18:7
 18:16
concerns
 7:14
conclusion
 23:18
 32:24
concocted
 3:7 10:5
 12:12 14:6
 15:2
concoction
 11:19
condition
 35:19,24
 36:16 40:7
 41:3
conduct 3:1
 3:2 4:7
 6:5,7,10
confiden...
 5:20 23:22
conjunction
 30:17
connection
 28:3
connects
 40:4
consider
 34:3 44:15
conspiracy
 5:12
contact
 21:18 31:3
contend
 46:12
content 10:4
contentious
 31:9
contents
 42:19
continued
 37:1,4
control 5:14
 5:25 11:18
 12:2 32:20

40:20,23
42:17
**controlled**
 3:17 6:21
 21:23
 30:14
 41:23
**controls**
 17:18
**copied** 31:10
**copying**
 32:14
**Corp** 1:3 2:2
**corporate**
 41:13
**Corporation**
 2:6
**corporat...**
 42:10
**correct**
 12:23 17:4
 24:20
 43:19
**corrected**
 18:17
 24:23
**Cortina** 38:4
**counsel**
 25:14
 32:17 48:9
 48:12
**counseled**
 4:18
**course** 4:12
 38:15
**court** 1:1,25
 2:1,10,11
 2:17,23
 3:10,15,17
 4:1,9,15
 4:20,23
 5:6,10,23
 6:13,18,19
 7:10,14,18
 7:24 8:2,5
 8:17 9:1,7
 9:16,24
 10:8,16,21
 11:2,12,13
 11:15,22

12:3,17
13:2,8,16
13:18 14:2
14:9,15,17
15:9,19,24
15:25 16:3
16:4,5,9
16:13,15
16:18,20
16:23 18:5
18:14,23
19:8,15,18
19:21,24
20:10,13
20:18,21
21:11,20
21:21 22:6
22:7,9,16
23:6,12,25
24:12,15
24:19,20
25:2,19,21
25:25 26:7
26:20 27:1
27:5,11
28:2,8,14
28:17,21
28:25 29:4
29:8,10,11
29:16,20
30:13,24
31:18,20
32:11,16
33:2,9,20
33:23
34:18 35:3
35:15
36:10,25
37:1,8
38:6,15,22
39:1,11,17
40:2,10,14
41:4,8,20
42:3,4
43:4,18,21
44:2,11,23
44:24 45:2
45:9,17,24
46:8,15,19
46:24 47:3

48:3,16
**Court's** 7:25
**covers** 2:25
 28:24
**Crawford**
 30:20,21
 36:22
**criminally**
 17:7
**critical**
 17:23
**Cummings** 2:5
**cut** 38:13
**cuts** 27:2
**CW** 42:17
**CW1** 23:22

_____

**D**
_____

**d** 23:11
**dark** 16:14
**date** 27:18
**deal** 39:14
**dealing**
 37:25
 41:12
**deals** 7:11
**deceive**
 17:19
**deceived**
 8:12,12,13
 47:2
**deceives** 3:3
 6:6
**decide** 44:14
 44:16
**decision** 2:7
 7:25 28:7
 47:4
**decisions**
 30:6
**defendant**
 28:9 30:7
**defendants**
 6:20 30:8
**Defendan...**
 1:10
**deficien...**
 8:3 16:4
**deficiency**
 12:11

**definitive**
 27:12
**definiti...**
 27:17
**defraud**
 46:14
**demand** 3:5
**demonstrate**
 46:4
**denial** 44:4
**denials**
 15:21 20:5
 20:9 43:10
 44:7,8
**denied** 43:12
**denies** 43:12
 43:14,25
**denying**
 19:22
**depended**
 43:22
**desperate**
 15:2,5
**determin...**
 29:24
**different**
 4:7 6:14
 11:3,6
 38:8 47:2
**difficult**
 7:3
**difficul...**
 17:1,8
 34:1,5,20
 34:21
**dime** 6:12
**direct** 40:22
**direction**
 6:14 30:10
**directly**
 24:25 25:3
 33:13
 34:11
**dis** 27:2
**disable**
 45:14
**disabled**
 45:11,18
 46:17
**disclose**

4:18 10:12
10:15,16
10:17,23
11:11
12:24
13:14,19
18:16,25
21:14,25
24:23
25:10
26:21 28:4
29:2,12
31:12
33:15,23
34:9 36:6
36:12
41:19 46:4
46:11,12
46:22
**disclosed**
 17:15 18:6
 35:8 45:9
 45:15,16
 45:20
 46:16 47:1
**disclosing**
 4:11 14:7
 31:7
**disclosure**
 12:5 16:21
 18:8 34:13
 34:15
 46:13,14
**disclosures**
 33:25
 43:19
**discussed**
 39:16
**discussions**
 34:25
**dismiss** 7:21
**dismissing**
 2:18
**distant**
 37:11
**distinction**
 32:7
**distortory**
 7:2
**district**

