**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH NOTO, GARDEN STATE TIRE CORP., and STEPHENS JOHNSON, Individually and on behalf of all others similarly situated, | Civil Action No. 19-cv-01285-JLS-MJR |
| Plaintiff, | |
| v. | |
| 22ND CENTURY GROUP, INC., HENRY SICIGNANO, III AND JOHN T. BRODFUEHRER, | |
| Defendants. | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

I.     PRELIMINARY STATEMENT ............................................................................... 1

II.    NATURE OF THE ACTION .................................................................................. 2

    A.     Procedural History of the Litigation ........................................................... 3

        1.     The Initial Complaint and the Lead Plaintiff Appointment Process ........... 3

        2.     Lead Counsel's Investigation and the Amended Complaint ...................... 3

        3.     Defendants' Motions to Dismiss the Amended Complaint ....................... 4

        4.     Lead Plaintiffs' Appeal ................................................................... 4

        5.     Defendants' Second Motion to Dismiss the Amended Complaint ............. 5

        6.     Mediation .................................................................................... 5

    B.     Summary of Key Terms of the Proposed Settlement ....................................... 6

        1.     Relief to Settlement Class Members and Release of Claims ..................... 6

        2.     Class Notice and Settlement Administration ....................................... 6

            a)     Notice ................................................................................ 6

            b)     Settlement Administration ...................................................... 7

        3.     Papers in Support of the Settlement, Award of Attorneys' Fees and
            Expenses, and Lead Plaintiffs' Compensatory Award ............................ 7

        4.     Objections .................................................................................. 8

        5.     Opt-Outs .................................................................................... 8

        6.     Termination of the Settlement ......................................................... 9

        7.     No Admission of Liability .............................................................. 9

III.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) .................... 9

IV.    ARGUMENT ..................................................................................................... 10

    A.     The Settlement Is Fair, Reasonable, and Adequate ....................................... 10

        1.     Lead Plaintiffs and Lead Counsel Adequately Represented the Class ..... 10

        2.     The Settlement Is the Result of Arm's Length Negotiations ................... 11

        3.     The Settlement Is an Excellent Result for the Class .............................. 12

            a)     Complexity, Expense and Duration of Litigation ......................... 12

            b)     Establishing Liability and Damages ......................................... 13

            c)     Risks of Maintaining Class Action Status .................................. 15

d)      Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation ................................................ 16

4.      Rule 23(e)(2)(C)(ii)-(iv) .............................................................. 16

5.      The Settlement Treats All Settlement Class Members Equitably Relative to Each Other ...................................................................................... 18

6.      The Remaining *Grinnell* Factors Support Preliminary Approval ............. 19

B.      Certification of the Settlement Class for Settlement Purposes Is Appropriate ..... 20

1.      The Settlement Class Satisfies the Requirements of Rule 23(a) ............... 20

a)      Numerosity ................................................................................... 20

b)      Commonality ................................................................................ 21

c)      Typicality ..................................................................................... 21

d)      Adequacy ..................................................................................... 22

2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3) .......... 22

3.      Lead Counsel Should Be Appointed Counsel for the Settlement Class ... 24

4.      The Court Should Approve the Proposed Form and Method of Notice ... 25

V.      PROPOSED SCHEDULE OF EVENTS .......................................................................... 27

VI.     CONCLUSION .................................................................................................................. 27

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................20, 23

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed*
    *Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)....................................................................................21

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992)...........................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).........................................................18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................................10, 19, 20

*Consol. Edison, Inc. v. Ne. Utilities*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)......................................................................25

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................................................12

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).....................................................................................20

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................14

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................26

*In re "Agent Orange" Prods. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).................16

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................19

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................................19

*In re EVCI Career Colls.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................................................11

*In re Facebook, Inc.*,
   822 F. App'x 40 (2d Cir. 2020) ...................................................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)...........................................................................12

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)..............................................................12, 13, 15

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................19

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..........................................................................20

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) .............................................................................21, 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................11

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020) ..................................................................11

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................10

*In re Petrobras Sec. Litig.*,
   No. 14-CV-9662 (JSR), 2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018), *aff'd*,
   778 F. App'x 46 (2d Cir. 2019) .....................................................................................8

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ....................................................................................21

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ..................................................................................21

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...........................................................................22

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ....................................................................................23

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...............14

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).............................................................17

