**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOSEPH NOTO, GARDEN STATE TIRE CORP., and STEPHENS JOHNSON, Individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>22ND CENTURY GROUP, INC., HENRY SICIGNANO, III and JOHN T. BRODFUEHRER,<br><br>　　　　　　　　Defendants. | Civil Action No. 19-cv-01285-JLS-MJR |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**<u>AND PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT...................................................................................................... 4

        A.      The Standards For Final Approval Under Rule 23(e) and *Grinnell* ....................... 4

        B.      The Settlement Is Fair, Reasonable, and Adequate ................................................. 6

                1.      Plaintiffs and Lead Counsel Adequately Represented the Class ................ 6

                2.      The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel .............. 7

                3.      The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation........ 9

                        a.      Complexity, Expense And Likely Duration Of The Litigation ...... 9

                        b.      The Risks Of Establishing Liability And Damages...................... 11

                                i.      Liability.............................................................................. 11

                                ii.     Loss Causation and Damages ........................................... 13

                        c.      Risks of Maintaining Class Action Status ................................... 14

                        d.      Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation................................................. 14

                4.      The Remaining Rule 23(e)(2)(C) Factors Support Final Approval .......... 15

                5.      The Settlement Treats All Settlement Class Members Equitably Relative to Each Other ........................................................................................... 17

                6.      The Remaining *Grinnell* Factors Weigh In Favor of Final Approval ...... 17

                        a.      The Settlement Class's Reaction to the Settlement Supports Final Approval ....................................................................................... 18

                        b.      The Stage of the Proceedings and the Amount of Discovery ....... 18

                        c.      The Ability of Defendants to Withstand a Greater Judgment....... 21

        C.      The Plan of Allocation Is Fair and Reasonable and Should Be Approved........... 21

        D.      The Notice Program Satisfies Rule 23, the PSLRA, and Due Process.................. 23

        E.      Final Certification of the Settlement Class Is Appropriate.................................... 26

III.    CONCLUSION.................................................................................................. 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)................................................................................6

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020).........................................................5

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992).....................................................................14

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).............................................17, 21, 23

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
    Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................................... *passim*

*City of Providence v. Aeropostale*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.
    Pierson,* 607 F. App'x. 73 (2d Cir. 2015)...........................................................9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).................................................................................7

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005)..........................................................................................13

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................12

*Gross v. GFI Group, Inc.*,
    310 F. Supp. 3d 384 (S.D.N.Y. 2018), *aff'd on other grounds* 784 Fed. Appx.
    27 (2d Cir. Sept. 13, 2019)................................................................................3

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) .........................................................................9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................20, 25

*In re Alloy, Inc. Sec. Litig.*,
    2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .....................................................10

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................19, 20

*In re AOL Time Warner ERISA Litig.*,
   2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006)..........................................................8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...............................................10, 11, 19

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000).........................................................................19

*In re Blech Sec. Litig.*,
   2000 WL 661680 (S.D.N.Y. May 19, 2000) ............................................................15

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................................7, 9, 17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................................................6

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).........................................................7, 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)........................................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ...............................................................11

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)..............................................................9, 10, 14

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................23

*In re iDreamsky Tech. Ltd. Sec. Litig.*,
   2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018).............................................................20

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................................................9, 21

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................14, 21

iii

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .............................................................................19

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................24

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................21

*In re Nissan Radiator/Transmission Cooler Litig.*,
    2013 WL 4080946 (S.D.N.Y. May 30, 2013) .....................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016)...................................................................................8

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................5

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018), aff'd, 784 F. App'x 10 (2d Cir. 2019)
    (Rakoff, J.) ...................................................................................................10, 11

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. 2007)....................................................................23

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................21

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001)...............12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................................19

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................11, 15, 16, 18

*Pantelyat v. Bank of Am., N.A.*,
    2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) .......................................................19

*Shapiro v. JPMorgan Chase & Co.*,
 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..........................................................................7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................................10

*Too v. Rockwell Medical, Inc.*,
 2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020)........................................................................23

*Vaccaro v. New Source Energy Partners L.P.*,
 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..................................................................19, 20

