**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOSEPH NOTO, GARDEN STATE TIRE CORP., and STEPHENS JOHNSON, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>22ND CENTURY GROUP, INC., HENRY SICIGNANO, III and JOHN T. BRODFUEHRER,<br><br>      Defendants. | Civil Action No. 19-cv-01285-JLS-MJR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY ................................................... 4

III.  ARGUMENT ............................................................................................................. 4

    A.   The Common Fund Doctrine Applies To the Settlement ...................................... 4

    B.   The Court Should Award a Reasonable Percentage of the Common Fund ............ 5

    C.   The Requested Attorneys' Fees Are Reasonable ................................................... 7

        1.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ....................................................................................... 7

        2.   Lodestar "Cross-Check" Strongly Supports Reasonableness of Fees ........ 9

    D.   Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee is Fair and Reasonable ..................................................................... 11

        1.   Time and Labor Expended Support the Requested Fee ........................... 11

        2.   The Risks of Litigation Support the Requested Fee ................................. 13

        3.   The Magnitude and Complexity of the Action Support the Requested Fee ................................................................................................................. 16

        4.   The Quality of Representation Supports the Requested Fee .................... 17

        5.   The Requested Fee in Relation to the Settlement Amount ....................... 19

        6.   Public Policy Considerations Support the Requested Fee ........................ 19

    E.   Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ............................................................................. 20

    F.   The Requested Plaintiff Awards are Reasonable ................................................ 21

IV.   CONCLUSION ....................................................................................................... 22

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) (O'Connor, J., by designation)......................................2

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...................................................................................16

*Asare v. Change Group of New York, Inc.*,
    2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)...........................................................10

*Athale v. Sinotech Energy Ltd.*,
    2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)......................................................6, 10

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
    2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ..............................................................4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...............................................................7

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979)......................................................................................16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).....................................................................................................4

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
    2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) .....................................................14, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................................13

*City of Providence v. Aéropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) *aff'd sub nom. Arbuthnot v.
    Pierson*, 607 F. App'x 73 (2d Cir. 2015)...........................................7, 10, 17, 20

*Clark v. Ecolab Inc.*,
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) .............................................................7

*Cornwell v. Credit Suisse Grp.*,
    2011 WL 13263367 (S.D.N.Y. July 18, 2011) ..........................................................10

*Davis v. J.P. Morgan Chase & Co.*,
 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................3, 6, 10

*Elkin v. Walter Inv. Mgmt. Corp.*,
 2018 WL 8951073 (E.D. Pa. Dec. 17, 2018) ...........................................................8

*Fishoff v. Coty Inc.*,
 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ....................15

*Fogarazzo v. Lehman Bros.*,
 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ............................................................7

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)........................................................................ *passim*

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,*
 *L.L.P.*,
 212 F.R.D. 400 (E.D. Wis. 2002) .........................................................................14

*Guevoura Fund Ltd. v. Sillerman*,
 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .........................................................10

*Hall v. AT & T Mobility LLC*,
 2010 WL 4053547 (D.N.J. Oct. 13, 2010).............................................................10

*Hicks v. Morgan Stanley & Co.*,
 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................................................5, 7

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 Fed. Appx. 9 (2d Cir.
 2008) ...................................................................................................................18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................16

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
 772 F.3d 125 (2d Cir. 2014).................................................................................22

*In re Blech Sec. Litig.*,
 2000 WL 661680 (S.D.N.Y. May 19, 2000) ..........................................................18

*In re Blech Sec. Litig.*,
 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ..........................................................8

*In re Bristol-Myers Squibb Sec. Litig.*,
 361 F. Supp. 2d 229 (S.D.N.Y. 2005)......................................................................7

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................9, 13, 19

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................13

*In re Deutsche Telekom AG Sec. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 14, 2005) ........................................................10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................................6

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018).....................................................................18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom.*, 674 F. App'x 37
(2d Cir. 2016)......................................................................................................7, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. 2010).............................................................13, 14, 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................7, 14

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................9, 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...........................................................9

