## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

JOSEPH NOTO, GARDEN STATE
TIRE CORP., and STEPHENS
JOHNSON, Individually and on behalf of
all others similarly situated,

Plaintiff,

v.

22ND CENTURY GROUP, INC., HENRY
SICIGNANO, III and JOHN T.
BRODFUEHRER,

Defendants.

Civil Action No. 19-cv-01285-JLS-MJR

**REPORT AND
RECOMMENDATION**



This case has been referred to the undersigned by the Honorable John L. Sinatra, Jr.,

pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pre-trial matters and to

hear and report on dispositive motions (Dkt. No. 70). Before the Court is Lead Plaintiff Joseph

Noto, Garden State Tire Corp., and Stephens Johnson's (collectively, the "Plaintiffs") Motion for

Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion"; Dkt.

No.88) and Lead Counsel's[1] Motion For an Award of Attorneys' Fees, Reimbursement of

Expenses, and Compensatory Awards to Plaintiffs ("Fee Motion"; Dkt. No. 89). For the reasons

herein and on the record at the October 3, 2023 Settlement Hearing ("Settlement Hearing"; Dkt.

No. 95), the Court respectfully recommends that the Final Approval and Fee Motions be granted.

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and
Agreement of Settlement dated April 25, 2023 ("Stipulation"; Dkt. No. 81-1), or in the
Declaration of Brian Calandra in Support of: (I) Plaintiffs' Unopposed Motion for Final
Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for
an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory
Awards to Plaintiffs ("Calandra Declaration" or "Calandra Decl."; Dkt. No. 94).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2019, Matthew Bull commenced this Action against Defendants[2] styled *Bull v. 22nd Century Group, Inc., et al.*, Case No. 1:19-cv-00409-NGG-ST (E.D.N.Y.). On August 1, 2019, the United States District Court for the Eastern District of New York ("EDNY Court") appointed Joseph Noto, Garden State Tire Corp., and Stephens Johnson as lead plaintiffs and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. On September 6, 2019, the Court granted the Parties' request to transfer this Action from the EDNY Court to the Court.

Lead Counsel investigated Defendants' allegedly wrongful acts, and on November 19, 2019, the Plaintiffs filed an Amended Complaint, which asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Sicignano and Brodfuehrer under Section 20(a) of the Exchange Act. The gravamen of the Amended Complaint was that Defendants made materially false and misleading statements and omissions concerning a scheme to use promotional articles to inflate 22nd Century's share price and a Securities and Exchange Commission ("SEC") investigation into a material weakness in 22nd Century's accounting controls, from February 18, 2016 through July 31, 2019. Defendants moved to dismiss the Amended Complaint on January 29, 2020, and District Judge Sinatra granted the motion *with prejudice* on January 14, 2021.

The Plaintiffs appealed the District Court's dismissal to the Second Circuit, and the appellate panel affirmed the dismissal of the Plaintiffs' claims concerning the alleged promotional article scheme, but reversed the District Court on the grounds that the Plaintiffs had sufficiently alleged that Defendants made statements that were misleading for failing to disclose the SEC

---

[2] Defendants are 22nd Century Group, Inc. ("22nd Century" or the "Company"), Henry Sicignano III, and John T. Brodfuehrer (collectively, the "Individual Defendants," and, together with 22nd Century, "Defendants").

investigation and in denying the existence of that investigation and remanded the action to the District Court.

On August 8, 2022, Defendants moved to dismiss the Amended Complaint for a second time on the grounds that the Plaintiffs failed to allege scienter and loss causation, and on January 6, 2023 the District Court denied Defendants' second motion to dismiss in full.

On March 21, 2023, after over four years of litigation, the parties reached a settlement in principle, and on April 25, 2023 entered into the Stipulation. The Stipulation provides for a payment of $3,000,000 in cash for the benefit of the Settlement Class in exchange for a release of Released Claims. According to Lead Counsel, the Proposed Settlement is in the best interests of the Settlement Class, especially considering the significant risks involved in the case. *See* Dkt. No. 90 at 7. The proposed settlement accounts for approximately 5.9% of recoverable damages of approximately $50.7 million (Calandra Decl. ¶ 45) and, according to Lead Counsel "represents a recovery . . . well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. *See* Dkt. No. 90 at 15.