2:17 3:16
6:19 7:14
7:25 15:25
16:3,12
17:13
21:21
24:20
32:11
33:18 38:5
44:15,24
45:1
**doing** 3:18
14:7 24:22
34:21
**dollars** 3:25
**doubtful**
23:1
**duties** 25:7
35:17
39:18,20
39:21,22
40:6,12
41:13,14
42:8,12,14
**duty** 10:10
10:10,12
10:14,16
10:17,23
11:5,21
18:16,25
19:1 24:23
24:24
33:16,23
34:9 35:12
36:2,12
46:4,10,11
46:21

—————
**E**
**E** 29:16
**earlier** 7:7
**earnings**
34:5
**edited** 23:16
**editing**
23:24
**effect** 5:12
6:21 21:23
**efforts**
17:19 18:2

23:23
**either** 10:11
42:16
**employee**
30:8,15
48:9,11
**ended** 27:16
27:17
**enforcement**
20:1 26:22
28:22 29:1
**engage** 39:22
**entire** 10:6
46:17
**equivalent**
38:21
**error** 2:17
**essentially**
13:9
**et** 16:25
34:5 40:19
40:21
**event** 36:5
**exactly** 6:3
6:7 8:9
15:6,12
16:19
23:10
43:21
**example**
28:22
**Exchange**
2:19
**exemption**
26:15,25
**existence**
19:23 28:4
**exists** 37:20
**expertise**
41:13
**exposed** 17:7
**express** 43:2
**extent** 37:21

—————
**F**
**fact** 13:21
17:23
23:19
24:11 26:3
33:11,12

34:25 35:4
37:19
**facts** 8:17
22:14
23:14 30:6
32:7,23,25
33:5,7,19
33:24
37:11 41:1
41:3,22
42:15
**factually**
43:13,15
**failed** 13:14
**failure**
12:24
13:19
**failures**
16:13
**fake** 13:24
13:25
**false** 5:17
6:11,22
12:20 13:1
13:5,6,6,7
13:10
15:10,10
15:22 24:3
36:10,13
43:13,15
43:16 45:4
**falsehood**
18:21
**falsely**
13:13 19:4
19:10,11
20:6
**far** 17:12
18:6 44:8
**fashion** 7:2
**favor** 7:18
**favorable**
20:6
**February**
39:8
**felt** 7:14
8:6 16:13
**fictitious**
5:17 8:16
10:6 12:13

13:5,22
14:4,12
15:17
31:23
32:20
**filing** 19:24
20:3 33:20
**filings**
16:25 36:6
**final** 22:13
**financial**
17:8 18:6
25:11 34:1
34:4,12
35:19,24
36:16 40:7
**financially**
48:12
**financials**
35:1
**find** 6:24
**finish** 12:4
**firm** 3:8,12
**first** 7:20
20:25 39:5
42:6,7
44:4
**fix** 22:8
**fixed** 17:2
**focus** 15:12
30:24
**focused** 40:3
40:3
**Foley** 26:13
**follow** 9:8
43:18
**followed** 9:6
9:9,13
**foregoing**
48:5
**forget** 17:4
**form** 31:25
31:25
**formal** 28:13
**forth** 17:11
**forward** 5:24
**found** 3:17
8:2 17:14
**four** 26:23
26:25

**fraud** 10:7
**free** 30:15
**frivolous**
20:8
**front** 22:7
**fruits** 15:7
**fulfill**
31:11
**fully** 25:10
25:10
35:12
46:12
**fundamen...**
32:12
**further** 28:7
42:16 44:9
48:8
**futile** 22:17
24:1,7

—————
**G**
**Galectin**
38:16,21
**Galina** 32:10
**game** 7:17
**gap** 7:15
**Garden** 1:3
2:2
**generally**
42:14
**GERALDINE**
48:3
**getting**
17:21
**give** 11:4
23:6 26:14
41:6
**given** 11:18
24:9
**gives** 11:1
**giving** 38:25
**go** 5:24
16:20
22:20 33:7
33:20 34:5
**goes** 35:16
**going** 6:15
8:22 24:10
26:14
27:22