*Maley v. Del Global Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................18

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .........................................................................18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..................................................................................................................26

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..................................................................................................................24

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)......................................................................................................22

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................................25

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ................................................................................................25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................................12

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)........................................................................................................20

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................18, 25, 26

Private Securities Litigation Reform Act of 1995 ................................................................25, 26

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at 24 (Fig. 22))..............................16

v

Lead Plaintiffs Joseph Noto, Garden State Tire Corp., and Stephens Johnson ("Lead Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submits this memorandum in support of his unopposed motion seeking: (i) preliminary approval of the proposed Settlement presented in the Stipulation and Agreement of Settlement dated April 25, 2023 (the "Stipulation")[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; and (iv) a date for a Settlement Fairness Hearing (the "Settlement Hearing") and deadlines for the mailing and publication of notice to the Settlement Class, for Settlement Class Member objections and opt-out notices, for the filing of Lead Plaintiffs' motion for Final Approval, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and a compensatory award to Lead Plaintiffs.

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs have achieved an excellent resolution of this litigation. The proposed Settlement will resolve claims against Defendants[2] in exchange for a sizable cash payment of $3,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately 5.9% of the likely recoverable damages in this case, which is well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2022. This is powerful evidence that the Settlement is substantively fair to investors.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Brian Calandra ("Calandra Decl."), which is filed concurrently herewith.

[2] Defendants are 22nd Century Group Inc. ("22nd Century"), Henry Sicignano, III ("Sicignano"), and John T. Brodfuehrer (Brodfuehrer, and collectively with 22nd Century and Sicignano, "Defendants").  For purposes of settlement only, Defendants consent to the relief sought, but do not adopt Lead Plaintiffs' statements herein.

The Settlement is also procedurally fair. By the time the Settlement was reached, Lead Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and defenses. Before reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed an 80-page Amended Complaint based on their extensive investigation (ECF No. 31); (iii) opposed Defendants' first motion to dismiss the Amended Complaint (ECF Nos. 43-44); (iv) briefed and argued an appeal of the Court's order dismissing the Amended Complaint (*see Noto v. 22nd Century Group, Inc., et al.*, No. 21-347 (2d Cir.) ("Noto Appeal Docket"), Dkt. Nos. 25-27), (v) successfully obtained a reversal, in part, of the Court's dismissal of the Amended Complaint (*id.* at Dkt Nos. 73); (vi) successfully opposed Defendants' second motion to dismiss the Amended Complaint (ECF Nos. 63-69); (vii) drafted and exchanged mediation statements; (viii) participated in a full-day mediation session before Jed D. Melnick, Esq., an experienced JAMS mediator; and (ix) negotiated the proposed Settlement. The Settlement is, therefore, the result of arm's-length negotiations conducted by informed and experienced counsel, together with a well-respected mediator.

For these reasons, and those discussed further below, the proposed Settlement meets the standard for preliminary approval and is in the best interests of the Settlement Class.

## II.   NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and omissions concerning a scheme to use promotional articles to inflate 22nd Century's share price and a Securities and Exchange Commission ("SEC") investigation into a material weakness in 22nd Century's accounting controls, from February 18, 2016 through July 31, 2019.  The Court dismissed Lead Plaintiffs' claims concerning the alleged scheme to use promotional articles, but held that Lead Plaintiffs sufficiently alleged that the price

of 22nd Century's common stock was artificially inflated as a result of Defendants' false and misleading statements concerning the undisclosed SEC investigation, and declined when the truth emerged.

### A.      Procedural History of the Litigation

#### 1.      The Initial Complaint and the Lead Plaintiff Appointment Process

On January 21, 2019, Matthew Bull commenced this Action against Defendants styled *Bull v. 22nd Century Group, Inc., et al.*, Case No. 1:19-cv-00409-NGG-ST (E.D.N.Y.). On August 1, 2019, the United States District Court for the Eastern District of New York ("EDNY Court") appointed Joseph Noto, Garden State Tire Corp., and Stephens Johnson as Lead Plaintiffs and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. ECF No. 22. On September 6, 2019, the Court granted the Parties' request to transfer this Action from the EDNY Court to the Court. ECF No. 24.