*Van Oss v. New York*,
 2012 WL 2550959 (S.D.N.Y. July 2, 2012) ..........................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)................................................................................ *passim*

*Yang v. Focus Media Holding Ltd.*,
 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)..........................................................................7

**Statutes**

15 U.S.C. §78j(b) ...................................................................................................................2

15 U.S.C. §78t(a) ...................................................................................................................2

15 U.S.C. § 78u-4 .................................................................................................................25

Private Securities Litigation Reform Act of 1995 ............................................................6, 23, 25

**Rules**

Fed. R. Civ. P. 23................................................................................................ *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Joseph Noto, Garden State Tire Corp., and Stephens Johnson ("Plaintiffs"), individually and on behalf of all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their motion seeking (i) final approval of the proposed Settlement presented in the Stipulation and Agreement of Settlement dated April 25, 2023 ("Stipulation"; ECF No. 81-1),[1] (ii) approval of the proposed plan of allocation for the Settlement proceeds (the "Plan of Allocation"), and (iii) final certification of the Settlement Class. Defendants do not oppose this motion.[2]

## I.    INTRODUCTION

After over four years of hard-fought litigation, Plaintiffs, through their counsel, obtained a $3,000,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.  As described below and in the Calandra Declaration, the proposed Settlement is an outstanding result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.  In Plaintiffs' estimation, the Settlement represents approximately 5.9% of the likely recoverable damages in this case, which dwarfs the median recovery of 1.8% of estimated damages for all securities class actions settled in 2022.  *See* Calandra Decl. Ex. 10 at 18 (Fig. 19) (Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation*: 2022 Full-Year Review (NERA Jan. 24, 2023).

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation, or in the concurrently filed Declaration of Brian Calandra in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs ("Calandra Declaration" or "Calandra Decl.").

[2] Defendants are 22nd Century Group, Inc. ("22nd Century" or the "Company"), Henry Sicignano III, and John T. Brodfuehrer (collectively, the "Individual Defendants," and, together with 22nd Century, "Defendants").

Further, Plaintiffs had to fight tooth-and-nail to obtain such a favorable settlement. For example, the Court granted Defendants initial motion to dismiss Plaintiffs' Amended Complaint (ECF No. 31, the "Complaint") *with prejudice* (*see* ECF No. 53), and Plaintiffs were only able to reverse that decision *in part* on appeal (*see* ECF No. 58). While Plaintiffs defeated Defendants' second motion to dismiss in full (*see* ECF No. 69), Defendants, among other things, raised arguments concerning loss causation that would have required substantial expert testimony to refute and which may not have succeeded at summary judgment or trial (*see* ECF No. 64 at 15-20).

Indeed, the vigorousness of the litigation and hotly contested means by which the Settlement was obtained demonstrates a lack of collusion amongst the Parties and supports a finding of procedural fairness. As described in detail in the Calandra Declaration, prior to reaching the Settlement, Lead Counsel, *inter alia*:

- drafted the initial complaint in the Action and moved for the appointment of Lead Plaintiff and Lead Counsel;

- conducted an extensive investigation into the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) 22nd Century's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning 22nd Century, (iii) 22nd Century's investor call transcripts and (iv) other publicly available material related to the Company; (b) retaining and working with private investigators, who interviewed numerous former Company employees; and (c) working with a damages and loss causation expert to analyze 22nd Century's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 80-page Complaint, which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act;

- researched and drafted the opposition to Defendants' motion to dismiss;

- as described above, researched and drafted Plaintiffs' successful appeal of the Court's granting of Defendants' motion to dismissed and Plaintiffs' successful opposition to Defendants' second motion to dismiss;

- participated in a full-day mediation session before Jed D. Melnick, Esq. ("Melnick"), an experienced JAMS mediator, which involved an exchange of written submissions concerning the facts of the case, liability and damages, and extensive consultation with Plaintiffs' expert on damages and loss causation;

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on March 24, 2023;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the Preliminary Approval Motion and supporting papers;

- oversaw the implementation of the notice process; and

- drafted the Motion for Final Approval and supporting papers.

Calandra Decl. ¶ 71. Further, Defendants have separately complied with their obligations under the Preliminary Approval Order by serving the required Class Action Fairness Action notices, and filed a declaration concerning such service with the Court (ECF No. 103) and remitting the full the Settlement Amount in compliance with the Stipulation.