*In re iDreamSky Tech. Sec. Litig.*,
2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018)...............................................................8

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................20

*In re Initial Public Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................................7

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...........................................................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. 2009)..................................................................................22

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) .......................22

*In re Qudian Inc. Sec. Litig.*,
   2021 WL 2328437 (June 8, 2021) ....................................................................................22

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)...............................................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .........................................................................22

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) .................................................................3, 10

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
   No. 03-CV-8284 (RWS) (S.D.N.Y. Dec. 6, 2006) .................................................................8

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).................................................................. *passim*

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)...............................................................................6, 10

*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).........................................................................6

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ..............................15

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009)............................................................................16

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)...............................................................................................9

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................5, 8, 17, 19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)..........................................................................................................9

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................................................................7

*Monzon v. 103W77 Partners, LLC*,
　2015 WL 993038 (S.D.N.Y. 2015).......................................................................................5, 8

*Savoie v. Merchs. Banks*,
　166 F.3d 456 (2d Cir. 1999).................................................................................................8, 9

*Shapiro v. JPMorgan Chase & Co.*,
　2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................................13

*Taft v. Ackermans*,
　2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ..........................................................................17

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
　2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007)................................................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005).................................................................................................5, 6, 8

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
　2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).......................................................................10

**Statutes**

15 U.S.C. §78j(b)...........................................................................................................................11

15 U.S.C. §78t(a) ...........................................................................................................................11

15 U.S.C. § 78u-4 .......................................................................................................................2, 6

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

Court-appointed Lead Counsel Pomerantz LLP ("Pomerantz," or "Lead Counsel"), on behalf of all Plaintiffs' Counsel,[1] respectfully submit this memorandum of law in support of their request for attorneys' fees of 33 1/3% of the Settlement Fund[2] (or $1,000,000, plus interest at the same rate as the Settlement Fund), reimbursement of $106,473.75 in out-of-pocket expenses advanced by counsel, as well as $5,000 to each of Court-appointed Lead Plaintiffs Joseph Noto, Garden State Tire Corp., and Stephens Johnson (collectively, "Plaintiffs"), as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

## I.   INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $3,000,000 in exchange for the resolution of the Action, represents an excellent result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Plaintiffs would have needed to overcome in order to prevail in this complex securities fraud litigation. The Settlement represents a recovery of approximately 5.9% of the recoverable damages, an excellent result for the Class. In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability, loss causation and damages. For example, courts have been reluctant to sustain claims where, as here, investors allege that Defendants made misrepresentations concerning a government investigation that had not resulted in any finding of wrongdoing. Indeed,

---

[1] Pomerantz was assisted in its representation of Plaintiffs and the Class by Bronstein, Gewirtz & Grossman, LLC ("BGG"), Glancy Prongay & Murray LLP ("GPM"), and Vita Law Offices, P.C. ("VLO"). *See* Calandra Decl. ¶¶ 72, 79; GPM Decl. ¶¶ 1-3. Pomerantz and BGG are referred to herein as "Plaintiffs' Counsel."

[2] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated April 25, 2023 ("Stipulation"; ECF No. 81-1), or in the concurrently filed Declaration of Brian Calandra in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Calandra Decl.").

in their initial motion to dismiss, Defendants cited multiple prior cases concerning failing to disclose investigations, both of which were dismissed. *See* ECF No. 41 at 12 (citing *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017)).

Accordingly, the risk of defeat was very real, and it was greatly enhanced by the fact that Plaintiffs' Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. § 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[3]  In fact, a review of the current status of securities class action suits filed after 2014 reveals that within each filing year a greater proportion of cases have been dismissed than have been settled. For cases filed between 2015 and 2019, dismissal rates range from 41% to 51% each year. *See* Calandra Decl. Ex. 10 at 9 (Fig. 8) (Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation*: 2022 Full-Year Review (NERA Jan. 24, 2023) ("NERA Report"). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation.