On April 25, 2023, the Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, which the undersigned recommended be granted on June 15, 2023 ("R&R"; Dkt. No. 84). On June 30, 2023, District Judge Sinatra adopted the R&R and issued an order granting preliminary approval of the proposed settlement of this putative securities class action, certifying the proposed class for purposes of the Settlement, and approving the form and manner of notice of the proposed settlement to the Settlement Class. Plaintiffs' preliminary approval motion ("Preliminary Approval Order"; Dkt. No. 86).

In accordance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"): a) mailed copies of the

Postcard Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i) email links of the Notice and Claim Form to potential Settlement Class Members, (ii) mail the Postcard Notice to potential Settlement Class Members, or (iii) provide Epiq with mailing or email information that would enable Epiq to notify potential Settlement Class Members ("Epiq Declaration"; Dkt. No. 89-1 ¶¶ 2-8).

As of September 26, 2023, Epiq has disseminated a total of 206,221 Postcard Notices to potential Settlement Class Members and nominees. *Id.* ¶ 4. In addition, Epiq established and continues to maintain a website dedicated solely to this settlement (www.22ndcenturysecuritieslitigation.com) (the "Settlement Website") to inform class members about the settlement and provide answers to frequently asked questions. *Id.* ¶ 5. Copies of the Notice, Proof of Claim, Stipulation, and Notice Order are posted on the website and are available for download. *Id.* To date, the Settlement Website has received 6,616 hits. *Id.* Epiq also continues to maintain the toll-free telephone number and Interactive Voice Recording to accommodate inquiries from potential Settlement Class Members. *Id.* ¶ 6. As of September 26, 2023, Epiq has received 505 total IVR calls and 190 Live Operator calls. *Id.* In addition to mailing the Postcard Notice, Epiq also published the Summary Notice in Investor's Business Daily and released via PR Newswire on July 4, 2022. *See id.* ¶ 4.

On August 29, 2023, the Plaintiffs filed the instant Final Approval Motion and Lead Counsel filed the instant Fee Motion. As set forth in the Epiq Declaration, the deadline for requests for exclusion from the Proposed Settlement was September 12, 2023. As of date of the Epiq Declaration, Epiq received one (1) timely request for exclusion and one (1) request for exclusion submitted after the September 12, 2023, deadline, which was not accompanied by transaction

information and thus is invalid. Epiq Decl. ¶ 8. Epiq recommends granting the timely exclusion request and disallowing the untimely exclusion request, as not all required information was provided. *Id.* The deadline for filing objections to the Proposed Settlement was also September 12, 2023, and no objections have been filed. *Id.* ¶ 9.

The undersigned scheduled a Settlement Hearing for October 3, 2023 to determine (i) whether the terms and conditions of the settlement that provide for a $3 million settlement and release of the parties' claims is fair, reasonable, and adequate for the settlement of all claims asserted by the Settlement Class in this Action; (ii) whether judgment should be entered dismissing this case with prejudice; (iii) whether to approve the proposed Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members; (4) whether and in what amount to award attorneys' fees to Lead Counsel; (5) whether and in what amount to award Lead Counsel reimbursement of litigation expenses; and (6) whether and in what amount to award compensation to each Plaintiff.

On October 3, 2023, this Court held the Settlement Hearing, at which Lead Counsel and counsel for defendants appeared, seeking final approval of the class settlement and approval of Lead Counsel's request for fees, reimbursement of expenses, and a compensatory award for Plaintiffs.

## II.    DISCUSSION

### A.    Motion for Final Approval

After preliminarily certifying a settlement class, a court "then grants or denies final approval of the settlement and certification of the class." *Patterson v. Premier Constr. Co. Inc.*, No. 15 CV 662, 2017 WL 122986, at *2 (E.D.N.Y. Jan. 12, 2017). "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146

(2d Cir. 2020) (quoting *In re American Int'l Grp. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012),

*abrogated on other grounds*, *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455

(2013)).

The Plaintiffs seek an Order of final certification of the Settlement Class for purposes of

the settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. (Pl.'s Mem.

at 4–5). The parties have stipulated that the Settlement Class should consist of:

> all persons or entities who purchased or otherwise acquired 22nd Century securities
> during the Settlement Class Period and who allegedly were damaged thereby.
> Excluded from the Settlement Class are Defendants herein, the officers and
> directors of 22nd Century, at all relevant times, members of their immediate
> families and their legal representatives, heirs, successors or assigns and any entity
> in which Defendants have or had a controlling interest, and any persons or entities
> who properly exclude themselves by filing a valid and timely request for exclusion.