| | | | | |
|---|---|---|---|---|
| 32:23 | 40:8,24 | **indication** | 19:11,12 | **issuer** 3:11 |
| 33:14 35:4 | 45:19 | 37:4 | 19:20,23 | 3:11 10:10 |
| 36:17 | **Honors** 2:14 | **indiction** | 24:17,21 | 10:11,18 |
| 40:25 | 2:16 39:5 | 37:2 | 25:3,18,22 | 10:22,22 |
| **good** 2:14 | **HUDSON** 1:25 | **individual** | 26:10,16 | 10:25 |
| 20:22 | **hypothet...** | 14:23 | 26:17 27:6 | 11:10,16 |
| 39:25,25 | 31:21 | 27:15 | 27:13,13 | 13:3 14:3 |
| **greatly** 35:1 | | **Individu...** | 28:5,13 | 19:25 28:4 |
| 35:2 | **I** | 1:3 | 33:24 | **issuer's** |
| **grounds** | **identifi...** | **infer** 41:21 | 34:10,16 | 21:13 |
| 44:14 | 15:11 | **inference** | 35:4,6,6 | **issuers** 6:11 |
| **Group** 1:8 | **identify** | 8:24 9:22 | 35:18 | **issues** 18:3 |
| 2:9 | 37:19 | 9:23 14:14 | 36:14,18 | 25:17 |
| **guess** 45:1 | **identities** | 14:19,24 | 36:19 39:8 | **issuing** |
| | 5:18 8:16 | 37:6 41:5 | 39:15 40:6 | 31:24 |
| **H** | 10:7 13:22 | 41:6 42:19 | 42:16 | |
| **half** 25:23 | 15:17 | **inflate** | 43:14,25 | **J** |
| 35:25 | **ignore** 38:1 | 39:24 | **investig...** | **Janice** 3:20 |
| **hand** 7:3 | **III** 1:9 | 45:21 | 34:2 | 11:16,20 |
| **handle** 17:22 | **illegal** 3:12 | **inflated** | **investig...** | 12:8 |
| **happened** | 3:14 21:3 | 44:22 | 28:22 | **Jerry** 2:14 |
| 23:5 25:12 | 25:11 | **informant** | 34:19 | **Jersey** 48:4 |
| 31:14 36:5 | **impact** 44:8 | 5:21 23:22 | **investing** | **job** 42:1 |
| 36:23 | **impacted** | **information** | 34:7,11 | **John** 1:9 |
| 43:21 | 30:18 | 26:21 | **investor** | 20:22 |
| **happening** | **impacting** | 27:21 | 18:4 30:10 | **Johnson** 1:3 |
| 17:7 27:9 | 45:6 | 34:12 | 34:6 | **Joseph** 1:3 |
| **Healthcare** | **important** | **instance** | **investors** | **judge** 14:10 |
| 2:6 | 13:22 | 12:10 | 34:3 47:1 | 17:14 |
| **hear** 3:24 | 15:21 34:4 | 33:11 | **involved** | 22:14,21 |
| 20:18 | 34:8 | **instances** | 24:14 | 23:1 24:16 |
| 29:15 | **impossible** | 27:23 | 29:22 | 25:24 |
| **Henry** 1:9 | 41:18 | **intend** 45:22 | 32:12 | 27:22 |
| **hiring** 39:23 | **improper** | **intent** 31:15 | **involvement** | 29:15,20 |
| 41:15 | 21:3 | 42:23 43:2 | 21:18 | 32:22 |
| **hold** 11:16 | **inaudible** | **interested** | **ironic** 32:4 | 35:11,20 |
| **holdings** | 3:2 6:9 | 48:12 | **irrespec...** | 37:15,18 |
| 33:19 | 12:7,14 | **Internet** | 46:11 | **judgement** |
| **holds** 13:2 | 16:14 | 26:12 | **IRTH** 43:13 | 37:13 |
| **home** 30:15 | 25:20 | **interrupt** | **issue** 3:20 | **Judges** 33:8 |
| **homing** 39:6 | 29:22 31:6 | 12:18 | 17:22 21:5 | 38:2 |
| **Honor** 9:22 | 45:8 | **intricately** | 35:17 36:7 | |
| 20:20 22:4 | **included** | 32:12 | 36:7 37:20 | **K** |
| 23:3 24:8 | 23:24 | **investig...** | 37:25 | **keep** 14:18 |
| 25:1,4 | **inconsis...** | 17:24 | 39:16 40:5 | 44:4 |
| 26:11,25 | 5:11 | **investig...** | 41:12 43:8 | **kept** 20:13 |
| 27:4,19 | **increase** | 12:19 17:3 | 44:20,23 | 38:22 |
| 28:6 32:2 | 44:7 | 17:13 18:3 | 45:5,6 | 44:21 |
| 34:15 | **indicated** | 18:8,13,17 | **issued** 9:2 | **kind** 7:2 |
| 36:21 37:5 | 16:25 | 18:19 19:6 | 29:21 36:8 | 24:21 25:5 |