#### 2.      Lead Counsel's Investigation and the Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) 22nd Century's regulatory filings, (b) public reports and announcements, research reports prepared by analysts, and news articles concerning Defendants, and (c) other publicly available material related to Defendants; and (2) conducting an extensive investigation (with the aid of a private investigator) that involved, *inter alia*, interviews of former 22nd Century employees. Lead Counsel also consulted with damages and loss causation experts.

On November 19, 2019, Lead Plaintiffs filed an Amended Complaint. ECF No. 31. The Amended Complaint asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Sicignano and Brodfuehrer under Section 20(a) of the Exchange Act. The Amended Complaint

alleged, among other things, that during the Settlement Class Period (from February 18, 2016 through and including July 31, 2019), Defendants made false and misleading statements and/or omissions concerning a scheme to use promotional articles to inflate the price of 22nd Century's common stock, and the existence of an SEC investigation (the "SEC Investigation") into a material weakness in Defendants' accounting controls. The specific categories of misrepresentations alleged include, *inter alia*, statements in (i) promotional articles; (ii) SEC filings concerning the volatility of 22nd Century's stock price; (iii) press releases denying the promotional article scheme; (iv) SEC filings concerning the material weakness in the company's internal controls; and (v) press releases denying the existence of the SEC investigation. The Amended Complaint also alleged that 22nd Century's stock price was artificially inflated as a result of these allegedly false and misleading statements and/or omissions and that it declined when the truth was revealed.

### 3.      Defendants' Motions to Dismiss the Amended Complaint

Defendants filed motions to dismiss the Amended Complaint on January 29, 2020. ECF Nos. 36, 40-42. Lead Plaintiffs filed their opposition to Defendants' motion to dismiss on March 30, 2020. ECF Nos. 38, 43-44. Defendants filed its reply in further support of their motion to dismiss on April 29, 2020. ECF Nos. 39, 45. In an Order dated January 14, 2021, the Court dismissed the Amended Complaint with prejudice. ECF No. 53.

### 4.      Lead Plaintiffs' Appeal

On February 12, 2021, Lead Plaintiffs filed their notice of appeal of the Court's Order. Lead Plaintiffs asserted in their appeal that they had sufficiently alleged a scheme to manipulate 22nd Century's share price and that Defendants' had a duty to disclose the existence of the SEC investigation. Noto Appeal Docket Nos. 27, 45, 48. A panel of the Second Circuit affirmed the dismissal of Lead Plaintiffs' claims concerning the alleged promotional article scheme, but reversed the Court on the grounds that Lead Plaintiffs had sufficiently alleged that Defendants

made statements that were misleading for failing to disclose the SEC investigation and in denying the existence of that investigation and remanded the action to the Court. Noto Appeal Docket No. 73.

### 5.      Defendants' Second Motion to Dismiss the Amended Complaint

On August 8, 2022, Defendants filed a second motion to dismiss the Amended Complaint on the grounds that the Plaintiffs failed to allege scienter and loss causation. ECF Nos. 63-65. Lead Plaintiffs filed their briefing in opposition to Defendants' motion on September 22, 2022. ECF Nos. 66-67. Defendants filed their reply brief in further support of their motion on October 12, 2022. ECF No. 68.

In an Order dated January 6, 2023, the Court denied Defendants' second motion to dismiss in full. ECF No. 69 ("Second Motion to Dismiss Decision"). In denying in Defendants' motion, the Court held that Lead Plaintiffs adequately alleged (1) Defendants' motive and opportunity to make materially misleading statements in SEC filings, (2) Defendants' intent to deceive investors in making those statements and denying the existence of the SEC investigation, and (3) that those statements caused Lead Plaintiffs' and Settlement Class Members' losses. *Id.*

### 6.      Mediation

On March 21, 2023, the Parties participated in an all-day virtual mediation with Jed D. Melnick, Esq., an experienced mediator at JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, class certification, loss causation, and damages. At the conclusion of the mediation, the Parties reached an agreement in principle to settle the Action for a payment of $3 million for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers. March 30, 2023, Lead Plaintiffs notified the Court that the Parties had reached a settlement in principle to resolve the Action. ECF No. 77.

**B.      Summary of Key Terms of the Proposed Settlement**

**1.    Relief to Settlement Class Members and Release of Claims**

Defendants have agreed to settle the Action for $3 million. The funds will be deposited in an escrow account and will be held in instruments or accounts backed by the Full Faith & Credit of the U.S. Government. If the Settlement is approved, none of the funds will revert to Defendants or their insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the funds other than notice and administrative expenses already incurred will revert.