In view of the foregoing, and as discussed in greater detail below, it cannot be disputed that the Settlement was negotiated by well-informed Parties at arm's-length, and that the Settlement is an excellent outcome for the Settlement Class. This is especially true when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a substantially smaller recovery, or no recovery at all, many years in the future. *See* Calandra Decl. ¶ 31; *see also Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (granting summary judgment for defendants following four years of litigation), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019); Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and

3

is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. Calandra Decl. ¶¶ 60-66.  Plaintiffs and their counsel believe that the Plan of Allocation is fair and reasonable and, as such, it too should be approved.

## II.    ARGUMENT

### A.    The Standards For Final Approval Under Rule 23(e) and *Grinnell*

Under Rule 23(e), the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate."[3]  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members").  *See* Advisory

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotations omitted.

4

Committee Notes to 2018 Amendments (324 F.R.D. 904, 919 (2018)).

These Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors previously adopted by the courts. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, the Second Circuit's traditional *Grinnell* factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).

In application, although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.").

As demonstrated below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant *Grinnell* factors.

### B.       The Settlement Is Fair, Reasonable, and Adequate

### 1.       Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'"  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[4]

Here, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests.  Plaintiffs, like all other Settlement Class Members, purchased 22nd Century securities during the Settlement Class Period and suffered substantial losses as a result of Defendants' allegedly wrongful conduct.  Their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members.  *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "Plaintiffs were sufficiently motivated to recover as much as possible for each class member").  In addition, Plaintiffs oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement.  *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness.").

---

[4] *Accord Wal-Mart*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

Plaintiffs also retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Calandra Decl. Ex. 4 (Pomerantz firm resume), Ex. 5 (Firm resume of additional counsel Glancy Prongay & Murray LLP ("GPM")). Lead Counsel, aided by GPM, Bronstein, Gerwitz, & Grossman, LLC, ("BGG") and Vita Law Offices, P.C. ("VLO"), vigorously prosecuted the Settlement Class's claims, and was acutely aware of the strengths and weaknesses of the case prior to settling the Action. Based on its expertise, experience, and work in this case, Lead Counsel recommend that final approval of the Settlement is in the best interests of the Settlement Class. *Id.* ¶¶ 86-87. The judgment of counsel "who have extensive experience in prosecuting complex class actions," is entitled to "great weight." *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### 2. The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel

The Court must also consider whether the settlement was "negotiated at arm's-length" in weighing approval of a class action settlement. Fed. R. Civ. P. 23(e)(2)(B).[5] Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116); *see also D'Amato v. Deutsche Bank*, 236

---

[5] This "procedural" fairness determination also covers the third *Grinnell* factor, assessing "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015); *see* Sec. II.B.6(b).

F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Parties' negotiations did not commence until after Lead Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case. Specifically, Lead Counsel thoroughly reviewed publicly available information about the Company; interviewed former 22nd Century employees; consulted a damages expert; prepared a detailed 73-page complaint; fully briefed the Defendants' motion to dismiss and engaged in hard-fought mediation efforts. Calandra Decl. ¶¶ 15-28. As part of the mediation process facilitated by Melnick, an experienced JAMS mediator, the Parties exchanged written statements and exhibits concerning liability and damages, and further participated in discussions concerning the Parties' estimates of damages. *Id.* at ¶ 10. The Parties also engaged in a full-day mediation on, from March 21, 2023, and reached an agreement in principle to settle the Action. *Id.* at ¶ 23. The Parties thereafter memorialized the substantive terms of the settlement in a confidential Memorandum of Understanding on March 24, 2023. *Id.* at ¶¶ 24-26.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Melnick support the conclusion that the Settlement is procedurally fair and was achieved free of collusion. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 235 (2d Cir. 2016) (finding a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion"); *In re AOL Time Warner ERISA Litig.,* 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006) (same).

Finally, Defendants have complied with their obligations under the Preliminary Approval Order by serving the required Class Action Fairness Action notices, and filed a declaration

concerning such service with the Court (ECF No. 87) and remitting the full the Settlement Amount in compliance with the Stipulation.