Despite these risks, Lead Counsel worked approximately 1459.85 hours on behalf of the Settlement Class, all on a fully contingent basis with no guarantee of ever being paid. As compensation for Plaintiffs' Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 33 1/3% of the

---

[3] Unless otherwise noted, all internal citations and quotation marks are omitted, and all emphasis is added.

Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Lead Counsel's lodestar. In fact, the requested fee represents a "negative multiplier" of 0.826 on Lead Counsel's lodestar, which is much *lower* than the multipliers of one to five that is typically applied in common fund cases. *See, e.g., Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (noting that multiplier of 5.3 was "not atypical for similar fee-award cases"); *see In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. Sept. 10, 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Lead Counsel also seeks reimbursement of $106,473.75 in out-of-pocket litigation expenses incurred by Lead Counsel in prosecuting this Action. *See* Calandra Decl. ¶¶ 91-96. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Court-appointed Lead Plaintiffs Joseph Noto, Garden State Tire Corp., and Stephens Johnson respectfully request PSLRA awards of $5,000 each to compensate them for the time and effort they expended on behalf of the Settlement Class. *Id.* Exs. 8-9. Each of Lead Plaintiffs, *inter alia*, researched the facts of the case, reviewed filings, conferred with Plaintiffs' Counsel about litigation and settlement strategies, and authorized Lead Counsel to settle the case. But for their "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For the reasons set forth herein, and in the Calandra Declaration, Lead Counsel respectfully request that the Court award Plaintiffs' Counsel 33 1/3% of the Settlement Fund, approve

reimbursement of $106,473.75 in litigation expenses, and grant PSLRA awards of $5,000 to each of the Plaintiffs.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Calandra Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the history of the Action (Calandra Decl. ¶¶ 14-22); nature of the claims asserted (*id.* ¶¶ 6-7); negotiations leading to the Settlement (*id.* ¶¶ 23-28); risks and uncertainties of continued litigation (*id.* ¶¶ 30-46); a summary of the services Plaintiffs' Counsel provided for the Settlement Class's benefit (*id.* ¶¶ 71-79); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (*id.* ¶¶ 80-96).

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies To the Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Id.*; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject

matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Plaintiffs' Counsel's efforts conferred a substantial benefit—$3,000,000 in cash—on an ascertainable class. In addition, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F. Supp. 2d 369.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").[4] The percentage-of-the-fund method is also supported by the PSLRA, which states

---

[4] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).[5] The lodestar method, by contrast, "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

The percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts … may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts

---

[5] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *Hicks*, 2005 WL 2757792, at *10.

      **C.**       **The Requested Attorneys' Fees Are Reasonable**

             **1.**      **The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

Lead Counsel's 33 1/3% fee request is well within the range of percentage fees awarded in comparable, complex class actions within the Second Circuit. *See, e.g., In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd sub nom.*, 674 F. App'x 37 (2d Cir. 2016); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement) *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (approving 33% fee); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of $6 million settlement); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of over $510 million); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding one-third of settlement and finding "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); Order Awarding Attorneys' Fees & Reimbursement of Expenses at 2, *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03-CV-8284 (RWS) (S.D.N.Y. Dec. 6, 2006) (awarding 33.3% of $8 million settlement); *Maley*, 186 F. Supp. 2d at 370-74

(awarding 33 1/3% of settlement fund valued at over $11.5 million); *In re Blech Sec. Litig.*, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (awarding one third of $2,795,000 settlement fund).

Moreover, recognizing the importance of efficient and effective advocacy, Courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly thereafter, and where no or very limited discovery had been obtained as a result of the PSLRA discovery stay. *See, e.g., In re iDreamSky Tech. Sec. Litig.*, 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (awarding one-third of $4.15 million following decision on motion to dismiss, but prior to formal discovery); *Elkin v. Walter Inv. Mgmt. Corp.*, 2018 WL 8951073, at *1 (E.D. Pa. Dec. 17, 2018) (awarding one-third of $2,950,000 settlement while motion to dismiss was pending).