Stip. at ¶ 1.oo. The Settlement Class Period is defined as "the period between February 18, 2016

and July 31, 2019, both dates inclusive." *Id.* at ¶ 1.qq. The Parties have stipulated to certification

of Plaintiffs as Class Representatives and certification of Pomerantz as Lead Counsel (Stip. at ¶

1.u; Dkt. No. 80 at 26).

### 1.    The Requirements of Rule 23(a)

Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all members only if: [(i)] the class is so  numerous that joinder of all
> members is impracticable; [(ii)] there are questions of law or fact common to the
> class; [(iii)] the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and [(iv)] the representative parties will fairly and
> adequately protect the interests of the class.

In the order granting preliminary approval, this Court found that the proposed class satisfied the

requirements of Rule 23(a)(1)-(4). (R&R at 3-4). Since that time, none of the Settlement Class

Members have objected to the Proposed Settlement, only two individuals have sought exclusion

from the Settlement Class, and there is no other material information now before the Court that

would alter the Court's findings at the time of the R&R. However, in recommending that District Judge Sinatra grant final certification, the Court briefly reviews the relevant factors necessary for certification under Rule 23(a).

### i.    Numerosity

Plaintiffs contends that the proposed Settlement Class satisfies the numerosity requirement of Rule 23(a)(1). In the Second Circuit "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), *cert denied*, 115 U.S. 2277 (1995). Here, the Claims Administrator mailed 206,221 Postcard Notices (Epiq. Decl. ¶ 4), which supports finding that the Settlement Class is sufficiently numerous. Thus, this Court respectfully recommends that the district court find that the Settlement Class satisfies Rule 23(a)'s numerosity requirement.

### ii.    Commonality

Rule 23(a)(2) requires plaintiffs to demonstrate that common questions of law or fact affect all class members. The Court previously found during the preliminary approval inquiry that there were common questions of law and fact that make this case appropriate for class certification. R&R at 3-4). "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original) (quoting 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:50, at 196–97 (5th ed. 2012)).

Plaintiffs argue that commonality exists where, as here, allegedly "putative class members have been injured by similar material misrepresentations and omissions." (Dkt. No. 80 at 21 (quoting *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012)). Since nothing has changed since the Court's initial finding of commonality and in light of these critical common questions relating to the same alleged misrepresentations and omissions, the Court respectfully

recommends that the District Court find that Rule 23(a)(2)'s commonality requirement is satisfied here.

### iii.    Typicality

Typicality requires that the claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). To satisfy this requirement, "the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Plaintiffs assert that their claims are typical of the Settlement Class because they are based on the same set of alleged misrepresentations and omissions that apply to the Settlement Class as a whole. Dkt. No. 80 at 21-22 (citing *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002)). Consistent with the Court's preliminary finding of typicality (R&R at 3), the Court finds that the Plaintiffs would need to advance the same legal arguments as the rest of the Settlement Class to prove the Defendants' liability with respect to those allegedly misleading disclosures. Thus, the Court respectfully recommends that the District Court find that Plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

### iv.    Adequacy of Representations

To satisfy Rule 23(a)(4), which requires that the interests of the class be adequately represented, the Second Circuit has established a two-pronged test meant to discover "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 35 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)); *see also Hill v. City of New York*, 136 F. Supp. 3d 304, 356

(E.D.N.Y. 2016). The Court previously found that the Plaintiffs' interests did not conflict with those of the Settlement Class and that the Plaintiffs and Lead Counsel's efforts at prosecuting the case to settlement demonstrated their adequacy. (R&R at 3-4).

As nothing in the record suggests a contrary finding, this Court respectfully recommends that the District Court find that the Settlement Class is adequately represented by Plaintiffs and Lead Counsel, satisfying the requirements of Rule 23(a)(4).

### v.    Ascertainability

Although not an enumerated Rule 23(a) factor, "'[m]ost . . . circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable,' often characterized as 'an ascertainability requirement.'" *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016)); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 348–49 (E.D.N.Y. 2016).