| | | | | |
|---|---|---|---|---|
| 40:22 | 7:22 8:2,6 | **longest** 17:5 | 8:11,13 | 26:9 30:4 |
| **knew** 8:13 | 8:23 9:2 | **look** 23:20 | 10:7 13:23 | 30:9 31:25 |
| 14:3,12 | 9:13,21 | 28:7 32:4 | 17:20 | **moment** 41:2 |
| 15:16 31:5 | 10:2,9,14 | 32:5,6,9 | 43:22 | 42:2 |
| 31:22 | 10:19,24 | 33:8,17 | **marketing** | **mone** 9:15 |
| 32:19 | 11:9,15,25 | 36:12 38:3 | 2:22,25 | **money** 15:4 |
| 36:18 | 12:6 13:2 | 38:4 | 8:9 12:9 | 29:22 35:3 |
| **know** 3:21 | 13:12,17 | **looking** 8:19 | **mater** 37:7 | **morning** 2:14 |
| 4:9,13 | 13:21 14:5 | 17:25 | **material** | 20:22 |
| 9:19 14:11 | 14:13,16 | 37:22 | 9:20 13:10 | **motion** 7:21 |
| 15:6 17:6 | 14:22 | **Lorelei** 7:9 | 17:17,18 | **motive** 31:15 |
| 17:13 | 15:15,20 | 7:15 16:15 | 18:1 26:4 | **muddying** |
| 22:21 | 16:2,7,11 | 16:18 | 26:6 29:4 | 25:5 |
| 29:25 | 16:17,19 | 22:20,22 | 35:18 | |
| 33:14 34:8 | 16:22 | **Lorenzo** 2:23 | 37:12 | ————— |
| 35:1 | 17:16 | 4:5,6 6:4 | 39:15,17 | **N** |
| **knowledge** | 18:10,22 | 6:4 30:1,2 | 39:19 | **name** 17:5 |
| 15:13,14 | 19:3,9,17 | 30:7,7 | **materiality** | **names** 12:14 |
| 31:4 40:20 | 19:19,22 | **loss** 44:21 | 27:22 | 13:5,24 |
| **known** 30:23 | 20:2,11,14 | **lot** 23:15 | 35:16 | 31:23 |
| | 20:17 39:3 | 45:14,17 | **materials** | **Nassau** 2:6 |
| ————— | 39:4,13,19 | **lower** 22:6,7 | 9:9,18 | **nature** 27:5 |
| **L** | 40:8,11,24 | **Loya's** 14:10 | 31:24 | **nearly** 9:13 |
| **lacking** | 41:6,11,25 | | **matter** 17:24 | **necessity** |
| 42:24 | 42:6 43:6 | ————— | 29:5 35:11 | 6:8 |
| **late** 22:24 | 43:20,24 | **M** | 35:12 37:6 | **need** 5:7,8 |
| **laundering** | 44:3,19,25 | **magnitude** | 42:4,10 | 28:7 35:8 |
| 29:23 35:3 | 45:13,19 | 35:2 | **matters** 2:4 | 43:7,8,15 |
| **Lavalle** | 46:6,9,18 | **main** 45:5,6 | 18:17 | 44:18 |
| 22:21 | 46:21,25 | **maker** 4:2,10 | 24:22 | **needed** 25:8 |
| **law** 21:2 | **light** 34:21 | 5:1,8 | 28:11 | **needs** 23:8 |
| 26:22 | **likelihood** | 11:17,19 | **mean** 15:14 | 24:9 |
| 31:12 36:3 | 34:19 | 12:8 13:3 | 18:20 | **neither** 48:8 |
| **lawyer** 17:10 | **line** 28:18 | 30:12,14 | 27:16 42:3 | 48:11 |
| **leap** 26:17 | 28:20 | **makers** 6:21 | 42:4 | **never** 11:13 |
| **left** 39:7 | 29:19 | **making** 6:11 | **meet** 22:19 | 22:14,15 |
| **let's** 30:24 | 42:23 | 17:17 | **million** 15:6 | 35:13 |
| **letter** 27:24 | **Lionsgate** | 23:18 | 18:12 | **neverthe...** |
| **liability** | 28:7,18 | 34:21 | 45:23 | 31:23 |
| 6:23 | 33:22,22 | 42:20 | **mimicked** 9:9 | **New** 39:2 |
| **License** | 37:20 | **manifestly** | **minimizing** | 48:4 |
| 48:17 | **litigation** | 24:3 | 34:22 | **non** 12:5 |
| **lie** 19:1,6 | 28:10 | **manipulate** | **minutes** | 31:6 |
| 24:24 | **little** 8:18 | 46:23 | 20:15 | **note** 2:3 |
| **Lieberman** | 32:22 | **manipula...** | **mis-emails** | **notices** |
| 2:12,13,15 | 37:10 | 2:25 30:3 | 30:9 | 28:12 |
| 3:13,19 | **LLP** 2:15 | **manipula...** | **misleading** | **noting** 38:16 |
| 4:4,12,19 | **long** 38:24 | 32:1 | 13:14 45:4 | **Noto** 1:3 2:1 |
| 4:21 5:4,7 | **longer** 45:15 | **mark** 30:3 | **misstate...** | 2:8 |
| 5:15 6:3 | 46:22 | **market** 3:3 | 19:15,18 | ————— |
| 6:17 7:9 | | 6:6,12 | | **O** |