The Settlement Class is limited to investors that purchased or otherwise acquired 22nd Century's common stock between February 18, 2016 and July 31, 2019, both dates inclusive, and were allegedly damaged thereby.[3] Stipulation ¶ 1(oo). The Notice and Claim Form explain that potential Settlement Class Members may show that they engaged in transactions in 22nd Century securities by demonstrating that they  transacted in 22nd Century shares that traded under the ticker symbol "XXII". *See* Calandra Decl. Ex. A-1 to Ex. 1 ¶¶ 18, 53; Calandra Decl. Ex. A-2 to Ex 1.

**2.    Class Notice and Settlement Administration**

**a)      Notice**

Within 21 days of Preliminary Approval, a Postcard Notice substantially in the form set forth in Exhibit A-4 to the Stipulation will be mailed to each Settlement Class Member identified by records maintained by 22nd Century's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. Stipulation ¶ 22. The Postcard Notice will direct Settlement Class Members to the website maintained by the Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), where they can find the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim

---

[3] Defendants, certain individuals and entities related to Defendants, and investors that properly exclude themselves are excluded from the Settlement Class. Stipulation ¶ 1(oo).

and Release form containing directions on how to complete and submit Proof of Claim forms electronically, as well as directions on how to request that a Proof of Claim and other documents, including the Long Form Notice ("Notice"), are mailed to them. Calandra Decl. Ex. A-4 to Ex. 1. In addition, a Summary Notice will be published through the internet, since that medium is most frequently accessed by investors and is cost-effective. Calandra Decl. Ex. A to Ex. 1, ¶ 7(d).

The Postcard Notice also describes key terms of the Settlement in plain English (including the Settlement Amount, the release of claims, and the maximum attorneys' fees award and expense reimbursement) and provides the date of the Settlement Hearing, as well as the deadline for filing claims and objecting to, or opting out of, the Settlement.[4]

### b)      Settlement Administration

After a competitive bidding process, Lead Counsel selected Epiq as the Claims Administrator, to administer the notice program and process claims for the Settlement. Epiq is well known and experienced in the administration of securities fraud class action settlements.

### 3.      Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Lead Plaintiffs' Compensatory Award

No later than 35 days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorneys' fees, expenses, and Lead Plaintiffs' compensatory awards. Calandra Decl. Ex. A to Ex. 1, ¶ 27. Those papers will explain why the Settlement should be approved and Lead Counsel's efforts on

---

[4] It is respectfully requested that the Settlement Hearing be held no earlier than 100 days after entry of the Preliminary Approval Order. This will allow mailing of the Postcard Notice to be commenced within 21 days; Settlement Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Settlement Class; time for the Parties to respond to such objections; and service of notices under the Class Action Fairness Act, 28 U.S.C. § 1715.

behalf of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome).

No less than 7 days before the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of the Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses, and request for a compensatory awards to Lead Plaintiffs.

### 4.      Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so by 21 days before the Settlement Hearing and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Calandra Decl. Ex. A to Ex. 1, ¶ 13. Any Settlement Class Member who does not file a timely written objection to the Settlement shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing transactions in 22nd Century common stock, as well as submit to this Court's jurisdiction for a possible deposition.  *See In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2018 WL 4521211, at *4 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019).

### 5.      Opt-Outs

Any Settlement Class Member who wishes to be excluded from the Settlement must do so by written request including documentation of their transactions, postmarked or submitted online no later than 21 days before the Settlement Hearing. Calandra Decl. Ex. A to Ex. 1, ¶ 13. The opt-out request must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

**6.      Termination of the Settlement**

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of 22nd Century securities elect to opt out. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal or as otherwise directed by the Court. In the event the Settlement is not approved, or does not become final due to appeals or Defendants' withdrawal, the Parties will return to their positions before the Settlement and the litigation will proceed apace.

**7.      No Admission of Liability**

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.      STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

A class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[5] Preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)      have the class representatives and class counsel adequately represented the class;

(B)      was the proposal negotiated at arm's length;

(C)      is the relief provided for the class adequate, taking into account:

      i.      the costs, risks, and delay of trial and appeal;

      ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[5] Unless otherwise indicated, all emphases are added and citations and quotations omitted.

iii.     the terms of any proposed award of attorneys' fees, including timing of payment; and

iv.      any agreement required to be identified under Rule 23(e)(3); and

(D)      does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  The following traditional factors that the Second Circuit set out in *City of Detroit v. Grinnell Corp.*, that are utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[6] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974).  As set forth below, the Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors and the *Grinnell* factors.