> **3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).[6]  In applying these factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012).  As demonstrated below, each of these factors supports final approval of the Settlement.

> **a.    Complexity, Expense And Likely Duration Of The Litigation**

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *Citigroup*, 965 F. Supp. 2d at 381-82.  This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have long recognized that securities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i)").

*Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

Further litigation would have been time consuming and expensive, involved complex issues of law and fact, and there was a significant risk of a lower recovery, or no recovery at all. *See In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 871 (S.D.N.Y. 2018), aff'd, 784 F. App'x 10 (2d Cir. 2019) (Rakoff, J.) (approving settlement where "any recovery in this case was far from a certainty, given the substantial defenses that were raised"); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). At the time the Settlement was reached, class certification had not been granted by this Court. Without the Settlement, the Action would have required Plaintiffs to successfully move for class certification, conduct fact and expert discovery, survive a summary judgment motion, survive *Daubert* motions, and prove their claims through trial, post-trial motions and appeals.

Throughout each litigation phase, Plaintiffs would have undoubtedly faced a robust defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at \*2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"). As a result, were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce

10

yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b. The Risks Of Establishing Liability And Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts thus should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459; *see also Petrobras*, 317 F. Supp. 3d at 871.

### i. Liability

When the Settlement was reached, Plaintiffs had lost a motion to dismiss the Complaint, successfully overturned dismissal (in part) on appeal, and successfully opposed Defendants' second motion to dismiss the Complaint. Plaintiffs' reversal of the grant of Defendants' motion to dismiss is especially striking given the challenges Plaintiffs faced in asserting their claims. For example, courts have been reluctant to sustain claims where, as here, investors allege that Defendants made misrepresentations concerning a government investigation that had not resulted

11

in any finding of wrongdoing. Indeed, in their initial motion to dismiss, Defendants cited multiple prior cases concerning failing to disclose investigations, both of which were dismissed. *See* ECF No. 41 at 12 (citing *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017)).

The fact that Plaintiffs ultimately overcame Defendants' multiple motions to dismiss in part, however, is not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their forthcoming motion for class certification as well as Defendants' forthcoming summary judgment motions, in limine motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. While Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants will contest at summary judgment and trial whether their statements are inactionable because they had no duty to disclose an SEC investigation into an accounting weakness and the investigation was not material because it did not result in a finding of wrongdoing or any penalties.

In addition, Defendants argued that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Calandra Decl. ¶¶ 19, 32-33. While Plaintiffs strongly disagreed with this assertion, it was not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most

difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

### ii.        Loss Causation and Damages

Even if Plaintiffs established liability, they faced significant risks in proving loss causation

and damages.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

For example, Plaintiffs allege that the existence of an SEC investigation into a weakness in the

Company's internal controls over financial reporting caused the price of 22nd Century common

stock to decline over the course of two days, and that the failure to disclose the investigation

ultimately led to Defendant Sicignano having to resign, which caused the Company's share price

to crater. These corrective disclosures, however, are subject to defenses that the Company's stock

price had already fallen by the time the truth about the investigation reached the market, and that

Defendant Sicignano's resignation was unrelated to the failure to disclose the SEC investigation.

Accordingly, Defendants were likely to assert that the disclosure of the investigation did not cause

any statistically significant Company-specific price drop on any corrective disclosure date, and

thus that declines in 22nd Century's share price on the dates of the alleged corrective disclosures

were not caused by the alleged corrective disclosures. Even if Plaintiffs overcame these arguments

and prevailed at trial, that victory would not guarantee the Settlement Class a larger recovery.  Had

Defendants prevailed on these arguments, Plaintiffs may well have recovered nothing, even if they

had proven liability with respect to the alleged fraud.  *See Dura Pharms., Inc., v. Broudo*, 544 U.S.

336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations

caused the loss for which the plaintiff seeks to recover").