This approach gives Lead Plaintiffs and Lead Counsel a "powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121. In addition, one of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. Under such circumstances, Plaintiffs' Counsel should be rewarded for their efficient and effective advocacy. *See Savoie v. Merchs. Banks*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet"); *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (awarding one-third of the settlement fund and noting that the "percentage of the fund method in common fund cases like this one . . . directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their

attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources").

### 2. Lodestar "Cross-Check" Strongly Supports Reasonableness of Fees

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[6] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460. Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1459.85 hours to the prosecution of this Action, resulting in a lodestar of $1,210,810.00. Calandra Decl. ¶ 75.[7] Based on a 33 1/3% fee (equal to $1,000,000), Lead

---

[6] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[7] Lead Counsel's rates range from $875 to $1,250 for partners and "Of Counsel," and $450 to $550 for associates and staff attorneys (Calandra Decl. ¶ 74 & Ex. 2), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *TAL Educ. Grp.*,

Counsel's lodestar yields a ***negative*** multiplier of 0.826. The negative multiplier itself "affords additional evidence that the requested fee is reasonable[,]" see *City of Providence*, 2014 WL 1883494, at *13, and is much lower than the multipliers of one to five that is typically applied in common fund cases. *See, e.g., Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (noting that multiplier of 5.3 was "not atypical for similar fee-award cases"); *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *22 (D.N.J. Oct. 13, 2010) ("A multiplier of less than one, as is the case here, is therefore quite reasonable for a lodestar"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts"); *WorldCom*, 388 F. Supp. 2d at 354-59 (multiplier of 4.0).[8]

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

---

2021 WL 5578665, at *12 (approving rates of $600 to $995 for partners, and $500 to $750 for associates); *see also* Calandra Decl. Ex. 3 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

[8] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier).

**D.     Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee is Fair and Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.   Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

**1.     Time and Labor Expended Support the Requested Fee**

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee.  Among other things, Plaintiffs' Counsel:

- drafted the initial complaint in the Action and moved for the appointment of Lead Plaintiff and Lead Counsel;

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) 22nd Century's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning 22nd Century, (iii) 22nd Century's investor call transcripts and (iv) other publicly available material related to the Company; (b) retaining and working with private investigator, who interviewed numerous former Company employees; and (c) working with a damages and loss causation expert to analyze 22nd Century's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 80-page Second Amended Complaint ("SAC") (ECF No. 31, the "Complaint"), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act;

- researched and drafted the opposition to Defendants' first motion to dismiss (ECF Nos. 40-45);

- after the Court granted Defendants' motion to dismiss, successfully obtaining a reversal of the Court's dismissal in part after an appeal to the United States Court of Appeals for the Second Judicial Circuit ("Second Circuit") (ECF No. 58);

- research and drafted the opposition to Defendants' second motion to dismiss and successfully defeated that motion in its entirety (ECF Nos. 63-69);

- engaged in a mediation process overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq. ("Melnick"), an experienced JAMS mediator, which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and extensive consultation with Plaintiffs' expert on damages and loss causation;

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on March 24, 2023;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the Preliminary Approval Motion and supporting papers;

- oversaw the implementation of the notice process; and

- drafted the Motion for Final Approval and supporting papers.

Calandra Decl. ¶ 71.

Moreover, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work, other than reimbursement of any additional out of pocket expenses incurred in fulfilling these tasks. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees.  *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit.").  This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events."  *Global Crossing*, 225 F.R.D. at 467.  The many severe risks that Plaintiffs' Counsel faced in prosecuting this suit more than justify the requested 33 1/3% fee.  *See, e.g.*, Calandra Decl. ¶¶ 82-85.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]"*Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. 2010).[9]  This case was no exception.  From the

---

[9] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v.*

outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  Indeed, Defendants obtained a dismissal *with prejudice* of Plaintiffs' Complaint before Plaintiffs were able to obtain a partial reversal of that dismissal before the Second Circuit. Accordingly, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than two] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. Nov. 2, 2011).  Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began more than [two] years ago." *Flag Telecom*, 2010 WL 4537550, at *27.  Lead Counsel's commitment was substantial (*i.e.*, $1,210,810.00 in lodestar and $106,473.75 in expenses), and had they not obtained a recovery, it could have all been lost.  Calandra Decl. ¶ 73 and Ex. 2 (lodestar), ¶ 93 (expenses).  To put it bluntly, complex litigation is not risk free, and this case very far from a slam dunk.[10]