Here, the Settlement Class definition clearly defines membership to the Settlement Class by the dates of investors' purchases of 22nd Century Securities. "Ascertaining the members of the class will be easily administrable by references to investor records." *Pearlstein v. BlackBerry Ltd.*, No. 13 CV 7060, 2021 WL 253453, at *13 (S.D.N.Y. Jan. 26, 2021). Thus, this Court respectfully recommends that the District Court determine that the Settlement Class satisfies the requirements of Rule 23 (a)(1)-(4), as well as the implied requirement of ascertainability.

### 2.    The Requirements of Rule 23(b)

The Plaintiffs claim that the proposed Settlement Class meets the requirements of Rule 23(b)(3). Dkt. No. 80 at 22-24. The court may grant certification under Rule 23(b)(3) "if both (1) 'questions of law or facts common to class members predominate over any questions affecting

only individual members' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)). In the R&R, this Court found both that common questions of law and fact predominate and that a class action was the superior method for adjudicating the claims in this case. R&R at 3-4). Since the R&R, nothing has come to light that would alter this Court's original findings. The basis for the Court's findings are summarized below.

### i.    Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d at 405); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013). Courts focus on whether common questions related to liability predominate. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372–73 (S.D.N.Y. 2007) (explaining "when determining whether common issues predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions [predominate over individual ones]") (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157–58 (S.D.N.Y. 2002)).

Plaintiff asserts that predominance is satisfied in this case because "there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class." Dkt. No. 80 at 23. The answer to whether the alleged misstatements and omissions by the Defendants and identified in the Amended Complaint

were misleading and in violation the Exchange Act is the same for every Settlement Class Member. Accordingly, since such common questions as to liability will predominate for the Settlement Class, the Court respectfully recommends that the district court find that the Settlement Class satisfies the predominance requirement of Rule 23(b)(3). Even though each Settlement Class Member's damages as a result of the alleged misstatements and omissions will vary depending on the number of shares involved, individualized issues as to damages is not enough to prevent a finding of predominance. *See Roach v. T.L. Cannon Corp.*, 778 F.3d at 409 (holding "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)).

### ii.    Class Action as a Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), the Court must consider:

> [(i)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(ii)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(iii)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(iv)] the likely difficulties in managing a class action.

When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

Plaintiffs contend that "Securities class actions easily satisfy the superiority requirement, because the alternatives are either no recourse for thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." Dkt. No. 80 at 23 (quotations and citations omitted). While the Court agreed in its preliminary approval order that the class action device was the superior method of resolving this matter, it is also evident now at the final certification stage, after notification has been provided to Settlement Class Members, that the Settlement Class desires for these claims to be dealt with in the aggregate as

11

demonstrated by the absence of any objections and only one opt-out request. Thus, the Court respectfully recommends that the District Court find that Rule 23(b)(3)'s superiority requirement is satisfied.

## III.    FINAL APPROVAL OF THE SETTLEMENT

Plaintiffs seek final approval of the proposed Settlement, as memorialized in the Stipulation.

### A.    Legal Standards

Class action settlements require court approval. Fed. R. Civ. P. 23(e). In determining whether to approve a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted). The Federal Rules of Civil Procedure outline the factors which guide such a determination, namely, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, considering:

    i.    the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed award of attorney's fees, including the method of processing class-member claims;

    iv.    the terms of any proposed award of attorney's fees, including timing of payment; and

    v.    any agreement required to be identified under Rule 23(e)(3); and

(D) the Proposal treats class members equitably relative to each other.

"Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.' Paragraphs (C) and

(D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (alteration in original) (internal citation omitted) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Recognizing that the fairness of a settlement is a determination within the sound discretion of the court, *see Levitt v. Rodgers*, 257 F. App'x 450, 453 (2d Cir. 2007) (citing *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991)), it is clear that judicial policy favors the settlement and compromise of class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005); *accord In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

### 1.    The Approval Process

Approval of a class action settlement involves a two-step process. *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *adhered to on reconsideration*, No. 01 CV 3020, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007)). At the first step, "the court preliminarily certifies the class and approves the settlement terms, class notices, and administrative procedures proposed by the parties." *Patterson v. Premier Constr. Co. Inc.*, 2017 WL 122986, at *2. At the second step, "class members (and non-settling defendants whose rights may be affected by the proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is fair, reasonable and adequate." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 88.