| | | | | |
|---|---|---|---|---|
| **object** 34:2 | 11:14 | **paste** 38:13 | 42:24 46:3 | 43:5 |
| **obligation** | **opportunity** | **pay** 3:21 | 46:7 | **price** 3:4,23 |
| 23:5 28:4 | 7:16 15:18 | 15:4 21:4 | **pled** 7:12,12 | 3:24 8:11 |
| 28:14 | 16:3,12 | **paying** 3:22 | 23:13,14 | 12:13 |
| 29:12 | 22:10 24:9 | 4:13,13,15 | 35:5 | 39:24 44:5 |
| **occur** 42:12 | 41:7 | 4:16 5:16 | **plug** 7:15 | 44:8,22 |
| 42:13 | **opposed** | 33:12,13 | **plumbers** | 45:7,22 |
| **October** 20:5 | 42:19 | **payment** 3:10 | 29:20 | **prices** 46:23 |
| 43:24 44:2 | **opposing** | **pays** 38:10 | **plus** 32:22 | **principle** |
| 44:3,19 | 32:17 | **people** 3:18 | **point** 10:8 | 13:18 |
| **offered** | **ORAL** 1:16 | 13:6,23,24 | 11:6 12:23 | **probably** |
| 41:23 | **order** 3:23 | 21:24 25:8 | 33:21 | 23:7 29:6 |
| **offering** | 3:24 11:23 | **perfect** 8:10 | 38:18 39:6 | 29:7 |
| 3:25 15:6 | 28:13 | **perfectly** | **pointing** | **problem** 3:16 |
| **offerings** | 31:16 | 31:15,17 | 35:21 | 4:11 17:14 |
| 18:11 | 45:21 | **perform** 3:25 | **Pomerantz** | **problems** |
| 45:22 | **Oregon** 38:6 | **period** 17:3 | 2:15 | 36:17 |
| **office** 30:22 | **organiza...** | 36:15,20 | **position** | **proceed** 2:8 |
| **officer** 3:11 | 40:1 | 43:10 44:6 | 41:21 | **proceeding** |
| **officers** | **originally** | 44:22 | **possible** | 20:1 26:22 |
| 10:22 14:3 | 7:1 | **pertains** | 9:22 | 29:1,13 |
| 17:4 | **outright** | 34:12 | **post** 26:18 | **proceedings** |
| **official** | 15:22 | **phonetic** | **potentially** | 28:23 |
| 34:20 | 18:21 19:6 | 7:10 32:10 | 26:15 42:7 | 35:25 |
| **Oh** 5:6 12:15 | **oversight** | 38:4,16 | 42:7 | **promote** 5:16 |
| 14:16 | 41:16 | 44:12 | **precedent** | **promoted** |
| 19:21 | **owners** 45:21 | **photos** 13:25 | 38:18 | 10:6 |
| 28:25 | | **pick** 31:16 | **precise** | **promoter** |
| **Okay** 4:20 | **P** | **pieces** 4:10 | 42:18 | 3:21,21,23 |
| 9:16 20:10 | **paid** 3:8 | 4:10 | **precisely** | 10:4,18,20 |
| 20:13 | 8:15 12:15 | **place** 27:14 | 3:6 38:18 | 15:5 |
| 21:20 | 13:15,20 | **placed** 10:18 | 45:25 | **promoters** |
| 23:25 | 14:1,7 | 10:19 | **prepared** | 9:19 10:13 |
| 24:12 | 21:1 31:16 | **plaintiffs** | 32:17 | 12:25 14:4 |
| 40:10,14 | **paragraph** | 21:12 | 40:16,17 | 14:8 31:22 |
| 43:6 46:8 | 10:24 | **plaintiffs'** | 40:22 42:1 | 33:12 |
| 46:19 | 23:20 | 35:22 | **presider** | 39:23 |
| **omission** | **parroted** 9:6 | **Plaintif...** | 11:7 40:18 | 45:10 46:5 |
| 30:4 | 31:11 | 1:5 | **press** 8:19 | **promotion** |
| **omitting** | **parroting** | **plausible** | 8:25 9:6,9 | 3:8,9,12 |
| 17:23 | 32:14 | 37:5 | 9:10,14,18 | 8:15 15:7 |
| **once** 18:17 | **part** 11:23 | **playing** 18:7 | 10:3 13:7 | 15:22 20:7 |
| 20:8 35:21 | 30:16 34:3 | **plead** 23:10 | 15:1 25:17 | 20:12 |
| 35:23 | 35:22 | 27:8 | 36:9 | 31:16 |
| **ongoing** | **particip...** | **pleading** 6:1 | **pressed** | 41:15 42:9 |
| 26:15,22 | 6:10 | 23:8 37:9 | 22:22 | 42:13 43:1 |
| 27:5 36:14 | **particul...** | 37:14,16 | **presumably** | 43:12 45:7 |
| **operating** | 7:11 18:11 | 46:13 | 8:18 17:10 | **promotional** |
| 42:11 | **parties** | **pleadings** | 24:4 34:2 | 9:5,8,17 |
| **opinion** | 48:10 | 8:3 40:4 | **previous** | 13:4 14:24 |

21:1 31:10
31:24
38:10
**promotions**
  21:4,10
**proper** 21:9
  39:22 40:1
  41:14,16
  42:11,14
**prophyla...**
  6:8
**propose**
  15:25
**protect** 8:10
**prove** 35:14
**provide** 6:9
  12:1
**provided**
  10:3 48:7
**Providence**
  2:24
**PSLRA** 23:9
**publish** 3:9
**publisher**
  4:10 11:21
**puffery** 13:9
**puffing** 6:22
**pump** 8:11
**pumping** 6:11
**purposely**
  3:22 4:14
  12:12
**pursuant**
  27:25
**push** 6:13
**pushed** 23:1
**pushing** 23:3
**put** 7:22,24
  9:19,19
  31:9
**puts** 38:12