## IV.     ARGUMENT

**A.      The Settlement Is Fair, Reasonable, and Adequate**

### 1.  Lead Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the representatives have any 'interests antagonistic to the interests of other class members'

---

[6] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been sent. Lead Counsel and Lead Plaintiffs will update the Court as to the Settlement Class's reaction in connection with their motion for final approval of the Settlement.

and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases).

Lead Plaintiffs and Lead Counsel satisfy these criteria. *First*, Lead Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where plaintiffs were "motivated to recover as much as possible for each class member."). Lead Plaintiffs also diligently oversaw the litigation, assisted in the investigation of the claims, and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (holding "a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness").

*Second*, Lead Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests, as explained in the discussion below regarding certification of the Settlement Class. (*See infra* pp. 21-22).

*Third*, Lead Plaintiffs retained counsel that are highly experienced in securities litigation and who have a long and successful track record of representing investors in such cases. *See* Calandra Decl. Ex. 3; *infra* § IV.B.3. Lead Counsel vigorously prosecuted the Settlement Class's claims and were acutely aware of the strengths and weaknesses of the case before settling the action. *See supra* pp. 1-6 and *infra* pp. 12-16; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (explaining courts consistently give "great weight" to counsel's recommendation).

## 2. The Settlement Is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (involvement of a third-party mediator makes the settlement procedurally fair). Here, as explained above, the Parties engaged in mediation with Jed D. Melnick, Esq. (*supra* pp. 5). The arm's-length nature of the negotiations, and the involvement of a mediator with substantial experience in complex securities class actions, support finding the Settlement fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

### 3. The Settlement Is an Excellent Result for the Class

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Each factor supports preliminary approval.

### a) Complexity, Expense and Duration of Litigation

This case involves alleged violations of the federal securities laws, and Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages. Assuming Lead Plaintiffs' claims were certified to proceed as a class action under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (explaining that "[c]ourts favor settlement when litigation is likely to be complex, expensive, or drawn out").

12

By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b)       Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *Id.* at 694.  While Lead Counsel believes Lead Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages.  When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:** The fact that Lead Plaintiffs obtained a reversal in part from the Second Circuit and overcame Defendants' second motion to dismiss is not a guarantee of ultimate success. Indeed, while certain of Lead Plaintiffs' claims were sustained, the dismissal of Lead Plaintiffs' claims related to the alleged use of a promotional article scheme was affirmed. ECF No. 112 at 42. Defendants would inevitably raise this in an effort to limit the scope of the case going forward.

Lead Plaintiffs also face ongoing risks associated with Defendants' forthcoming summary judgment motions, motions *in limine*, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. For example, while Lead Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants will contest at summary judgment and trial whether their statements and omissions are inactionable because they are not material to a reasonable investor, and whether Defendants' disclosure of the underlying accounting weakness was all that was required under the securities laws.

In addition, Defendants would contest whether any alleged false and misleading statements were made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. While Lead Plaintiffs strongly disagree with this assertion, had the litigation continued there is simply no guarantee that the finder of fact would ultimately adopt Lead Plaintiffs' view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g., Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**<u>Loss Causation and Damages</u>:** Lead Plaintiffs would have also faced the significant risk that Defendants could argue that Lead Plaintiffs' losses were not causally connected to the alleged false and misleading statements. Lead Plaintiffs allege that the truth about 22nd Century's misstatements regarding a previously undisclosed SEC investigation were revealed to the market through a series of corrective disclosures. Certain of the alleged corrective disclosures, however, are subject to defenses that they were arguably not statistically significant. Accordingly, Defendants will likely assert that the declines in 22nd Century's share price on those alleged corrective disclosures dates were not caused by those disclosures.