Of course, in order to resolve all disputed issues regarding damages and loss causation, the

Parties would have had to rely on expert testimony. Calandra Decl. ¶¶ 34-38.  This creates further

litigation risk because Plaintiffs could not be certain whether a jury would accept the view of their

experts or of the experts Defendants would no doubt present at trial.  *See Facebook*, 2015 WL

13

6971424, at *5 ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

### c.    Risks of Maintaining Class Action Status

While Plaintiffs and their counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree. Defendants have raised vigorous challenges to class certification, and such disputes would likely "devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268.  Even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement. *See GSE*, 414 F. Supp. 3d at 694.

### d.    Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010).  A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical

14

equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, the proposed Settlement provides an all-cash payment of $3,000,000 for the benefit of the Settlement Class. This is an excellent result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory of $0.47 of inflation, the total potential maximum damages would be approximately $50.7 million. Calandra Decl. ¶ 45. Thus, the $3 million Settlement represents a recovery of *approximately 5.9%*, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. See Calandra Decl. Ex. 10 (Janeen McIntosh, Svetlana Starykh and Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review (NERA Jan. 24, 2023 at 18 (Fig. 19)).

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365. This case has been pending since 2019 and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000).

### 4. The Remaining Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class,

15

including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each factor supports approving the Settlement.

**Rule 23 (e)(2)(C)(ii):** Under the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  The Claims Administrator will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Calandra Decl. ¶¶ 59-65.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel seeks a percentage of the common fund fee award in an amount not to exceed 33 1/3% for services rendered on behalf of the Settlement Class.[8]  A proposed attorneys' fee of up to 33 1/3% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases.  *See Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33 1/3% of the Class

---

[7] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 16.

[8] Due to an inadvertent error, the Notice states only that attorney fees will be divided among Pomerantz and BGG. Fees will be divided among Pomerantz, BGG, GPM, and VLO.  *See* ECF No. 81-1 at ¶ 65 & n.3.

Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions"); *see also* Fee and Expense Application, Section III.C.i.  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶ 19.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). The parties will produce this supplemental agreement for the Court's review, if requested.

### 5.    The Settlement Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed on pp. 13-18 of the Notice (ECF No. 81-1), respectively) each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See Citigroup*, 965 F. Supp. 2d at 386-87; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    The Remaining *Grinnell* Factors Weigh In Favor of Final Approval

17

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the factors identified above, support final approval.

### a. The Settlement Class's Reaction to the Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Epiq Decl. ¶¶ 6-7, 16 & Ex. A (Postcard Notice); ECF No. 81-1 at 61-82 (Notice). In total, as of August 29, 2023, 4,376 potential Settlement Class Members were either notified by mailed Postcard Notice or emailed a link to the Notice and Claim Form. *Id.* at ¶¶6-7. To date, no request for exclusion has been received, and no objections have been filed with the Court. *Id.* at ¶¶ 14-15, 17; Calandra Decl., ¶¶ 57-58.[9] The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### b. The Stage of the Proceedings and the Amount of Discovery

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. Here, among

---

[9] The deadline to request exclusion from the Settlement is September 12, 2023. The deadline to object to any aspect of the Settlement is also September 12, 2023. If objections or exclusions are received after the date of this filing, they will be addressed on reply.

other things, Plaintiffs conducted an extensive investigation into 22nd Century, briefed both of Defendants' motions to dismiss, briefed and argued a successful appeal, consulted with loss causation and damages experts, exchanged detailed mediation briefs with Defendants, and participated in a full day of mediation with a well-respected neutral. *See* Calandra Decl. ¶¶ 71-78.

Under such circumstances, courts regularly approve settlements where, as here, Lead Counsel has "engaged in sufficient investigation of the facts," even without formal discovery. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001); *see also Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019) (approving final settlement where case "settled swiftly"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (finding formal discovery unnecessary where the parties "engaged in sufficient investigation of the facts"); *Van Oss v. New York*, 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) (holding that "although there has been no formal discovery, plaintiffs' counsel has done an adequate factual investigation").[10]

Accordingly, to satisfy this factor, the parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10; *see also Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) (finding that even though the "action did not proceed to formal discovery . . . Lead Plaintiffs were well-informed to 'gauge the strengths and weaknesses of their claims and the

---

[10] See also *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *5 (S.D.N.Y. May 30, 2013) (noting that "although settlement was reached before extensive merits discovery, plaintiffs conducted an investigation prior to commencing the action [and] retained experts"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (class counsel's investigation and research, absent extensive discovery, supported approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (holding "formal discovery is not [] necessary" where the parties have "sufficient information to make an informed decision").

adequacy of the settlement.'"). When the parties agreed to settle, Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of their claims and the defenses asserted and could make an informed appraisal regarding their chances of success.