Plaintiffs' claims in this case were accompanied by substantial risks. For example, courts have been reluctant to sustain claims where, as here, investors allege that Defendants made

---

*PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

[10] For a discussion of the litigation, and thus contingency fee risks inherent in this case, the Court is respectfully referred to the concurrently filed Final Approval Memorandum and Calandra Declaration.  *See* Final Approval Memorandum § II.B.3; Calandra Decl. ¶¶ 82-85.  While Lead Counsel believe those risks are important in assessing a reasonable attorneys' fee, for the sake of brevity, this section focuses on what made this Action riskier than other securities class actions. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020) ("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage").

misrepresentations concerning a government investigation that had not resulted in any finding of wrongdoing. Indeed, in their initial motion to dismiss, Defendants cited multiple prior cases concerning failing to disclose investigations, both of which were dismissed. *See* ECF No. 41 at 12 (citing *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017)).

In addition, while Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants will contest at summary judgment and trial whether their statements are inactionable because they had no duty to disclose an SEC investigation into an accounting weakness and the investigation was not material because it did not result in a finding of wrongdoing or any penalties.

Defendants also argued that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Calandra Decl. ¶¶ 19, 32-33.  While Plaintiffs strongly disagreed with this assertion, it was not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case.  Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

Further, despite a chance of later success against Defendants' near-certain motions for summary judgment, and in opposition to class certification, substantial risks would still persist, given that many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re JDS Uniphase Corp. Securities Litigation*, the jury issued a verdict in favor of defendants

after five years of litigation. 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. 688 F.3d 713 (11th Cir. 2012). In *Backman v. Polaroid Corp.*, the class won a $38 million jury verdict, and a motion for judgment n.o.v. was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. 910 F.2d 10 (1st Cir. 1990); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

In short, the contingency fee risk in this case was high and, consequently, this factor militates in favor of the requested fee.

### 3. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities fraud class actions like this case. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *TAL Educ. Grp.*, 2021 WL 5578665, at *9 ("Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

In addition, the magnitude of this Action is unquestionable. This was a hard-fought, expensive, multi-year litigation, with tens of millions of dollars of damages at stake, and it required considerable skill and resources to litigate. Consequently, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *see also Veeco*, 2007 WL 4115808, at *7. Both factors support the conclusion that a 33 1/3% fee award in this case is reasonable under the circumstances.

The proposed Settlement is an excellent result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory, the most reasonable estimate of potential damages would be approximately $50.7 million. Thus, the $3 million Settlement represents a recovery of approximately 5.9%, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. *See* NERA Report at 18 (Fig. 19).

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365. This case has been pending since 2019, and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement

or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000); *see also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.").

Additionally, the quality of Lead Counsel and Plaintiffs' Counsel's efforts and commitment to providing the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Calandra Decl. ¶ 86; *see also id.* Ex. 4 (Pomerantz firm resume) Ex. 5 (GPM firm resume). Indeed, "[n]ot only did Plaintiffs' Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Veeco*, 2007 WL 4115808, at *7.

Finally, courts have recognized that the quality of the opposition faced by Lead Counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008). Here, Defendants were represented by Foley & Lardner LLP and Duke, Holzman, Photiadis & Gresens LLP, prestigious and well-respected law firms with substantial securities class action litigation practices, whose lawyers tenaciously represented the interests of their clients

throughout this Action.  Calandra Decl. ¶ 87.  Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action, ultimately resulted in the favorable Settlement.  *Id*. Consequently, this factor militates in favor of the requested fee.  *See Veeco*, 2007 WL 4115808, at *7 ("That Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation … and is a factor in determining the reasonableness of the fee request.").