On June 15, 2023, this Court issued the R&R, recommending preliminary approval of the proposed Settlement after considering the terms of the proposed Settlement, whether the proposed

Notice and method of providing Notice to the Settlement Class comported with Rule 23, the PSLRA and due process, and whether the settlement was not only procedurally but also substantively fair to the Settlement Class. This recommendation was subject to the reaction of the Settlement Class which has been positive in this case. Each factor is addressed briefly below.

### 2.    Adequacy of Notice to Settlement Class Members

Under the Federal Rules of Civil Procedure, upon preliminary approval of the class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(3)(e)(1)(B). In addition, the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In the R&R, which was adopted in full by the District Court, this Court approved the form and substance of the Notice, Postcard Notice, and Summary Notice proposed by Plaintiffs, finding that both the form and method for notifying Settlement Class Members comported with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto. R&R at 6-7. Epiq mailed 206,221 Postcard Notices directly to Settlement Class Members and nominees, and published a copy of the Summary Notice in Investor's Business Daily and PR Newswire, as well as posting a copy of the Notice on the website www.22ndCenturySecuritiesLitigation.com. Epiq Decl. ¶¶ 4-5. These methods substantially and meaningfully complied with the R&R and the District Court's Order. Cf. *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 282 (S.D.N.Y. 2015) (holding "the Notice requirement of Rule 23.1 is . . . met" where notice was published in Investor's Business Daily, on the Company's website, in Global Newswire, and

on Lead Counsel's website). Moreover, by sending out Postcard Notices directly to individual Settlement Class Members and nominees, notice here was the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### 3.    Procedural Fairness

In granting preliminary approval, the R&R also reviewed the proposed settlement for procedural fairness. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (holding that "a District Court reviewing a proposed settlement 'must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests'") (alteration in original) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cit. 2001)); *see also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013) (quoting same). The Court has the "fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *In re Warner Commc'ns Secs. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986)); *see Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 26 (E.D.N.Y. 2007) (quoting same).

As the Court found in the R&R, the proposed Settlement was "fair, reasonable and adequate to the Settlement Class." R&R at 4. Plaintiffs and Lead Counsel conducted a thorough factual investigation which included the review and analysis of SEC filings, news articles, analysts' reports, interviews and review of conference call transcripts, as well as consultation with a forensic accountant and damages expert. Dkt. No. 90 at 2. Lead Counsel also engaged in extensive legal research and analysis before filing a detailed amended complaint and briefing the motion to dismiss. *Id.*

Moreover, Plaintiffs represent that the settlement was arrived at through good-faith, arm's-length negotiations through informed counsel before a neutral mediator. *Id.* at 3. The parties engaged an experienced mediator, Jed D. Melnick, Esq. and participated in a day-long mediation. *Id.* at 3. The parties' involvement in mediation in this case "helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d at 85 (citing *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990), *abrogated on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)). Thus, given the presumption of fairness when a class settlement has been reached after arm's-length negotiations between experienced, capable counsel, *see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d at 116, the Court respectfully recommends that the District Court find that the process of reaching the proposed settlement in this case was procedurally fair. *See Parker v. City of New York*, No. 15 CV 6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017).

### 4.    Substantive Fairness

In addition to being the product of a fair process, the Court also previously found that the settlement award is fair and reasonable. R&R at 3-4. In evaluating the substantive fairness of a class action settlement, courts in this Circuit interpret the "Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 29 (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment) (explaining "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal"). In *City of Detroit v. Grinnell Corp.*, the Second Circuit enumerated nine factors in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also D'Amato v. Deutsche Bank*, 236 F.3d at 86; *Lea v. Tal Educ. Grp.*, No. 18 CV 5480, 2021 WL 5578665, at *7–8 (S.D.N.Y. Nov. 30, 2021); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

As set forth below, the Court has reviewed the substantive fairness factors set out in Rule 23(e) and the *Grinnell* factors and, consistent with its findings during the preliminary review of the proposed Settlement, finds that they satisfy the requirements of substantive fairness.

### i.    The Costs, Risks, and Delay of Trial and Appeal

"The first factor set forth under Rule 23(e)(2)(C), the 'costs, risks, and delay of trial and appeal,' 'subsumes several Grinnell factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin v. Oasmia Pharm. AB*, No. 19 CV 4349, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36).