———————
  **Q**
———————
**question**
  6:18,25
  11:3 13:8
  14:10,17
  18:24
  21:16
  24:16 30:1

30:12
33:21
36:11 37:8
45:25
**questions**
  12:18
  14:20
  20:24
**quote** 23:23

———————
  **R**
———————
**rah** 32:24
**rain** 39:2
**raise** 3:23
  12:12
  31:16
**raising** 43:2
**ran** 32:18
**Rathman** 32:9
**read** 7:20
  9:18 23:21
  27:20
**real** 13:23
  27:13
**reality** 4:21
**really** 7:7
  13:25
  18:24
  24:22 33:9
  46:2
**reason** 6:6
  18:13
**reasonable**
  14:13,18
  18:4
**reasons** 11:1
  11:4 45:2
  46:9,10
**rebuttal**
  20:16
  32:17
**received**
  28:12,12
**record** 41:2
**RECORDING**
  1:15
**records** 25:9
  26:14
**reflects** 3:4
**regard** 17:8

20:25 31:6
34:1
**regarding**
  17:17 43:9
**relate** 42:8
**relations**
  2:22 8:9
  12:9
**relation...**
  43:12
**relative**
  48:9,11
**release** 8:25
  10:4 13:7
  15:1 25:17
  36:9
**releases**
  8:19 9:6,9
  9:10,14,18
  16:25
**remaining**
  2:4
**remediated**
  25:10,13
**remediation**
  17:19 18:2
  36:7
**remedied**
  17:14
  35:13
**remember**
  36:4
**Repeat** 19:8
**reply** 22:13
**report** 37:23
**Reporter**
  48:4,16
**REPORTING**
  1:25
**represent**
  20:23
**represented**
  17:10
**request**
  26:13
**requesting**
  11:23
**requirement**
  4:2 23:5
**requires**

11:10
**requisite**
  10:23 12:2
**reserve** 2:7
  47:4
**reserved**
  20:15
**resolution**
  28:1
**respect**
  15:13
  40:18,20
  44:12,20
**respectf...**
  2:16
**response**
  22:6
**responsi...**
  21:8,9,13
  31:12
**rests** 12:20
**result** 20:7
  26:17
**reversible**
  2:17
**review** 9:18
  14:25
**reviewed**
  3:18 6:21
  14:23 15:1
  21:23
  23:17
  41:23
**reviewing**
  5:22 8:14
  23:24
**right** 4:23
  4:23 8:19
  11:14
  15:15 22:2
  25:9 26:18
  27:1 31:1
  41:2 44:24
**risk** 34:6,7
  34:10
**risks** 18:6,9
**Rothman** 33:8
**round** 7:20
**Route** 2:2
**rule** 16:10

21:11,12
22:10 23:9
28:2,18,20
29:19
**run** 4:1
**Russia** 29:23

———————
  **S**
———————
**safe** 29:12
**safer** 29:7
**sale** 19:9
**sales** 3:2
**sanctioned**
  24:4
**saying** 4:24
  5:24 14:18
  17:11 18:5
  21:8 22:1
  22:18
  24:20
  27:17,24
  31:13 32:5
  32:6 38:3
  41:4,20,22
  44:11 46:1
**says** 4:6 6:4
  6:4 10:15
  20:4 21:7
  21:9 23:22
  25:17
  26:13 36:3
  44:20
**scenario**
  8:11 39:14
  41:17
**scenes** 23:24
**scheme** 2:23
  2:25 3:8
  8:9 10:6
  11:19
  12:10,12
  14:6 15:2
  15:7,22
  20:7,12
  30:16 32:1
  33:15 35:3
  41:15 42:9
  42:13,23
  43:1,12
  45:7,16