Defendants would also likely argue that the corrective disclosure dates in July 2019 were not causally connected to the subject of the alleged false and misleading statements. For example, Defendants would likely argue that because the Court granted—and the Second Circuit affirmed—their motion to dismiss concerning allegations related to the alleged use of a promotional article scheme to inflate the Company's share price (ECF No. 53 at 4; Noto Appeal Docket 23 at 14), certain of the alleged corrective disclosures did not relate to the remaining statements concerning

14

Defendants' alleged concealment of the existence of the SEC investigation that the Second Circuit held was adequately alleged to be false and misleading.

If Defendants prevailed on these arguments, the amount of recoverable damages could be greatly diminished. Even if Lead Plaintiffs prevailed at trial, that victory would not guarantee the Class a larger recovery than the Settlement Amount.

c)    Risks of Maintaining Class Action Status

While Lead Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for class certification, the class has not yet been certified, and Lead Plaintiffs are aware there is a risk the Court could disagree. Then, even if the Court certified the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Thus, the risks and uncertainty surrounding class certification support approval of the Settlement, as Defendants will certainly oppose class certification given the arguments concerning loss causation that they asserted in their motion to dismiss. *See GSE*, 414 F. Supp. 3d at 694 ("this factor weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated").

For example, the Settlement Class would face the risk, in the litigation context, that Defendants would argue that their misstatements lacked "price impact" because the stock price had already declined on October 25, 2019 before the existence of the investigation was revealed. ECF No. 112 at 22-23. Lead Plaintiffs are confident this would not pose a hurdle to class certification for the independent reasons that (1) the stock price declined on October 25, 2019 in the immediate aftermath of the disclosure of the investigation, and (2) Bloomberg reported that the stock price had sharply declined the following day because of the disclosure of the investigation. Defendants, however, would likely argue otherwise.

15

          d)      **Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The proposed Settlement provides an all cash payment of $3,000,000 for the benefit of the Settlement Class. This is an excellent result in light of the risks of continued litigation. Lead Plaintiffs' damages expert estimates that if Lead Plaintiffs prevailed at summary judgment and trial, and the Court and jury accepted Lead Plaintiffs' damages theory, the most reasonable estimate of potential damages would be approximately $50.7 million.[7] Thus, the $3 million Settlement represents a recovery of approximately 5.9%, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. *See* Calandra Decl. Ex. 2 (Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at 18 (Fig. 19)).

          **4.  Rule 23(e)(2)(C)(ii)-(iv)**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under

---

[7] This damages estimate is based on the statistically significant corrective disclosure dates in the proposed Plan of Allocation that was created with the assistance of Lead Plaintiffs' damages expert. *See* Calandra Decl., Ex. A-1 to Ex. 1, ¶¶ 44-64. It includes dates that are consistent with Lead Plaintiffs' theory of damages after accounting for the claims that the Court dismissed in the Motion to Dismiss Decision.

Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval

of the Settlement or is neutral and does not suggest any basis for insufficiency of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims

includes well-established and effective procedures. Epiq Class Action & Claims Solutions, Inc.

("Epiq"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will

process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any

claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized

Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court

approval. Claims processing, like the method proposed here, is standard in securities class action

settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead

Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free

process.[8]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a

percentage of the common fund fee award in an amount not to exceed 33.3% to compensate them

for the services they have rendered on behalf of the Settlement Class.[9] A proposed attorneys' fee

of up to 33.3% of the Settlement Fund (which includes interest earned on the Settlement Amount)

is reasonable in light of the work performed and the results obtained. It is also consistent with

awards in similar complex class action cases.[10] More importantly, approval of the attorneys' fees

---

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 16.

[9] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Lead Plaintiffs' Counsel in the Action.  *See* Calandra Decl. Ex. A-1 to Ex. 1, ¶ 66, n.3.

[10] *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit.")

that will be requested is separate from approval of the Settlement, which may not be terminated based on a ruling with respect to attorneys' fees. *See* Stipulation ¶ 19. Lead Plaintiffs will also seek an award of no more than $15,000 (or $5,000 each) to reimburse Lead Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). The Parties will produce this supplemental agreement for the Court's review, if requested.