As a result of these efforts, Plaintiffs and Lead Counsel had a thorough understanding of the claims and defenses asserted in this case, the significant risks to establishing liability and damages, and collecting a greater judgment. This understanding enabled Plaintiffs and Lead Counsel to intelligently and responsibly negotiate the Settlement. *See Vaccaro*, 2017 WL 6398636, at \*5 ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the oil and gas industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."); *see also In re iDreamsky Tech. Ltd. Sec. Litig.*, 2018 WL 8950640, at \*2 (S.D.N.Y. Apr. 6, 2018) (granting final approval prior to merits discovery); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (stating that where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at \*7 (S.D.N.Y. May 1, 2008) (stating that "[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms"); *Am. Bank*, 127 F. Supp. 2d at 425-26 ("To approve a proposed settlement, however, the Court need not find that the parties have engaged in extensive discovery").

20

          c.          **The Ability of Defendants to Withstand a Greater Judgment**

22nd Century's ability to withstand a greater judgment is not guaranteed. Although Defendants might argue that the Company is not liable for the claims in this action, on March 31, 2023 the Company filed a report on Form 8-K disclosing that it had received a deficiency letter from the Nasdaq Listing Qualifications Department regarding its failure to maintain a sufficient price necessary to continue being listed on The Nasdaq Capital Market. Further, the Company's quarterly report on Form 10-Q filed August 14, 2023 stated that the Company had only $4.43 million of cash and cash equivalents as of June 30, 2023. Accordingly, this factor supports the Settlement.

Moreover, even if Defendants could withstand a greater judgment, "the defendant's ability to pay is much less important than other factors, especially where the other Grinnell factors weigh heavily in favor of settlement approval." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

          C.          **The Plan of Allocation Is Fair and Reasonable and Should Be Approved**

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at *15. Rather, "[w]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia*, 2019 WL 5257534, at 15-16. Thus, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *Marsh & McLennan*, 2009 WL 5178546, at *13.

The proposed Plan of Allocation, developed by Plaintiffs' damages expert in conjunction with Lead Counsel, reflects an assessment of the damages that Plaintiffs contend could have been

recovered under the theories of liability asserted in the Action.[11]  Calandra Decl. ¶¶ 60-66.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' allegation that the price of 22nd Century securities was artificially inflated during the Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions.  *Id.*  The Plan of Allocation is based on the premise that the decrease in the price of 22nd Century's common stock that followed the alleged corrective disclosures that occurred on October 25, 2018, and April 17, 2019, and July 29-31, 2019, respectively, may be used to measure the alleged artificial inflation in the price of 22nd Century common stock prior to the disclosure.  *Id.*; ECF No. 81-1 at 61-82 (Notice).  The same methodology would have been proffered by Plaintiffs at summary judgment and trial had the Action not settled.

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of 22nd Century common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the stock, and the number of valid claims filed by other Claimants.  Calandra Decl. ¶ 63.  If a Claimant has an overall market *gain* with respect to his, her, or its transactions in 22nd Century common stock during the relevant period, the Claimant is not entitled to recover under the Plan of Allocation.  *Id.*; ECF No. 81-1 at 61-82 (Notice).  Moreover, if a Claimant purchased 22nd Century common stock during the relevant period, but did not hold any of shares through the alleged disclosure event, the Claimant is not a Settlement Class Member and would have no Recognized Loss under the Plan of Allocation, as any loss suffered would not have been caused by the revelation of the alleged fraud. Calandra Decl. ¶ 64; ECF No. 81-1 at 61-82 (Notice).

Under the proposed Plan of Allocation, each Authorized Claimant will receive his or her s

---

[11] The Plan of Allocation is detailed in the Notice.  *See* ECF No. 81-1 at 61-82 (Notice).

*pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution.  Calandra Decl. ¶¶64-68; ECF No. 81-1 at 61-82 (Notice).  More precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.*

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective. Epiq Decl., ECF No. 81-1 at 61-82 (Notice).  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.  *Id*.