### 5.        The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery.  "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value."  *Comverse*, 2010 WL 2653354, at *3.  As discussed in detail in Section III.C.1, *supra*, the requested 33 1/3% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases.  Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.        Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."  *Del Global*, 186 F. Supp. 2d at 373.  This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will

adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.  "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them.  This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18.

Here, Plaintiffs' Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, and they did so on a fully contingent basis.  Had Plaintiffs' Counsel not done so, the Settlement Class would have received no compensation whatsoever.  Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. *See City of Birmingham*, 2020 WL 7413926, at *2 ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (quoting *Wal-Mart*, 396 F.3d at 96) (alteration in the original).

E.     **Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Lead Counsel also request reimbursement of $106,473.75 in expenses incurred while prosecuting the Action.  In support of this request, the Calandra Declaration sets forth the expenses in detail and attests to their accuracy (Calandra Decl. 93-96), and thus such expenses are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

A significant portion of the expenses were incurred for professional services rendered by Plaintiffs' experts, the investigators, and the mediator, and the remaining expenses are attributable to legal and factual research, filing fees, and other incidental expenses incurred in the course of the litigation.  Calandra Decl. ¶¶ 93-96.

### F.    The Requested Plaintiff Awards are Reasonable

In connection with their request for reimbursement of Litigation Expenses, Lead Counsel also respectfully request PSLRA awards of $5,000 for each of the Plaintiffs to compensate them for the time and effort they expended on behalf of the Settlement Class.  Calandra Decl. ¶¶ 97-100.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

Here, Plaintiffs took an active role in the litigation by, among other things: (i) regularly communicating with their attorneys regarding the posture and progress of the case, as well as strategy; (ii) producing documents to their attorneys;(iv) reviewing all significant pleadings and memoranda; (v) consulting with their attorneys regarding the settlement negotiations; and (vi) evaluating and approving the proposed Settlement.  *See* Calandra Decl. Ex. 7 ("Noto Decl."), ¶ 5; Ex. 8 ("Garden State Tire Corp. Decl."), ¶ 4, Ex. 9 ("Johnson Decl."), ¶ 5.  These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. 2009).

Consequently, Lead Counsel respectfully request that the Court grant Plaintiffs' request for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class."  *Id.* at *21 (approving $215,000 total award to two lead plaintiffs); *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 873 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (awarding $300,000 to lead plaintiff and $100,000 to named plaintiffs where "[t]he work

performed by . . . [class representatives] was beneficial to the class and included reviewing drafts of the complaints, responding to defendants' interrogatories and document requests, producing responsive documents, providing oversight of the mediation and settlement process, authorizing the settlements, and reviewing drafts of the settlements before they were filed with the Court"); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class").[11]

## IV.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the motion.  A proposed order will be submitted with the reply papers, after the deadline for objections has passed.

Dated: August 29, 2023                    Respectfully submitted,

                                          */s/ Brian Calandra*
                                          Jeremy A. Lieberman
                                          Brian Calandra
                                          **POMERANTZ LLP**
                                          600 Third Avenue, Floor 20
                                          New York, NY 10016
                                          Phone: 212-661-1100
                                          Fax: 917-463-1044
                                          jalieberman@pomlaw.com
                                          bcalandra@pomlaw.com

---

[11] *See also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff); *TAL Educ. Grp.*, 2021 WL 5578665, at *13 (awarding $7,500 to each of the two lead plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).

*Lead Counsel for Lead Plaintiffs Joseph Noto, Garden State Tire Corp. and Stephens Johnson*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-8209
Facsimile: (212) 697-7296
Email: peretz@bgandg.com
Email: eitank@bgandg.com

**GLANCY PRONGAY & MURRAY LLP**

Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
929-777-1047 (cell)
310-201-9150 (office)
gspencer@glancylaw.com

**VITA LAW OFFICES, P.C.**
Richard Vita
100 State Street, Suite 900
Boston, Massachusetts 02109
(617) 426-6566
rjv@vitalaw.com

*Additional Counsel for Plaintiffs and for the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: August 29, 2023                    */s/ Brian Calandra*
                                          Brian Calandra