In this case, the proposed Settlement was designed to avoid the significant expense and delay that would result from continuing this complex securities litigation involving numerous class members. *See Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (explaining "[c]lass action suits 'have a well-deserved reputation as being most complex' and securities class actions are 'notably difficult and notoriously uncertain to litigate'") (internal citations omitted) (quoting *In re*

*Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, 330 F.R.D. at 36, and In re Facebook, Inc., IPO Sec. & Derivative Litig., 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018)).

Among other things, Plaintiffs considered the risk of a grant of summary judgment on the claims, the possibility that the Settlement Class would not be certified, the expense involved in briefing a summary judgment motion and appeals, the expense and time involved in formal discovery, the fact that there was likely to be a dispute among experts on materiality, falsity and damages; the possibility of losing at trial, and the probability of appeals. Dkt. No. 90 at 9-14. Thus, the benefit of a settlement that results in a substantial, immediate benefit to the Settlement Class, as opposed to the risk of continuing a years-long legal battle, weighs heavily in favor of accepting the proposed Settlement. In addition, there were also significant risks involved in pursuing the class action, including the uncertainty of whether Plaintiffs would ultimately prevail on the merits, given the fact that defendants continue to vigorously deny any wrongdoing and that their alleged misstatements caused any investor losses. *See id.* This concern was heightened by the decision of the SEC not to assess any penalties against Defendants in connection with the investigation into an accounting weakness at the Company. *Id.* at 18. Moreover, in the absence of a settlement, both parties would require an expenditure of money and time litigating this case to trial and further delay would ensue. Thus, in light of the costs of continued litigation, the complexity of the securities class action, the uncertainty involved in establishing defendants' liability, the Settlement Class's damages, and maintaining the class action through trial, the potential for protracted and uncertain litigation weighs in favor of approving the proposed Settlement.

ii.    **The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class and Settlement Class Member Treatment**

The second factor to be considered by a court is whether the proposed plan of allocation is "fair and adequate." *City of Providence v. Aeropostale, Inc.*, No. 11 CV 7132, 2014 WL 1883494,

at *10–11 (S.D.N.Y. May 9, 2014) (quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d. 358, 367 (S.D.N.Y. 2002)), *aff'd sub nom*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). According to Plaintiffs, all Settlement Class Members are treated equitably by the Plan of Allocation because "each Authorized Claimant will receive his, her, or its pro rata share of the Net Settlement Fund. Specifically, an Authorized Claimant's pro rata share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund." Dkt. No. 90 at 17.

Lead Counsel's in-house damages consultants prepared the Plan of Allocation and Epiq will process the claims and distribute the funds according to the Plan of Allocation, allowing claimants to cure any deficiencies in their claims. *Id.* at 16.; *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10 (explaining that "[a] plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel'") (internal quotation marks omitted) (quoting *In re Am Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001)). In addition, under the claims process, the claimants can seek review of the Court in the event their claims are denied. *Id.* The proposed Plan of Allocation is thus effective, fair, and reasonable and treats Settlement Class Members equitably.

### iii. The Terms of any Proposed Award of Attorney's Fees, Including Timing of Payment

#### a. Attorneys' Fees

Lead Counsel seeks an award of attorneys' fees representing 33 1/3% of the $3.0 million settlement amount, totaling $1,000,000, along with interest. Lead Counsel undertook this representation entirely on a contingent fee basis and assumed significant risk in pursuing these claims and asserts that it devoted significant time and resources in connection with the litigation, working over 1459.85 hours. Dkt. No. 91 at 2.

In *Boeing Co. v. Van Gemert*, the Supreme Court stated that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res. Inc.*, 209 F.3d at 47. The policy behind awarding fees from a common fund is that such an award not only provides just compensation for counsel but it is designed to encourage experienced counsel to represent individuals in cases where damages have been inflicted on classes of people and is to discourage future similar misconduct. *Aeropostale, Inc.*, 2014 WL 1883494, at *11. In considering the fee request, the Court looks to 1) counsel's time and effort in connection with the litigation; 2) the quality of the representation; 3) the complexity of the litigation; 4) the risks of litigation; 5) the relationship of the fee to the settlement; and 6) public policy concerns. *See United States v. City of New York*, No. 07 CV 2067, No. 13 CV 3123, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)).