| | | | | |
|---|---|---|---|---|
| 46:14,22 | 42:24 43:7 | **Sicignano's** | **spelling** | **Stephens** 1:3 |
| **se** 3:12 | **seen** 12:25 | 23:23 | 7:10 32:10 | **stock** 3:8,11 |
| **Seander** | **segregation** | 40:20 | 38:4,16 | 5:16 6:11 |
| 44:12 | 25:7 35:12 | **side** 3:9 | 44:13 | 8:11 11:1 |
| **SEC** 12:5,18 | 35:17 | 6:16 18:15 | **stage** 37:9 | 15:7,22 |
| 16:21,25 | 39:18,20 | 18:25 | 37:14,16 | 20:7,9,11 |
| 17:3,10,24 | 39:21,22 | **similar** | **stale** 27:21 | 21:4 39:23 |
| 18:8,13,16 | 40:6,11 | 33:19,19 | **stand** 24:10 | 41:15 42:9 |
| 18:19 19:1 | 41:12,14 | 33:19 | **standard** | 42:13 43:1 |
| 19:6,11,12 | 42:8,11,14 | **Similarly** | 23:9 26:23 | 43:12 44:5 |
| 19:20,23 | **send** 27:24 | 1:4 | **stands** 23:12 | 45:3,5,21 |
| 19:24,25 | **senior** 23:1 | **simply** 5:25 | **starkly** 38:8 | **straight** |
| 20:3 24:17 | **sense** 13:10 | 15:8 | **start** 2:1 | 20:9 43:11 |
| 25:3,21 | 32:20 | **single** 8:25 | 35:23 | **strong** 39:25 |
| 26:14 | **sent** 30:8 | 15:1 | **started** 43:1 | 39:25 |
| 27:13,23 | **sentence** | **sit** 23:3 | **Starting** | **strongly** |
| 28:5,13,25 | 22:5 | **Situated** 1:4 | 2:20 | 22:22 |
| 29:12 | **separate** | **situation** | **state** 1:3 | **structure** |
| 33:20,23 | 36:11 | 4:7 34:4 | 2:2 10:9 | 41:13 |
| 34:2,10 | **separates** | 35:9 | 48:4 | **stuff** 23:15 |
| 36:6,18,19 | 28:21 | **slightly** | **statement** | **style** 42:5 |
| 36:23 | **SEPTEMBER** | 6:14 | 11:20 12:9 | 42:10 |
| 37:22 39:6 | 1:16 | **slings** 23:15 | 12:21 13:1 | **subject** |
| 40:18 | **series** 16:24 | **small** 25:7 | 13:3,4 | 34:13 |
| 43:14 | 16:24 | **Smith** 2:5 | 18:18,20 | 35:17 40:5 |
| **SEC's** 35:18 | **set** 21:24 | **somebody** | 26:2,9 | **submit** 2:16 |
| 40:5 | 39:7 | 12:15 25:8 | 27:12 36:8 | **submitted** |
| **second** 1:1 | **share** 3:3,23 | 38:12 | 36:11,13 | 2:7 47:4 |
| 2:23 38:17 | 3:24 12:13 | **somewhat** | 40:18 | **succeed** 15:3 |
| 38:17 42:7 | 39:24 43:2 | 45:15 | 43:16 | **sufficient** |
| **secretly** | 44:4,8,21 | **sorry** 29:7 | 44:20 | 5:25 7:13 |
| 43:1 | 45:6,22 | 29:12,14 | **statements** | 22:19 |
| **sectio** 5:13 | 46:23 | 29:18 33:3 | 6:23 13:5 | **sufficie...** |
| **section** 3:22 | **sharehol...** | 39:1 | 13:9,20 | 37:11,12 |
| 4:14,16 | 47:1 | **source** 19:4 | 15:23 | **suggest** |
| 5:4,5,8,13 | **shooting** | **southern** | 17:17 | 26:16 |
| 6:2 10:15 | 16:14 | 33:18 | 23:17 25:9 | 31:18 32:3 |
| 10:17 | **short** 19:9 | **speak** 30:5 | 25:12 | 37:21,24 |
| 11:10 | **show** 12:1,8 | **speaking** | 35:21,23 | **suggesting** |
| 12:15,16 | 24:5 32:25 | 34:16,16 | 36:15 | 29:11 |
| 21:7 | 41:11,23 | 34:18,19 | 40:21 43:9 | **suggestion** |
| **Sections** | 42:8,12,16 | **speaks** 26:25 | 43:11,23 | 35:13 |
| 2:18,19 | 42:17 | **specific...** | **States** 1:1 | **summary** |
| 6:8 | **showing** 12:8 | 4:6 6:4 | 2:4,5 | 37:13 |
| **securities** | **Sicignano** | 8:24 11:8 | **steamfitter** | **supervised** |
| 2:19 10:11 | 1:9 23:16 | 11:10 | 34:24 | 3:18 |
| **security** 3:5 | 24:2,14 | 14:23 | **steamfit...** | **supply** 3:4 |
| **see** 5:6 | 30:20,25 | 15:16 40:9 | 29:21 | **support** 24:6 |
| 12:10,11 | 31:2 32:19 | 42:25 | 37:21 | **supposed** |
| 15:19 | 38:10 | **spell** 16:5,7 | 39:12,13 | 42:10 |

supposedly
 19:5,11,12
Supreme 2:23
sure 6:17
 12:6 23:23
 24:18

**T**

T 1:9
take 16:23
 27:14
 38:12
talk 27:20
 29:25
talking 5:5
 5:20 8:21
 15:10 18:1
 18:2 32:14
tell 8:17
 16:23
 22:21
 23:13
telling 16:1
ter 32:24
Thank 2:9,10
 2:11 20:17
 20:20 39:1
 39:4 47:3
theory 12:20
 12:22
 35:22
thing 27:11
 40:12
things 6:15
 21:24 23:8
 41:24
think 4:24
 13:11,12
 15:20 17:4
 17:5 22:3
 23:4 24:8
 26:17 28:6
 28:15,17
 28:19,24
 29:1,4,6
 29:16,19
 30:6 32:21
 32:23 33:6
 34:15
 35:15,20