### 5. The Settlement Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed on pages 13-18 of the proposed Notice (Ex. A-1 to Ex. 1 of the Calandra Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. As explained above, the Plan of Allocation includes the statistically significant corrective disclosure dates in the SAC. (*See supra* p. 16 n. 8). An Authorized Claimant's *pro rata*

---

(citing cases); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (Counsel's "request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("request [for 33.33%] falls comfortably within the range of fees typically awarded in securities class actions").

share shall be the Authorized Claimant's recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6. The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* also outlined several factors that are not co-extensive with Rule 23(e)(2). These factors further support preliminary approval of the Settlement.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Lead Plaintiffs and Lead Counsel conducted an extensive investigation into the allegations here; the Parties submitted substantial briefing relating to the motions to dismiss the Amended Complaint and the appeal to the Second Circuit totaling hundreds of pages; and they exchanged detailed mediation briefs. *See supra* pp. 3-5.

**The Ability of Defendants to Withstand a Greater Judgment:** 22nd Century's ability to withstand a greater judgment is not guaranteed. Although Defendants might argue that the Company is not liable for the claims in this action, 22nd Century's shares are trading at just $0.70 cents per share, and the Company filed a report on Form 8-K on March 31, 2023 disclosing that it had received a deficiency letter from the Nasdaq Listing Qualifications Department regarding its failure to maintain a sufficient price necessary to continue being listed on The Nasdaq Capital Market. Further, the Company's annual report on Form 10-K for 2022 stated that the Company

19

had $3.02 million of cash and cash equivalents as of December 31, 2022. Accordingly, this factor supports the Settlement.

Moreover, even if Defendants could withstand a greater judgment, "the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

**B.     Certification of the Settlement Class for Settlement Purposes Is Appropriate**

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy the requirements of Fed. R. Civ. P. 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation ¶ 2. Lead Plaintiffs requests that the Court certify the Settlement Class defined in the Stipulation for settlement purposes. The Settlement Class comprises "all persons and entities who purchased or otherwise acquired 22nd Century common stock between February 18, 2016 and July 31, 2019, both dates inclusive, and were allegedly damaged thereby," subject to certain exceptions for persons or entities related to Defendants and those that exclude themselves from the Settlement. *Id.* ¶ 1(oo).  As set forth below, the proposed Settlement Class satisfies all of the applicable requirements of Rule 23(a) and 23(b)(3).

**1.   The Settlement Class Satisfies the Requirements of Rule 23(a)**

**a)     Numerosity**

20

The first element of the class certification standard requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In securities fraud class actions relating to publicly traded corporations, numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class is comprised of purchasers of 22nd Century common stock. Millions of shares of 22nd Century common stock traded during the Settlement Class Period and the Nasdaq Capital Market was the largest market for those securities. The number of Settlement Class Members is therefore likely to be at least in the thousands. The Settlement Class is thus sufficiently numerous.

> **b)   Commonality**

Securities fraud cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).  Here, questions of law and fact regarding Lead Plaintiffs' claims are common to the Settlement Class, including whether Defendants' representations were materially misleading and made with scienter.  These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's or class member's identity. Commonality is therefore met.  *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

> **c)   Typicality**

Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welf. Fund v. Merck-Medco Mngd. Care*, 504 F.3d 229, 245 (2d Cir. 2007). Lead Plaintiffs' claims are typical of the Settlement Class because they are

based on the same set of alleged misrepresentations and omissions that apply to the Settlement Class as a whole. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002).

### d)      Adequacy

The adequacy of a class representative "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268. "In order to defeat a motion for certification, however, the conflict must be fundamental." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). In addition, adequacy assesses whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.*

Lead Plaintiffs have an "interest in vigorously pursuing the claims" here to recover as much as possible in damages for the Settlement Class in light of their significant losses. *Patriot*, 828 Fed. Appx. at 764. (*See supra* p. 11). The Settlement Class is also adequately represented by Lead Plaintiffs' choice of Lead Counsel. (*See supra* p. 11 and *infra* pp. 24-25).

In addition, there are no intra-class conflicts because all Settlement Class Members are similarly situated. They all suffered losses as a result of Defendants' alleged misstatements and omissions and they all engaged in transactions in 22nd Century common stock. Stipulation ¶ 1(oo).

### 2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Settlement Class satisfies these requirements.

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has explained that

22

predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class. These questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

Furthermore, "manageability concerns" relevant to the predominance inquiry "do not stand in the way of certifying a settlement class." *In re AIG*, 689 F.3d at 242. That is because "the predominance requirement differs between trial and settlement" in that "with a settlement class, the manageability concerns posed by numerous individual questions [] disappear." *In re Petrobras*, 317 F. Supp. 3d at 870 (citing *In re AIG*, 689 F.3d at 241); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (holding "the settlement class presents no management problems because the case will not be tried"). The predominance requirement has therefore been satisfied for the Settlement Class.