Lead Counsel believes the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims.  *See Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (approving substantially similar plan of allocation); *Christine Asia*, 2019 WL 5257534, at *15-16 (same).  To date, no objections to the Plan of Allocation have been filed on this Court's docket, and Lead Counsel are not aware of any objections.  Calandra Decl. ¶ 67.  Accordingly, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.  *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. 2007) (finding that no objections supports approval of the plan of allocation); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) (same).

### D.     The Notice Program Satisfies Rule 23, the PSLRA, and Due Process

Rule 23(e) and due process together require that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed

settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). The notice program's method of dissemination, as well as its substance, satisfy the applicable standards.

In accordance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"): (a) mailed copies of the Postcard Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i) email links of the Notice and Claim Form to potential Settlement Class Members, (ii) mail the Postcard Notice to potential Settlement Class Members, or (iii) provide Epiq with mailing or email information that would enable Epiq to notify potential Settlement Class Members.[12] Epiq Decl. ¶¶2-8. As of August 29, 2023, a total of 4,376 potential Settlement Class Members were notified by mailed Postcard Notice or emailed a link to the Notice and Claim Form. *Id*. at ¶¶ 6-7.

As required by Fed. R. Civ. P. 23(c)(2)(B), the Notice informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a

---

[12] The Postcard Notice directed potential Settlement Class Members to downloadable versions of the Notice and Claim Form posted online at www.22ndCenturySecuritiesLitigation.com (the "Settlement Website"). Epiq Decl., Ex. A (Postcard Notice).

Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions, manner, and time for doing so; (g) the right of a Settlement Class Member to object to any aspect of the Settlement, and the instructions, manner, and time for doing so; (h) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing.  *See* Fed. R. Civ. P. 23(c)(2)(B); ECF No. 81-1 at 61-82 (Notice).

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (a) a cover page summarizing the information in the Notice; (b) a statement of plaintiffs' recovery, and the estimated recovery per damaged share; (c) a statement of potential outcomes of the case; (d) a statement of attorneys' fees or costs sought; (e) identification of lawyers' representatives; and the (g) reasons for the settlement. ECF No. 81-1 at 61-82 (Notice).

In addition to ensuring the dissemination of the Postcard and email notice to 4,376 potential Settlement Class Members, Epiq caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* on July 31, 2023.  *Id.* at ¶ 9.  Epiq also posted the posted downloadable versions of the Stipulation, Preliminary Approval Order, Notice and Claim Form, Complaint and Postcard Notice on the Settlement Website (*id.* at ¶ 13), and established a toll-free number to respond to Settlement Class Member inquiries.  *Id.* ¶ 10. These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Settlement.  Moreover, courts routinely find that a mailed postcard directing class to a more detailed online notice is sufficient to satisfy due process requirements.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases).  Accordingly, the notice program satisfied the requirements of Rule

25

23, the PSLRA and due process.

### E.  Final Certification of the Settlement Class Is Appropriate

The Court's June 30, 2023, Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  *See* ECF No. 86.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (*see* ECF No. 80), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated: August 29, 2023

Respectfully submitted,

*/s/ Brian Calandra*
Jeremy A. Lieberman
Brian Calandra
**POMERANTZ LLP**
600 Third Avenue, Floor 20
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
jalieberman@pomlaw.com
bcalandra@pomlaw.com

*Lead Counsel for Lead Plaintiffs Joseph Noto, Garden State Tire Corp. and Stephens Johnson*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600

26

New York, New York 10165
Telephone: (212) 697-8209
Facsimile: (212) 697-7296
Email: peretz@bgandg.com
Email: eitank@bgandg.com

**GLANCY PRONGAY & MURRAY LLP**

Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
929-777-1047 (cell)
310-201-9150 (office)
gspencer@glancylaw.com

**VITA LAW OFFICES, P.C.**
Richard Vita
100 State Street, Suite 900
Boston, Massachusetts 02109
(617) 426-6566
rjv@vitalaw.com

*Additional Counsel for Plaintiffs and for the
Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By:     */s/ Brian Calandra*
Brian Calandra