Lead Counsel urge the Court to approve a fee based on a percentage of the common fund obtained. Dkt. No. 90 at 9-10. Courts have recognized that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Parking Heaters, Antitrust Litig.*, No. 15 MC 940, 2019 WL 8137325, *7 (E.D.N.Y. Aug. 15, 2019) (quoting *Wal-Mart*, 396 F.3d at 121). Moreover, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 77z-1(a)(6).

Courts in this Circuit routinely award attorneys' fees of around 33 1/3% of the common fund. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9 (S.D.N.Y. Nov.

9, 2015) (awarding 33% of $26.5 million settlement), *aff'd sub nom.*, 674 F. App'x 37 (2d Cir. 2016); *City of Providence v. Aéropostale, Inc.,* 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement) *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (approving 33% fee); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement). Here, Lead Counsel's request for 33 1/3% of the common fund is justified in light of the significant benefit achieved for the Settlement Class, the considerable time and effort devoted by counsel to reaching a successful conclusion for the Settlement Class, including a successful appeal of a dismissal with prejudice to the Second Circuit, and the lack of any objections to Lead Counsel's request.

Based on a cross check of Lead Counsel's hours, the Court notes that Lead Counsel collectively devoted a total of 1459.85 hours to the prosecution of this Action, resulting in a lodestar of $1,210,810.00. Dkt. No. 91 at 16. Thus, the requested fee of $1,000,000 represents only about 0.826 of Lead Counsel's lodestar. In other complex contingent litigation, courts have awarded lodestar multipliers of between 2 and 5 or more. *See, e.g., Lopez v. Fashion Nova*, No. 20 CV 9238, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) (noting that lodestars of eight times are regularly awarded in the Second Circuit); *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d at 123 (upholding 3.5 multiplier) (citing cases). The fact that the requested fee is substantially less than the lodestar supports the award's reasonableness.

Moreover, the amount of time and effort required by counsel is not surprising given that the issues raised by the litigation were anything but straightforward. Lead Counsel not only conducted a thorough investigation into the claims but researched and briefed a motion to dismiss, an appeal, and a second motion to dismiss, as well as prepared for and participated in formal

mediation sessions and post-mediation negotiations, and drafted the Proposed Settlement Agreement, the motion for Preliminary Approval and the Plan of Allocation. Dkt. No. 90 at 2-3.

In addition, the nature of this litigation was one facing substantial risks. *Goldberger*, 209 F.3d at 54 (commenting that the risk undertaken in a case is often the most important factor in determining whether to award a fee enhancement). Here, Lead Counsel undertook this case on a completely contingent fee basis, with no guarantee of recovery of fees or expenses. Lead Counsel were obligated to provide sufficient attorney and paralegal resources to prosecuting the action, while facing the possibility that they would not receive any fees. In addition, as set forth above, there were numerous factors that made Plaintiffs' ability to prove their claims challenging, including the defenses raised by the defendants, and the issues inherent in a jury trial, assuming the case survived the motion to dismiss and any motion for summary judgment. The litigation was also complex and, as the court in *In re Bayer AG Securities Litigation* noted, "shareholder actions are notoriously complex and difficult to prove." No. 3 CV 1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008).

In considering the requested fee, the Court also looks to the quality of the representation of Lead Counsel as well as the quality of opposing counsel. *See In re Flag Telecom Holdings, Ltd Sec. Litig.*, No. 2 CV 3400, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010). Here, Lead Counsel are experienced in securities class actions and complex litigations, and defendants' counsel were equally experienced, with lawyers from Foley & Lardner LLP and Duke, Holzman, Photiadis & Gresens LLP.

The factors of public policy and the class reactions to the fee request also support granting Lead Counsel's request to approve the fee. Although over 206,221 copies of the Notice have been sent, informing Settlement Class Members of the fee request, no one objected. Finally, it is clear

that there is an important public policy that favors enforcement of the securities laws and the Supreme Court has noted that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964), *abrogated on other grounds, Cort v. Ash*, 422 U.S. 66 (1975)).

Having considered all of the relevant *Goldberger* factors, the Court finds that Lead Counsel's request for a fee of $1,000,000 is fair and respectfully recommends that the fee request be approved.