35:22
 37:15 40:3
 41:25
thinking 3:3
thinks 13:23
thought 4:24
 11:22 22:3
three 18:11
 20:15
 25:16,24
 26:1,18
 27:9 36:9
time 17:16
 17:23,25
 20:14 22:4
 25:18
 27:21
 38:23 39:7
 43:22
timeline
 25:5
timing 9:11
 36:4
Tire 1:3 2:2
today 22:15
 22:17 23:3
 42:20
told 35:10
 46:15
top 8:25
totally
 25:12
transcribed
 48:6
TRANSCRIPT
 1:15
travels 33:9
treatments
 36:16
triggers
 46:10
trivial 26:8
 37:12
true 23:18
 30:7 48:5
truth 35:25
trying 4:25
 15:11
 17:19
Tucker 20:19

20:20,21
 20:22,23
 21:15 22:3
 22:12 23:2
 24:8,13,18
 25:1,4,20
 25:23 26:5
 26:11,24
 27:4,7,19
 28:6,19,24
 29:3,6,9
 29:14,18
 31:1 32:2
 32:21 33:6
 34:14,23
 36:1,21
 37:3,18
 38:20,24
turn 22:23
 24:15
two 3:25
 25:23 26:1
type 6:5
 40:12
types 4:7

**U**

ultimate
 42:9
ultimately
 37:6
unadjudi...
 28:15
uncharged
 28:15
understand
 12:19,22
 15:9 16:12
 23:2 25:25
 45:25
 46:24
understa...
 27:23
understated
 35:2
understood
 14:6
undiscer...
 6:10 11:18
 14:1 37:17

38:3 41:1
 42:23
 43:17 44:9
 44:12,17
 45:6,21
unique 30:6
 30:6
United 1:1
 2:4,5
use 8:16
 15:15,18

**V**

v 1:7 2:2,4
 2:5,8
valid 35:6
variety 3:1
versus 2:6
 2:24 32:8
viable 17:20
 17:21
VIDEO 1:25
violate 4:14
 12:16
violates
 4:16
violating
 3:22 12:15
visibility
 31:17
visit 36:22
volatile
 11:1
volatili...
 45:3,4
volatility
 46:10

**W**

wait 7:25
 19:8
Walker 24:16
 35:20
 37:15
want 2:3
 6:10,24
 7:5 12:5
 12:17 28:3
 29:2 41:5
wanted 7:20

8:3
wasn't 5:25
 7:18,19
 18:25 19:1
 26:2,10
watch 3:1
way 7:7 19:7
 21:2,3
 36:19
 38:24
 39:20
we'll 2:1
we're 22:23
 39:6 44:17
weakness
 39:15,17
 39:19
week 29:21
Wells 28:12
went 36:22
weren't 25:2
 33:14
white 38:8
wide 3:1
wilful 2:18
willing 33:4
winding
 24:21
wipe 18:13
witnesses
 17:18 18:1
 25:6
words 9:10
worked 30:22
working
 42:11
worried
 27:15
wouldn't 7:3
 41:15
 42:12
 45:18 47:1
write 11:13
 33:3
writing
 32:13,14
written 13:6
wrong 5:21
 12:23 14:7
 21:3 33:16

**wrongdoing**
  25:11
  28:15
  35:14
  37:23
**wrote** 22:22

___
**X**

**X** 1:11  27:17

___
**Y**

**Yeah** 8:5,23
  9:1,21
  13:16  29:3
**year** 26:23
  26:25
  27:10
**years** 25:16
  25:24  26:1
  26:18  36:9
**yield** 45:23
**yielded**
  18:12
**York** 39:2

___
**Z**

**Zang** 2:5

___
**0**

___
**1**

**10** 2:18,19
  2:20  4:14
  4:16  5:4,5
  5:8  6:7,8
  6:9  8:9
  46:12,12
  46:19,20
  46:20
**100%** 19:6
**11th** 33:10
**14th(ina...**
  33:17
**15** 16:10
**160** 10:24
**17** 3:22
  10:15,17
  11:10
  12:15,16
  21:7

**18** 19:3
**19** 11:1,3
  45:2  46:10

___
**2**

**2** 1:16
**2015** 36:5
**2016** 17:25
  18:11
  25:13  36:5
  36:24
**2017** 20:5
**2018** 20:5
  25:15
  43:25  44:2
  44:3
**2019** 19:3
  25:15,15
  36:9,13
  39:8  43:19
  44:7
**2021** 1:16
**205** 21:12
**20th** 11:5,5
**21-0347-cv**
  1:13
**212** 1:25
**21347** 2:9
**22nd** 1:8  2:2
  2:9  3:7
  10:25  19:4
  19:5,10
**23156** 2:5
**23544** 2:6
**24** 3:9  8:14
  18:12
**24293** 2:4
**273-9911**
  1:25

___
**3**

**30XI0022...**
  48:17

___
**4**

___
**5**

**54** 15:5
  45:23

___
**6**

**68** 23:20

___
**7**

___
**8**

___
**9**

**9** 23:9