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities class actions easily satisfy the superiority requirement, because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, "would have no realistic day in court if a class action were not available." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985). It is also desirable to concentrate claims in this Court as it is already familiar with the issues in the case. Finally, because this request is for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *In re AIG*, 689 F.3d at 242.

**3.      Lead Counsel Should Be Appointed Counsel for the Settlement Class**

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Pomerantz was appointed to serve Lead Counsel on August 1, 2019 and has vigorously prosecuted the action on behalf of Lead Plaintiffs and the Settlement Class. ECF No. 22. Indeed, Lead Counsel has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. (*See supra* pp. 3-6, 11). Moreover, Lead Counsel is highly experienced and successful at handling securities class action litigation. *See* Calandra Decl., Ex. 3; *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation."); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016). For these reasons, among others, Lead Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.

24

**4.      The Court Should Approve the Proposed Form and Method of Notice**

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

Here, the proposed Notice provides detailed information concerning: (1) the proposed Settlement; (2) the rights of Settlement Class Members, including the manner in which objections can be lodged; (3) the nature, history, and progress of the litigation; (4) how to file a Claim Form; (5) a description of the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead Counsel; and (7) the necessary information to examine Court records. *See* Calandra Decl. Ex. A-1 to Ex. 1.

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and

25

(4) provides the contact information for the Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[11] *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order, Exhibit A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard Notice by first-class mail to Settlement Class Members who can be identified with reasonable effort. Calandra Decl., Ex. A to Ex. 1 ¶ 7(b). The Postcard Notice describes key information about the Settlement and directs Settlement Class Members to the website maintained by the Claims Administrator, where they can find the full Notice, the Stipulation and its exhibits, the Preliminary Approval Order, and the Proof of Claim and Release form, as well as a description of other ways that Settlement Class Members can obtain Settlement documents. Calandra Decl. Ex. A-4 to Ex. 1; *see also supra* p. 6-7. Additionally, the Summary Notice will be disseminated electronically once on *PRNewswire* and once in *Investor's Business Daily*. Calandra Decl. Ex. A to Ex. 1, ¶ 7(d).

This proposed program for dissemination of notice to potential Settlement Class Members is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The specific steps employed here, including "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice[,] has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171 at 182 n.3. The form and manner of providing notice to Settlement Class Members are therefore the best practicable under the circumstances and satisfy due process, Rule 23, and the PSLRA.

---

[11] Lead Plaintiffs request that Epiq be appointed the Claims Administrator. Lead Counsel sought proposals from multiple claims administration companies for administration of the Settlement. After reviewing responses, Lead Counsel decided to retain Epiq due to its substantial experience and its proposal's costs.

## V.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs propose the following schedule of events in connection with the Settlement

Hearing, as set forth in the proposed Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing | No earlier than one hundred (100) days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 5) |
| Mailing of Postcard Notice | No later than 21 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 7(b)) (the "Notice Date") |
| Publication of Summary Notice | No later than 21 calendar days after the Notice Date (Preliminary Approval Order ¶ 7(d)) |
| Date for Lead Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than 35 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
| Filing deadline for requests for exclusion | No later than 21 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 13) |
| Filing deadline for objections | No later than 21 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 16) |
| Date for Lead Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
| Date for Claims to be Filed | Postmarked or submitted online no later than 7 calendar days after the Settlement Hearing. (Preliminary Approval Order ¶ 10) |

## VI.    CONCLUSION

For the forgoing reasons, Lead Plaintiffs respectfully request that the Court grant

preliminary approval of the Settlement.

Dated: April 25, 2023                                **POMERANTZ LLP**

By:    *Brian Calandra*
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, NY 10016

27

P: (212) 661-1100
jalieberman@pomlaw.com
bcalandra@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the
Settlement Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN,
LLC**

Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-8209
Facsimile: (212) 697-7296
Email: peretz@bgandg.com
Email: eitank@bgandg.com

**GLANCY PRONGAY & MURRAY LLP**

Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
929-777-1047 (cell)
310-201-9150 (office)
gspencer@glancylaw.com

*Additional Counsel for Lead Plaintiffs*

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2023, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/      Brian Calandra*
Brian Calandra