### b.  Expenses, Plaintiff Awards, and other Costs

"Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *In re Vitamin C Antitrust Litig.*, No. 06 MD 1738, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (quoting *In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3421, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06 MD 1775, 2015 WL 5918273, at *7 (E.D.N.Y. Oct. 9, 2015) (holding that "[l]awyers are generally entitled to reimbursement for reasonable out-of-pocket expenses").

Apart from attorneys' fees, Lead Counsel requests reimbursement of $106,473.75 in expenses. The Court respectfully recommends that the request for expenses be granted.

In addition to Lead Counsel's expenses, Plaintiffs seek a total compensatory award $5,000 per each lead plaintiff, for a total of $15,000. The Court finds this request reasonable under the circumstances and recommends that the District Court approve it.

### 5.  Other Grinnell Factors

### a.  The Reaction of the Settlement Class to the Settlement

The Court could not address the reaction of the Settlement Class to the settlement during the preliminary approval stage, but now that notice has been provided, it is apparent that the

reaction of the Settlement Class has been a positive one. Given the thousands of Notice Packets that have been sent and no objectors and only one opt-out, the Court concludes that the reaction has been very high for a class action of this type. *See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18 CV 8472, 2022 WL 2063864, at *9 (S.D.N.Y. June 8, 2022) (explaining that "[t]here have been no objections to the settlement and no requests for exclusion" which "weighs in favor of approval" of the class settlement); *Velez v. Novartis Pharms. Corp.*, No. 04 CV 9194, 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010) (explaining "[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor . . . [and] the lack of objections may well evidence the fairness of the settlement") (emphasis omitted); *Becher v. Long Island Lighting Co.*, 64 F. Supp. at 181 (explaining "[t]he absence of any objection by class members, except for one objection to the Plan of Allocation, evidences the class's overwhelming support of the Settlement" and there "[t]he absence of objection [was] particularly notable since over 11,000 potential class members were individually notified by mail of the Settlement").

        **b.**      **The Stage of the Proceedings and the Amount of Discovery Completed**

Courts regularly approve settlements where, as here, Lead Counsel has "engaged in sufficient investigation of the facts," even without formal discovery. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001); *see also Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019) (approving final settlement where case "settled swiftly"); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *5 (S.D.N.Y. May 30, 2013) (noting that "although settlement was reached before extensive merits discovery, plaintiffs conducted an investigation prior to commencing the action [and] retained experts"); *Van Oss v. New York*, 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) (holding that

"although there has been no formal discovery, plaintiffs' counsel has done an adequate factual investigation"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (finding formal discovery unnecessary where the parties "engaged in sufficient investigation of the facts").

       **c.**       **The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Potential Recovery, the Risks of Litigation, and the Defendants' Ability to Withstand Greater Judgment**

"The dollar amount of the settlement by itself is not decisive in the fairness determination" under this factor. *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom., In re Agent Orange Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145 (2d Cir. 1987). What constitutes a reasonable settlement amount "'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'" *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y.) (quoting *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)), *aff'd sub nom., In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997).

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Johnson v. Brennan*, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). This flows from the fact that "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. at 762. "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Here, the settlement amount of $3.0 million represents approximately 5.9% of the claimed recoverable damages of approximately $50.7. Given the risks that Plaintiffs would face if they were to proceed to trial, this Court finds that this factor favors the settlement as well. This amount is even more reasonable considering there was no assurance that Defendants could withstand a greater judgment. Dkt. 90 at 21. Based on the above discussion of the *Grinnell* factors, the Court recommends that the District Court find that the proposed Settlement is substantively fair.

### B.    Summary

For the foregoing reasons, the Court recommends that Plaintiffs' motions for final approval of class action settlement and Lead Counsel's motion for fees, reimbursement of expenses, and compensatory awards to plaintiffs (Dkt. Nos 88-94) be granted and the District Court enter an order adopting the foregoing findings and relief (*see* Dkt. No. 94-2 (proposed order)).

## IV.    CONCLUSION

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L.R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER***. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or

evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesales Elec. Co.*, 840 F. 2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R. Civ. P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with these provisions may result in the District Court's refusal to consider the objection.

**SO ORDERED.**

Dated: October 16, 2023
   Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge